Case No. 8:25-cv-2103-TDC (LEAD CASE)

# APPENDIX F — Bankruptcy Court's July 3, 2025 Ruling and Order

_____ FILED    _____ ENTERED
_____ LOGGED  _SLS_ RECEIVED

JAN 1 2 2026

AT BALTIMORE
CLERK U.S DISTRICT COURT
DISTRICT OF MARYLAND
BY _wright Prop Box_    DEPUTY

**APPENDIX F-1** Transcript of Oral Ruling Approving
Settlement (7/3/2025)
*(Temporal inconsistencies; Serv Trust repeatedly identified as
owner — Arguments I, II & V)*

1                    UNITED STATES BANKRUPTCY COURT
                      FOR THE DISTRICT OF MARYLAND
2                           Greenbelt Division

3    In Re:                          Case No. 15-26033, 24-00007

4    Gregory B. Myers,               Chapter 7

5              Debtor.               Greenbelt, Maryland
                                     Thursday, July 3, 2025
6    : : : : : : : : : : : : : : :

7

8

9                    TRANSCRIPT OF HEARING ON
     17 APPLICATION TO COMPROMISE CONTROVERSY FILED BY DEFENDANT
10   ROGER SCHLOSSBERG, 19 OBJECTION FILED BY DEBTOR GREGORY B.
     MYERS, 20 MOTION FOR MISCELLANEOUS RELIEF FILED BY DEFENDANT
11   ROGER SCHLOSSBERG, 22 SUPPORT DOCUMENT FILED BY DEBTOR GREGORY
     B. MYERS, 23 RESPONSE FILED BY DEBTOR GREGORY B. MYERS, 24
12   RESPONSE FILED BY DEFENDANT ROGER SCHLOSSBERG, 1051 OBJECTION
     TO CLAIM FILED BY DEBTOR GREGORY B MYERS, 1052 OBJECTION TO
13   CLAIM FILED BY DEBTOR GREGORY B MYERS, 1053 OBJECTION TO CLAIM
     FILED BY DEBTOR GREGORY B MYERS, 1060 OPPOSITION FILED BY
14   INTERESTED PARTY BRIAN KING, INTERESTED PARTY CRISTINA KING)
          BEFORE THE HONORABLE MARIA ELLENA CHAVEZ-RUARK
15                 UNITED STATES BANKRUPTCY JUDGE

16

17

18

19

20

21

22

23

24

25

```
 1    APPEARANCES:

 2    For Chapter 7 Trustee Roger     Frank J. Mastro, Esq.
      Schlossberg:                    Roger Schlossberg, Esq.
 3                                    SCHLOSSBERG & MASTRO
                                      18421 Henson Boulevard
 4                                    Suite 201
                                      Hagerstown, MD 21742
 5    For Brian King                  Maurice Belmont Verstanig, Esq.
                                      THE VERSTANDIG LAW FIRM, LLC
 6                                    9812 Falls Road
                                      #114-160
 7                                    Potomac, MD 20854
      For U.S. Trustee:               L. Jeanette Rice
 8                                    OFFICE OF U.S. TRUSTEE
                                      6305 Ivy Lane
 9                                    Suite 600
                                      Greenbelt, MD 20770
10

11    Audio Operator:                 JENNIFER WHITFIELD
                                      301-344-3965
12

13    Transcript prepared by:         ESCRIBERS
                                      7227 North 16th Street
14                                    Suite #207
                                      Phoenix, Arizona 85020
15                                    (800)257-0885

16
      Proceedings recorded by electronic sound recording; transcript
17    produced by transcription service.

18

19

20

21

22

23

24

25
```

 1                    Greenbelt, MD - July 3, 2025

 2          THE CLERK:  Calling the case of Gregory B. Myers,

 3    case number 15-26033.  The matters -- we're here for oral

 4    ruling regarding the matters of docket entry 1051, objection

 5    of claim number 22 filed by the Debtor, docket entry 1052,

 6    objection to claim number 23 filed by the Debtor, docket entry

 7    1053, objection to claim number 21 filed by the Debtor, and

 8    docket entry 1060, opposition to objections filed on behalf of

 9    the King parties.

10          We're also here for adversary number 24-00007, King

11    et al vs. Schlossberg.  The matters before the Court are

12    docket entry 17, application of compromise controversy filed

13    on behalf of the defendant, docket entry 19, preliminary

14    objection of Trustee's application to compromise controversy

15    filed by the Debtor, docket entry 22, supplement to

16    preliminary objection filed by the Debtor, docket entry 20,

17    motion to strike Debtor's objection filed on behalf of the

18    defendant, docket entry 23, response to motion filed by the

19    Debtor, and docket entry 24, response to opposition filed on

20    behalf of the defendant.

21          Starting with counsel for the plaintiffs and the

22    adversary, please identify yourself and client for the record.

23          MR. VERSTANDIG:  Good morning, Your Honor.  Maurice

24    Verstandig, on behalf of Brian King, Cristina King, and the

25    Cristina and Brian King Children's Trust.  I am joined today

1    by Brian King, who is simply passively listening over Zoom.

2         THE COURT:  Good morning.

3         MR. MASTRO:  Good morning, Your Honor.  Frank Mastro,

4    on behalf of Roger Schlossberg, the Chapter 7 Trustee and the

5    defendant in the adversary case.

6         THE COURT:  Good morning.

7         MR. SCHLOSSBERG:  Good morning, Your Honor.  Roger

8    Schlossberg, Chapter 7 Trustee, counsel for Trustee.

9         THE COURT:  Good morning.

10        MR. MYERS:  Good morning.  Good morning, Your Honor.

11   Greg Myers, Debtor, third-party plaintiff.  And I note that it

12   says there's ten participants on this Zoom, but I haven't

13   heard of ten different people.  Thank you.

14        THE COURT:  Good morning.

15        MS. RICE:  Good morning again, Jeanette Rice, office

16   of the U.S. Trustee.

17        THE COURT:  And good morning to you, Ms. Rice.

18        So the Court offers its deepest apologies.  We've had

19   a major technical failure on our end and none of the Court's

20   ruling was recorded.  The equipment is still not working, so

21   the Court is recording this using the Zoom recording function.

22   And what the Court will do is the Court will have a transcript

23   of its ruling prepared and docketed on the docket for the

24   convenience of the parties.  And so if any of the parties

25   would not -- would like to disconnect and not stick around for

1    the ruling, you're welcome to disconnect.  And the Court will

2    excuse you from the ruling.

3        If you're willing to stick around for the Court's

4    ruling, you heard most of it.  The Court will cover that

5    again.  And again, I offer my sincerest apologies.

6        MR. MYERS:  Your Honor, I don't understand.  So is

7    there a recording of the prior ruling?

8        THE COURT:  Mr. Myers, as I just stated, the

9    recording equipment failed.  There is no recording of that

10   ruling.  I am going to start over at the beginning and give

11   the ruling all over again, and the Court will prepare a

12   transcript of its ruling and put that on the docket for the

13   benefit of the parties.  So if anyone does not want to stay on

14   for the Court's ruling, the Court will excuse their

15   attendance.

16       MR. MYERS:  Uh-huh.

17       THE COURT:  All right.  I'm going to go ahead and get

18   started.  Before the Court is a motion to approve a settlement

19   filed by the Chapter 7 Trustee in the Debtor's main bankruptcy

20   case, and the Debtor's objections to three claims filed in his

21   bankruptcy case.  The Court will overrule the Debtor's

22   objections to the settlement motion, grant the settlement

23   motion, and approve the settlement motion, and approve the

24   settlement.  The claims are being withdrawn in connection with

25   the settlement.  So the objections to those three claims will

1   be overruled as moot.

2          Notwithstanding the Debtor's repeated

3   mischaracterizations of the underlying facts, the material

4   facts here are not disputed.  The Court adopts the findings of

5   fact and conclusions of law set forth in three of its prior

6   rulings.  The first is its memorandum opinion issued on

7   September 28th, 2018, in the adversary proceeding styled

8   United States Trustee v Myers, Adversary Number 17-00193 at

9   docket number 94 in that adversary proceeding.  The second is

10  the Court's memorandum opinion issued on December 11th, 2023,

11  the Chapter 13 case filed by the Debtor's wife, Barbara Ann

12  Kelly, case number 23-12700 at docket number 106.  And the

13  third is the court's order granting motion for approval of

14  proposed compromise and settlement issued on December 11th,

15  2023, in the Debtor's main bankruptcy case, case number 15-

16  26033, at docket number 1029.

17          In the interest of time, the Court will not restate

18  all of its factual findings and legal conclusions, but adopts

19  the findings and conclusions in those three decisions.  The

20  Court summarizes its prior findings of facts and makes

21  additional findings of facts based on the evidence presented

22  at the hearing on June 30th and July 1st as follows: The

23  Debtor filed a voluntary Chapter 11 bankruptcy petition on

24  November 18th, 2018.  Excuse me, 2015.  At the time that he

25  filed the case, there was a trust that has been referred to in



1    these proceedings as Serv Trust.  Serv Trust was created by

2    the Debtor's mother for the benefit of the Debtor's children.

3    And at some point in time, the Debtor was a co-Trustee of the

4    Serv Trust trust.

5            The Debtor testified at his meeting of creditors on

6    February 1st, 2016, that Serv Trust has a 50 percent interest

7    in a Maryland limited liability company called 6789 Goldsboro

8    LLC, which owns a parcel of residential real property located

9    in Montgomery County.  I will refer to 6789 Goldsboro LLC as

10   Goldsboro LLC, or Goldsboro, or the LLC.  On February 22nd,

11   2017, after an evidentiary hearing, this Court entered an

12   order granting the motion of the United States Trustee to

13   convert the Debtor's case from a Chapter 11 proceeding to a

14   Chapter 7 proceeding.  At that time, Mr. Schlossberg was

15   appointed as the Chapter 7 Trustee of the Debtor's bankruptcy

16   estate.

17           There are three pieces of litigation, in addition to

18   the instant adversary proceeding, that are most relevant to

19   the Trustee's settlement motion.  First, on September 14th,

20   2017, Brian King, Cristina King, and the Cristina and Brian

21   King Children's Trust filed a complaint for declaratory

22   judgment against Serv Trust in the Circuit Court for

23   Montgomery County in the case styled King et al v. Serv Trust

24   et al, case number 436977-B.  I will refer to Mr. King, Mrs.

25   King, and their trust as the King parties, and I will refer to

1    this case as the King declaratory judgment case.

2    The complaint in the King declaratory judgment case

3    sought, among other things, a judgment declaring that the King

4    parties could direct Goldsboro LLC to redeem the interest of

5    Serv Trust in the LLC in exchange for previous consideration.

6    Excuse me, in exchange for previous consideration paid based

7    on an appraisal conducted of the Goldsboro property pursuant

8    to the operating agreement governing the LLC and a judgment

9    declaring that Serv Trust's interest in Goldsboro, LLC has

10   been redeemed.

11   Second, on January 24th, 2018, Goldsboro, LLC filed a

12   complaint against Serv Trust in the Circuit Court for Garrett

13   County in the case styled 6789 Goldsboro, LLC v. Serv Trust et

14   al, case Number C-11-CV-18-000018.  I will refer to this case

15   as the Goldsboro breach of contract case.  The complaint in

16   this case asserted claims for breach of a promissory note and

17   promissory estoppel.  The Circuit Court for Garrett County

18   transferred the Goldsboro breach of contract case to the

19   Circuit Court for Montgomery County on July 24th, 2018, and

20   the Circuit Court for Montgomery County assigned case number

21   451611-V to the case and consolidated it with the King

22   declaratory judgment case.  I will refer to the consolidated

23   case as the State Court case, and to the Circuit Court for

24   Montgomery County as the State Court.

25   And third, on October 29th, 2018, Goldsboro, LLC



1    filed a complaint for declaratory judgment against the Debtor

2    Seve Trust and the Trustee in this Court, thereby commencing

3    adversary number 18-00407, which I will refer to as the

4    Goldsboro adversary proceeding.  The complaint in the

5    Goldsboro adversary proceeding alleged that the King parties

6    collectively are the other owner of Goldsboro, LLC, and

7    exercise their right to redeem Serv Trust interest in the LLC.

8    The complaint sought a judgment from this Court declaring that

9    Serv Trust is the alter ego of the Debtor, and that the assets

10   and liabilities of Serv Trust are assets and liabilities of

11   the Debtor, subject to administration by the Trustee.

12   Goldsboro, LLC also requested an order from this Court

13   stating -- excuse me, staying the State Court case based on

14   Goldsboro LLC's assertion that Serv Trust is the alter ego of

15   the Debtor.

16          On January 30th, 2019, the Court entered an order

17   abstaining from exercising jurisdiction over the claims

18   asserted in the Goldsboro adversary proceeding.  The

19   abstention order determined that the State Court could

20   determine whether Serv Trust is the alter ego of the Debtor in

21   connection with the State Court case, and if such a

22   determination was made, then the parties to the State Court

23   case could come back to this Court to determine a course of

24   action.  On the other hand, if the State Court determined that

25   Serv Trust is not the alter ego of the Debtor, then the State

1    Court case would have little impact on the Debtor's bankruptcy

2    case, and there would be no basis for the Court to exercise

3    jurisdiction over the Goldsboro adversary proceeding.

4         The abstention order also stated that the State Court

5    could determine whether the automatic stay of Section 362-A

6    applied to the State Court case.  After entry of the

7    abstention order, the King parties filed an amended complaint

8    in the King declaratory case to include a request for

9    declaratory judgment that Serv Trust is the alter ego of the

10   Debtor.  The consolidated State Court case was scheduled for

11   trial on January 3rd, 2023.  At approximately 4:30 p.m. on

12   Friday, December 30th, 2022, just minutes before the close of

13   business, on the last business day before trial, the Debtor

14   filed a notice of removal purporting to remove the action to

15   the United States Bankruptcy Court for the Middle District of

16   Florida, where the Debtors later filed and separate Chapter 13

17   case was pending at the time.

18        The King parties immediately filed an emergency

19   motion to remand, alleging various infirmities and inherent

20   bad faith associated with the Debtor's attempted removal at

21   the 11th hour, on the morning of January 3rd, 2023, the

22   Florida Bankruptcy Court remanded the case back to the Circuit

23   Court for Montgomery County in time to allow for the trial of

24   the State Court case to proceed as scheduled.  And so on

25   January 3rd, 2023, the State Court case proceeded to trial as

1    scheduled, and the State Court determined that Serv Trust is

2    the alter ego of the Debtor.  The State Court reduced its oral

3    ruling from the January 3rd, 2023 trial to a written order

4    entered on January 12th, 2023, and I will refer to that order

5    as the alter ego order.

6         The alter ego order determined, and I quote, Serv

7    Trust is, and as of November 18th, 2015, which was the

8    petition date, was the alter ego of Gregory B. Myers pursuant

9    to Maryland law, end quote.  The alter ego order further

10   determined, and I quote, Serv Trust is a disregarded entity,

11   being the alter ego of Mr. Myers, end quote.  The alter ego

12   order entered judgment in favor of the King parties on the

13   alter ego claim, which was Count II of a two count complaint

14   and enter judgment in favor of the King parties on all claims

15   set forth in Serv Trust's counterclaim.

16        Because it found that the Debtor is the alter ego of

17   Serv Trust, the alter ego order further provided that all

18   further proceedings in the case were stayed pursuant to

19   Section 362 of the Bankruptcy Code, pending the removal of the

20   State Court case to this Court, the granting of relief from

21   stay, or the occurrence of other events terminating the

22   automatic stay.  The stayed proceedings included the King

23   parties' claim in Count I, seeking a declaratory judgment

24   regarding the alleged redemption of Serv Trust's interest in

25   Goldsboro, LLC, as well as Goldsboro, LLC's separate claim

1    against Serv Trust in the Goldsboro breach of contract case.

2         Goldsboro, LLC's claim against the Debtor in the

3    Goldsboro breach of contract case had already been stayed at

4    that point.  The Trustee testified that the King parties later

5    dismissed Count I of the complaint in the King declaratory

6    judgment case.  The Trustee maintains that, based on the alter

7    ego order, all claims against Serv Trust must be construed as

8    claims against the Debtor's bankruptcy estate, and Serv Trust

9    assets are property of the Debtor's bankruptcy estate pursuant

10   to Section 541-A, with those assets subject to administration

11   by the Trustee as the legal representative of the bankruptcy

12   estate under Section 323-A.

13        On February 7th, 2023, the Trustee filed a motion for

14   approval of proposed compromise and settlement with the King

15   parties, which the Court will refer to as the Settlement

16   Procedures Motion.  That motion appears at docket number 1005

17   in the Debtor's bankruptcy case.  This motion sought approval

18   of a procedural mechanism for resolving the remaining claims

19   presented in the King declaratory judgment case regarding the

20   asserted redemption of Serv Trust's interest in Goldsboro,

21   LLC.  Pursuant to an agreement by the parties and the Trustee,

22   the King parties and the Trustee would jointly file a

23   stipulation in the State Court case, pursuant to which the

24   King parties would dismiss, without prejudice, the redemption

25   claim against Serv Trust.  In consideration of the dismissal,

1    the Trustee would agree to toll the statute of limitations

2    applicable to the redemption claim nunc pro tunc to September

3    14th, 2017, the date the King parties filed the declaratory

4    judgment case in the State Court.  And the King parties and

5    the Trustee would endeavor in good faith to negotiate a

6    resolution to the redemption claim.  And if negotiations were

7    not successful, the King parties would refile the redemption

8    claim as an adversary proceeding in this Court within 30 days.

9         In support of the settlement procedures motion, the

10   Trustee argued that the proposed settlement procedures are in

11   the best interest of the bankruptcy estate and all interested

12   parties.  The Trustee said the proposed procedures would

13   afford him time to become familiar with the redemption claim

14   and potentially negotiate a resolution of the same, which

15   could yield significant benefit and significant income for the

16   bankruptcy estate.  In the event a resolution could not be

17   reached, the Trustee reiterated that the redemption claim

18   would be relitigated in this Court, which was the bankruptcy

19   estate's preferred forum.

20        The Debtor filed a motion to strike the settlement

21   procedures motion, and that motion to strike appears at docket

22   number 1010 in the Debtor's main bankruptcy case.  The Court

23   treated the motion to strike as an opposition to the

24   settlement procedures motion.  In his motion to strike, the

25   Debtor made many of the same arguments that he made in

1    opposition to the Trustee's pending settlement motion.  On

2    December 11th, 2023, this Court entered a 21-page order at

3    docket number 1029, overruling the Debtor's objections,

4    granting the settlement procedures motion, and approving the

5    settlement procedures proposed by the Trustee.

6           Subsequent settlement negotiations between the King

7    parties and the Trustee failed to yield a settlement.

8    Consequently, on January 11th, 2024, the King parties filed a

9    complaint for declaratory relief against the Trustee in the

10   instant adversary proceeding adversary number 24-00007.  The

11   one count complaint requests that this Court declare Serv

12   Trust to have waived its right to appoint an alternative

13   appraiser under the Goldsboro, LLC operating agreement by not

14   doing so on or before September 11th, 2017, and declare that

15   Serv Trust's interest in Goldsboro, LLC has been fully

16   redeemed.

17          As the adversary case progressed, the King plaintiffs

18   and the Trustee resumed settlement negotiations, and this

19   latest round of negotiations ultimately proved to be fruitful.

20   The parties agreed to a compromise and settlement subject to

21   notice to creditors and approval by the Court.  The proposed

22   settlement includes four terms.  First, the King parties will

23   pay to the Trustee, for the benefit of the Debtor's bankruptcy

24   estate, the sum of $150,000 to redeem the entirety of Serv

25   Trust's interest in Goldsboro, LLC and settle the instant

1    adversary proceeding. The King parties and the Trustee

2    confirmed during this week's hearing that they are asking this

3    Court to approve a redemption and transfer of only the

4    bankruptcy estate's interest in Goldsboro, LLC.  They are not

5    asking this Court to determine that the Debtor is the alter

6    ego of Serv Trust, that Serv Trust assets are property of the

7    Debtor's bankruptcy estate, or that the Trustee has the

8    authority to administer the assets of Serv Trust.

9         The second term is that after the King parties pay

10    $150,000 to the Trustee, the King parties and the Trustee will

11    file a stipulation of dismissal in the instant adversary

12    proceeding, dismissing all claims herein with prejudice.

13    Third, the King parties will reimburse the Trustee for all

14    reasonable legal fees and expenses that the Trustee incurs in

15    connection with the litigation of any appeals taken by any

16    party in the event that the Court grants the Trustee's

17    settlement motion.  And fourth, the King parties will withdraw

18    their three claims filed in the Debtor's main bankruptcy case

19    at claim numbers 21, 22, and 23.  The King parties and the

20    Trustee added this fourth term at the beginning of this week's

21    hearing, so it is not included in the Trustee's settlement

22    motion.

23         The standard for approval of the Trustee's settlement

24    motion is well settled.  Bankruptcy rule 9019-A provides that

25    on the Trustee's motion and after notice and a hearing, the

1    Court may approve a compromise or settlement.  To approve a

2    settlement, the Court must consider four factors.  First, the

3    probability of success in litigation.  Second, the likely

4    difficulties in collection.  Third, the complexity of the

5    litigation involved and the expense, inconvenience, and delay

6    necessarily attending it.  And fourth, the paramount interest

7    of the creditors.  Those factors are set forth in in re: Essex

8    Construction LLC 575 B.R. 648 at pages 652 to 53.  That is a

9    decision of the Bankruptcy Court for the District of Maryland,

10   2017.  The factors are also set forth in in re: Bauman 181

11   B.R. 836 at page 843, also decided by the Bankruptcy Court for

12   the District of Maryland in 1995.

13        It is not necessary for a bankruptcy court to conduct

14   a mini trial or conclusively determine claims subject to a

15   compromise.  In re: Concept Housing Inc., 951 F. 2nd 932 at

16   939 out of the Eighth Circuit, 1991, and in re: Ashford Hotels

17   Limited, 226 B.R. 797 at 802 out of the Southern District of

18   New York, 1998.  Nor is it necessary for the Court to find

19   that the proposed settlement constitutes the best result

20   obtainable.  In re: Final Analysis, Inc. 417 B.R. 332 at pages

21   341 to 41 out of the Bankruptcy Court for the District of

22   Maryland, 2009.  Rather, the Court need only canvass the

23   issues to determine that the proposed settlement does not fall

24   below the lowest point of reasonableness.  That's from the

25   Final Analysis case.  In doing so, the Court does not

1    substitute its judgment for that of the Trustee.  In re: Bates
2    211 B.R. 338 at page 343 out of the Bankruptcy Court for the
3    District of Minnesota, 1997.

4         The Court has canvased the issues here as directed by
5    Final Analysis, and concludes that the proposed settlement
6    does not fall below the lowest point of reasonableness.  The
7    Trustee has exercised sound business judgment in entering into
8    the proposed settlement.  The proposed settlement is in the
9    best interest of the bankruptcy estate and all parties-in-
10   interest, and the proposed settlement should be approved under
11   Bankruptcy rule 9019-A.  In the Trustee settlement motion and
12   testimony, he provides ample support for the settlement.  He
13   analyzed and evaluated the King parties' redemption claim and
14   the bankruptcy's potential -- bankruptcy estate's potential
15   defenses, including those defenses and arguments that
16   previously were asserted by Serv Trust during the litigation
17   of the State Court case.

18        Based on this analysis and evaluation, the Trustee
19   concluded that the estate has a dim likelihood of prevailing
20   on the merits should the settlement not be approved and the
21   redemption claim be tried.  If the Trustee has to litigate the
22   redemption claim, and the King parties are successful on the
23   claim, Serv Trust's interest in Goldsboro, LLC will be
24   declared to have been redeemed, rendering this asset
25   completely worthless to the bankruptcy estate.  The proposed

1    compromise and settlement, by contrast, allows the Trustee to

2    obtain a significant recovery from the bankruptcy estate while

3    limiting the estate's exposure to the further expenditure of

4    attorney's fees and litigation costs, which cannot be

5    understated, given the Debtor's propensity for frivolous

6    litigation.

7         The Trustee described the formation of Goldsboro, LLC

8    by the King parties, the key terms of its operating agreement,

9    and the relationship between Goldsboro, LLC and Serv Trust.

10   The operating agreement provides for the King parties, as

11   class A members of the LLC, to put up almost all of the money

12   needed to acquire the property and fund its development, while

13   affording Serv Trust, the sole class B member of the LLC, a

14   period of three years to make the project profitable or risk

15   having its sweat equity redeemed by the King parties.

16   Goldsboro, LLC ultimately purchased the property on July 18th,

17   2013 for $1.35 million.

18        Goldsboro LLC's operating agreement provides that if

19   all governmental approvals needed to subdivide the property

20   into at least 19 townhouse dwellings are not obtained by July

21   18th, 2016, and the class A members of Goldsboro, LLC do not

22   elect to sell the property, the class A members may have the

23   property appraised in accordance with the terms of the

24   operating agreement.  If the appraised value of the property

25   is is found to be less than the monies invested by the class A

1    members, the class A members, the King parties, may cause

2    Goldsboro, LLC to redeem the interests of the class B member,

3    Serv Trust, in consideration of the company's prior

4    distributions or other payments to the class B member.

5        The necessary government approvals to permit the

6    development of 19 townhomes on the property were not obtained

7    by July 18th, 2016, or at any time thereafter.  The Debtor,

8    meanwhile, had become more cash strapped as the project

9    progressed, leading him to request that Mr. King contribute

10   additional funds to Goldsboro, LLC, which could then be loaned

11   to Serv Trust and in turn, to the Debtor personally to help

12   him defray his ongoing personal expenses.  Mr. King agreed and

13   authorized Goldsboro, LLC to loan hundreds of thousands of

14   dollars to Serv Trust, which then forwarded the funds to the

15   Debtor and his wife.

16       On May 18th, 2015, in connection with the loan, Serv

17   Trust executed a promissory note in favor of Goldsboro, LLC,

18   while the Debtor executed a guaranty agreement in which he

19   guaranteed Serv Trust repayment of the loans made by LLC.  The

20   Debtor did not list Goldsboro, LLC as an unsecured creditor

21   when he filed his bankruptcy petition six months later, and

22   this Court found that the Debtor made a knowing and fraudulent

23   false oath justifying denial of the Debtor's Chapter 7

24   discharge under Section 727-A 4-A.  That decision is reported

25   as in re: Myers 2018 Westlaw 4701387.  And again, that is a

1     decision out of this Court on September 28th, 2018.

2           I quote from that decision as follows:  It is not

3     believable that Mr. Myers simply forgot to include his largest

4     unsecured creditor in the first of several versions -- in the

5     first several versions of his schedules, when he had executed

6     a personal guarantee in favor of that creditor six months

7     prior to the filing for bankruptcy, and was requesting

8     advances from the creditor up to and after filing his

9     petition, end quote.

10          In September 2016, the King parties offered to

11    purchase Serv Trusts class B interests for $2 million less

12    repayment of the outstanding loan obligations Serv Trust owed

13    to Goldsboro, LLC.  These were the loans received by Serv

14    Trust for the Debtor's personal benefit.  The King Parties

15    offer was memorialized in a memorandum of understanding, which

16    required that the offer be accepted by September 12th, 2016,

17    and if accepted, that closing occur not later than October

18    7th, 2016.  According to the Trustee, Serv Trust did not

19    accept the MOU by September 12th, 2016 and closing did not

20    occur by October 7th, 2016.  This is supported by the emails

21    between Mr. King and the Debtor in January 2017, when the

22    Debtor emailed a copy of an executed MOU to Mr. King claiming

23    that Serv Trust had timely accepted the buyout offer, and Mr.

24    King rejected the tender of the executed MOU.

25          The King parties then began the process set forth in

1    the operating agreement to cause Goldsboro, LLC to redeem Serv

2    Trust's interests, which included a notice and appraisal

3    process.  In the subject adversary proceeding, the King

4    parties claim that Goldsboro, LLC has redeemed Serv Trust's

5    interests.  The Trustee concluded, based on his review and

6    analysis, and his 42 years' experience as a Chapter 7 Trustee,

7    that the King parties will likely prevail on their claim.  The

8    Court finds this conclusion reasonable, given the facts here.

9          As advanced by the Trustee, it appears that the King

10   parties properly invoked and followed the procedures set forth

11   in the operating agreement.  He testified that the King

12   parties obtained an appraisal, and that there was no valuation

13   dispute because Serv Trust did not appoint an appraiser or

14   participate in the appraisal process.  He also testified that

15   he believed Serv Trust did not accept the buyout memorialized

16   in the MOU, which expressly required that the offer be

17   accepted by September 12th, 2016, and if accepted, that

18   closing occur by October 7th, 2016.

19         Although the Debtor claims that he timely signed the

20   MOU on September 12th, 2016 and mailed it -- emailed it to Mr.

21   King -- or excuse me, and mailed it to Mr. King, the Debtor

22   made no effort to draft closing documents and the emails

23   between Mr. King and the Debtor in 2017 confirm that Mr. King

24   did not receive an executed copy of the MOU by the due date.

25         Finally, and perhaps most significantly, the Trustee

1    testified that he does not have personal knowledge of what

2    transpired among the King parties, Goldsboro, LLC, Serv Trust

3    and the Debtor and therefore, would have to rely on the Debtor

4    as a witness to prove the estate's defenses to the King

5    parties' redemption claim.  In fact, in cross-examining the

6    Trustee, the Debtor appeared to consider it a victory that the

7    Trustee admitted that he does not have personal knowledge and

8    would have to rely on the Debtor's testimony to defend against

9    the King parties' claim.

10        But as poignantly pointed out by the Trustee, the

11    Debtor will have no credibility whatsoever as a witness with

12    this Court or likely any other court.  The Court need look no

13    further than the Debtor's conduct during the hearing this week

14    to conclude that it cannot trust a word that comes out of the

15    Debtor's mouth.  For example, notwithstanding entry of the

16    alter ego order by the State Court, the Debtor repeatedly

17    insisted that judgment has not been entered on the alter ego

18    claim, even after the Court pointed him multiple times to the

19    alter ego order, which is called a judgment in the title, and

20    expressly states that judgment is entered on the alter ego

21    claim.  He still remains steadfast in his rantings that

22    judgment has not been entered.

23        In addition, as stated earlier, in denying the Debtor

24    a discharge, this Court found that the Debtor knowingly and

25    fraudulently made a false oath, exhibited what the Court

1    called a cavalier attitude toward his sworn schedules, and

2    demonstrated what the Court described as, quote, a reckless

3    disregard for the truth sufficient to deny him a discharge,

4    end quote.  How can the Court trust any sworn testimony by the

5    Debtor after these findings?

6         The Debtor's credibility is also belied by his prior

7    conflicting testimony.  And the Court refers the parties to

8    the United States Trustee's pre-trial statement and adversary

9    number 17-00193 at docket number 56, page 3, where the United

10   States Trustee states, and I quote, at the meeting of

11   creditors, Mr. Myers testified that the monies he and Kelly

12   received from Serv Trust were distributions for the benefit of

13   their children, who are beneficiaries of Serv Trust.  At his

14   2004 examination, the Debtor testified that the monies he and

15   Kelly received from Serv Trust were loans, not distributions,

16   end quote.

17        The Court also directs the parties to the Court's

18   memorandum opinion in that same adversary proceeding at docket

19   number 94, page 21, where the Court states, and I quote,

20   similarly, the line item for the Bethesda property in the

21   amount $3,860.96 included on his first amended Schedule J

22   conflicted with his 341 meeting testimony that he was not

23   making any post-petition payments on that property either, end

24   quote.

25        Furthermore, the Debtor's dilatory and abusive

1    litigation tactics are well known to the Court and are

2    discussed in great detail in this Court's 101-page memorandum

3    opinion entered on December 11th, 2023, in the Chapter 11 case

4    filed by the Debtor's wife.  As discussed in great detail in

5    that opinion, the Debtor and his wife have exploited and

6    subverted the bankruptcy process for more than what has now

7    been ten years.  In that decision, the Court found that they

8    have exploited, manipulated, and abused the bankruptcy process

9    to hinder and delay creditors from enforcing their security

10   interests or otherwise pursuing their claims, all while

11   forcing those same creditors to incur substantial legal fees

12   to protect their interests in various state and federal

13   courts.

14        The Court found that the Debtor and his wife

15   subverted and perverted the bankruptcy and litigation

16   processes, and abused, harassed, and harmed innocent creditors

17   and parties in interest.  The Court granted extraordinary

18   relief in that decision, designed to protect creditors and

19   other parties-in-interest from further bad faith conduct,

20   obstruction, and harassment by the Debtor and his wife.  The

21   Debtor's past conduct has destroyed any credibility he would

22   otherwise have with this Court.

23        To put it bluntly, the Court does not believe a word

24   that is spoken or written by the Debtor.  The record is

25   replete with examples of the Debtor's inability and/or



1  unwillingness to be truthful.  Moreover, the Debtor is

2  belligerent, obnoxious, disrespectful, condescending,

3  argumentative, aggressive, confrontational, antagonistic,

4  pugnacious, combatant, and offensive.  He mischaracterizes

5  things, then demands that everyone accept his distorted and

6  often outright false recitation of the facts and law.

7        His propensity for chaos and disrespect for the

8  tribunal and parties is staggering.  And he has demonstrated,

9  on many occasions, his disgust and loathing for the Trustee.

10  As both the Trustee and the Debtor pointed out, the Trustee

11  does not have personal knowledge of the facts and therefore

12  would have to rely on the Debtor's testimony.  There is no way

13  the Debtor will cooperate with the Trustee in defending

14  against the redemption claim.

15        As discussed in great detail in this Court's December

16  11th, 2023 memorandum opinion entered in Ms. Kelly's case and

17  in the June 11th, 2025 memorandum opinion entered in the

18  Debtor's most recent failed bankruptcy case in the United

19  States Bankruptcy Court for the District of Columbia, other

20  courts have had similar experiences with the Debtor.  The

21  Trustee is effectively left unable to put on a defense to the

22  King parties' claim.  The only witness he has to rely on is

23  the Debtor, and that is worse than having no witness at all.

24  For all of these reasons, the Court concludes that the Trustee

25  is unlikely to succeed if he were to litigate the redemption

1    claim with the King parties.

2          The Court will touch briefly, on the other factors

3    for the Court to consider.  First, the likely difficulties in

4    collection.  Even if the Trustee were to litigate the

5    adversary proceeding and prevail at trial, there is no

6    guarantee that the Trustee thereafter would be able to

7    liquidate Serv Trust's interest in Goldsboro, LLC for more

8    than what is being offered in the proposed settlement.

9    Because Goldsboro, LLC is a private company, there is no

10   readily accessible market in which the Trustee could liquidate

11   Serv Trust's interests.

12          Furthermore, Serv Trust's interest still would be

13   subject to the King parties' ability to invoke the appraisal

14   process to force a redemption.  In other words, even if, for

15   example, the Trustee prevails on grounds that the King parties

16   did not properly follow the appraisal procedures in 2017, the

17   Trustee cannot prevent the King parties from triggering a new

18   round of appraisals following a trial.  Given that the current

19   online Redfin valuation of the property is approximately $2

20   million, it is clear that Serv Trust's interest in Goldsboro

21   will be at serious risk of redemption, even if the Trustee is

22   successful at trial.  This risk of redemption will make it

23   extremely difficult, if not impossible, for the Trustee to

24   market Serv Trust's interest to potential buyers.  The

25   difficulty in collecting any award makes the proposed

1    settlement the most attractive path to recovery for the

2    Trustee.

3         Next, the Court must consider the complexity of the

4    litigation involved and the expense, inconvenience, and delay

5    necessarily attending it.  The Trustee negotiated, as part of

6    the proposed settlement, that the King parties will pay his

7    legal fees relating to any appeals of the settlement order.

8    The Debtor has demonstrated that he will seek reconsideration

9    of and appeal every decision by this Court, and the bankruptcy

10   estate has incurred an extraordinary amount of administrative

11   expenses defending against the Debtor's multitudinous and

12   frivolous appeals, none of which have proven successful.

13        It is eminently reasonable for the Trustee to assume

14   that the Debtor will appeal the Court's order approving the

15   settlement.  To mitigate the expense to the estate, the

16   Trustee convinced the King parties to bear responsibility for

17   reimbursing the Trustee for all legal fees incurred in

18   connection with the Debtor's inevitable appeal.  The value of

19   this provision to the estate cannot be understated.  It

20   ensures that the bankruptcy estate will reap the full benefit

21   of the $150,000 settlement payment to be made by the King

22   parties, as the estate will be insulated from the cost of

23   litigating any appeals related to the settlement.  Finally,

24   the proposed settlement is in the best interest of creditors.

25   By the settlement, the Trustee is bringing a significant sum

1    into the estate to pay allowed claims.

2          The Debtor raised several objections to the proposed

3    settlement, and many of those objections were rejected by the

4    Court in connection with the approval of the settlement

5    procedures motion.  I will address them in no particular

6    order, but I will start with the objection to which the Debtor

7    dedicated most of his testimony and argument.

8          First, the Debtor argues that the alter ego order has

9    no force or effect because it is not a final judgment under

10   Maryland Rule 2-602.  It is unclear to the Court whether the

11   alter ego order is, in fact, a final judgment.  In it, the

12   State Court entered judgment in favor of the King parties on

13   the alter ego claim in Count II, and entered judgment in favor

14   of the king parties on all claims asserted in Serv Trust's

15   counterclaim.  The King parties later dismissed Count I.

16         If the King declaratory judgment case and the

17   Goldsboro breach of contract case were administratively

18   consolidated, then the alter ego order very likely is a final

19   judgment.  If the two cases were substantively consolidated or

20   consolidated for all purposes, then the alter ego order may

21   not be a final judgment.  But regardless of whether the alter

22   ego order is a final judgment, it is still a valid judgment

23   that is entitled to full force and effect.  The lack of

24   finality does not render the judgment null and void.  The lack

25   of finality means only that the judgment may be revised by the

1    issuing court until entry of a final judgment adjudicating all

2    of the claims by and against all of the parties, or the

3    judgment may be reversed by an appellate court.

4            Maryland Rule 2-602-A says that an order that

5    adjudicates fewer than all of the claims in an action is not a

6    final judgment, and is subject to revision at any time before

7    entry of a final judgment.  Section 12-101-F of the Courts and

8    Judicial Proceedings Article of the Annotated Code of Maryland

9    defines final judgment as, quote, a judgment, decree,

10   sentence, order, determination, decision, or other action by a

11   court from which an appeal may be taken, end quote.

12           As stated less than two weeks ago by the Appellate

13   Court of Maryland, the purpose of Maryland Rule 2-602 is to

14   prevent piecemeal appeals and the interruption of ongoing

15   judicial proceedings.  That comes from Haywood v Henry et al.

16   2025 Westlaw 1752308 at page 7.  It was decided on June 25th,

17   2025, and cites to Sigma Reproductive Health Center v. State

18   297 Maryland 660 at page 665, a decision from 1983.

19           There is nothing to suggest that the purpose of the

20   rule on final judgments is to determine when an order becomes

21   effective.  In contrast, Maryland Rule 2-601 A-4 actually

22   provides that a judgment is effective when it is entered as

23   provided in Maryland Rule 2-601-B.  Again, Maryland Rule 2-601

24   A-4 provides that a judgment is effective when it is entered.

25   Maryland Rule 2-601 B-2 provides, and I quote, the clerk shall

1     enter a judgment by making an entry of it on the docket of the

2     electronic case management system used by that Court, along

3     with such description of the judgment as the clerk deems

4     appropriate, end quote.

5          Maryland Rule 2-601-D provides, and I quote, the date

6     of the judgment is the date that the clerk enters the judgment

7     on the electronic case management system docket, end quote.

8     Applying Maryland Rule 2-601, the alter ego order is a

9     judgment that was entered when it was docketed.  That is

10    January 12th, 2023.  And became effective on that date.

11    Nothing in Maryland Rule 2-601 limits its application to final

12    judgments.  Therefore, regardless of whether the alter ego

13    order is a final order, it is still a valid and effective

14    order unless and until it is revised by the State Court or

15    reversed on appeal.

16          I want to be clear, even if this were not so, it

17    would not impact the Court's approval of the proposed

18    settlement because the Trustee is settling and transferring

19    the bankruptcy estate's rights and interests with respect to

20    Goldsboro, LLC, whatever those rights and interests may be.

21    At the outset of the Court's ruling, the Court stated that it

22    is not required to conduct a mini trial or conclusively

23    determine the claims that are the subject of the compromise.

24          The sole issue for the Court is whether the proposed

25    settlement falls below the lowest point of reasonableness.  In

1    doing so, the Court does not substitute its judgment for that

2    of the Trustee.  The Court is not required to determine the

3    validity and merits of the claims, and the Court is not

4    required to define the rights and interests being settled

5    and/or transferred.  The Court is only approving a settlement

6    and/or transfer with regard to the bankruptcy estate's rights

7    and interests as to Goldsboro, LLC, whatever those rights and

8    interests may be.

9            The Debtor's second argument is that the Court is

10   violating the Rooker-Feldman Doctrine by considering a

11   settlement premised on the alter ego order, but then he argues

12   that the Court should not apply the alter ego order because it

13   was incorrectly decided, and the State Court did not have

14   jurisdiction to determine the alter ego claim.  He has

15   vacillated between these diametrically opposed arguments

16   numerous times.  The Court is not reviewing the alter ego

17   order, and the Court is not relitigating issues decided by the

18   State Court.  The Court is simply applying the State Court's

19   order because it is a valid order and a valid determination of

20   the party's rights.

21           It is unclear to the Court whether the Debtor

22   previously raised the argument that the State Court did not

23   have jurisdiction to determine the alter ego claim in the

24   State Court case, but there is nothing in the record to

25   support this argument.  The Debtor also argues that the State

1 Court incorrectly and improperly decided the alter ego claim,

2 because Judge Lippe determined the Debtor's rights and Serv

3 Trust in her September 28th, 2018 memorandum opinion denying

4 him a discharge.  This is belied by the fact that she entered

5 an order abstaining from determining the alter ego claim four

6 months later, on January 30th, 2019, in the Goldsboro

7 adversary proceeding.

8   The Debtor also argues that the alter ego case was

9 not properly remanded by the bankruptcy court for the Middle

10 District of Florida to the State Court.  That the Florida

11 bankruptcy court stayed the litigation and therefore that the

12 State Court did not have jurisdiction to determine the alter

13 ego claim and enter the alter ego order.  There is no evidence

14 in the record whatsoever to support any of these contentions.

15   In addition, the Debtor argues that this Court does

16 not have jurisdiction to approve the proposed settlement

17 because the Court abstained.  Once again, he mischaracterizes

18 the facts.  The Court abstained with regard to whether the

19 Debtor is the alter ego of Serv Trust and whether Serv

20 Trust's, assets or property of the bankruptcy estate.  The

21 Court is not deciding those issues today, and those issues

22 have been decided already by the State Court.  Today, the

23 Court is deciding whether a settlement between the Trustee, as

24 representative of the bankruptcy estate and the King parties,

25 should be approved.  The Court has not abstained with regard

1    to that issue and has jurisdiction to decide it.

2        The Debtor's third argument is that Serv Trust assets

3    cannot be property of his bankruptcy estate because his

4    bankruptcy estate was constituted on November 18th, 2015, when

5    he filed his bankruptcy petition.  He claims that anything

6    that occurred after the petition date does not constitute

7    property of his bankruptcy estate, and further argues that the

8    State Court cannot order relief nunc pro tunc.  Once again,

9    the Debtor misinterprets, misapplies, and mischaracterizes the

10   effect of the alter ego order.

11       The State Court determined on January 12th, 2023,

12   that Serv Trust is, and as of November 18th, 2025, the

13   petition date, was the alter ego of the Debtor.  The State

14   Court did not order relief nunc pro tunc.  It simply

15   determined the Debtor's rights and interests with respect to

16   Serv Trust as of a specified date.  His argument that a court

17   cannot determine a party's rights as of a past date is

18   nonsensical.

19       The Debtor's fourth argument is that approval of the

20   settlement is not a core proceeding.  The Debtor is incorrect,

21   and the Court rejected this argument when the Debtor raised it

22   in opposition to the settlement procedures motion.  Approval

23   of a settlement under Bankruptcy Rule 9019-A is a court

24   proceeding under several paragraphs of Section 157-B-2 of

25   Title 28 of the United States Code, including 2-A, which

1    addresses matters concerning the administration of the estate,

2    2-C, which addresses counterclaims by the estate against

3    persons filing claims against the estate, 2-E, which addresses

4    orders to turn over property of the estate, and 2-O, which

5    addresses other proceedings affecting liquidation of assets of

6    the estate.

7           The Court refers the parties to Wheatley v Wood in

8    re: Wood 2021 Westlaw 3640612, which concluded that a motion

9    to approve a settlement under Bankruptcy Rule 9019 is a court

10   proceeding, and the Court has authority to enter a final order

11   under 28 U.S.C. Section 157-B 2-A and O.  The Court also

12   refers the parties to in re: Junk 566 B.R. 897, at page 904, a

13   decision issued by the Bankruptcy Court for the Southern

14   District of Ohio in 2017, in which that court concluded that

15   bankruptcy courts have Constitutional authority to enter final

16   orders approving settlements under Bankruptcy Rule 9019.  And

17   finally, the Court refers the parties to in re: Full Spectrum

18   Management, LLC, 621 B.R. 421 at page 424, a decision of the

19   bankruptcy court for the Western District of Michigan 2020,

20   which has the same holding as in re: Junk.

21          The fifth argument advanced by the Debtor is that the

22   beneficiaries of Serv Trust are required to be joined as

23   defendants in this matter.  Again, the Debtor is incorrect,

24   and the Court rejected this argument when the Debtor raised it

25   in opposition to the settlement procedures motion.  The

1   beneficiaries of Serv Trust are no longer beneficiaries of

2   Serv Trust because pursuant to the alter ego order, Serv Trust

3   is a disregarded entity, being the alter ego of the Debtor.

4   Therefore, the named beneficiaries are not required to be

5   joined as defendants in an adversary proceeding or named as

6   respondents in any contested matter.

7        The time for the named beneficiaries to assert any

8   rights to the assets of Serv Trust, or to otherwise intervene

9   in the State Court case was prior to the State Court's

10  determination that Serv Trust is the alter ego of the Debtor.

11  Moreover, Serv Trust need not be in bankruptcy, and the fact

12  that the Debtor was not a settlor or beneficiary is

13  irrelevant, because Serv Trust has been determined to be the

14  Debtor's alter ego, and Serv Trust's assets have been

15  determined to be subject to administration by the Trustee as a

16  legal representative of the bankruptcy estate under Section

17  323-A.

18       The Debtor's sixth argument is that the King parties

19  do not have standing to appear in this Court.  Again, the

20  Debtor is incorrect, and the Court rejected this argument when

21  the Debtor raised it in opposition to the settlement

22  procedures motion.  The Trustee filed the settlement motion to

23  resolve claims and disputes between the bankruptcy estate and

24  the King parties.  Standing of the King parties is wholly

25  irrelevant to the settlement motion.  The Trustee, as the

1    administrator of the Debtor's bankruptcy estate, has standing

2    to settle any claim held by or against the bankruptcy estate.

3        The Court refers the parties to Dimeglio v. Haines

4    1999 Westlaw 1489197 at page 2, a decision of the United

5    States District Court for the District of Maryland on December

6    28th, 1999.  In that case, the Court held that the bankruptcy

7    Trustee succeeds to all causes of action held by the Debtor as

8    of the petition date, and only the Trustee has authority to

9    settle or release such claims.  Nevertheless, the King parties

10   became potential creditors of the Debtor upon entry of the

11   alter ego order long after the claim's bar date.  Therefore,

12   the King parties have standing to assert any claims against

13   the Debtor in this Court, and are irrefutably parties and

14   interest to this proceeding.

15       The Debtor's seventh argument is that any claims

16   filed by the King parties are untimely because they were filed

17   after the claim's bar date.  For the same reasons stated with

18   regard to the last objection, the King parties became

19   potential creditors of the Debtor only after entry of the

20   alter ego order, which was years after the expiration of the

21   claim's bar date, and the Court gave them an opportunity to

22   assert their claims against the bankruptcy estate.

23       The Debtor's eighth argument is that the King parties

24   are estopped from asserting any claims in this bankruptcy

25   proceeding, because the bankruptcy court in the Middle

1    District of Florida sustained the Debtor's objection to their

2    claims in his bankruptcy case there.  However, the King

3    parties asserted those claims before the State Court issued

4    the alter ego order, which gave rise to the King parties'

5    claims asserted in this bankruptcy proceeding.  Again, the

6    Court rejected this argument when the Debtor raised it in

7    opposition to the settlement procedures motion.

8          The Debtors ninth argument is that the King parties

9    do not have a monetary claim, and that their proofs of claim

10   only assert equitable rights.  Again, the Debtor is incorrect.

11   The proofs of claim assert claims based on what the King

12   parties describe as equitable and statutory claims as set

13   forth in the adversary proceeding.  The complaint in the

14   adversary proceeding asserts a claim for declaratory relief.

15   That is a claim.  Section 105-A -- excuse me, 105 -- 1015 of

16   the Bankruptcy Code says that the word claim means right to

17   payment, whether or not such right is reduced to judgment,

18   liquidated, unliquidated, fixed, contingent, matured,

19   unmatured, disputed, undisputed, legal, equitable, secured or

20   unsecured, or a right to equitable remedy for breach of

21   performance if such breach gives rise to a right to payment

22   whether or not such right to an equitable remedy is reduced to

23   judgment, fixed, contingent, matured and matured, disputed,

24   undisputed, secured or unsecured.

25         It is well settled that the term claim is to be

1    broadly interpreted.  In Johnson v. Home State Bank, 501 US

2    78, at page 83, the United -- decided in 1991, the United

3    States Supreme Court stated, and I quote, Congress intended to

4    adopt the broadest available definition of claim, end quote.

5    It cannot be reasonably disputed that the King parties have a

6    claim against the bankruptcy estate, and that this Court has

7    jurisdiction over the allowance and disallowance of claims.

8         The Debtor's 10th argument is that Mr. Verstandig,

9    counsel for the King parties, has a conflict of interest.

10   This issue was not properly before the Court at this time.

11   The Debtor waited until after the close of evidence on

12   Tuesday, July 1st, the second day of the hearing on the

13   Trustee's settlement motion, to file a motion to disqualify

14   Mr. Verstandig. As the Court has told the Debtor numerous

15   times, it will not consider pleadings filed on the eve of a

16   hearing.  It should be obvious that the Court will also not

17   consider a pleading that is filed after the close of evidence.

18        In addition, the Debtor filed a handful of other

19   motions after business hours on Friday, June 27th, which was

20   the last business day before the hearing on the Trustee's

21   settlement motion began and just minutes before the hearing

22   began on Monday, June 30th.  The Court understands that the

23   Debtor even filed more pleadings in person this morning, even

24   though he represented to the Court that he was not available

25   today because he was going to be in Florida for a hearing.

1          The Court also understands that that the Debtor has
2    insisted that the Court read them before giving its ruling.
3    The Court hasn't and the Court won't.  The Court has told the
4    Debtor time and again it will not consider, prior to a
5    hearing, pleadings filed on the eve of that hearing.  Yet, he
6    still waits until minutes prior to a hearing, or even in the
7    middle or at the end of a hearing, to file pleadings that he
8    could have filed days, weeks, months, or even years ago.  The
9    Court will address these motions in the ordinary course, after
10   the Court has had an opportunity to review them, and if
11   appropriate, parties and interests have had an opportunity to
12   object.

13         The Court has a final comment and a question
14   regarding the Debtor's objections to the proposed settlement.
15   First, the comment.  The procedural posture of this adversary
16   proceeding is exactly what was contemplated by the Court and
17   the parties when the Court entered its abstention order on
18   January 30th, 2019, six and a half years ago, in the Goldsboro
19   adversary proceeding.  The abstention order specifically
20   provided that the State Court could determine whether Serv
21   Trust is the alter ego of the Debtor in connection with the
22   King declaratory judgment case, and if such a determination
23   was made, then the parties could come back to the bankruptcy
24   court to determine a course of action.

25         The abstention order further stated, and I quote, if

1     the State Court determines that the automatic stay is

2     applicable based on the relationship between the Debtor and

3     Serv Trust, then the matter will be stayed and the parties can

4     come back to this Court to figure out how to proceed, end

5     quote.  That's at page 4 of the abstention order.

6          This is exactly what has happened.  The State Court

7     determined that Serv Trust is the alter ego of the Debtor.  So

8     the parties are now back before this Court seeking authority

9     to resolve the remaining redemption claim as contemplated by

10    the abstention order.  It has been a long road, and we are

11    finally at the point at which the dispute with the King

12    parties regarding the redemption claim, which the Court

13    understands to be the final matter for administration by the

14    Trustee, is being resolved.

15          And this leads to the Court's question.  Why is the

16    Debtor not embracing this settlement?  The Court denied him a

17    discharge, so he is going to remain personally liable for any

18    claims that exist.  Serv Trust and the Debtor have no viable

19    defense to the redemption claim, and the Trustee negotiated a

20    settlement that will bring $150,000 into the estate, and the

21    estate will not have to bear the financial burden of the

22    inevitable appeal by the Debtor.  This is an extraordinary

23    result for the bankruptcy estate.  The Debtor stands to

24    benefit greatly from this settlement.

25          Resolution of the dispute with the King parties



1    brings us all one giant step closer to completing the

2    administration of the bankruptcy estate.  Normally, the Court

3    would say that it is astounded that someone is opposing this

4    settlement, but it is par for the course with this Debtor.  He

5    has opposed most, if not all, of the Trustee's actions in this

6    case, and he has appealed most, if not all, of this Court's

7    orders.  For reasons that are unclear to the Court, it is

8    obvious that the Debtor's sole goal is to remain in bankruptcy

9    as long as possible, and to inflict as much pain and hardship

10   on his creditors and the Trustee as possible.

11       As previously discussed, the Court is not required to

12   conduct a mini trial or find that the proposed settlement

13   constitutes the best result obtainable.  Even so the Court did

14   in fact conduct a full two-day evidentiary hearing and fines,

15   as a matter of fact, that the proposed settlement is indeed

16   the best possible result for the bankruptcy estate and

17   creditors.  The Trustee has exercised good business judgment

18   in entering into the proposed settlement, and the Court will

19   not substitute its judgment for that of the Trustee.

20       For all of these reasons, the Court concludes that

21   the overwhelming evidence is that the proposed settlement does

22   not fall below the lowest point of reasonableness.  The

23   Trustee has exercised sound business judgment in entering into

24   the settlement.  The proposed settlement is in the best

25   interest of the bankruptcy estate, and all parties-in-

```
 1    interest, including the Debtor, and the proposed settlement,
 2    should be approved under Bankruptcy Rule 9019-A.
 3           To the extent any of the Court's findings of fact
 4    constitute conclusions of law, they are adopted as such.  And
 5    to the extent of the -- any of the Court's conclusions of law
 6    constitute findings of fact, they are so adopted.  The Court
 7    will have a transcript of its ruling prepared and docketed for
 8    the convenience of the parties.
 9           Mr. Mastro, the Court would like you to upload a
10    proposed order granting the settlement motion and approving
11    the settlement today simply saying --
12           MR. MASTRO:  Yes, Your Honor.
13           THE COURT:  -- for the reasons stated on the record
14    at the hearing held today, the motion is granted, the
15    settlement is approved and include the four terms.  Again, the
16    four terms are as follows:  First, the King parties will pay
17    to the Trustee, for the benefit of the Debtor's bankruptcy
18    estate, the sum of $150,000 to redeem the entirety of the
19    bankruptcy estate's interest in Goldsboro, LLC, and settle the
20    instant adversary proceeding.  Second, after the King parties
21    pay $150,000 to the Trustee, the King parties and the Trustee
22    will file a stipulation of dismissal in the instant adversary
23    proceeding, dismissing all claims therein with prejudice.
24           Third, the King parties will reimburse the Trustee
25    for all reasonable legal fees and expenses that the Trustee
```

1   incurs in connection with the litigation of any appeals taken

2   by any party in the event that the Court grants the Trustee's

3   settlement motion.  And fourth, the King parties three claims

4   filed in the main bankruptcy case at claim numbers 21, 22, and

5   23 are deemed withdrawn effective when the order becomes final

6   and non-appealable.

7        As part of the settlement, the King parties are

8   withdrawing their claims, claim numbers 21, 22, and 23.

9   Therefore, the Court need not consider the Debtor's objections

10  to those claims, and his objections to those claims are

11  overruled as moot.  That is the ruling of the Court.

12       MR. SCHLOSSBERG:  Your Honor, very quick question.

13  The obligation of the King parties to bear the expense of any

14  appeals, I believe, was contemplated among the King parties'

15  counsel and counsel for the Trustee to include any proceedings

16  on motions for reconsideration.

17       May we so amend the order to that effect?

18       THE COURT:  You may.

19       MR. SCHLOSSBERG:  Thank you.

20       THE COURT:  Any questions regarding the Court's

21  ruling, Mr. Mastro, since you're drafting the order?

22       MR. MASTRO:  No, Your Honor.

23       THE COURT:  All right.  Thank you.

24       MR. MASTRO:  Understood.

25       MR. SCHLOSSBERG:  Thank you.



```
 1              THE COURT:  The Court appreciates everyone's time.
 2    And again, the Court sincerely apologizes for the technology
 3    fail earlier today.  Again, the Court will prepare -- we'll
 4    have prepared a transcript of its ruling, and the Court will
 5    docket it on the case docket as soon as it is ready.  Thank
 6    you all for your time.
 7              MR. SCHLOSSBERG:  Thank you.
 8              MR. VERSTANDIG:  Thank you.
 9              MR. MASTRO:  Thank you.
10              MR. SCHLOSSBERG:  Good weekend.
11              THE CLERK:  Court is now adjourned.
12         (Whereupon these proceedings were concluded.)
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1

2

3                                    CERTIFICATION

4    I certify that the foregoing is a correct transcript from the

5    electronic sound recording of the proceedings in the above-

6    entitled matter.

7

8                                                    July 13, 2025

9    _____    _____

10   DIANA DODSON                        DATE

11   TTA-Certified Digital Legal Transcriber CDLT-134

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**APPENDIX F-2** Order Approving Trustee's Compromise and Settlement (DE 61, 7/3/2025)
*(Jurisdictional contradiction; improper claim withdrawal; non-finality — Arguments I–V)*

Entered: July 3rd, 2025
Signed: July 3rd, 2025

## SO ORDERED



_Maria Elena Chavez-Ruark_

**MARIA ELLENA CHAVEZ-RUARK**
**U.S. BANKRUPTCY JUDGE**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | |
|---|---|
| In re:<br>GREGORY B. MYERS,<br>    Debtor. | )   Case No. 15-26033-MCR<br>)        (Chapter 7)<br>) |
| | ) |
| BRIAN KING, _et al._,<br>    Plaintiffs, | )<br>)<br>) |
| | ) |
| v. | )   Adv. No.: 24-00007 |
| | ) |
| ROGER SCHLOSSBERG, TRUSTEE,<br>    Defendant. | )<br>)<br>) |

### ORDER APPROVING TRUSTEE'S COMPROMISE
### AND SETTLEMENT WITH KING PARTIES

Before the Court is the _Motion for Approval of Proposed Compromise and Settlement with King Plaintiffs_ (the "_Rule 9019 Motion_"), [Dkt. No. 17], filed by Roger Schlossberg, the Chapter 7 Trustee herein, and the objections thereto filed by the Debtor, Gregory B. Myers, [Dkt. Nos. 19 and 22]. The Court conducted an in-person evidentiary hearing on June 30, 2025 and July 1, 2025. The Court then convened a virtual hearing on July 3, 2025 to orally issue its findings of fact and conclusions of law, and to deliver its ruling. For the reasons stated on the

record at the aforementioned virtual hearing on July 3, 2025, it is by the United States Bankruptcy Court for the District of Maryland, hereby

**ORDERED**, that the *Rule 9019 Motion* shall be, and the same hereby is, **GRANTED**; and it is further

**ORDERED**, that the compromise and settlement set forth below, which is described in the *Rule 9019 Motion* and which was clarified and affirmed by the Trustee and the King Parties at the evidentiary hearing on June 30, 2025 and July 1, 2025, shall be, and the same hereby is, **APPROVED**:

    (1)    The King Parties shall pay to the Trustee, for the benefit of the Estate, the sum of $150,000.00 (the "Settlement Payment") which shall be accepted by the Trustee as full consideration for: (i) the transfer by the Trustee to the King Parties of all of the right, title and interest of the Trustee, the Debtor and the bankruptcy estate in and to any and all membership interest in or property of **6789 Goldsboro LLC**; and (ii) settlement of all claims asserted by the King Parties in the above-captioned adversary case;

    (2)  Upon successful negotiation of the Settlement Payment by the Trustee, the parties shall file a Stipulation of Dismissal with prejudice all claims asserted in the above-captioned adversary case;

    (3) The King Parties shall reimburse the Trustee for all reasonable and necessary legal fees and expenses that the Trustee incurs in connection with the litigation of any appeals, and any motions for reconsideration or motions to alter/amend judgment, taken by any party with respect to this *Order*; and

(4)     Proofs of Claim Nos. 21-1, 22-1, and 23-1 filed by the King Parties in

Case No. 15-26033 shall be deemed withdrawn by the King Parties effective as of the

date that this *Order* becomes final and non-appealable.

## END OF ORDER

cc:     Roger Schlossberg, Esq.
        Frank J. Mastro, Esq.
        Maurice B. VerStandig, Esq.
        Gregory B. Myers, Debtor
        United States Trustee
        All persons requesting notice

# APPENDIX G — Pending Third-Party Complaint and Post-Order Dismissals

**APPENDIX G-1** Debtor's Third-Party Complaint and Jury
Demand
*(Unresolved claims defeating finality — Argument IV)*

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### (Greenbelt Division)

In re:

GREGORY B. MYERS,

       Debtor.

_____/

Case No.  15-26033-MCR
(Chapter 7)

BRIAN KING, *et al.*,

       Plaintiffs,

    v.

ROGER SCHLOSSBERG, Trustee,

       Defendant.

_____/

Adv. No. 24-00007

GREGORY MYERS

       Third-Party Plaintiff,

    v.

JUDGE MARIA ELENA CHAVEZ-RUARK,
in her official capacity

       Third-Party Defendant,

   and

6789 GOLDSBORO LLC

       Third-Party Defendant,

   and

MAURICE B. VERSTANDIG

1

Third-Party Defendant,

THE VERSTANDIG LAW FIRM, LLC

Third-Party Defendant,

and

FRANK MASTRO

Third-Party Defendant,

and

SCHLOSSBERG & ASSOCIATES, P.A.

Third-Party Defendant,
_____/

## THIRD PARTY COMPLAINT AND DEMAND FOR TRIAL BY JURY

Comes now GREGORY B. MYERS ("Myers" or "Debtor" or "Third Party Plaintiff"), and

pursuant to 11 U.S.C. § 1109(b)[1] and Federal Rule of Civil Procedure 14 made applicable to

adversary proceedings pursuant to Bankruptcy Rule 7014, brings this Third Party Complaint and

Demand for Trial by Jury (the "Third Party Complaint") against JUDGE MARIA ELENA

CHAVEZ-RUARK, in her official capacity ("Ruark"), 6789 GOLDSBORO LLC ("Goldsboro"),

MAURICE B. VERSTANDIG ("VerStandig"), THE VERSTANDIG LAW FIRM, LLC ("MBV

Law"), FRANK MASTRO ("Mastro"), and SCHLOSSBERG & ASSOCIATES, P.A.

("Schlossberg Law") (with Ruark, Goldsboro, VerStandig, MBV Law, Mastro, and Schlossberg

Law being collectively known as the " Third-Party Defendants" and each sometimes being known

---

[1] 11 U.S.C. § 1109(b) provides: "A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b).

2

as a " Third-Party Defendant"), and does allege as follows:

## INTRODUCTION

1.      It is well established that "[c]ourts of equity can no more disregard statutory and constitutional requirements and provisions than can courts of law." *Hedges* v. *Dixon County,* 150 U. S. 182, 192 (1893). "A Court of equity cannot, by avowing that there is a right but no remedy known to the law, create a remedy in violation of law . . . ." *Rees* v. *Watertown,* 19 Wall. 107, 122 (1874). See also, *e. g., Thompson* v. *Allen County,* 115 U. S. 550, 555 (1885); 1 J. Story, Equity Jurisprudence § 19 (W. Lyon ed. 1918). See also *INS v. Pangilinan,* 486 U.S. 875, 883, 108 S.Ct. 2210, 2216, 100 L.Ed.2d 882 (1988) (quoting *Hedges v. Dixon County,* 150 U.S. 182, 192, 14 S.Ct. 71, 74, 37 L.Ed. 1044 (1893)); *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206, 108 S.Ct. 963, 969, 99 L.Ed.2d 169 (1988) ("[W]hatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code.").

2.      Furthermore, "judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity." *Pulliam v. Allen*, 466 U.S. 522, 541-42 (1984)); *see also Whole Woman's Health v. Jackson*, 595 U.S. 30, 42 (2021) (noting that in *Pulliam*, "the plaintiff sought an injunction only to prevent the judge from enforcing a rule of her own creation").

3.      Former U.S. Attorney General John Ashcroft's remarks summarize the bankruptcy court corruption taking place in Adversary Proceeding No. 24-00007 (the "Adversary"):

> Bankruptcy court corruption is not just a matter of bankruptcy trustees in collusion with corrupt bankruptcy judges. The corruption is supported, and justice hindered by high-ranking officials in the United States Trustee Program. The corruption has advanced to punishing any and all who mention the criminal acts of trustees and organized crime operating through the United States Bankruptcy Courts. As though greed is not enough, the trustees, in collusion with others, intentionally go forth to destroy lives. Exemptions provided by law are denied debtors. Cases are intentionally and unreasonably kept open for years. Parties in cases are sanctioned to discourage

3

them from pursuing justice. Contempt of court powers are misused to coerce litigants into agreeing with extortion demands. This does not ensure integrity and restore public confidence.

## PARTIES

4.     Myers is a natural person who is a citizen of the state of Florida.

5.     Ruark is a bankruptcy judge of the United States Bankruptcy Court for the District of Maryland and is being sued in her official capacity.

6.     Goldsboro is a Maryland LLC formed pursuant to the laws of the State of Maryland, with its principal place of business in the State of Maryland.

7.     VerStandig is, upon information and belief, a citizen of Nevada and the owner of MBV Law.

8.     MBV Law is, upon information and belief, a Maryland LLC formed pursuant to the laws of the State of Maryland, with its principal place of business in Maryland.

9.     Mastro is, upon information and belief, a citizen of Maryland and and owner of Schlossberg Law.

10.     Schlossberg Law is a partnership operating and organized under the laws of Maryland.

## FACTS

11.     On November 18, 2015, Myers filed a voluntary petition for bankruptcy relief under the reorganization provisions of Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the District of Maryland (the "Bankruptcy Court"), Case 15-26033 (the "Myers Bankruptcy Case").

4

12.  On February 22, 2017, the Myers Bankruptcy Case was converted from a case under chapter 11 to a case under chapter 7 and Schlossberg was appointed as chapter 7 trustee of the bankruptcy estate of Gregory B. Myers (the "Chapter 7 Trustee").

13.  On November 13, 2019, Maurice VerStandig, in his personal capacity, filed a Notice of Removal in this Court—removing State Court Case Nos. 436977-V and 451611-V (collectively, the "State Court Case") from the Circuit Court for Montgomery County, Maryland to the United States Bankruptcy Court for the District of Maryland, thereby initiating Adversary Proceeding 19-00427 (Adv. Proc. 19-00427; Doc 1).

14.  On December 5, 2019, the United States Bankruptcy Court for the District of Maryland (Simpson, J) entered an Order remanding the State Court Case back to the Circuit Court for Montgomery County, Maryland (the "Remand Order"), stating:

> ORDERED, that the above-captioned adversary proceeding is remanded to the Circuit Court for Montgomery County, Maryland pursuant to 28 U.S.C. 1452(b).

(Adv. No. 19-00427, Dkt. No. 5).

15. On December 11, 2023, the Bankruptcy Court (Ruark, J) entered an Order approving what the Bankruptcy Court describes as a "Settlement Procedure Motion" which "seeks to *establish a procedural mechanism* for resolving litigation pending in state court among Brian King, Cristina King, and the Cristina and Brian King Children's Trust (collectively, the 'King Parties'), Serv Trust, and the Trustee [Roger Schlossberg] (who was named as a nominal defendant)." The "Settlement Procedure Motion"

16.  On January 10, 2024, Brian King, Cristina King, and Brian King in his capacity as trustee of the Cristina and Brian King Children's Trust (collectively, the "King Parties"), commenced Adversary Proceeding 24-00007 by filing a *Complaint For Declaratory Relief* [Adv.

5

Proc. Dkt. #1] (the "Complaint") against Roger Schlossberg, in his official capacity as Chapter 7

Trustee of Mr. Myers's bankruptcy estate ("Schlossberg" or "Trustee").

17.    On January 10, 2024:

- Brian King filed a Proof of Claim (Claim 21-1) in the amount of Zero Dollars and No Cents ($0.00) with "the basis of the claim" identified as "Equitable and statutory claim, as set forth in Case No. 24-00007"
- Cristina King filed a Proof of Claim (Claim 22-1) in the amount of Zero Dollars and No Cents ($0.00) with "the basis of the claim" identified as "Equitable and statutory claim, as set forth in Case No. 24-00007"
- Cristina and Brian King Children's Trust filed a Proof of Claim (Claim 23-1) in the amount of Zero Dollars and No Cents ($0.00) with "the basis of the claim" identified as "Equitable and statutory claim, as set forth in Case No. 24-00007"

18.    On June 25, 2025, Mr. Myers filed a Notice of Appeal (Doc xx), appealing to the

to the United States District Court for the District of Maryland from the following orders entered

in Case No. 15-26033-MCR by the United States Bankruptcy Court for the District of Maryland

(Ruark, J):

- Order Denying Debtor's Motion To Strike Trustee's Motion For Approval Of Proposed Compromise And Settlement With Brian King, Cristina King, And The Cristina And Brian King Children's Trust (Doc. 1028)
- Order Granting Motion For Approval Of Proposed Compromise And Settlement With Brian King, Cristina King, And The Cristina And Brian King Children's Trust (Doc. 1029).

The referenced appeal was docketed in the United States District Court for the District of

Maryland as Case 8:25-cv-02042-TDC.

19.    On June 25, 2025, Mr. Myers filed a Notice of Appeal (Doc xx), appealing to the

to the United States District Court for the District of Maryland from the following orders,

memorandums, notices, and rulings entered in Adversary Case No. 24-00007 by the United States

Bankruptcy Court for the District of Maryland (Ruark, J):

6

- Order Granting Stipulation And Motion To Extend Time (Adv. No. 24-00007; Doc. 7).
- Scheduling Order (Adv. No. 24-00007; Doc. 15).
- Memorandum To Parties (Adv. No. 24-00007; Doc. 27).
- Notice Of Evidentiary Hearing (Adv. No. 24-00007; Doc. 29).
- Order Dissolving Show Cause Order After Response (Adv. No. 24-00007; Doc. 32).
- Notice Of Evidentiary Hearing (Adv. No. 24-00007; Doc. 33).

The referenced appeal was docketed in the United States District Court for the District of Maryland as Case 8:25-cv-02103-TDC.

20.     On June 30, 2025, in Adversary Proceeding 24-00007, Myers filed *Motion to Disqualify Judge Maria Elen Chavez-Ruark* (Case 24-00007; Doc 47) (the "Motion to Disqualify"). Judge Ruark refused to consider or rule on the Motion to Disqualify, constituting judicial misconduct and a violation of Myers's procedural due process rights.

21.     On June 30, 2025, the Maryland Bankruptcy Court orally denied Myers's Motion to Intervene in Adversary Proceeding (Case 24-00007; Doc 43).

22.     On June 30, 2025, the Maryland Bankruptcy Court orally denied Myers's *ore tenus* Motion to Stay [Adversary Proceeding 24-00007] Pending Appeal.

## COUNT I
### Constructive Fraud
### (All Third Party Defendants)

23.     Plaintiff incorporates paragraphs 1 through 22 of the Third Party Complaint as though they were fully set forth within this count of the Third Party Complaint.

24.     Third Party Defendants knowingly and purposefully acted outside the scope of their authority in a manner that is contrary to clearly established law where there was sufficient precedent at the time of their unlawful actions to put them on notice that their conduct was constructively fraudulent and constitutionally prohibited.

25.     Third Party Defendants acted in concert and conspired to put in place a fraudulent

7

scheme (i.e., "*establish a procedural mechanism*") to defraud Myers. All Third Party Defendants willfully aided in its execution. See *Etgen v. Washington County Bldg. Loan Ass'n.,* 184 Md. 412, 41 A.2d 290 (1945) ("where two or more persons conspire to carry out a fraud to cheat another, each of them is liable to the defrauded party irrespective of the degree of his activity in the fraudulent transaction or whether he shared in the profits of the scheme. In order to establish liability of a participant in a fraud, it is not necessary to show that he was a party to its contrivance at its inception. If it is shown that he knew of the fraudulent scheme and willfully aided in its execution, he is chargeable with the consequences. All persons who participate in such a transaction are jointly liable for the ensuing injury regardless of the degree of culpability. *Lomita Land W*ater Co. v. Robinson, 154 Cal. 36, 97 P. 10, 14."). Id. at 418.

26.    Third Party Defendants held positions of public trust and owed a duty of good faith and fair dealing to all parties, including Myers.

27.    Third Party Defendants breached their duty to uphold the public's trust intentionally with malice, and/or with reckless disregard for Myers's rights by willfully and intentionally participating in a fraudulent scheme to convert non-estate property without legal authority or justification.

28.    Third Party Defendants breached their fiduciary duty to Myers intentionally with malice, and/or with reckless disregard for Myers's rights by willfully and intentionally participating in a fraudulent scheme to convert non-estate property without legal authority or justification.

29.    Third Party Defendants actions were taken with support and cooperation of all Third Party Defendants, despite actual knowledge of all relevant law and facts.

30.    As a result of the Third Party Defendants breach of their legal, public, and fiduciary 

8

duties, Myers has suffered material harm and material damages, and will continue to incur material

harm and material damages due to ~~loss of the Escrow Funds~~ the Third Party Defendants' Fraudulent scheme aforesaid.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter a judgment against Third

Party Defendants, jointly and severally, for actual damages in an amount not less than Ten Million

Dollars ($10,000,000.00), award Third Party Plaintiff his attorneys' fees and suit costs incurred in

connection with the prosecution of this matter and award any other relief it deems just and proper.

## DEMAND FOR JURY TRIAL

Third Party Plaintiff demands to exercise his right to a trial by jury on all claims or issues

so triable.

Dated: July 2, 2025

Respectfully submitted,

Gregory B. Myers, pro se
700 Gulf Shore Blvd. N.
Naples, Florida 34102
(301) 325-2312
*gregbmyers@verizon.net*

9

I HEREBY CERTIFY that on July 2, 2025, a copy of the foregoing was furnished to the

following parties:

Judge Maria Elena Chavez-Ruark
6500 Cherrywood Lane
Greenbelt, Maryland 20770

Roger Schlossberg
Frank J. Mastro
P.O. Box 2017
Hagerstown, MD 21742-2017

Maurice B. VerStandig, Esq.
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy., Suite 665
Henderson, NV 89012

Gregory B. Myers, *pro se*

**APPENDIX G-2** Debtor's Motion for Summary Judgment
(Count I of TPC)
*(Active merits litigation at time of "final" order — Argument IV)*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Greenbelt Division)**

In re:

GREGORY B. MYERS,

   Debtor.
_____/

BRIAN KING, *et al.*,

   Plaintiffs,

  v.

ROGER SCHLOSSBERG, Trustee,

   Defendant.
_____/

GREGORY MYERS

   Third-Party Plaintiff,

v.

JUDGE MARIA ELENA CHAVEZ-RUARK,
in her official capacity; 6789 GOLDSBORO LLC;
MAURICE VERSTANDIG; THE VERSTANDIG
LAW FIRM, LLC; FRANK MASTRO; and
SCHLOSSBERG & ASSOCIATES, P.A.

   Third-Party Defendants.
_____/

Case No.  15-26033-MCR
(Chapter 7)

Adv. No. 24-00007

## MOTION FOR FINAL SUMMARY JUDGMENT AS TO COUNT I OF
## THIRD PARTY COMPLAINT AND DEMAND FOR TRIAL BY JURY

Comes now GREGORY B. MYERS ("Mr. Myers" or "Debtor" or "Third Party Plaintiff"),

and hereby moves this Court pursuant to Fed. R. Civ. P. 56 made applicable to adversary

1

13

proceedings pursuant to Federal Rule of Bankruptcy Procedure 7056, for entry of final summary judgment against Third-Party Defendants JUDGE MARIA ELENA CHAVEZ-RUARK, in her official capacity ("Ruark"), 6789 GOLDSBORO LLC ("Goldsboro"), MAURICE B. VERSTANDIG ("VerStandig"), THE VERSTANDIG LAW FIRM, LLC ("MBV Law"), FRANK MASTRO ("Mastro"), and SCHLOSSBERG & ASSOCIATES, P.A. ("Schlossberg Law") (collectively, the "Third Party Defendants" or (TPDs") as to Count I—Constructive Fraud in the *Third Party Complaint And Demand For Trial By Jury* (Doc. 43-1) (the "Third Party Complaint"), and as grounds therefore asserts the following:

## STATEMENT OF UNDISPUTED FACTS

Mr. Myers hereby adopts and incorporates as if fully set forth herein the undisputed facts and arguments set forth in the EMERGENCY MOTION FOR STAY PENDING APPEAL together with any exhibits (Doc 75).

Mr. Myers hereby adopts and incorporates as if fully set forth herein the undisputed facts and arguments set forth in the DEBTOR"S MOTION TO DISQUALIFY COUNSEL together with any exhibits (Doc 49).

## MEMORANDUM OF LAW

### I. Summary Judgment Standard

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56.

"As a general rule, the court may consider on a Rule 56 summary judgment motion any material that would be admissible or usable at trial." *Prop. Mgmt. & Invest., Inc. v. Lewis*, 752

F.2d 599, 604 n.4 (11th Cir. 1985). Moreover, because the attached exhibits include statements made by the Third Party Defendants or their agents, they would be admissible as non-hearsay under Fed. R. Evid. 801(d).

Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and must be liberally construed by this Court. *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006) ("pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys" and must be "liberally construed.").

## II. Argument

"[W]here two or more persons conspire to carry out a fraud to cheat another, each of them is liable to the defrauded party irrespective of the degree of his activity in the fraudulent transaction or whether he shared in the profits of the scheme. In order to establish liability of a participant in a fraud, it is not necessary to show that he was a party to its contrivance at its inception. If it is shown that he knew of the fraudulent scheme and willfully aided in its execution, he is chargeable with the consequences. All persons who participate in such a transaction are jointly liable for the ensuing injury regardless of the degree of culpability." *Ergen v. Washington County Bldg. Loan Ass'n*, 184 Md. 412, 41 A.2d 290 (1945) (internal citations omitted).

In the context of bankruptcy proceedings, specifically concerning settlements approved under Rule 9019, a claim of constructive fraud can be asserted to challenge a transfer of assets made by the debtor's bankruptcy estate. Unlike actual fraud, constructive fraud does not require proof of intent to deceive. Furthermore, the misrepresentation supporting constructive fraud can be an omission of material information when the omitting party breaches a duty to disclose that information. Here, the *proposed* "settlement" is illegal, the product of collusion, and against the public interest. *United States v. Colorado*, 937 F.2d 505, 509 (10th Cir.1991).

3

On February 10, 2017, 6789 Goldsboro LLC ("Goldsboro") filed a response in Debtor's administrative case admitting, "Serv Trust...is a fifty percent owner of Goldsboro, a Maryland limited liability company."

On December 19, 2017, during a hearing in the Debtor's administrative case [Case 15-26033; Doc 701], the Chapter 7 Trustee admitted that Myers does not own Serv Trust:

> THE COURT: All right, well, this is, though, an account of Serv Trust, right?
> MR. SWEENEY: Correct.
> THE COURT: Okay.
> MR. SWEENEY: That's correct.
> THE COURT: **Not his account?**
> MR. SWEENEY: **That is correct.**
> THE COURT: **All right. *** This is his kids' trust.**

On December 18, 2018, in the State Action, The Honorable Anne K. Albright (now sitting on the Appellate Court of Maryland), found that Brian King as the Managing Member of 6789 Goldsboro LLC breached his fiduciary duty to Serv Trust "in order to benefit himself and the other class A members," and concluded that Mr. King's actions **"would amount to constructive fraud."**

On January 10, 2019, Serv Trust filed its *Second Amended Counterclaim and Demand for Jury Trial* against the King Parties, and on January 28, 2019, the King Parties filed a *Motion to Dismiss the Second Amended Counterclaim*, which the State Court denied on April 19, 2019. The King Parties's answer was therefore due 15 days from that date (i.e., by May 4, 2019) per Md. Rule 2-321(c). The King Parties, however, *never filed an answer* to the Second Amended Counterclaim. Accordingly, **the facts asserted** in Serv Trust's *Second Amended Counterclaim and Demand for Jury Trial* are now **deemed admitted**. *See Vanhook v. Merchants Mut. Ins. Co.*, 22 Md. App. 22, 27 (1974).

On May 12, 2021, the King Parties filed a Proof of Claim (Claim 3) in Mr. Myers's Florida Bankruptcy Case (Case No. 2:21-bk-00123) **predicated upon the State Action**. Mr. Myers filed

4

an objection. and on June 29, 2021, the Florida Bankruptcy Court (Delano, J) entered an *Order*

*Sustaining Debtor's [Myers's] Objection to Proof of Claim 3 Filed by Brian King & Cristina King*

*[Doc. No. 84]* [Case 2:21-bk-00123-FMD; Doc. 108], stating:

> 1. The Objection to Proof of Claim 3 filed is **SUSTAINED**.
> 2. The claim of Brian King & Cristina King is disallowed in its entirety.

On June 30, 2025, the Chapter 7 Trustee testified under oath as follows:

> SCHLOSSBERG: Your Honor, I never requested Mr. VerStandig at any time to do anything for me in any fashion. *** He is not my attorney.

(Emphasis added). However, at a hearing on September 23, 2019 in the State Action, counsel for

the King Parties (Maurice B. VerStandig, Esq.) told Judge Dwyer "**the trustee has asked us to**

**pursue such matters [alter ego claims] in this case**," as follows:

> THE COURT: So I guess I just -- a lot of what you say make sense. But how do I -- how do I not take into consider what Mr. Andres argued, because the alter ego claims -- and I think the case law on this is really clear. So tell me what I'm missing. Alter ego claims belong to the trustee.
>
> MR. VERSTANDIG: **Yes. The trustee has asked us to pursue such matters in this case** and the bankruptcy court has been very clear in suggesting through its order of extension that the State court litigation was ongoing and judicial economy favors a resolution as part of this case.

A copy of the September 23, 2019, hearing transcript in the State Action is in the record of this

case.

On June 30, 2025, the Chapter 7 Trustee testified under oath as follows:

> SCHLOSSBERG: I cannot enter into an agreement binding non-estate property.

**There is no final judgment in the State Action**. This Court's attempt to characterize the

January 12, 2023 non-final order entered by the State Court is wholly unsound. First, it is of no

moment that the King Parties' counsel (VerStanding), in a failed effort to manufacture some *illusion* of finality, prepared the non-final order and *designated* it a "non-final *judgment*" is irrelevant. As Md Rule 2-602(a) clearly states, "an order or other form of decision, ***however designated***, ..." Moreover, the State Court's January 12, 203, interlocutory order is not an order "for the payment of money." See *Anthony Plumbing of Maryland, Inc. et al. v. Attorney General of Maryland et al.*, 298 Md. 11 (1983). "The characteristics of a traditional equity order for the payment of money differ markedly from those of a typical judgment at law for the payment of money. The latter type of judgment 'does not purport to order anyone to do anything.'" *Della Ratta v. Dixon,* 422 A.2d 409,47 Md.App. 270 (1980). And, relevant here, it is "**not immediately enforceable**." *id.* at 286, 422 A.2d 409. Accordingly, this Court does not have jurisdiction over the King Parties' claims which involves property titled in the name of a non-debtor (i.e. Serv Trust), so this Court would thus not have subject matter jurisdiction over any issue with regard to that property. Nor could Serv Trust's property be brought into Myers's bankruptcy estate via a claim by the Chapter 7 Trustee because the period of limitations to do that has expired. See 11 U.S.C. § 546. See also *Maiz v. Virani*, 311 F.3d 334 (5th Cir. 2002) (turnover proceeding may not be used to adjudicate whether a corporation is an individual judgment debtor's alter ego).

The King Parties lack statutory authority to file the Adversary Complaint. *Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 572 U.S. 118, 125 (2014), and the Chapter 7 Trustee has conceded that he is barred under Bankruptcy Rule 9027(a)(3) from removing the State Action to this Court, citing Bankruptcy Rule 9027 and *Roberts v. Creighton,* 2009 WL 7083320 (D. Md. Feb. 27, 2009). Notwithstanding that jurisdictional bar, the Chapter 7 Trustee and the King Parties (VerStandig) have conspired, with the Court's help, "to establish a ***procedural mechanism*** for resolving litigation pending in state court among [the King Parties], Serv Trust, and the Trustee

6

(who was named as a nominal defendant)" — i.e., a faux removal to *force* their way back into this Court (Judge Shopping) so that Judge Ruark can turn a blind-eye and "rubber stamp" their fraudulent Settlement Motion.

The record reflects that the King Parties, Goldsboro, and the Chapter 7 Trustee represented to the Appellate Court of Maryland (ACM) that "[t]he order from which appellants appealed did not adjudicate or complete the adjudication of any claim in this matter." Furthermore, as Judge Lease said, Maryland adheres to the *Frow Doctrine. See Curry v. Hillcrest Clinic, Inc.*, 337 Md. 412, 428-33 (1995) discussing *Frow v. De La Vega*, 82 U.S. (15 Wall.) 552, 21 L.Ed. 60 (1872)( "But a final decree on the merits against the defaulting defendant alone, pending the continuance of the cause, would be incongruous and illegal."). "If the court in such a case as this can lawfully make a final decree against one defendant separately, on the merits, while the cause was proceeding undetermined against the others, then this absurdity might follow: there might be one decree of the court sustaining the charge of joint fraud committed by the defendants; and another decree disaffirming the said charge, and declaring it to be entirely unfounded, and dismissing the complainant's bill. And such an incongruity, it seems, did actually occur in this case. Such a state of things is unseemly and absurd, as well as unauthorized by law." *Id.* See also *Republic of Philippines v. Pimentel*, 553 U.S. 851, 871 (2008) (recognizing that the non-joined parties "would not be bound by the judgment in an action where they were not parties").

A declaratory judgment in a bankruptcy adversary proceeding must be rooted in the specific legal framework of the Bankruptcy Code itself (i.e., it must be tied to a substantive provision of the Bankruptcy Code). Pursuant to the Declaratory Judgment Act of 1934, the Court is authorized to "declare the rights and other legal relations of any interested party seeking such declaration" when there is a "case of actual controversy." 28 U.S.C. § 2201(a). Congress also

7

delegated to the Supreme Court the power to make rules of practice and procedure that govern bankruptcy proceedings. 28 U.S.C. § 2075. Such rules, though, can't "abridge, enlarge, or modify any substantive right." Id. Here, the Adversary Complaint is premature (i.e., *not* ripe) because it requires the assumption of future, hypothetical events that have yet to occur (i.e., a final judgment being entered in the State Action). *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 561 (3d Cir. 2002) ("In cases where a plaintiff seeks . . . declaratory relief . . . standing will not lie if adjudication . . . rests upon contingent future events that may not occur as anticipated or indeed may not occur at all."). Because the Adversary Complaint does not allege an actual "case of actual controversy," the Adversary Complaint must be dismissed for lack of jurisdiction.

The Chapter 7 Trustee's proposed "settlement" with the King Parties constitutes fraud. The Chapter 7 Trustee is *purportedly* agreeing to transfer Serv Trust's interest in Goldsboro (i.e., *non-estate property*) in exchange for a $150,000 payment to the Chapter 7 Trustee and, therefore, a violation of the Chapter 7 Trustee's fiduciary duty to administer the bankruptcy estate in a lawful manner. See *In re Anderson*, 377 B.R. 865 (2007). Here, the Chapter 7 Trustee **failed to submit a copy of the actual signed settlement agreement** to the Court and all parties in interest. This Court cannot "rubber stamp" a trustee's proposal. Rather as mandated by the Supreme Court in T.M.T, a Court must be apprised of the "acts necessary for an intelligent and objective opinion, the probabilities of ultimate success should the claim be litigated'" The purpose of Rule 9019 is to prevent "concealed agreements which are unknown to the creditors and unevaluated by the court." *United Shipping Co.*, 1989 WL 12723 at *5 (Rule 9019's purpose "is to protect other creditors against bad deals made between one creditor and the debtor."). This requires the Court to have access to all facts necessary for an intelligent and objective opinion. The Court cannot make an informed decision about the fairness and equitability of the settlement, i.e., a determination that a

proposed settlement is fair to the debtor's estate and the paramount interest of creditors, without the Court having first reviewed a copy of the actual signed settlement agreement. Therefore, although Rule 9019 doesn't explicitly mention signed settlement agreements, the practical requirements of seeking and obtaining court approval make providing a copy of the agreement to the court and interested parties a standard and necessary step. All parties in interest need to review the the signed settlement agreement itself to determine if they are prejudiced. This assessment requires the Court reviewing the signed settlement agreement itself. This enables the court to fulfill its duty of ensuring the fairness and equity of the settlement. In essence, the court cannot approve a settlement agreement it hasn't seen. The court needs to examine the details of the agreement to ensure it is fair and equitable to all parties involved, including creditors Without the actual settlement agreement, the court lacks the necessary information to make a determination regarding the fairness and appropriateness of the compromise. *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 4 1 4, 424 (1968). *See* Fed. R. Bankr. P. 90 1 9(a); 11 U.S.C. § 102(a) (defining "notice and a hearing"); Fed. R. Bank. P. 2002(a)(3) (requiring 21 days' notice for hearing to approve settlement). Here, the Chapter 7 Trustee's settlement **motion** contains three terms; however, the Settlement Order provides for a **fourth term** which was not part of the settlement motion.

The King Parties have filed **sham or fraudulent proofs of claim** against the estate in an attempt to manufacture standing where none exists. If an objection has been filed against the claim, the creditor cannot withdraw the claim as of right. Instead, they must file a motion to withdraw the claim and seek an order from the court after a hearing where they have provided notice of the hearing to the trustee and all creditors and parties in interest. If a creditor attempts to withdraw their claim after an objection has been filed without obtaining the necessary court order, the

9

debtor's objection to the claim must be sustained. This is because, under the rules, the attempted withdrawal would be **invalid**, leaving the objection unresolved and necessitating a ruling from the court. The King Parties cannot withdraw their claims in a strategic attempt to avoid an adverse ruling(s) or impact the bankruptcy process in an unfair way. See *Bath Iron Works Corp. v. Congoleum Corp. (In re Congoleum Corp.)*, 2021 Bankr. LEXIS 10, 2021 WL 28396 (Bankr. D.N.J. Jan. 4, 2021), where the Bankruptcy Court for the District of New Jersey denied a motion by Congoleum Corporation (the "Debtor") for approval pursuant to Bankruptcy Rule 9019 of a settlement agreement, (the "Settlement") between the Debtor and Bath Iron Works Corporation ("BIW"). The Court declined to approve the Settlement, which was conditioned on the Court making findings that could impact litigation in another court, because the Court was unwilling to make all the requested findings. However, instead of explaining why it was denying approval of the Settlement or issuing partial findings, the Court denied the motion in its entirety, because to do otherwise while related pending litigation existed would, in the Court's view, amount to little more than an inappropriate advisory opinion.

A bankruptcy court cannot approve a trustee's transfer of property that is not part of the bankruptcy estate as part of a settlement under Rule 9019 of the Federal Rules of Bankruptcy Procedure. **Non-Estate Property Not Subject to Trustee's Transfer Powers**: Property that falls outside the definition of the bankruptcy estate is generally not under the control of the trustee and therefore not subject to their power to transfer or liquidate. Moreover, there is **No Basis for Court Approval**: If the property isn't part of the estate, the bankruptcy court lacks the statutory authority to approve its transfer within the context of a Rule 9019 settlement.

"In evaluating a settlement, '[t]he court may give weight to the trustee's opinion that the settlement is fair and equitable,' but may not simply adopt the [t]rustee's position without making

its own independent inquiry." *In re Soup Kitchen Int'l Inc.*, 506 B.R. 29, 37 (Bankr. E.D.N.Y. 2014) (quoting *In re Copperfield Invs., LLC*, 401 B.R. 87, 92 (Bankr. E.D.N.Y. 2009)); see also *In re Rosenberg*, 419 B.R. 532, 536 (Bankr. E.D.N.Y. 2009) ("A court may not simply defer to a [trustee's] judgment, but must independently evaluate the reasonableness of the settlement.")

It is axiomatic that, to approve a settlement, the terms of the settlement must be lawful. See *Arrowsmith v. Mallory (In re Health Diagnostic Lab'y, Inc.)*, 588 B.R. 154, 162 (Bankr. E.D. Va. 2018) (stating that "courts will not approve settlement agreements that are 'illegal, a product of collusion, or against the public interest'" (quoting *United States v. North Carolina*, 180 F.3d 574, 581 (4th Cir. 1999))); *In re Christensen*, 561 B.R. 195, 215 (Bankr. D. Utah 2016) ("[S]tipulations cannot be approved if they violate the law."), *aff'd sub nom. In re Bird*, 577 B.R. 365 (B.A.P. 10th Cir. 2017); *In re Telcar Grp., Inc.*, 363 B.R. 345, 357 (Bankr. E.D.N.Y. 2007) ("To the extent a proposed settlement includes provisions, the enforcement of which would be illegal or against public policy, it matters not whether the settlement is in the best interests of the estate."). Rather, before entering a consent decree the court must satisfy itself that the agreement "is fair, adequate, and reasonable" and "is not illegal, a product of collusion, or against the public interest." *United States v. Colorado*, 937 F.2d 505, 509 (10th Cir.1991). Because the issuance of a consent decree places the power of the court behind the compromise struck by the parties, the district court must ensure that the agreement is not illegal, a product of collusion, or against the public interest.

Additionally, the Settlement Motion purports to decide rights and to distribute property owned by a non-debtor, non-party (i.e., Serv Trust). The Bankruptcy Code does not authorize a bankruptcy court to eliminate rights with respect to a non-debtor's interest in property. Nor does it authorize a trustee to compromise someone else's claims. The Court did not decide those rights,

11

but approved a settlement by a Chapter 7 Trustee who has no duty or authority to bind the non-debtor, non-party (i.e., Serv Trust).

### III. Conclusion

WHEREFORE, because no genuine issue of material fact exists and Mr. Myers is entitled to judgment as a matter of law, the Court should enter final summary judgment in favor of Mr. Myers and against all Third Party Defendants, jointly and severally, as to Count I—Constructive Fraud in the *Third Party Complaint And Demand For Trial By Jury* (Doc. 43-1) for the relief requested therein. In making this demand, Mr. Myers does not waive any of his rights.

RESPECTFULLY SUBMITTED on July 17, 2025.


Gregory B. Myers, pro se
700 Gulf Shore Blvd. N.
Naples, Florida 34102
(301) 325-2312
*greghmyers@verizon.net*

12

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 17, 2025, a copy of the foregoing was furnished to the

following parties:

Judge Maria Elena Chavez-Ruark
6500 Cherrywood Lane
Greenbelt, Maryland 20770

Roger Schlossberg
Frank J. Mastro
P.O. Box 2017
Hagerstown, MD 21742-2017

Maurice B. VerStandig, Esq.
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy., Suite 665
Henderson, NV 89012

Gregory B. Myers, *pro se*

13

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MARYLAND
#### (Greenbelt Division)

In re:

GREGORY B. MYERS,

     Debtor.

_____/

BRIAN KING, *et al.*,

     Plaintiffs,

    v.

ROGER SCHLOSSBERG, Trustee,

     Defendant.

_____/

GREGORY MYERS

     Third-Party Plaintiff,

    v.

Case No. 15-26033-MCR
(Chapter 7)

Adv. No. 24-00007

1

JUDGE MARIA ELENA CHAVEZ-RUARK,
in her official capacity; 6789 GOLDSBORO LLC;
MAURICE VERSTANDIG; THE VERSTANDIG
LAW FIRM, LLC; FRANK MASTRO; and
SCHLOSSBERG & ASSOCIATES, P.A.

Third-Party Defendants.

## ORDER GRANTING MOTION FOR FINAL SUMMARY JUDGMENT AS TO COUNT I OF THIRD PARTY COMPLAINT AND DEMAND FOR TRIAL BY JURY

Upon consideration of the *Third Party Plaintiff's Motion For Final Summary Judgment As To Count I Of Third Party Complaint And Demand For Trial By Jury* (the "Motion"); any opposition thereto, the record herein, and applicable law, it is, by the United States Bankruptcy Court for the District of Maryland, hereby:

**ORDERED**, that the Motion be, and hereby is, **GRANTED**

Copies:

Judge Maria Elena Chavez-Ruark
6500 Cherrywood Lane
Greenbelt, Maryland 20770

Frank J. Mastro, Esq.
Schlossberg Mastro
P.O. Box 2067
Hagerstown, Maryland 21742
Email: fmastro@schlosslaw.com

2

Maurice B. VerStandig, Esq.
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy, #665
Henderson, Nevada 89012
Email: mac@mbvesq.com

Gregory Myers
700 Gulf Shore Blvd. N
Naples, Florida 34102
Email: gregbmyers@verizon.net

**APPENDIX G-3** Joint Notice of Dismissal With Prejudice
(Adv. Proc. 24-00007, 8/5/2025)
*(Improper attempt to manufacture finality — Argument IV;
Kiviti v. Bhatt)*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### (Greenbelt Division)

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| GREGORY B. MYERS, | ) | Case No. 15-26033-MCR |
| | ) | |
| Debtor, | ) | |
| | ) | |
| ———————————————— | ) | |
| | ) | |
| BRIAN KING, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Adversary Case No. 24-00007-MCR |
| v. | ) | |
| | ) | |
| ROGER SCHLOSSBERG, in His | ) | |
| Official Capacity as Chapter 7 Trustee | ) | |
| of the Bankruptcy Estate of Gregory B. | ) | |
| Myers, | ) | |
| | ) | |
| Defendant. | ) | |
| ———————————————— | ) | |

### NOTICE OF DISMISSAL WITH PREJUDICE

Come now Brian King, Cristina King and the Cristina and Brian King Children's Trust,

alongside Roger Schlossberg in his official capacity as chapter 7 trustee of the bankruptcy estate

of Gregory B. Myers, by and through respective undersigned counsel, pursuant to Federal Rule of

Bankruptcy Procedure 7041 and Federal Rule of Civil Procedure 41(a)(1)(A)(ii), and give notice

of the dismissal of the above-captioned action, *with prejudice*.

*[Signatures on Following Page]*

1

Respectfully submitted,

Dated: August 5, 2025

By: /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. 18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
Facsimile: (301) 576-6885
mac@mbvesq.com
*Counsel for the King Parties*

/s/ Frank J. Mastro (signed w/ express permission)
Frank J. Mastro, Esq.
Bar No. #24679
Schlossberg Mastro
P.O. Box 2067
Hagerstown, MD 21742
(301) 739-8610
fmastro@schlosslaw.com
*Attorneys for Defendant, Roger Schlossberg, Trustee*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 5th day of August, 2025, a copy of the foregoing was served electronically upon filing via the ECF system, with copies to all counsel in this adversary proceeding.

I DO FURTHER CERTIFY that on this 5th day of August, 2025, a copy of the foregoing was served via First Class Mail, postage prepaid, upon:

Gregory Myers
700 Gulf Shore Blvd. N
Naples, Florida 34102
*Debtor*

/s/ Maurice B. VerStandig
Maurice B. VerStandig

2