1                    UNITED STATES BANKRUPTCY COURT
                      FOR THE DISTRICT OF MARYLAND
2                          Greenbelt Division

3    In Re:                    :    Case No. 15-26033

4    GREGORY B. MYERS,         :    Chapter 7

5            Debtor.           :    Greenbelt, Maryland
                                    Tuesday, July 1, 2025
6    : : : : : : : : : : : : : :

7    BRIAN KING, ET AL.        :    Adv. Proc. 24-00007

8          Plaintiffs          :

9            - against -       :

10   ROGER SCHLOSSBERG, TRUSTEE :

11         Defendant.          :

12   : : : : : : : : : : : : : : :

13

14                    TRANSCRIPT OF HEARING ON
                          RE: 24-00007
15   17 APPLICATION TO COMPROMISE CONTROVERSY FILED BY DEFENDANT
                          ROGER SCHLOSSBERG;
16          19 OBJECTION FILED BY DEBTOR GREGORY B. MYERS;
     20 MOTION FOR MISCELLANEOUS RELIEF FILED BY DEFENDANT ROGER
17                          SCHLOSSBERG;
         22 SUPPORT DOCUMENT FILED BY DEBTOR GREGORY B. MYERS;
18         23 RESPONSE FILED BY DEBTOR GREGORY B. MYERS;
          24 RESPONSE FILED BY DEFENDANT ROGER SCHLOSSBERG
19
                          RE: 15-26033
20   1051 OBJECTION TO CLAIM FILED BY DEBTOR GREGORY B. MYERS;
     1052 OBJECTION TO CLAIM FILED BY DEBTOR GREGORY B. MYERS;
21   1053 OBJECTION TO CLAIM FILED BY DEBTOR GREGORY B. MYERS;
        1060 OPPOSITION FILED BY INTERESTED PARTY BRIAN KING
22                INTERESTED PARTY CRISTINA KING;
        BEFORE THE HONORABLE MARIA ELLENA CHAVEZ-RUARK
23                UNITED STATES BANKRUPTCY JUDGE

24

25



```
 1   APPEARANCES:

 2   For the Debtor:              Gregory B. Myers, Pro se

 3   For Chapter 7 Trustee        Frank J. Mastro, Esq.
     Roger Schlossberg:           Roger Schlossberg, Esq.
 4                                SCHLOSSBERG & MASTRO
                                  18421 Henson Boulevard
 5                                Suite 201
                                  Hagerstown, MD 21742

 6

 7   For King parties:            Maurice Belmont VerStandig, Esq.
                                  THE VERSTANDIG LAW FIRM, LLC
 8                                9812 Falls Road
                                  #114-160
 9                                Potomac, MD 20854

10

11

12

13

14

15

16

17

18   Audio Operator:             JENNIFER WHITFIELD
                                 301-344-3965
19

20
     Transcript prepared by:     ESCRIBERS
21                               7227 North 16th Street
                                 Suite #207
22                               Phoenix, Arizona 85020
                                 (800)257-0885
23

24   Proceedings recorded by electronic sound recording; transcript
     produced by transcription service.
25
```



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1          Greenbelt, MD - July 1, 2025

2          THE CLERK:  All rise.  Silence, please, and come to

3    order.  The United States Bankruptcy Court for the District of

4    Maryland is now in session, the Honorable Maria Ellena Chavez-

5    Ruark presiding.

6          Please be seated.  Calling the case of Gregory Myers,

7    case number 15-26033.  The matters for consideration for the

8    Court today are docket entry 1051, objection to claim number

9    22, filed by the debtor; docket entry 1052, objection to claim

10   number 23, filed by the debtor; docket entry 1053, objection

11   to claim number 21, filed by the debtor; docket entry 1060,

12   opposition to objections filed on behalf of the King parties.

13         We're also here for the adversary case of King, et

14   al. v. Schlossberg, adversary number 24-00007.  The matters

15   for consideration are docket entry 17, application for

16   compromise controversy, filed on behalf of the defendant;

17   docket entry 19, preliminary objection to trustee's

18   application to compromise controversy, filed by the debtor;

19   docket entry 22, supplemental to the preliminary objection,

20   filed by the debtor; docket entry 20, motion to strike

21   debtor's objection, filed on behalf of the defendant; docket

22   entry 23, response to motion, filed by the debtor; and docket

23   entry 24, response to opposition, filed on behalf of the

24   defendant.

25         Starting with counsel for the plaintiff in the


www.escribers.net | 800-257-0885

1    adversary, please identify yourself and your clients for the

2    record.

3        MR. VERSTANDIG:  Good morning, Your Honor.  Maurice

4    VerStandig, on behalf of Brian King, Cristina King, and the

5    Cristina and Brian King Children's Trust.

6        THE COURT:  Good morning.

7        MR. MASTRO:  Good morning, Your Honor.  Frank Mastro,

8    on behalf of Roger Schlossberg, the Chapter 7 trustee and

9    defendant in the adversary proceeding.

10        THE COURT:  Good morning.

11        MR. SCHLOSSBERG:  Good morning, Your Honor.  Roger

12    Schlossberg, Chapter 7 trustee, counsel to trustee.

13        THE COURT:  Good morning.

14        MR. MYERS:  Good morning, Your Honor.  Greg Myers,

15    sorry for being late.  There was an accident.

16        THE COURT:  Good morning.

17        All right.  So I believe where we left off is that

18    the trustee had completed -- had finished putting on his case.

19        MR. MASTRO:  Correct.

20        THE COURT:  Do you have any other evidence, Mr.

21    Mastro, that you would like to offer?

22        MR. MASTRO:  Not at this time, Your Honor.

23        THE COURT:  All right.  Thank you.

24        Mr. VerStandig, any evidence you want to offer --

25        MR. VERSTANDIG:  Your Honor --



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1          THE COURT:  -- at this time?

2          MR. VERSTANDIG:  -- no, being mindful that my client

3     is not the moving party in the adversary, and is also not the

4     moving party in the case.  But I do not anticipate offering

5     any further evidence.

6          THE COURT:  All right.  Thank you.

7          So Mr. Myers call your first witness.

8          Mr. Myers?

9          MR. MYERS:  I'm coming, please.  One second.

10         I call myself.

11         THE COURT:  All right.  So you're taking a whole

12    handful of stuff up there, which you're welcome to do.  If you

13    refer to any of it, we'll mark it as an exhibit like we did

14    with Mr. Schlossberg.

15         And Mr. Myers, you should see on the witness stand

16    your Exhibits 1 through 6, Debtor's Exhibits 1 through 6 from

17    yesterday.  And we will have the trustee's exhibits and the

18    King party's exhibits available electronically.

19         MR. MYERS:  Yeah.  Thank you.

20         THE COURT:  All right.  Ms. Whitfield will place you

21    under oath.

22    (Witness sworn)

23         THE CLERK:  Please be seated and state your name and

24    address for the record.

25         THE WITNESS:  Gregory B. Myers, 700 Gulf Shore



1    Boulevard N., Naples, Florida, 34102.

2         THE COURT:  All right.  So Mr. Myers, 700 Gulf Shore

3    Boulevard N., Naples, Florida is still your mailing address

4    and your residential address?

5         THE WITNESS:  Yes, it has been for years.

6         THE COURT:  Okay.  All right.  So you do not have

7    counsel.  So I'm just going to let you say what you want to

8    say on the stand.  I want to remind you that witness testimony

9    is for facts, and I'll give you an opportunity to make your

10   closing arguments later.

11   So what would you like to say with regard to the application

12   to approve the settlement and the objections to the three King

13   parties' claims?

14   DIRECT EXAMINATION

15   BY MR. MYERS:

16         THE WITNESS:  Sure.

17         THE COURT:  Okay.  So tell me what you're referring

18   to.

19         THE WITNESS:  So I guess my question to myself is,

20   why can't this settlement be approved?

21         THE COURT:  Okay.  Tell me what you're looking at.

22   Because, as we discussed, if you're going to have anything on

23   the stand with you, we're going to mark it as an exhibit.

24         THE WITNESS:  Okay.  All right.

25         THE COURT:  So you took a whole stack up there.  Are



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1    you going to be referring to all of that or just certain

2    items?

3          THE WITNESS:  Yeah, just certain items, but a lot of

4    it.

5          THE COURT:  Okay.

6          THE WITNESS:  It may not -- you know, some -- most of

7    it's already been in the -- put in the record.

8          THE COURT:  Okay.  And I also want to remind you that

9    I'm going to give you until 1 o'clock  today to put on your

10   case.  So I encourage you to use your time wisely.

11         Do you have copies of those exhibits for everyone

12   else in the courtroom?

13         THE WITNESS:  No, I don't.

14         THE COURT:  Okay.  And did you email them to Mr.

15   Mastro, Mr. Schlossberg, Mr. VerStandig and to the Court by 9

16   p.m. yesterday?

17         THE WITNESS:  Well, a lot of these are already

18   marked.

19         THE COURT:  Did you email an exhibit list and attach

20   the exhibit email as I --

21         THE WITNESS:  I didn't email anything to them.

22         THE COURT:  Let me finish my question, please,

23   because we're recording, and I want to make sure we have a

24   clear transcript.

25         Did you email an exhibit list and your exhibits to



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1    the counsel who are appearing today, and to the Court, as I

2    instructed you to do, by 9 p.m. last night?

3          THE WITNESS:  I did not email anything to them last

4    night.  I am a party-in-interest.  I'm not a party to this

5    case.  They've never joined me as a party in this case.  And

6    so I'm going to be referring to documents that are already in

7    the record.  They're ECF documents, filed in court

8    proceedings, which the Court can take judicial notice of.  I

9    don't need to put them in as exhibits.  I can just ask you to

10   take judicial notice, and you can take judicial notice.

11         THE COURT:  All right.  Well, I'm willing to do that

12   with regard to pleadings that have been filed in the

13   proceedings in your bankruptcy case and this adversary

14   proceeding.  But anything else, I'm not going to, because you

15   have not provided them to everyone in advance to look at, as

16   instructed, both on the Court's website and by an email from

17   this Court a week or two ago, and then, again, as I instructed

18   you yesterday.

19         So I will take judicial notice of pleadings that have

20   been filed in your bankruptcy case, in this Court, and in the

21   adversary proceeding that is before the Court today, but

22   nothing else.  And so you may not refer to any documents, you

23   may not have anything at the witness stand with you other than

24   what is being marked as exhibits and what the Court is taking

25   judicial notice of.  Do you understand?



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1          THE WITNESS:  This is just my testimony, Judge.

2          THE COURT:  Yes, and you are --

3          THE WITNESS:  I don't have to submit exhibits.

4          THE COURT:  You do not have to submit exhibits.  But

5   you are not going to be referring to documents, and you're not

6   going to be offering documents into evidence while you're

7   testifying.  If you wanted to do that, you should have done as

8   I instructed you.  So again --

9          THE WITNESS:  I'm not offering them into evidence.

10          THE COURT:  -- you have until 1 o'clock.  Please do

11   not interrupt me.  You have until 1 o'clock today to put on

12   your case.  And I'm going to give you lots of leeway in how

13   you do that, but you are not going to be referring to

14   documents on the witness stand without us marking them as

15   exhibits.  And I told you, we're not going to mark anything as

16   an exhibit unless you shared it in advance of the hearing,

17   which you did not do.  So if you want to refer to pleadings

18   filed in this bankruptcy case, in this adversary proceeding,

19   I'll allow you to do that.  Okay.  So let's start from there.

20          THE WITNESS:  Well, I believe that's unfair.

21          THE COURT:  And let's --

22          THE WITNESS:  I should be able to refer to pleadings

23   in my Florida bankruptcy case that involves this matter.  And

24   I should be able to refer to pleadings in the Montgomery

25   County Circuit Court case which involved this matter.



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1         THE COURT:  Do you have copies for everyone?

2         THE WITNESS:  Well, if I testify and I just say

3    please take judicial notice, it's my testimony --

4         THE COURT:  Okay.  Well, let's --

5         THE WITNESS:  -- and you can review it.

6         THE COURT:  Let's just start.  Okay?  Instead of

7    wasting valuable time arguing with the Court, let's go right

8    into your testimony.

9         THE WITNESS:  Thank you.

10         THE COURT:  So you're reading something.  Tell me

11    what you're reading from.

12         THE WITNESS:  So as a threshold matter, this is the

13    complaint and demand for a trial by jury that was filed

14    yesterday against you, Judge Ruark, and Mr. Schlossberg, Mr.

15    Mastro, Schlossberg & Associates, and Morris VerStandig.  As a

16    threshold matter, it's my contention that you have a conflict

17    of interest --

18         THE COURT:  Okay.  You're making argument.

19         MR. VERSTANDIG:  Objection, Your Honor.  This is --

20         THE COURT:  I'm giving you an opportunity.  You're

21    making argument.  I'm giving you an opportunity to testify

22    about facts that are relevant to the application to compromise

23    the controversy and the objections to the claims that you

24    filed.  So you can make your argument later.

25         I encourage you, Mr. Myers, to listen to what I'm


www.escribers.net | 800-257-0885

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1    saying because I'm trying to help you here.  This is your

2    opportunity to testify about facts that are relevant to the

3    pleadings before the Court.  If you want to make argument

4    about conflicts and jurisdiction, you'll have an opportunity

5    to do that later.

6            THE WITNESS:  Okay.  Well, I'd just like to comment

7    that yesterday, Mr. Schlossberg  made hours of nonfactual

8    testimony about law, and why he can do this, and why he can't

9    do that, this, that, and the other.  So now I'm -- I'm being

10   held to a different standard.

11           THE COURT:  Okay.  I'll tell you what we're going to

12   do, Mr. Myers.  Mr. Schlossberg had two hours for his direct.

13   I'm actually giving you three for yours, although we're

14   starting late because you arrived late.  I'm giving you until

15   1 o'clock to put on your case, and I'm going to try not to

16   interrupt.  I'm going to ask opposing counsel to try not to

17   interrupt.  Obviously, you need to make objections as you see

18   fit, for purposes of making a record.

19           But if you want to -- I'm going to let you say

20   whatever you want to say, even though I think what you're

21   saying is really argument and you're taking valuable time away

22   from your testimony time.  But I'm going to give you the time

23   to say what you want to say on the stand.  I am going to

24   caution you that what you say on the stand and what you say in

25   argument should not be duplicative.  I'm going to have a time

escribers

www.escribers.net | 800-257-0885

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1  limit on closing arguments as well.  But I am listening.  You

2  have my full attention.  And so I'm going to let you say what

3  you want to say.

4      THE WITNESS:  Thank you, Judge.  So my Chapter 11

5  bankruptcy case was filed on November 18th, 2015.  It was

6  later converted, on February 22, 2017, to a Chapter 7.

7  However, the petition date is the date on which my estate was

8  determined, for all purposes, going forward.  So to the extent

9  anything happened after November 18th, 2015, it would not be

10  property of my estate.  That's my first point.

11      Serv Trust never filed a proof of claim in my

12  bankruptcy case.  So they were never before the Court.  They

13  were served by -- they were sued by Offit Kurman, and that

14  case was resolved.  And in that case, the Chapter 7 trustee

15  took the position that I had no standing because I didn't have

16  any interest in Serv Trust.  So he's judicially estopped from

17  taking a different position, in my opinion.  And the record

18  will show that in that adversary proceeding.

19      Next, I'm referring to Debtor's Exhibit 1, which is

20  Judge Lipp's order in adversary proceeding 17-00193, in this

21  Court, which the Chapter 7 trustee is bound by, this Court is

22  bound by.  And in her order entering judgment, she made the

23  following findings of fact, and she states, "The following

24  facts are relevant to the issues at hand and are either

25  uncontroverted or are supported by evidence in this case.  To

escribers

www.escribers.net | 800-257-0885

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1    the extent any of the following findings of fact constitute

2    conclusions of law, they are adopted as such, and to the

3    extent any conclusions of law constitute findings of fact,

4    they are so adopted".

5         Judge Lipp made the following factual findings and, I

6    guess, conclusions of law. "Serv Trust is a trust that was

7    created by Myers' mother for the benefit of Myers' five

8    children. Serv Trust was funded with an initial deposit of

9    1,000 from Myers' mother. Myers and Daniel Ring are the

10   co-trustees of Serv Trust. Myers testified that Serv Trust

11   has a fifty-percent interest in a Maryland limited liability

12   company named 6789 Goldsboro LLC. Goldsboro advanced

13   significant sums of money to Serv Trust to enable Serv Trust

14   to make substantial distributions to Myers and/or Kelly for

15   the benefit of their children. Goldsboro continued to make

16   post-petition advances to Serv Trust, which funds were then

17   made available to Myers and to Kelly to pay for their

18   children's education and household expenses. It is undisputed

19   that Serv Trust was established to pay educational and other

20   expenses related to Myers' children. It is also undisputed

21   that Myers is a co-trustee of Serv Trust, with the authority

22   to direct Serv Trust to make payments on behalf of its

23   beneficiaries, the Myers children. Myers was adamant at trial

24   that every payment that he and/or Kelly ever received from

25   Serv Trust was for the benefit of his children. If, as

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1    irrefutably testified to by Myers, every payment was -- every

2    payment from Serv Trust to Myers and/or Kelly was for the

3    benefit of their children, then it appears, Serv Trust was

4    serving its intended purpose, i.e., providing for Myers'

5    children.  Such payments would not be loans to Myers and/or

6    Kelley.  They would be distributions to the trust

7    beneficiaries."

8         Those are Judge Lipp's findings of fact and

9    conclusions of law on September 28th, 2018.  Neither the U.S.

10   Trustee, nor the Chapter 7 trustee, nor any other party, other

11   than me, appealed the order.  That order is now final and

12   unappealable and is binding on the Chapter 7 trustee, this

13   Court, for all purposes, going forward.  It's res judicata to

14   these proceedings.

15        The Chapter 7 trustee had that -- had that -- the

16   Chapter 7 trustee had the order entering judgment from Judge

17   Lipp and referenced it in the Offit Kurman v. Serv Trust

18   adversary.  And Mr. Mastro also referenced it in the

19   Montgomery County litigation.  And Judge Lease also read

20   directly from it -- the comments I just -- the statements I

21   just made, he read directly from it in the circuit court case.

22        THE COURT:  And Mr. Myers, direct me to the pages

23   that you were reading from, so I can refer to that later.

24        THE WITNESS:  Can I after -- can I highlight it after

25   this is over and hand it to you?



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1        THE COURT:  No, but you can refer me to the pages.

2   It's a thirty-eight-page opinion.  I want to focus on the part

3   that you're reading on.

4        THE WITNESS:  This is doc 94, on page 2 of 38, near

5   the top is "Findings of fact:  The following facts are

6   relevant to the issues at hand and are either uncontroverted

7   or are supported by the evidence in this case."  Footnote 2,

8   which says, "To the extent any of the following findings of

9   fact constitute conclusions of law, they are adopted as such.

10  And to the extent any conclusions of law constitute findings

11  of fact, they are so adopted".

12       THE COURT:  So Mr. Myers, I'm just asking you to

13  direct me to the passages that you just read.  So I know you

14  read --

15       THE WITNESS:  I read those.

16       THE COURT:  -- at the bottom of page 2, "Serv Trust

17  is a trust that was created by" up to the top of page 3.

18  Where else were you reading from?

19       THE WITNESS:  Well, I'm going to go there.  I read

20  you the first sentence that I read to you.  I'm giving you the

21  page of the first statement I made.

22       THE COURT:  Just give me the page numbers.  You don't

23  need to reread everything.  I'm trying to be judicious with

24  your time.

25       THE WITNESS:  Okay.  Page 2 of 38.  At the bottom of



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1    page 2 of 38 was the statement.

2            THE COURT:  Right.  So pages 2 --

3            THE WITNESS:  2 of 38, okay.

4            THE COURT:  Page 2, page 3.  Just give me page

5    numbers.  I don't need you to direct me.

6            THE WITNESS:  Okay.  All right.  Page 4 of 38.

7        (Pause)

8            THE WITNESS:  Page 16 of 38, page 17 of 38.  I don't

9    think I said this, but "Goldsboro's existence was even raised

10   at the 341 meeting, at which Myers explained that Serv Trust

11   is a fifty-percent owner of Goldsboro".

12           Page 17 of 38.  Again, "Goldsboro continued to make

13   post-petition advances to Serv Trust, which funds were then

14   made available to Myers and Kelley to pay for their children's

15   education and household expenses".

16           Page 18 of 38 at the top.  "It is undisputed that

17   Serv Trust was established to pay educational and other

18   expenses related to Myers' children."

19           Same, top of page 18.  "It is also undisputed that

20   Myers is co-trustee of Serv Trust with the authority to direct

21   Serv Trust to make payments, on behalf of its beneficiaries,

22   the Myers children."

23           And top of 38 -- top -- page 18 to 38, the top.

24   "Myers was adamant at trial that every payment that he or

25   Kelley ever received from Serv Trust was for the benefit of



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1   his children."

2        And page 18 of 38.  "If, as irrefutably testified to
3   by Myers, every payment from Serv Trust to Myers and/or Kelly
4   was for the benefit of their children, then it appears Serv
5   Trust was serving its intended purpose providing for Myers'
6   children.  Such payments would not be loans to Myers or Kelly.
7   They would be distributions to the trust beneficiaries."

8        Okay.  And then I want to go to Claim 5 in this -- or
9   Count V, I guess it was, the U.S. Trustee's Count V.  So this
10  is on page 35 of 38.  It's critical to this case, to this
11  bogus settlement agreement.  This is subsection (e) of Judge
12  Lipp's decision.  This is under 11 U.S.C. subsection
13  727(a)(2).

14       It says, "The Court shall grant the debtor a
15  discharge unless the debtor, with intent to hinder, delay, or
16  defraud a creditor or an officer of the estate charged with
17  custody of property under this title, has transferred,
18  removed, destroyed, mutilated, or concealed, or has permitted
19  to be transferred, removed, destroyed, mutilated, or concealed
20  property of the debtor, within one year before the date of the
21  filing of the petition; or property of the estate, after the
22  date of the filing of the petition."

23       "To bar debtor's discharge under Section 727(a)(2),
24  the plaintiffs must prove each of the following four elements
25  by a preponderance of the evidence:  the debtor transferred,



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1   removed, destroyed, mutilated, or concealed; 2) his or her

2   property; 3) within one year of the bankruptcy petition

3   filing; 4) with the actual intent to hinder, delay, or defraud

4   a creditor."

5       Count V of the complaint, the U.S. Trustee's

6   complaint, alleges that:  "Myers, with the intent to hinder,

7   delay, or defraud creditors of the estate, transferred to Serv

8   Trust additional equity in the Lot 6 sale proceeds by

9   increasing the amount of Serv Trust's claim as a result of

10  pre- or post-petition transfers of funds to Myers and/or

11  Kelley."

12      Count V also alleges that:  "Myers, with the intent

13  to hinder, delay, or defraud creditors, transferred estate

14  assets to or for the benefit of his children, and transferred

15  assets to pay his and Kelly's joint creditors, to the

16  detriment of Myers' sole creditors."

17      Lastly, Count V alleges that:  "Myers transferred

18  assets to various attorneys retained by Kelly, who also

19  represented Myers' interests.  At trial, the United States

20  argued that Myers also violated 727(a)(2)(A) by concealing the

21  fact that he guaranteed the loans to Serv Trust from

22  Goldsboro."

23      The United State Trustee recognized that, although

24  Myers' obligations to Goldsboro were not an asset, she argued

25  that his concealment of the obligations severely prejudiced --


www.escribers.net | 800-257-0885

1    severely prejudiced his creditors.

2        Judge Lipp's decision:  "The United State Trustee

3    does not prevail on Count V.  There was insufficient evidence

4    to conclude that Myers transferred estate assets to or for the

5    benefit of his children, or that he transferred assets to the

6    attorneys retained by Kelly, or to his joint creditors, with

7    the intent to hinder, delay, or defraud creditors.  Moreover,

8    his guarantee of Serv Trust's obligations to Goldsboro was not

9    an asset of his bankruptcy estate.  It was an unsecured

10    liability.  For these reasons, judgment is awarded" -- to

11    Myers favor -- "in Myers' favor on Count V of the complaint".

12        That's a final judgment by this court that destroys

13    this whole bogus settlement agreement.

14        So notwithstanding that Judge Lipp put an end to this

15    whole thing when she entered that order, the 6789 Goldsboro

16    LLC filed an adversary in this case trying to assert exactly

17    what Judge Lipp said wasn't the case, that Serv Trust was my

18    alter ego.

19        Judge Lipp promptly abstained from that adversary

20    proceeding which was dismissed.  Then, after Judge Lipp

21    abstained -- apparently Mr. VerStandig never read Judge Lipp's

22    order -- in February of 2019, he -- he filed his original

23    adversary in Montgomery County in 2017 with one count against

24    Serv Trust.  I wasn't even a defendant.

25        He then filed a separate case in Garrett County, as



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1   counsel for 6789 Goldsboro, against Serv Trust, for the Serv

2   Trust promissory note to Goldsboro.  The question came up as

3   to why is he in Garrett County.  The Garrett County court

4   transferred the Goldsboro v. Serv Trust case to Montgomery

5   County, and the two cases were consolidated for administrative

6   purposes.

7           Serv Trust then filed a counterclaim against the King

8   parties, in 2018, for claims including breach of contract on

9   the memorandum of understanding, constructive fraud, and other

10  counts that I can't recall right now.

11          There was then -- Mr. VerStandig -- the King parties

12  filed a motion to dismiss Serv Trust's counterclaim, which

13  Judge Albright heard.  And I recognize that an order on a

14  motion to dismiss is just that; it's not a final adjudication.

15  However, Judge Albright reviewed the memorandum of

16  understanding, and it was her opinion, and it's in the

17  record -- the Court can take judicial notice of that

18  transcript; I believe I might have filed it in this case --

19  that that memorandum of understanding has all of the required

20  terms and conditions, and in her opinion, it was an

21  enforceable contract.  It was not an agreement to agree.

22          Two, on the constructive fraud claim against Mr.

23  King, as manager of Goldsboro, after he kicked me out in early

24  2017, she said, if what Serv Trust is saying here is true,

25  then Mr. King is guilty of constructive fraud because he's



www.escribers.net | 800-257-0885

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1    benefiting himself and the Class A members, and he's -- he's

2    not fulfilling his fiduciary duties to Serv Trust.

3    Understood, again, that was an order on a motion to dismiss.

4         She then granted leave to Serv Trust to amend its

5    counterclaim, which it did in January of 2019.  The King

6    parties never filed an answer to the amended counterclaim, nor

7    did they ever file a motion to dismiss the amended

8    counterclaim.  Therefore, the amended counterclaim of Serv

9    Trust still exists in the Montgomery County Circuit Court case

10   because that case is not over.  And I'm going to read a

11   statement from Judge Lease where he said there is no

12   adjudication of any claim.  So he can revise any order he

13   entered in that case until such time as there is a final order

14   against all parties and all claims, as this Court well -- well

15   knows.

16        So the King parties have never filed an answer to

17   Serv Trust's counterclaim.  There's two problems with that.

18   That means, when they went to trial on January the 3rd,

19   there's an admission of all the allegations of fact in the

20   counterclaim, period, end of sentence.

21        Two, that also creates a problem because this Court

22   can't -- under Stern, Wellness, and the other decisions, this

23   Court can't interfere where there's a counterclaim pending in

24   a state court matter which is wrapped up in this matter.

25        So technically, because the King parties have never



1    responded to Serv Trust's counterclaim, they're in default.

2    And so there should be a default judgment entered against

3    them, which would mean that the memorandum of understanding --

4    that they breached the memorandum of understanding and that

5    Brian King is guilty of constructive fraud.

6           But the Montgomery County Circuit Court case is not

7    over yet.  So they can't have their cake and eat it too.  So

8    in February of 2019, Mr. VerStandig added me as a defendant.

9    He amended his declaratory judgment action, originally one

10   count against Serv Trust for the redemption claim, he added

11   claim 2, which was an alter ego claim, and he added me.

12          What he failed to recognize is that that would mean I

13   was added, I assume, relation back effective to the date of

14   filing of the adversary, which would mean he violated the

15   automatic stay in this case.  I did a little research on that.

16          So when he added me, instead of filing a new

17   complaint against me, after the automatic stay was resolved by

18   Judge Lipp's decision, when he added me, it was a stay

19   violation.  So that whole exercise is void for that reason.

20   So there is no alter ego claim.  And I will pursue that in

21   state court as that case proceeds.

22          I was then also added as a defendant in the Goldsboro

23   action, based on my guarantee, personal guarantee.  That too

24   would relate back to when Mr. VerStandig filed the original

25   Goldsboro complaint in Garrett County.  That too would be a

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1    stay violation, which I will pursue against Mr. VerStandig and

2    his clients.

3            So we then, from that point forward, get to -- well,

4    no.  In the interim, after that, Mr. VerStandig removed the

5    Montgomery County Circuit Court case to this court, which

6    was -- which initiated adversary proceeding 19-00427.  This

7    was Judge Simpson.  And on December 5 -- and I note that Mr.

8    VerStandig removed the adversary proceeding in his personal

9    capacity.  So I question how he can continue to be an attorney

10   when he has a conflict of interest, so -- with the King

11   parties, et cetera.  And we'll get to the conflict with me.

12           On December 5, 2019, Judge Simpson entered an order

13   remanding that adversary proceeding, that litigation, that was

14   filed by Maurice VerStandig.  He removed the case on November

15   13th, 2019.  And at the end, it is accordingly -- "Accordingly

16   it is, by the United States Bankruptcy Court for the District

17   of Maryland, hereby ordered that the above-captioned adversary

18   proceeding is remanded" --

19           MR. VERSTANDIG:  Sorry.  Objection, Your Honor.  I

20   believe he's reading from a document.  I actually have no

21   objection to this document coming in.  But insofar as this

22   document would point out that it was remanded because he sued

23   me personally for violating the stay and then dismissed that,

24   I would ask that either what he's reading be marked and come

25   in, or not be permitted in the record.  But he can't



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1    selectively quote from something, that's not within the scope

2    of what you delineated, so as to mar and tarnish opposing

3    counsel.

4        THE COURT:  So Mr. Myers, what are you reading from?

5        THE WITNESS:  Judge Simpson's order remanding case,

6    case number 19-00427.5, which was discussed yesterday.  I

7    don't know if it was marked as an exhibit.

8        THE COURT:  So this is the order remanding case

9    from --

10        THE WITNESS:  Let me look in here.

11        THE COURT:  -- case number 19-000427, docket number

12    5, entered on December 5th, 2019?

13        THE WITNESS:  Yes, ma'am.

14        THE COURT:  All right.  So that's docket number 6.

15    I'm sorry, Debtor's Number 6?

16        THE WITNESS:  Well, actually that was marked

17    yesterday as Debtor's 6.

18        THE COURT:  It's still Debtor's 6, yes.

19        THE WITNESS:  Yeah.  I was just reading from a

20    different copy that I had marked -- my copy that I had marked.

21    But yes, Debtor's 6.

22        THE COURT:  Okay.

23        THE WITNESS:  So Mr. VerStandig can --

24        MR. VERSTANDIG:  That's okay.  I have no objection.

25    I just --



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1      THE COURT:  Okay.

2      MR. VERSTANDIG:  Given that the document does not

3   state what he is claiming, I thought it to be of some

4   importance.

5      THE WITNESS:  And let me just be clear --

6      THE COURT:  It's in evidence.  Thank you, Mr.

7   VerStandig.

8      THE WITNESS:  Let me just be clear.  I didn't testify

9   to everything that he was objecting to.  All I was testifying

10   to is that Mr. VerStandig removed the case, in his personal

11   capacity, which is what the notice of removal says, and that

12   after it was here, which is the Montgomery County action,

13   removed in total to this Court, on November 13th, 2019, on

14   December 5, 2019, Judge Simpson:  "Accordingly, it is, by the

15   United States Bankruptcy Court for the District of Maryland,

16   hereby ordered that the above-captioned adversary proceeding

17   is remanded to the Circuit Court for Montgomery County,

18   Maryland, pursuant to 28 U.S.C. Section 1452(b)".

19      I will point out, while I'm on the topic -- and I can

20   do it in closing -- but I'll point out that a relevant case

21   here is the Supreme Court's case in -- I think it's Petrarca

22   v. Things Remembered (sic), and it deals with 28 U.S.C.

23   1452(b).

24      So -- so now all matters and all issues in that

25   litigation go back to the Montgomery County Circuit Court.



1    And this Court, under the Petrarca v. Things Remembered (sic),

2    has no further jurisdiction over those matters or those

3    issues.  They rely -- they rest solely with the state court

4    and cannot be interfered with.  That's that decision.

5         So the state court -- and I don't want to get into a

6    debate, but the state court hasn't resolved those matters and

7    those issues.  And they were the identical matters, because

8    when the case was removed, it was after Mr. VerStandig had

9    already filed his amended declaratory action adding me.  So

10   whatever gets decided eventually -- and there is no

11   adjudication; Judge Lease specifically said it on the record

12   on January 3, and I'm going to get to that in a minute -- then

13   that will be the case.  But as it stands now, under Supreme

14   Court precedent, this Court, after having remanded the case to

15   state court, cannot take up the issues that were part of that

16   case.  Okay.

17        I filed a Chapter 13 bankruptcy petition in Florida

18   on January 28th, 2021.  Mr. VerStandig, on behalf of the King

19   parties, came down to Florida, filed numerous pleadings in

20   that case, of which one was a motion to dismiss my case for

21   all manner of bad acts, which Judge Delano dismissed, flatly

22   dismissed.

23        Mr. VerStandig also, after he filed the motion to

24   dismiss, my attorney filed the objection, recognizing they

25   didn't have standing, so he filed a proof of claim.  And so we



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1    filed an objection to that proof of claim.  And on June 29th,

2    2021, the Florida bankruptcy court, Judge Delano -- we can

3    mark it.

4           MR. VERSTANDIG:  No.  No, we can't, Mr. Myers.

5           Your Honor, the argument is as follows.

6           THE WITNESS:  Don't talk to me, Mr. VerStandig.

7           THE COURT:  Mr. Myers, please.

8           THE WITNESS:  Talk to the judge.

9           MR. VERSTANDIG:  Thank you, Your Honor.  The argument

10   is as follows.  Mr. Myers knows this Court's protocols.  And

11   there's actually an easier reason to show that than what's

12   been discussed.  About two months ago, there was an email

13   sending Mr. Myers the Court's protocols, to which he responded

14   multiple times.  And that led to a memorandum from the Court.

15   So we know he is in receipt of the Court's protocols.  As

16   you've pointed out, they were emailed to him last week or the

17   week before as well.  They're on the Court's website, and he's

18   exceedingly experienced litigating in this court.

19          The Court's protocols require exhibits to be marked

20   three days before.  We appreciate that you gave him until 9

21   p.m. last night.  I don't object to that by any means, and I'm

22   not suggesting that the three-day standard should apply versus

23   the 9 p.m. standard.

24          But what we are dealing with at the moment is a case

25   by ambush.  He is introducing exhibits without giving any



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1    prior notice to the opposing parties.  And I believe what he

2    is about to make reference to is an order from Florida that

3    deals with a claim objection.  And what he is probably not

4    going to point out is that the proof of claim filed in Florida

5    was not the same proof of claim in this court.  The proof of

6    claim in Florida --

7             THE WITNESS:  Is he testifying, Your Honor?

8             MR. VERSTANDIG:  No, I'm explaining why I'm

9    objecting.

10             THE COURT:  Mr. Myers, please don't interrupt.

11             MR. VERSTANDIG:  The proof of claim in Florida dealt

12    with a pending sanctions motion against Mr. Myers in state

13    court.  Now, again, that's not in front of you.  But my point

14    is that, had there been an exhibit list, we would have come

15    armed with appropriate rebuttal and response exhibits, and the

16    ability to put on a case that is not in response to an ambush.

17             Because there has been no exhibit list, because

18    there's been no advance notice, we haven't had the ability to

19    do that.  There is enormous prejudice that comes from running

20    afoul of the Court's rules, and we would ask that you enforce

21    them by disallowing him to read from something that was not

22    marked as an exhibit in a timely fashion.

23             THE WITNESS:  It's filed --

24             THE COURT:  Mr. Myers --

25             THE WITNESS:  -- in this case, Your Honor.



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1        THE COURT:  Mr. Myers, if you're going to read from

2   an exhibit, it must be a pleading from your bankruptcy case in

3   this court or the adversary proceeding that is being heard

4   today.

5        THE WITNESS:  It is.

6        THE COURT:  If it's anything else, then -- okay.

7   What are you reading from?

8        THE WITNESS:  It's attached to my motion to strike

9   the trustee settlement motion that was originally filed --

10       THE COURT:  Give me a docket number.

11       THE WITNESS:  I don't know what docket number that

12  was.  It was right before you entered the -- what you referred

13  to as the settlement procedures motion.

14       THE COURT:  All right.  Give me a moment.

15       THE WITNESS:  And I believe it was also attached to

16  my objection to their proof of claim filed in --

17       THE COURT:  Okay.  Hold on.  Just give me a moment.

18       THE WITNESS:  All right.

19       THE COURT:  Can you give me the date of the pleading?

20       THE WITNESS:  I don't have access to the ECF.

21       THE COURT:  Okay.  So it's the --

22       THE WITNESS:  So --

23       THE COURT:  It's the Middle District of Florida's

24  order that you're referring to?

25       THE WITNESS:  Correct.  So I filed -- they filed in



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1    the --

2          THE COURT:  Okay.  Just give me a moment, okay?  Just

3    give me a moment.

4          THE WITNESS:  Well --

5          THE COURT:  Look, I could just cut you off

6    completely, Mr. Myers, which is what I really should be doing.

7    But I'm trying to give you some leeway here.

8          THE WITNESS:  I was just trying to help you get to

9    the docket.

10          THE COURT:  Okay.  Well, just give me a moment here.

11    So you said it's an order by the Middle District of Florida.

12          THE WITNESS:  So if you find my motion to strike, the

13    original motion to strike their settlement agreement, it --

14          THE COURT:  Okay.  The order sustaining debtor's

15    objection to proof of claim 3, filed by Brian King and

16    Cristina King.

17          THE WITNESS:  Yes.

18          THE COURT:  This is Judge Delano's order from -- it

19    looks like June 29th, 2021.

20          THE WITNESS:  Yes, ma'am.

21          THE COURT:  It simply states that the objection is

22    sustained and the claim is disallowed.  But you didn't attach

23    your objection to claim.  So I don't know what the basis of

24    your objection to claim is.

25          THE WITNESS:  Okay.  So --



1          THE COURT:  Why don't you --

2          THE WITNESS:  -- are these --

3          THE COURT:  Why don't you tell me --

4          THE WITNESS:  -- in the record?

5          THE COURT:  Excuse me?

6          THE WITNESS:  Should we mark it?

7          MR. VERSTANDIG:  No.

8          THE WITNESS:  Let's go ahead and mark it.

9          THE COURT:  It -- I --

10         THE WITNESS:  Well, it's in the record.

11         THE COURT:  Okay.  It is attached to your objection

12   to claim 22-1 filed by Cristina King.  And it may be attached

13   to the others.  And so the Court will take judicial notice

14   that an order was issued, but it doesn't give me any

15   information about what the basis for the claim objection is.

16   And it doesn't attach the proof of claim that was filed.  So I

17   don't understand what the context of the claim is or what the

18   basis of the objection is.

19         But the Court will take judicial notice of the June

20   29th, 2021 order out of the Bankruptcy Court for the Middle

21   District of Florida, case number 21-00123, docket number 108.

22   It is a one-page order, and the Court has taken judicial

23   notice of it.

24         THE WITNESS:  Okay.  And so my testimony concerning

25   this order is that -- and I heard your comments just now, and



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1    I heard Mr. VerStandig's comments yesterday, and that is that

2    an objection to a proof of claim, even in a dismissed Chapter

3    13 case, a final order.  And if the objection to proof of

4    claim is disallowed in its entirety, then whatever claims they

5    needed to bring is the res judicata effect.  Whatever claims

6    they had, they needed to bring at this time, they are now

7    foreclosed in this court, in any other court in the world,

8    based on this order sustaining my objection to the King's

9    proof of claim.  And that's the way the case law works.  I've

10   read it a million times.

11           So we'll put that aside.  So they can't come in here

12   now.  So in terms of the objection -- in terms of their proof

13   of claims filed in this case, they've already been resolved by

14   that order for all times.

15           On -- I'm sure this is in the -- in the record

16   attached to one of my pleadings as well.  This is a March 14,

17   2022 order, from Judge Delano, in my Florida bankruptcy case,

18   2:21-bk-00123.  This is docket 168.

19           THE COURT:  And where can I find this in --

20           THE WITNESS:  I'm sure it's --

21           THE COURT:  -- this docket?

22           THE WITNESS:  I would suspect it's attached to my

23   motion to strike.

24           THE COURT:  So your motion to strike in the --

25           THE WITNESS:  In the main case.



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1        THE COURT:  -- main bankruptcy case that you filed.

2   Do you remember when you filed that?

3        THE WITNESS:  For some reason, I think that you

4   entered your order in October of '24, somewhere in there, I

5   think.

6        THE COURT:  Okay.  Give me one moment here.  I think

7   I found it.  I'm looking at debtor's motion to strike

8   trustee's -- motion to dismiss or strike trustee's motion for

9   approval of proposed compromise.

10        THE WITNESS:  Yeah.

11        THE COURT:  That is at docket number 1010, filed on

12   February 28th, 2023.  Let me take a look and see what is

13   attached to that.  It's seventeen pages long, so give me a

14   moment.

15        Okay.  There are no attachments to that.  So where

16   else would I find it?

17        THE WITNESS:  Well, are the attachments docketed

18   separately?

19        THE COURT:  I'm sorry?

20        THE WITNESS:  Are the attachments docketed

21   separately?

22        THE COURT:  Let me look.

23        No.  So you have the motion.  There was a deficiency

24   notice.  There was an opposition by the trustee.  There was a

25   line submitting a proposed order, filed by you, to address the



www.escribers.net | 800-257-0885

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1    deficiency.  And so the deficiency was satisfied.  Then your

2    reply to the trustee's opposition, which was four pages long.

3    And then the court's order.  Those are the only pleadings in

4    your motion to strike.  So no attachments.

5         If you'll give me a moment, I'll look at your claim

6    objections and see if maybe you included it there.

7         And it was not attached to the claim objections.

8    Actually, give me one moment.  It looks like your exhibits are

9    different on one of these.  Let me look at these real quick.

10        THE WITNESS:  Yeah, I recall something with the clerk

11   where they got screwed up, and then they were redocketed.

12        THE COURT:  Okay.  I don't see them as attachments to

13   the claim objections or the motion to strike.

14        THE WITNESS:  Can I ask the Court to take judicial

15   notice?

16        THE COURT:  Take judicial notice of a document that I

17   don't have and I haven't seen?  No.

18        THE WITNESS:  I can hand it to you.  It's an order

19   from Judge Delano.

20        THE COURT:  Hand it up.  I'm going to allow it.

21        MR. SCHLOSSBERG:  Your Honor?

22        THE COURT:  I know --

23        MR. SCHLOSSBERG:  The Court's patience --

24        THE COURT:  -- Mr. Schlossberg.

25        MR. SCHLOSSBERG:  The Court's patience is



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1   extraordinary, Your Honor.

2        THE COURT:  I'm trying really hard to be patient and

3   trying to give him some leeway here.

4        MR. SCHLOSSBERG:  Please note my objection.

5        THE COURT:  Because if there's going to be an appeal

6   by one party or the other, I want it to be on the merits, not

7   on procedural issues.

8        MR. SCHLOSSBERG:  Understood completely, Your Honor.

9   Please note my objection.

10        THE COURT:  Your objection is noted, Mr. Schlossberg.

11        MR. SCHLOSSBERG:  I believe also Mr. VerStandig's.

12        THE COURT:  And so Mr. Myers, if you would hand that

13   up to Ms. Whitfield, I will take a look at it.  I will also

14   have copies made for the other parties in the courtroom.  This

15   is the March 14th, 2022 order.

16        THE WITNESS:  Let me figure out what I just did with

17   it.

18        THE COURT:  We will mark that Debtor's Number 8.

19   Debtor's Number 7 is the June 29th, 2021 order.  So this is

20   Debtor's Number 8.

21   (March 14, 2022 Judge Delano order in bankruptcy case, 2:21-

22   bk-00123 was hereby marked for identification as Debtors'

23   Exhibit 8, as of this date.)

24        THE CLERK:  June 29th, what year was that, the June

25   29th order?  What year was the June 29th order?



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1          THE COURT:  June 29th, 2021.  That's Debtor's Exhibit

2     Number 7.  And so just give us one moment here.

3          Hold on one second.

4     (Pause)

5          THE COURT:  All right.  Mr. Myers, we are making

6     copies of Debtor's Number 7 and Debtor's Number 8, and we will

7     have that momentarily.  But please continue with your

8     testimony.

9          THE WITNESS:  Should I refer to that or no?  Use

10    something different?

11         THE COURT:  It may be more helpful --

12         THE WITNESS:  Not refer to that until you hand it

13    out.

14         THE COURT:  -- for you to wait to refer to it until

15    you have it in front of you and everyone else has it in front

16    of them.

17         THE WITNESS:  Okay.

18         THE COURT:  Yes, Mr. VerStandig?

19         MR. VERSTANDIG:  Your Honor, if we are waiting for a

20    copy to be made, and I understand time is precious, if we

21    could steal a two-minute recess -- and I'm not exaggerating --

22    it would be appreciated.  But it is not overly urgent.

23         MR. SCHLOSSBERG:  I join in that particular request,

24    Your Honor.

25         THE COURT:  Okay.



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1          MR. SCHLOSSBERG:  And I'm the oldest one here.

2          THE COURT:  Mr. Myers, I want you to remember where

3   you are with your testimony.  What are you looking at right

4   now, sir?

5          THE WITNESS:  The debtor's exhibits.

6          THE COURT:  Okay.  All right.  I'm going to ask you

7   to --

8          THE WITNESS:  I'm not going anywhere.

9          THE COURT:  -- return to your seat during the recess.

10   Leave everything at the witness stand.

11          THE WITNESS:  I can't sit here?

12          THE COURT:  Excuse me?

13          THE WITNESS:  I can't sit here?

14          THE COURT:  I would like you to return to your seat

15   and leave everything on the witness stand.  We're going to

16   take a two-minute bathroom break.

17          THE WITNESS:  Okay.

18          THE CLERK:  All rise.  Court is now in recess.

19      (Whereupon a recess was taken)

20          THE CLERK:  All rise.  United States Bankruptcy Court

21   for the District of Maryland now resumes its regular session,

22   the Honorable Maria Ellena Chavez-Ruark presiding.

23          Please be seated.

24          THE COURT:  All right.  Mr. Myers, if you'll come

25   back to the witness stand, please.



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1          We have now marked the two orders that you referenced

2    as Debtor's Exhibits 7 and 8.

3    (Order was hereby marked for identification as Debtor's

4    Exhibit 7, as of this date.)

5    (Order was hereby marked for identification as Debtor's

6    Exhibit 8, as of this date.)

7          MR. VERSTANDIG:  Your Honor, we have a bit of a

8    procedural problem.  Debtor's Exhibit 7 is Exhibits E and F to

9    docket entry 1051.  Exhibit F is the privileged email chain.

10          THE COURT:  That was our mistake.  It should be --

11          MR. VERSTANDIG:  Okay.

12          THE COURT:  It should be -- Exhibit E is just two

13    pages.

14          MR. VERSTANDIG:  Okay.  So Exhibit F is not part of

15    what is coming into --

16          THE COURT:  Exhibit F is -- no, it's just two pages.

17    It's the Exhibit E cover page and the one-page order.

18          MR. VERSTANDIG:  Thank you, Your Honor.

19          THE COURT:  So Ms. Whitfield, can we make that

20    correction?  As a matter of fact, let's just make this easy,

21    and let's just make it the one page, Ms. Whitfield, just the

22    one-page order.

23          Thank you for pointing that out, Mr. VerStandig.

24          MR. VERSTANDIG:  Thank you, Your Honor.  I'm sorry.

25    Thank you, Your Honor.  I was sitting.



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1          THE COURT:  So Debtor No. 7 is a one-page order from

2     Judge Delano from the Middle District of Florida.  It is the

3     order that she signed dated June 29th, 2021.  All right.  So

4     the Court will take judicial notice of Debtor's No. 7 and

5     Debtors No. 8.

6          (Counsel confer)

7          THE COURT:  Mr. Myers, you may proceed.  I'm waiting.

8          THE WITNESS:  Oh, all right.  Okay.  So Exhibit 7 was

9     the order -- Debtor's Exhibit 7 was the order sustaining

10    Debtor's objection to the proof of claim filed by Brian King,

11    the King parties, in my Florida bankruptcy case.  And it was

12    disallowed in its entirety, and that was on June 29, 2021, so

13    they have no claim after that.

14          On March 14, 2022, after the Florida bankruptcy court

15    denied their motion to dismiss my case, and after sustaining

16    my objection to their proof of claim -- and they had filed a

17    motion for relief from the automatic stay.  And Debtor's

18    Exhibit No. 8 is the order granting Brian King, Cristina King,

19    and the Cristina and Brian King Children's Trust amended

20    motion for relief from the automatic stay, which was -- in the

21    title, it says doc 145.

22          And so on March 14, 2022, Judge Delano entered an

23    order, which is doc 168 in case 2:21-bk-00123.  And it says,

24    "The Court, having reviewed the motion", blah, blah.

25    "Accordingly, it is ordered the motion is granted in part and



1    denied in part".  It says, "The" -- 2, paragraph 2, "The

2    automatic stay is modified to allow the lawsuit filed in

3    Montgomery County Circuit Court captioned King, et al. v. Serv

4    Trust, et al., case 436977V, to proceed subject to the terms

5    of this order, the automatic stay is lifted as to all

6    nondebtor parties, including Gregory B. Myers in his

7    representative capacity as trustee of Serv Trust, the

8    automatic stay shall remain in effect and is not lifted as to

9    any claims against Gregory Brian Myers" -- in parentheses,

10   "defined as the debtor individually" -- "all other relief

11   requested in the motion is denied".

12          So I resigned as trustee -- I can't remember the

13   exact date, but it was after this order was entered, so I was

14   no longer trustee of Serv Trust.  So this order, which the

15   parties had.  The trustee, Mastro, VerStandig, the court, they

16   all had this order, and this order says the automatic stay

17   shall remain in effect and is not lifted as to any claims

18   against Gregory Brian Myers individually.

19          THE COURT:  And so what action --

20          THE WITNESS:  All four of the claims --

21          THE COURT:  What action are you claiming has violated

22   the automatic stay, the filing of the proofs of claim in this

23   case?

24          THE WITNESS:  All four of the claims, the -- the

25   entire proceeding in Montgomery County Circuit Court, I'm a



1    defendant in all four of those claims.  And --

2         THE COURT:  You're talking about the proofs of claim

3    filed by the King parties in your bankruptcy case in this

4    court?

5         THE WITNESS:  No, I'm talking about the fact that

6    they went forward in Montgomery County Circuit Court.  The

7    entire basis of their settlement motion is a nonfinal order

8    that is completely unenforceable and nonexecutable and cannot

9    be relied upon anybody until there's a final adjudication, for

10   any purpose.  And that order was entered in a proceeding that

11   was stayed by Judge Delano.  This order was discussed in the

12   Montgomery County Circuit Court.  There could be no trial on

13   January 3 because I was a defendant in all -- I was a

14   defendant in the alter-ego claim, and therefore it couldn't go

15   forward.  I was an individual defendant in the alter-ego

16   claim.

17        On top of that, that is why, on December 16th of

18   2022, two weeks -- at the pre-trial hearing, Judge Lease

19   specifically said, no claims against you can go forward.

20   However, they got to January 3, and Mr. VerStandig and Mr.

21   Mastro went ahead with claims against me.  And if you read the

22   transcript of the January 3 hearing, it's all about me.  And

23   Judge Lease even said, this is going to impose liability on

24   Mr. Myers.  Nothing that happened on January 3 in that

25   court -- and there's many reasons; this is one of them --



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1  is -- it's void, anything that came out of that.  So

2  anything -- the only basis for them to be in this court trying

3  to do a settlement motion is because Mr. Schlossberg thinks

4  that Serv Trust property is property of this estate, and

5  it's -- and we'll get to that in argument.  Anyway, that's the

6  point of this one.

7       On -- we discussed yesterday that the case was

8  removed to the Montgomery County litigation, state court case,

9  consolidated cases.  And let me point out another thing about

10 this order to you, Judge.  These were consolidated actions in

11 Montgomery County.  This order only permits case 436977V to

12 proceed.  This case doesn't -- this doesn't -- this case

13 doesn't allow the Goldsboro case to proceed.  So because they

14 were consolidated for all purposes, there's no way either case

15 could proceed unless they were bifurcated.  And as I said to

16 Judge Lease, they would have had to file a separate amended

17 complaint to go forward without me in it, which they didn't

18 do.

19      So on December 30, I filed a notice of removal

20 because I -- this is just my testimony -- because I knew these

21 guys were underhanded and they were going to try and pull a

22 stunt, even though this order that says they couldn't do

23 anything against me -- it was clear to me that they were going

24 to try and go forward and -- because that's just the way they

25 are.



www.escribers.net | 800-257-0885

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1          THE COURT:  Mr. Myers, that's not helpful to your

2     case, to make sniping comments like that,

3          THE WITNESS:  He -- he --

4          THE COURT:  So just testify about the facts of this

5     case.

6          THE WITNESS:  Mr. Schlossberg ripped me apart

7     yesterday, and my character.  So you know what?  They don't

8     have any character.  I will refrain from saying what I really

9     want to say they are, but they're unethical.  So -- and they

10    were aware of this order, and they violated the stay.

11    Interestingly, Mr. Mastro took the position that the Barton --

12    that the Barton Doctrine doesn't apply, so that's going to be

13    an interesting thing.

14         So in any event, knowing how underhanded they are, on

15    December 30th, 202022 [sic] -- December 30, 2022 -- I filed a

16    notice of removal of the state court action to the United

17    States District Court for the Middle District of Florida.  And

18    then Mr. VerStandig filed a -- he went and filed a motion to

19    remand.  And then on -- and then I guess it was on January 3,

20    early in the morning on January 3.  I guess Tuesday was a --

21    Monday was a holiday.

22         Anyway, Judge Delano -- this was discussed

23    yesterday -- she entered an order granting emergency motion

24    for remand.  So that was on -- so when -- when I removed, it

25    established an adversary in Florida.  Adversary proceeding was

escribers

www.escribers.net | 800-257-0885

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1    2:22-ap-0048-FMD.  That was for the King case.  There was a

2    separate adversary for the Goldsboro case.  That was 2:22-ap-

3    0049.  So on January 3, Judge Delano entered an order granting

4    emergency motion for remand.  However, there is nothing in the

5    record.  Judge Delano never mailed, physically mailed, a

6    certified copy of her order back to the Montgomery County

7    Circuit Court.  And you can take judicial notice of the

8    bankruptcy court records, or you can take judicial notice of

9    the Montgomery County Circuit Court records, and you will

10   find --

11          THE COURT:  I don't have the Montgomery County

12   Circuit Court records, so I can't take judicial notice of

13   something I don't have.

14          THE WITNESS:  Okay.  Well, it was never mailed back,

15   physically mailed back, a certified copy of the remand order,

16   which is required by Fourth Circuit case law, which I'll get

17   to.  All right.

18          And then just to show you that jurisdiction never

19   left the Florida court, I filed a notice of appeal at 9:17

20   a.m. of her order, under recent Fourth Circuit precedent, that

21   automatically stayed any actions by Judge Delano until that

22   appeal was resolved, which wasn't resolved until months later.

23   And under the Fourth Circuit case law -- which, I'm happy to

24   give you a copy of the case.  I made a copy for you.  May I

25   hand this up, please, to you?



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1           THE COURT:  What is that?

2           THE WITNESS:  Fourth Circuit published decision,

3    recently entered, (indiscernible) --

4           THE COURT:  Okay.  Why don't you do that as part of

5    your argument?  You're not arguing law now.  You're testifying

6    as to facts.

7           THE WITNESS:  Okay.  So once I filed the appeal at

8    9:17 a.m. on January 3, there could be no order of remand.

9    Judge Delano's hands were tied.  That's the published

10   decision.  And until everything was resolved, it would only be

11   then that she could return jurisdiction to the Montgomery

12   County Circuit Court.  That means, which I'll -- you'll see in

13   the appeal very clear, that everything that happened in the

14   Montgomery County Circuit Court after 9:17 a.m. on January 3

15   is void, period.

16          So another thing is that I also filed a motion for --

17   I want to also note, in her order granting emergency motion

18   for remand, she reserved jurisdiction to supplement this

19   order, so she still had jurisdiction.  Jurisdiction never

20   returned to Montgomery County Circuit Court.  And then she had

21   jurisdiction.  I filed a motion for rehearing in that

22   adversary, which Judge Delano did not resolve until January 31

23   of 2023, when -- and Mr. VerStandig filed a opposition to my

24   motion for rehearing in the middle of January somewhere.  And

25   Judge Delano entered an order denying debtor's motion to

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1    reconsider, alter, amend order granting emergency motion to

2    remand.

3              And it was only at this point -- which, according to

4    the Fourth Circuit decision, she couldn't -- she shouldn't

5    have even done this.  But it was only at this point that she

6    says, on January 31, 2023, since she had reserved jurisdiction

7    in the January 3 order, and the court exercises its discretion

8    to relinquish jurisdiction of the removed case to the state

9    court.  So she had jurisdiction all the way up until she

10   entered this order on 1/31/23.  And of course, she had

11   jurisdiction because Mr. VerStandig was filing pleadings in

12   the case down there in the middle of January.  And then we'll

13   get to the -- and it was on appeal in the United States

14   District Court for the Middle District of Florida.  And then,

15   like I said, we'll get to this case, which this court is bound

16   by.

17             I would note that -- that Mr. -- that the King

18   parties, through Mr. VerStandig, filed a motion in the state

19   court -- the Montgomery County litigation specifically taking

20   the position that the automatic stay and the debtor's Florida

21   bankruptcy court -- debtor's Florida bankruptcy case, quote --

22             MR. VERSTANDIG:  Your Honor, same objection.  He's

23   referencing a document that's not on the docket here, that's

24   not on exhibit list because there was no exhibit list.  I

25   don't dispute that it exists.  I'm not saying it would be

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1    hearsay.  Apparently, it's a statement by my clients.  I'm

2    disputing that because we weren't given notice to prepare,

3    this is essentially trial by ambush.

4            THE COURT:  What are you reading from, Mr. Myers?

5            THE WITNESS:  I'm reading from an excerpt from a

6    motion that Mr. VerStandig filed in the state action.

7            THE COURT:  You cannot read from that.  Set it aside.

8    You can testify from your recollection.  Mr. Myers, set it

9    aside now.  You can testify based on your recollection.  You

10   cannot read from it.  Mr. Myers, set it aside.

11           THE WITNESS:  I'm trying to put it aside, Your Honor.

12           MR. VERSTANDIG:  Thank you, Your Honor.

13           THE WITNESS:  Mr. VerStandig filed a motion in the

14   Montgomery County -- in the state court litigation where he

15   referenced the automatic stay and acknowledged -- this was

16   after he added me as a defendant in the alter-ego claim.  And

17   he said that the case could not go forward against Serv Trust

18   without me based on the Robbins (ph.) and Queenie (ph.) line

19   of cases, which you're familiar with, and the Fourth Circuit

20   line of cases, because we would be basically joined at the

21   hip.  And because of Judge Delano's order, because no case --

22   no claim could go forward against me, then no claim could go

23   forward against Serv Trust.  And that was Mr. VerStandig's --

24   that was the King parties' statement on the record to the

25   Montgomery County Circuit Court.  And they're now judicially

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1    estopped from taking a different position.  They'll take any

2    position that serves them at the time.

3            So -- so based on Judge Delano's order staying all

4    claims against me, no claims against -- where I'm -- where I'm

5    individually involved as a defendant could go forward.  Based

6    on the -- Mr. VerStandig's own judicial admissions or the King

7    parties' own judicial admissions, those claims could not go

8    forward.  And in fact, in his memorandum, he said if they did,

9    any decision would be void.

10           So this is -- I'm looking at doc 22 filed in this

11   adversary proceeding, filed February 4 of '25, which is my

12   supplement to my preliminary objection to this bogus motion

13   for approval of proposed compromise and settlement with the

14   King plaintiffs.  And I attached as Exhibit H -- which was

15   admitted, or you took judicial notice of yesterday, but it's

16   in the record -- the December 16, 2022 hearing transcript in

17   the state court action, which is the consolidated King case

18   and Goldsboro case.  And -- and this was what Judge Lease said

19   on December 16th.  He was aware of the -- he had in his

20   possession the -- Judge Delano's order staying any claims

21   against me.  He said, "The matters against you are stayed in

22   this case".  And then he said -- I said, "If the King parties

23   prevail in either of their two counts, I have potential

24   liability".  Court, "Well" --

25           THE COURT:  So Mr. Myers, so the document, the



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1    transcript, is in evidence, which means I have read it.  I

2    read it last night.  I'll read it again.  You may want to

3    spend your time testifying about facts instead of reading from

4    documents that are in evidence, because you're just taking up

5    valuable time.

6         THE WITNESS:  I'm not going to be that much longer,

7    so I'd like -- I'd like to --

8         THE COURT:  Okay.  All right.  Then, do what you

9    wish.

10        THE WITNESS:  I'd like to make sure everybody hears

11   this.

12        Judge Lease said, "If the King" -- Mr. Myers, "If

13   King parties prevail in either of their two counts, I have

14   potential liability, individual liability".  The court, "Well,

15   they would have to then prove those counts against you in a

16   separate trial, and the matter would not be -- there would not

17   be any collateral estoppel or res judicata because you did not

18   participate in the case as a party, you were stayed and out of

19   the case, there would not be a ruling" -- this is Judge Lease.

20   "There would not be a ruling that would impose liability on

21   you, these plaintiffs would have to -- if they wanted to

22   proceed against you, would be required to try that matter

23   again separately, and there would not be any res judicata or

24   collateral estoppel issues because you were not a party to

25   that case at that time, because, well, you were stayed, so you

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1    were not considered a party".  The court, "And again, the

2    matters" -- referring to Judge Delano's order, "And again, the

3    matters against you in this case have been stayed", very clear

4    with the parties here, apparently not with some.

5         The court -- I said -- let's see.  He goes on to say,

6    "Because to the extent that they want to come back

7    subsequently and seek these claims against you, they're going

8    to be required to retry that case against you without the

9    benefit of anything that occurred in the case against Serv

10    Trust".  "But if these claims survive the bankruptcy and come

11    into court, then they'll have to try them all over again

12    against me".  "You're not a live party in this case right now

13    because the upcoming trial does not involve you".

14         And then Judge Lease discussed the case of -- he

15    called it Frow.  It's Frow v. De La Vega, 82 U.S.C. 15 Wall.,

16    1872.  And he said it applies in Maryland.  And essentially,

17    having a trial against Serv Trust with me not being there, and

18    based on these Robbins and Queenie line of cases, and based on

19    the Fourth Circuit case -- and I can't recall the name of it

20    right now.  It escapes me.  Could be Celotex; I don't know.

21    It says, "And such an incongruity, it seems, did actually

22    occur in this case", where --

23         THE COURT:  And where are you reading from?

24         THE WITNESS:  This is on page 4 of 7.

25         THE COURT:  Okay.



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1          THE WITNESS:  "If the court, in such a case as this,

2    can lawfully make a final decree against one defendant

3    separately on the merits while the cause was proceeding

4    undetermined against the others" -- that would be me.

5          THE COURT:  What document are you reading from?

6          THE WITNESS:  This is document 22 in this case, page

7    4 of 7.

8          THE COURT:  Okay.  Just give me a moment so I can get

9    there.  So this is your supplement to your objection?

10          THE WITNESS:  Yes, ma'am.

11          THE COURT:  Okay.  Give me a moment.  Let me get

12    there.  Okay.  You may proceed.

13          THE WITNESS:  So this is Frow, the case that Judge

14    Lease mentioned many times in -- in the January 3 hearing.  He

15    told them right up front that they couldn't do anything with

16    anything he did that day.  I have that transcript here.

17          At any rate, Frow says, "If the court in such a case

18    as this can lawfully make a final decree against one defendant

19    separately on the merits while the cause was proceeding

20    undetermined against the others, then this absurdity might

21    follow:  there might be one decree of the court sustaining the

22    charge of joint fraud committed by the defendants, and another

23    decree disaffirming the said charge and declaring it to be

24    entirely unfounded and dismissing the complainant's bill.  And

25    such an incongruity, it seems, did actually occur in this

escribers

www.escribers.net | 800-257-0885

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1  case."  And it did in my case, in that Maryland case.  And it

2  says, "Such a state of things is unseemly and absurd as well

3  as unauthorized by law."  That's exactly what happened on

4  January 3.

5       And it says, "It has long been established that

6  courts", quote, "can make no decree affecting the rights of an

7  absent person and can make no decree between the parties

8  before it which so far involves or depends upon the rights of

9  an absent person that complete and final justice cannot be

10  done between the parties to the suit without affecting those

11  rights".  And that's Greeley v. Lowe, 1894.

12       And then Republic of Philippines, [Pi'-men-tel], [Pi-

13  men'-tel], U.S. Supreme Court, 2008, "Recognizing that the" --

14  this is the U.S. Supreme Court.  "Recognizing that the

15  nonjoined parties would not be bound by the judgment in an

16  action where they were not parties".  I was not a party to

17  that action.  I -- there can be no alter-ego decision against

18  me.  Judge Lease made that clear.  He goes, they're going to

19  have to come back and retry the whole case, and he even told

20  them it was a waste of time.  But they insisted on going

21  forward because, in my opinion, Mr. Schlossberg was going to

22  take any piece of paper that got him anywhere close to saying

23  that Serv Trust was property of this estate to come in here

24  and do -- try and do exactly what he's doing.  Okay.

25       And further, and -- I'll do this more in -- I'll do



www.escribers.net | 800-257-0885

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1    this in closing argument.

2          So this is the transcript that I did not type up

3    myself, was done by eScribers.  It's a transcript.  I paid for

4    it.  It's ordered it from the Montgomery County Circuit Court.

5          THE COURT:  And you cannot refer to it, so set it

6    aside.

7          THE WITNESS:  Why not?

8          THE COURT:  Because you didn't pre-file it as an

9    exhibit, even though I gave you numerous opportunities to do

10   that.  You didn't follow the Court's protocol.  It's been on

11   the Court's website for ages.  It was sent to you two months

12   ago.  It was sent to you again two weeks ago.  You didn't

13   comply with it.  Then, as a courtesy to you, giving you yet

14   another opportunity, I gave you until 9 o'clock last night to

15   pre-file any exhibits.  You didn't do it.  And as I've told

16   you numerous times, if it's something that's on the docket in

17   your bankruptcy case or this adversary proceeding, I will

18   consider it.  But that is a transcript from the Montgomery

19   County proceeding that is at least an inch thick.  I don't

20   recall seeing that on the docket.  You can correct me if I'm

21   wrong.

22         THE WITNESS:  I did not file this in the case, but I

23   will.

24         THE COURT:  Okay.  Well, it's not on the docket now,

25   and I'm not going to consider it for purposes of this



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1    application --

2            THE WITNESS:  But I can't read from it?

3            THE COURT:  -- the claim objections.  And you cannot

4    read from it.

5            THE WITNESS:  That's the rule --

6            THE COURT:  You can testify from the best of your

7    recollection of what may have happened, and I will allow that,

8    which, frankly, I shouldn't be doing, either, because the best

9    evidence, as you said, is the transcript.  But I'm trying to

10   give you some leeway here, Mr. Myers.

11           THE WITNESS:  Okay.

12           THE COURT:  So maybe instead of arguing with me about

13   it, you should take advantage of the benefit I'm trying to

14   give you.  I'm giving you way more than I would give --

15           THE WITNESS:  I just put it down.

16           THE COURT:  -- normally in any situation.  I'm trying

17   to give you a break here.

18           THE WITNESS:  Okay.  So at the trial on January 3,

19   they completely ignored Judge Delano's order.  I wasn't a

20   party.  I wasn't present.  And Judge Lease specifically said,

21   there will be no adjudication today, anything I do today, you

22   can't do anything with.  That's what he told the parties in

23   that trial, there's nothing I do today that you can do

24   anything with because it would be a nonfinal judgment.  And a

25   nonfinal judgment is -- until there's a final judgment, it

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1   might as well be a proceeding memo, can't execute on it,

2   can't -- can't -- can't depend on it in another court to

3   determine rights.  It's a nonfinal judgment.

4         Judge Lease was also concerned, based on what I just

5   told you, that they were going forward with the alter-ego

6   claim in light of Judge Delano's order and in light of the

7   Frow doctrine, which he had referenced to them many times.

8   And he said, I'm concerned that you're trying to establish an

9   alter ego with Mr. Myers, he's not here, and that would

10  establish liability against him.  And of course, Mr.

11  VerStandig did his dance and tried to get out of it, and you

12  know, his Kafkaesque stuff he does, and -- but here -- here's

13  the important part.

14        (Counsel confer)

15        THE WITNESS:  Yeah, Mr. VerStandig uses that word all

16  the time.

17        Here's the important part.  The Serv Trust document

18  was never placed into evidence in the Montgomery County

19  Circuit Court, intentionally.  And Judge Lease specifically

20  asked, is that a revocable trust.  And Mr. VerStandig

21  represented to the court, counterfactually, that it is.  It is

22  an irrevocable spendthrift trust.  Mr. VerStandig lied to the

23  court.

24        Mr. Mastro, when the court said he's concerned about

25  going forward, misconstrued Judge Delano's order and said, oh,



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1    well, that -- that only applies if Mr. Myers is a trustee,

2    which is complete garbage.  You can read the order.  It's

3    clear as day.  So Mr. Mastro intentionally misled the Court.

4    Anyway, I'll file the transcript.

5           Your Honor, yesterday we discussed Mr. VerStandig's

6    conflict of interest and Offit Kurman's conflict of interest.

7    And because in -- which, I did file Judge Dwyer's hearing

8    transcript, where Mr. VerStandig states in that transcript

9    that the trustee asked us to pursue this claim.  And that's

10   relevant because Mr. VerStandig was my client --

11          MR. SCHLOSSBERG:  Your Honor, I just heard that this

12   was filed.  Where was it filed?  I'm trying to keep track of

13   those things.

14          THE COURT:  Where was it filed, Mr. Myers?

15          THE WITNESS:  Filed last week, in this case.

16          THE COURT:  Where?  Where was it --

17          THE WITNESS:  This case.  Judge Dwyer's transcript

18   was a copy -- an exhibit.

19          THE COURT:  And where does that appear?

20          THE WITNESS:  It's --

21          THE COURT:  It was filed in the main bankruptcy case

22   or the adversary?

23          THE WITNESS:  No, in the adversary.

24          THE COURT:  Okay.  Where is it?

25          THE WITNESS:  It was very recent.  We had this



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1   hearing on Monday, so it might have been -- you said you saw

2   it docketed on Friday or Thursday.

3          THE COURT:  What are you talking about, the motion to

4   dismiss or the motion to intervene?

5          THE WITNESS:  Motion to dismiss, probably.  Is there

6   an attachment, Judge Dwyer's hearing transcript?

7          THE COURT:  Okay.  Give me a moment here.  All right.

8   He filed a motion to dismiss this adversary proceeding on

9   Friday, June 27th at 5:20 p.m.  And Exhibit B, which of

10  course, the Court has not reviewed, looked at, or considered,

11  is a transcript of a motions hearing from September 23rd,

12  2019.  Is that what you're referring to?

13         THE WITNESS:  In the state court action.

14         THE COURT:  In the Montgomery County action.

15         THE WITNESS:  When -- and -- and with Judge Dwyer.

16         THE COURT:  Okay.  All right.  Continue.

17         THE WITNESS:  Yes, that's what I'm referring to.

18         MR. SCHLOSSBERG:  Is that attached, Your Honor?

19         THE COURT:  It's attached as Exhibit B to Docket No.

20  45, filed on Friday evening.

21         MR. SCHLOSSBERG:  Court's indulgence just a moment,

22  Your Honor.

23     (Counsel confer)

24         MR. SCHLOSSBERG:  Your Honor, I don't want -- I don't

25  want to confuse the situation.  I'll reserve that because in



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1    any event, I object.  I renew the objection I've been making

2    throughout.  I object to it.  It was not on the exhibit list,

3    which doesn't exist.  It was not provided to us.  And he's now

4    in court without copies for the parties, and we're supposed to

5    meaningfully consider this.  Respectfully, Your Honor, it's

6    not fair to the parties.

7           THE COURT:  Understood, Mr. Schlossberg, and I will

8    tell you that I am going to take a break to hear two hearings

9    this afternoon.  And the parties will come back for closing

10   argument after that, so I will give you an opportunity to

11   review it, so we will --

12          MR. SCHLOSSBERG:  I'm sorry, Your Honor.  We all

13   thought that we were hard stop at 1:30.

14          THE COURT:  His case ends at 1 o'clock, is what I

15   said.  He has until 1 o'clock to put on his case.

16          MR. SCHLOSSBERG:  Oh, so you had a docket after that.

17   I'm sorry.  I assumed that -- I know my cocounsel assumed that

18   we were done then.  Frankly, I made other -- I'll cancel my

19   plans.  No problem.  This is important.

20          THE COURT:  Let's talk about it after the witness is

21   off the stand.  Okay?

22          MR. SCHLOSSBERG:  All right.  All right.

23          THE COURT:  I'll work with the parties on timing.

24          MR. SCHLOSSBERG:  All right.  Thank you.

25          THE COURT:  All right.  And I'm going to -- we will



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1    make five copies of -- it's Docket No. 45-2.  And we will mark

2    that as Debtor No. 9.

3    (Transcript was hereby marked for identification as Debtor's

4    Exhibit 9, as of this date.)

5           THE COURT:  So we will have those copies momentarily

6    for everyone.

7           Mr. Myers, please continue.  So the Court will take

8    judicial notice of the transcript from September 23rd, 2019.

9    All right.  Please continue, Mr. Myers.  You have about thirty

10   minutes left.  You said you were wrapping up.

11          THE WITNESS:  So Judge Lipp, the U.S. Trustee, Mr.

12   VerStandig -- he was at my 2004 examination of my main case --

13   they all had the Serv Trust document.  Serv Trust document was

14   established in 2010 by my mother, who's now deceased.  She was

15   the settlor.  I was not a settlor.  I am not a beneficiary.  I

16   am simply a cotrustee.  And Serv Trust -- not by me, but by

17   Daniel J. Ring, my mother's CPA, the other cotrustee.  Daniel

18   J. Ring, in 2012, I believe it was, filed articles of

19   incorporation up in the State of Maryland and established 6789

20   Goldsboro LLC.  I didn't.  And 6789 Goldsboro LLC was owned

21   one hundred percent by Serv Trust, not me.

22          6789 Goldsboro LLC then entered into a -- through a

23   term sheet, through a mountain of paper where the King parties

24   had counsel.  Serv Trust was represented by Pillsbury (ph.).

25   There were term sheets.  There were operating agreement



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1    drafts.  Okay.  There was -- there is zero debate that I have

2    no interest in Serv Trust.  Any suggestion by Mr. VerStandig

3    and his clients is bogus because the first time anybody ever

4    mentioned that Serv Trust was my property was two months after

5    Judge Albright told Mr. VerStandig that that memorandum of

6    understanding was an enforceable contract and that his client

7    was going in front of a jury for fraud.

8         Mr. VerStandig scrambled, looked for a way out the

9    back door, Montgomery County Circuit Court.  And then he

10   colluded with Roger Schlossberg to come up with this bogus

11   alter-ego thing, and there is no connection to me.  This --

12   none of the cases -- you can read a million of them.  They all

13   involve people who own property and put it into their own

14   self-settled trust, anything like that.  I've never put any

15   property into Serv Trust.  I have never had any ownership in

16   6789 Goldsboro LLC, and the King parties have admitted this

17   over and over.  And that's why I said yesterday, when Mr.

18   Schlossberg is reading one document, there are numerous

19   documents associated with 6789 Goldsboro LLC that confirm,

20   confirm, affirm that all of what I just said is true, that I

21   have no interest in it.

22        It's -- so -- so what happened on January 3 in the

23   Montgomery County Circuit Court is irrelevant.  It's not over.

24   There -- I'm going -- there's going to be more proceedings.

25   And I will -- in my opinion, the circuit court didn't have



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1    jurisdiction because of Judge Delano's order, because it was

2    removed and never remanded.  And therefore, even if --

3    notwithstanding those two things, Judge Lease made clear, you

4    all, meaning the King parties and Goldsboro, need to come back

5    to my court because nothing I do today -- you can't use

6    anything I do today, there is no adjudication.

7         And as I mentioned yesterday in cross-examination,

8    I -- I told the Court that Mr. VerStandig filed in the

9    Maryland Court of Appeals, and he confirmed exactly that.

10   Those were his words, and the trustee joined in it, that there

11   is no adjudication of any claim against any party in the

12   Montgomery Circuit Court proceeding.

13        So where does that bring us?  That brings us to a

14   trustee that has come into this court, filed a 9019 settlement

15   motion with the King parties.  And he's -- and he's trying to

16   obtain money payment from the King parties, and he in -- in

17   turn is fraudulently conveying to them property that this

18   bankruptcy estate does not own.  There has never, ever been an

19   adversary filed by Mr. Schlossberg against Serv Trust, which

20   would have to happen under 547.  He was time-barred from doing

21   so.  He then asked VerStandig and the King parties to

22   prosecute it.

23        And to the extent there is a conflict of interest

24   because VerStandig represented me -- and by the way, you were

25   going to rule on it today.  I -- I have the -- there's two

escribers

www.escribers.net | 800-257-0885

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1  motions for disqualification.  One was filed by my attorney in

2  the Florida case when Mr. VerStandig came down.  And I would

3  note for the Court, as soon as she filed it, he hightailed it

4  out of there.  He withdrew his appearance, so.

5      THE COURT:  And so what is it I'm ruling on today,

6  other than the --

7      THE WITNESS:  I'm asking -- I would like to have in

8  the record the motions for disqualification because I have

9  counsel here that are my former counsel, that are counsel to

10  6789.  There's legal bills in here.  There are -- it's

11  absolutely incontrovertible that Mr. VerStandig represented

12  6789 Goldsboro LLC, Serv Trust, me, and Offit Kurman did, as

13  well.  And because Mr. Schlossberg asked Mr. VerStandig to

14  bring that claim on behalf of the trustee, in the trustee's

15  stead, because he was time-barred, my contention is the

16  trustee is now disqualified, fruit of the poisonous tree.

17      So I would like to have in the record the records

18  because Mr. VerStandig stood up here yesterday, Judge, and he

19  lied to you.  He said he's never represented Serv Trust.  His

20  name is all over numerous invoices in 2013 discussing the 6789

21  Goldsboro development, discussing King.  Timothy Lynch, who

22  was my original attorney, who's the president of Offit Kurman,

23  is the ringleader of this whole thing.  He's Brian King's

24  personal attorney.  He introduced me to Brian King, and he

25  specifically put in writing that he could not, his firm could

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1    not, represent any parties if there was ever a disagreement.

2    Well, that went by the wayside when I got sideways with Offit

3    Kurman, but I've never waived my privilege.  Serv Trust has

4    never waived its privilege.  And 6789 Goldsboro LLC, when I

5    was a manager, never waived its privilege.  And Mr. VerStandig

6    is in the exhibits that are attached to this.

7            And then, by the way, that was won in the Florida

8    case.  In the Maryland state court action, Roger Simmons (ph.)

9    filed a motion to disqualify Mr. VerStandig.  And because I

10   was stayed and there was no final adjudication, Judge Lease

11   says, well, we haven't even taken up those motions yet.  So

12   none of those motions have even been heard yet because that

13   case is far from over.

14           And so my contention is, unless Mr. Schlossberg has

15   filed a 547 action against Serv Trust, a party who's never

16   filed a proof of claim in this case, to bring their property

17   into my bankruptcy estate -- and even -- and even Judge Lease

18   recognized that the claim that Mr. VerStandig was trying to

19   bring -- and you -- and you can see it in Judge Dwyer.  She

20   was confused, and they -- and they basically just ran her down

21   a rabbit hole and confused the hell out of her with a pack of

22   lies.  But she understood that alter-ego claims are the

23   exclusive property of the bankruptcy estate, and the trustee

24   is the only party that can bring them.  And he failed to bring

25   it.  He's time-barred, and -- and so he had the King parties

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1   go try and do an end run and get that property here, and that

2   doesn't work.

3           Even if the King parties file a claim in state court,

4   that doesn't obviate the fact that Mr. Schlossberg, the

5   Chapter 7 trustee, is time-barred, and he has to file an

6   action in this court.  This court has to determine that Serv

7   Trust is property of my estate, not the Maryland court.  The

8   Maryland court hasn't adjudicated it yet.

9           So this whole thing is illegal.  It's unlawful.  It's

10  unethical.  It smells.  And -- and -- and again, Serv Trust

11  never filed a proof of claim in my case, so this court has no

12  jurisdiction over Serv Trust.  And so he -- and -- and you

13  know, I'm not getting into the discussion of, could a trustee

14  enter into a settlement agreement if, in fact, the property

15  was property of the estate.  That's not the point of this.

16  The point of this is Serv Trust property is now property of

17  the estate.

18          And I read a bunch of case law last night, and this

19  court, before it can even consider a 1919 motion, has to make

20  a determination that what he's trying to do involves property

21  of the estate, and it doesn't.  It's the first thing.  Without

22  property of the estate, this court has no jurisdiction.

23  Without that res, this Court has no jurisdiction to resolve

24  state court claims that are going on.

25          And in fact, because -- as I mentioned earlier,



www.escribers.net | 800-257-0885

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1   because Serv Trust has a pending counterclaim and is not a

2   party in this case, it would -- the -- the most that could

3   happen would be findings of fact and conclusions of law that

4   could be submitted to the district court because it would be a

5   violation of Stern and Wellness and the rest of that pack of

6   cases, because Serv Trust is not here.  Serv Trust -- he's --

7   he's -- he's failed to -- to join all the indispensable

8   parties.  Dan Ring's not here.  I'm not a party, but I'm not a

9   trustee anymore, so I guess I don't have to be a party.

10  But -- but for Serv Trust's purposes, he'd need to join Dan

11  Ring, and he'd need to join all the beneficiaries.  It's their

12  property.

13          And it's a -- it's a common law trust.  It's right in

14  the document.  And King even recognized it was a common law

15  trust back in 2013 when VerStandig and Offit Kurman were

16  representing Serv Trust, 6789, and me, and Dan Ring.  And when

17  the term sheet was being put together -- and in the term

18  sheet, it says Serv Trust is a common-law trust.

19          So the fact that, you know, he wanted to bank on some

20  kind of statutory trust, even Judge Lease said, that's

21  irrelevant.  It doesn't really matter.  That trust agreement

22  is a contract.  The property belongs to the beneficiaries.

23  There is no possible way, under Maryland law, in a -- in a

24  common-law spendthrift trust, which Judge Lipp found is valid

25  and is for the benefit of my five children, the



www.escribers.net | 800-257-0885

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1    beneficiaries -- there is no way under Maryland law that a

2    trustee could -- could ever be charged with the res of that

3    trust, absolutely not a possibility.  It's not -- it's not my

4    irrevocable trust, and -- and it is -- it is irrevocable.

5            And it's disgraceful that Mr. VerStandig would lie to

6    the Court because he knew it's an irrevocable trust.  He's

7    been involved in many proceedings.  As a matter of fact, he

8    was there helping form the deal with the King parties in 2013

9    with Offit Kurman.  And I can certainly provide all the

10   invoices, and it's voluminous, voluminous.  He was involved in

11   the deal structure.  Offit Kurman represented me in the note

12   with the King parties.  Tim Lynch, Offit Kurman, and now he's

13   in bed with the trustee, which -- which is a conflict of

14   interest.  Trustees should be disqualified from this.  I mean,

15   you know, this whole thing is just a sham.

16           And I want to go to the valuation, end up at the

17   valuation.  The -- the property was purchased in 2013 for a

18   million, 350.  I get calls weekly --

19           MR. VERSTANDIG:  Objection.  Hearsay.

20           THE WITNESS:  Okay.  Fine.  This -- this appraisal

21   that was never let in was a total --

22           THE COURT:  The objection is sustained.

23           MR. VERSTANDIG:  Thank you, Your Honor.

24           THE WITNESS:  Yeah.  The -- the -- the -- Mr.

25   VerStandig tried to end run the memorandum of understanding



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1  that was executed, fully executed, and returned to King.  I

2  believe it was executed, if my memory serves me, September

3  12th, 2016.  We had come back from a meeting with Park and

4  Planning in August of 2016.  And Park and Planning said, we

5  love it, we didn't think you'd ever get the Army Corps

6  approval, we never thought you'd get the MDE approval, we love

7  it, nineteen townhouses.  That was in August.

8          MR. SCHLOSSBERG:  Objection.  Hearsay, Your Honor.

9          THE COURT:  That's all hearsay, Mr. Myers.

10          THE WITNESS:  Okay.  Well, is it hearsay if I'm

11  there?

12          THE COURT:  It's hearsay if it's someone else's

13  statement.

14          THE WITNESS:  Okay.  Well, after I was at a meeting

15  in August at Park and Planning, Brian King, not but three

16  weeks later and after the Warm L. (ph.) company sent us a

17  offer to buy the property for $8.5 million --

18          MR. SCHLOSSBERG:  Objection.  Hearsay.

19          MR. VERSTANDIG:  Objection.  Hearsay.

20          THE COURT:  That's all hearsay, Mr. Myers.

21          THE WITNESS:  Well, it's odd to me that the trustee

22  stands up here disingenuously because he wants to line his

23  pocket with $150,000 that he knows is never going to this

24  estate -- it's going right in his back pocket -- that he says,

25  oh, this property has no value.  Okay.  I was told, okay -- I



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1    can tell you that the estimated value of that property --

2         MR. SCHLOSSBERG:  Objection, Your Honor.

3         MR. VERSTANDIG:  Objection.

4         THE WITNESS:  My opinion.

5         MR. VERSTANDIG:  Foundation.

6         MR. SCHLOSSBERG:  Hearsay.

7         MR. VERSTANDIG:  Hearsay.  (Indiscernible).

8         THE COURT:  And he's misstating the trustee's

9    testimony, so.

10        MR. VERSTANDIG:  Thank you, Your Honor.

11        THE COURT:  The Court is aware.

12        THE WITNESS:  And I am an expert in land development.

13   I've been doing it for forty years.

14        MR. VERSTANDIG:  (Indiscernible).

15        THE COURT:  Okay.  Mr. Myers, please direct your

16   comments to the Court, and the objections are sustained.  So

17   if you want to testify as to what you believe the value is and

18   why you have the knowledge and the foundation to be able to

19   testify as to the value, then you can do that, Mr. Myers.

20        THE WITNESS:  Sure.  Broker price opinion obtained

21   from Cushman & Wakefield, the number-1 broker.

22        MR. VERSTANDIG:  Objection.

23        THE COURT:  Okay.

24        THE WITNESS:  That's where I obtained it from.  You

25   just --



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1        THE COURT:  And that's hearsay.  That --

2        THE WITNESS:  Okay.  My opinion of the value is 13.5

3  million.  Right now, townhouse projects are the hottest

4  product in the market.  I could sell that ten times over

5  for -- for $13 million.

6        MR. SCHLOSSBERG:  Your Honor, objection.

7        THE WITNESS:  My opinion.

8        THE COURT:  And your objection is overruled.  I'm

9  going to allow it, and I'm going to give it the weight that I

10  deem appropriate.

11        MR. SCHLOSSBERG:  Thank you, Your Honor.

12        THE WITNESS:  And when the Montgomery County

13  litigation proceeds forward -- and Serv Trust did have an

14  attorney, and he looked at the operating agreement.  And

15  there's no -- there's no requirement after you enter into a --

16  according to Judge Albright, a valid, enforceable agreement,

17  that you would never -- you would never then say, oh, ignore

18  the fact that there's a buyout agreement, and -- and the King

19  parties can come in September of 2016, they can come in, and

20  whenever Mr. VerStandig filed his bogus appraisal letter

21  trying to get out of the buyout agreement, and say, oh, well,

22  we want to redeem your property, and we're going to do an

23  appraisal.  Well, guess what?  He never did an appraisal.  The

24  appraisal, in his letter, he says he's going to do an

25  appraisal.  The appraisal that he came up with was two months



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1  old at that point, and it's a piece of crap, anyway, because I

2  have been doing development for forty years.  And --

3      MR. SCHLOSSBERG:  Objection, Your Honor.  It's

4  hearsay.  He's talking about the appraisal he brought -- he

5  came up with.  That obviously refers to something that's an

6  out-of-court declaration.

7      THE COURT:  The objection is sustained as to that,

8  but the Court --

9      THE WITNESS:  Yeah, I --

10      THE COURT:  -- will allow the remaining testimony.

11      THE WITNESS:  Yeah.  So Mr. VerStandig -- the King

12  parties never actually did an appraisal.  So the -- the --

13  the -- he sent a letter saying, we're going to do an

14  appraisal.  The fact that there may have been an old

15  appraisal, two months old or two years old or twenty years

16  old, is irrelevant.  They never did an appraisal.  And so it

17  wouldn't matter, anyway, because we would -- we would -- if

18  the memorandum of understanding is a valid, enforceable

19  agreement -- which it is.  Serv Trust filed the counterclaim,

20  breach of contract.  The King parties never filed an answer.

21  Therefore, they admit the allegations in the complaint.

22  They're in default, end of discussion.  And you know what?

23  That's all going to be decided by Judge Lease.

24      This is an end run around every -- this is -- I can't

25  think of anything more appropriate than -- and I -- and I said



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1   this right up front.  The minute he found anything, a nonfinal

2   order is not executable.  It's -- nothing you can do with it.

3   It means nothing.  It doesn't mean that Mr. Schlossberg has

4   anything.  He would have to, in this court, in this case, file

5   an adversary against Serv Trust.  And this court would then

6   have to determine with that adversary whether or not Serv

7   Trust property was property in my bankruptcy estate.

8          Judge Lease hasn't made any decision yet.  But even

9   if he did, or when he finally does, that still means nothing

10  to this court.  The bankruptcy court has exclusive

11  jurisdiction to determine whether something's property of the

12  estate.  And there's never been a proceeding in this case to

13  allow that to happen, and Mr. Schlossberg knows full well he's

14  time-barred, and he was time-barred a long time ago.  He stood

15  in here and told Judge Lipp, when she asked him, are -- is

16  there any -- any other things you're going to bring --

17         MR. SCHLOSSBERG:  Objection, Your Honor.  Hearsay yet

18  again.

19         THE WITNESS:  Well, you can look up the transcript.

20         THE COURT:  I'm going to allow it, Mr. Schlossberg.

21  Thank you.

22         THE WITNESS:  He -- he had -- he had Serv Trust in

23  front of him since he's been in this case.  He read the thing.

24  He knew it.  He knows it's a common-law spendthrift trust.  He

25  knows that, under well-settled law, it can never be property

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1    of this estate, and he passed on it.  And the only reason he's

2    here now is it's a freebie, which you can see in his

3    settlement thing, because the King parties are paying his

4    fees.  I have no idea whether they've already paid him some

5    money.  I suspect they have; I don't know.

6         But I can guarantee you, when I sue the King parties

7    for fraud, okay -- because I have an indemnity provision in

8    that operating agreement.  So the -- the 6789 Goldsboro LLC

9    has to indemnify me for any actions.  Okay.  And they -- they

10   didn't even bother to read that part.  And so I'm sure, when I

11   do discovery, I'm going to find out a lot of things about the

12   relationship between Mr. VerStandig and the trustee and Mr.

13   Mastro and the King parties and money that's changed hands, et

14   cetera, et cetera.  Okay.  So -- okay.  Judge Dwyer.

15        MR. SCHLOSSBERG:  I'd like to move to strike, Your

16   Honor, the scandalous remarks just made by Mr. Myers from the

17   witness stand.  He may have some immunity accorded to him as a

18   witness in this proceeding, but he doesn't have the right to

19   put scandalous, libelous remarks into the record, defamatory

20   to me, to Mr. VerStandig, to Mr. Mastro.  And I've sat

21   quietly, but just the last couple paragraphs -- and of course,

22   it's a very run-on paragraph.  But nonetheless, I think it

23   goes a step too far even for me to sit quietly.  The Court

24   knows we have an objection to the way this is being handled by

25   Mr. Myers.  But you can't allow that, Your Honor, I



www.escribers.net | 800-257-0885

1  respectfully submit.  And I ask that the Court strike all of

2  his remarks concerning some alleged relationship between me

3  and Mr. VerStandig, including the payment of an apparent bribe

4  of some sort.  I can't sit quietly, Your Honor.

5           THE WITNESS:  I didn't --

6           THE COURT:  I understand, Mr. Schlossberg.

7           MR. SCHLOSSBERG:  Thank you.

8           THE COURT:  The Court's going to overrule your

9  objection, and I understand the point that you're making.  But

10 frankly, I'm just trying to get Mr. Myers --

11          MR. SCHLOSSBERG:  I understand, Your Honor.

12          THE COURT:  -- to the point where he's put on his

13 case and --

14          MR. SCHLOSSBERG:  I'd just ask my objection be noted.

15          THE COURT:  It is noted.

16          MR. SCHLOSSBERG:  There'll be other litigation, or

17 there'll be some sort of proceeding somewhere.

18          THE COURT:  Understood.  Thank you, Mr. Schlossberg.

19          MR. SCHLOSSBERG:  Thank you.

20          THE COURT:  So the objection is overruled.

21          THE WITNESS:  Okay.  This is --

22          THE COURT:  Mr. Myers, you have about five minutes

23 left.

24          THE WITNESS:  This is Debtor's Exhibit 9.  This is

25 the hearing transcript, September 23, 2019, with Judge Dwyer



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1    in the state court action.  Judge Dwyer -- let me see.

2        (Pause)

3        THE WITNESS:  So this is on page 21 of 55.  This is

4    Mr. VerStandig talking.  "Thank you, Your Honor, Maurice

5    VerStandig again on behalf of the King parties, let me say at

6    the outset there's a bit of oddity to this motion, we joined

7    Mr. Myers as a necessary party because we're seeking

8    declaratory judgment on Serv Trust as an alter ego".  I was

9    not a party to that trial, so I was out of the case, according

10   to Judge Lease.

11       Then, he says -- on page 22 of 55, he tells Judge

12   Dwyer, "If Mr. Myers doesn't wish to be present to contribute

13   evidence or testimony or whatever it may be towards

14   adjudication of this matter, we have no objection to him being

15   let out of the case".

16       MR. VERSTANDIG:  Sorry.  What line?

17       THE COURT:  This is --

18       THE WITNESS:  Page 22 of 55.

19       THE COURT:  -- page 22 of 55, line 2.  So it's page

20   21 of the transcript, but 22 of 55 of the court stamp.

21       MR. VERSTANDIG:  Oh, thank you.  Sorry, that's --

22   thank you, Your Honor.

23       THE COURT:  You're welcome.

24       THE WITNESS:  Which page do you want me to refer to,

25   Your Honor, the docket page or the -- okay.



www.escribers.net | 800-257-0885

1          THE COURT:  Whatever you want to refer to, Mr. Myers.

2          THE WITNESS:  All right.  This is page 21 of the

3     transcript, page 22 of 55 of the court filing.  This is Mr.

4     VerStandig.  "If Mr. Myers doesn't wish to be present to

5     contribute evidence or testimony or whatever it -- whatever it

6     may be towards adjudication of this matter, we have no

7     objection to him being let out of the case, he is here solely

8     as a necessary party, and they" -- referring to Serv Trust,

9     and I guess, me.  I don't know.  They, being our side.  "And

10    they are very much accurate when they say we are not

11    asserting, meaning my client, I don't speak for Mr. Pelletier

12    (ph.), we are not asserting a monetary claim against them".

13          He brought a -- he brought an improper declaratory

14    judgment action after Serv Trust filed the counterclaim.  And

15    he specifically told Judge Dwyer that -- that the only reason

16    he bought -- brought Count 2 is because Serv Trust filed the

17    counterclaim.  And so he's using a declaratory judgment action

18    as an affirmative defense to Serv Trust's standing to sue the

19    King parties.  Under Maryland law, that's completely

20    unallowed.  You cannot bring a declaratory judgment action to

21    assert an affirmative defense that you can assert in a -- in a

22    pending counterclaim.  That's not a proper declaratory

23    judgment action.

24          (Pause)

25          THE WITNESS:  And confirming that, on page 22 of the



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1    transcript, page 23 of 55, Mr. VerStandig tells the Court,

2    "Your Honor, my clients are being sued by Serv Trust for" --

3    this is the counterclaim -- "for myriad claims that are not

4    subject to today's motions, but that are part of this case, my

5    clients are being sued for breach of fiduciary duty, breach of

6    contract, constructive fraud, and so on and so forth, our

7    position, very simply, is that Serv Trust cannot sue us for

8    these things because it does not own any litigation rights to

9    such claims, to the extent they exist at all".  Okay.  There's

10   been no ruling yet, and he's already making this statement.

11   "And the reason" -- let's see.  Blah, blah.  Okay.

12        So he sums up his -- his Count 2 on page 23 of the

13   transcript, page 24 of 55.  This is -- this is what Mr.

14   VerStandig describes his Count 2 alter ego as.  "In terms of

15   what is there that is a justiciable controversy, that is it,

16   we have alleged that they don't have standing, to be sniping

17   at us, for lack of a more eloquent term, and that in reality,

18   the claim endeavored to adjudicate in this court belonged to

19   the bankruptcy trustee".  You can't bring a declaratory

20   judgment action to raise an affirmative defense that -- when

21   there's a pending counterclaim.  You have to raise it in the

22   counterclaim.

23        (Counsel confer)

24        THE WITNESS:  Yeah, I'm smarter than you think, Mr.

25   Schlossberg.



www.escribers.net | 800-257-0885

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1          THE COURT:  Mr. Myers, please do not make any more

2    comments to the parties in this case.  Direct your comments to

3    the Court, please.

4          MR. VERSTANDIG:  I would note that it is 1:02 on the

5    East Coast.

6          THE COURT:  Thank you, Mr. VerStandig.

7          Mr. Myers, are you wrapping up?

8          THE WITNESS:  Yeah, I'm wrapping up.  I'm -- I'm just

9    getting through to the end of this.  This will be it.

10         MR. SCHLOSSBERG:  With due respect, Your Honor, at

11   twenty minutes after 12, we were told he was wrapping up and

12   wouldn't be using all the time to 1 o'clock.  We're now after

13   1 o'clock.  We have a very short window of opportunity.

14         THE COURT:  Understood, Mr. --

15         MR. SCHLOSSBERG:  Thank you.

16         THE WITNESS:  I'm almost finished.

17         THE COURT:  -- Schlossberg.

18         THE WITNESS:  So -- so he tells Judge Dwyer on

19   September 23, 2019 these are assets of the bankruptcy court.

20   There was -- there was no proceeding in this bankruptcy case

21   on 23 -- in 2019 determining that Serv Trust property was

22   property in my bankruptcy estate.  Mr. Schlossberg was time-

23   barred.  He never brought an adversary against Serv Trust.  So

24   that's a -- that's a false statement.  He says, we seek that

25   determination.  Well, that determination is the sole province



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1    of the Chapter 7 trustee, but he's time-barred, so he couldn't

2    bring it.  And the King parties didn't have derivative

3    standing, and Goldsboro didn't have derivative standing.  This

4    court's never given them derivative standing, and Mr.

5    Schlossberg has never abandoned any claims or causes of

6    action.

7         (Pause)

8         THE WITNESS:  And so Judge Dwyer is confused after

9    hearing all of the argument.  And she says, "So I guess I

10    just -- how do I not take into consider [sic] what Mr. Andrews

11    (ph.) argues because the alter -- alter-ego claims" -- and

12    then she says, "So tell me what I'm missing, alter-ego claims

13    belong to the trustee exclusively".  She wasn't missing

14    anything, but then they pulled the wool over her eyes.  And

15    VerStandig says, the very next line -- I'm sorry.  This is on

16    page 26 of the transcript.  Judge Dwyer, "Alter-ego claims

17    belong to the trustee".  VerStandig, "Yes" -- and here's

18    the -- here's the line I was looking for.  "Yes, the trustee

19    has asked us to pursue such matters in this case, and the

20    bankruptcy court has been very clear in suggesting, through

21    its order of extension, that the state court litigation was

22    ongoing and" -- blah, blah.  So he's basically misleading

23    Judge Dwyer into thinking that he has some kind of an order

24    granting him derivative jurisdiction.  He --

25         THE COURT:  And what page is that, Mr. Myers?



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1          THE WITNESS:  That is on page 26 of the transcript,

2    page 27 of 55.

3          THE COURT:  Okay.

4          THE WITNESS:  He basically lied to Judge Dwyer.

5    "Alter-ego claims" -- Judge Dwyer, "Alter-ego claims belong to

6    the trustee".  Mr. VerStandig, "Yes", confirms that they're

7    not his claims.  He has no standing to even bring them.  Then,

8    he says, "The trustee has asked us to pursue such matters in

9    this case".  And the -- and the bankruptcy court, he -- he

10   insinuates, is okay with this, which it wasn't.

11          This is an interesting statement he made in that same

12   page, page 26.  He says to Judge Dwyer, "If my" -- I'm

13   paraphrasing the beginning.  He says, "If you prevail on my

14   clients.  "If my clients prevail, they don't have the right to

15   start seizing Mr. Myers' assets".  I guess he's assuming --

16   talking about Serv Trust assets, not my assets.  At any rate,

17   he says, "I think that's a critical distinction".  He says,

18   "My clients can't do anything".  He says, at the end, "The

19   benefit of the claim goes to the bankruptcy trustee and then

20   derivatively to the creditors of Mr. Myers' bankruptcy

21   estate".  Well, he knows that's wrong.  That claim was always

22   the bankruptcy trustee's, and he's time-barred from bringing

23   it.  And Mr. VerStandig and the King parties have no

24   derivative standing to bring it.

25          This is interesting.  I don't know what he meant by



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1  this, but he says, "Even -- even then, Mr. Schlossberg, in the

2  bankruptcy court, would have to take discovery, determine what

3  those assets are, to levy upon them, to seize upon them, to

4  liquidate them, and to proceed accordingly".  So he still has

5  to take some action in this case.  And of course, the minute

6  he files the adversary proceeding, it's going to get dismissed

7  because it's time-barred to obtain Serv Trust property.

8          THE COURT:  Wrap it up, Mr. Myers.

9          THE WITNESS:  And Mr. VerStandig says, "My client

10  would have no standing to do that".  This is interesting.

11  "And candidly, my client, the King parties, have no interest

12  in doing that because my client, the King parties, is not a

13  creditor of the bankruptcy estate", meaning my estate.  Yet

14  they're filing a proof of claim.

15          THE COURT:  You have two minutes.

16          THE WITNESS:  He says, "We're not trying to pierce

17  the veil for purposes of recovering a monetary judgment".  You

18  can't do any of this in Maryland.  He's already said earlier

19  in a number of proceedings that there is no fraud, we're not

20  alleging a fraud.  And by the way, he said in an original

21  proceeding -- when he -- when he did his opening remarks with

22  Judge Albright, he said, first year, no problem, second year,

23  no problem.

24          MR. SCHLOSSBERG:  Objection, Your Honor.  Hearsay yet

25  again.



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1          THE COURT:  Mr. Myers --

2          THE WITNESS:  Anyway.

3          THE COURT:  -- you have thirty seconds.

4          THE WITNESS:  Mr. Mastro.  This is the bottom of page

5    28 of the transcript.  "And really, I think the purpose of me

6    standing here is not necessarily to argue one side or another,

7    but to just advise the court that, you know, in bankruptcy

8    cases, it's not uncommon for trustees to have very limited

9    resources to pursue all these actions, so many times a

10   creditor will pursue an action, and the creditor in this case

11   has been authorized by the trustee to do that".

12         THE COURT:  All right.  Thank you, Mr. Myers, for

13   your testimony.  You may return to your seat.

14         THE WITNESS:  And I'm sorry.  Let me just read the

15   one next sentence.  It's important.

16         THE COURT:  No, no.  Mr. Myers, return to your seat.

17   Thank you.

18         THE WITNESS:  "I believe" --

19         THE COURT:  All right.  Mr. Myers, return to your

20   seat.

21         THE WITNESS:  He said this has all been filed with

22   the bankruptcy --

23         THE COURT:  Mr. Myers, return to your seat.

24         THE WITNESS:  Yeah.  This is a sham.

25         THE COURT:  Take your documents with you that are not



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1    marked as exhibits.  All exhibits should remain on the stand.

2    We have Debtor's Exhibits 1 through 9 on the stand at this

3    point.  All right.

4           So let's talk about where we go from here.

5           Mr. Mastro, do you have cross-examination for this

6    witness?

7           MR. MASTRO:  No, Your Honor.

8           THE COURT:  Mr. VerStandig?

9           MR. VERSTANDIG:  No, Your Honor.

10          THE COURT:  All right.  All right.  Mr. Myers, that

11   completes the presentation of evidence in your case.  So we

12   have --

13          MR. MYERS:  I just want the record to show that you

14   cut me short.

15          THE COURT:  Noted.

16          So we have closing arguments left.  Let's talk about

17   the timing of that.  So the Court has hearings at 1:30 and 2

18   o'clock.  We can come back this afternoon and have closing

19   arguments, or we can set another time to do that.

20          MR. VERSTANDIG:  We'll be here today, Your Honor.

21          MR. SCHLOSSBERG:  Yeah.

22          THE COURT:  All right.

23          MR. MYERS:  Your Honor, let me get off the witness

24   stand so I can stand down there, because I'm going to make a

25   different suggestion.



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1        THE COURT:  Make sure you leave the debtor's exhibits

2    on the witness stand, please.

3        MR. MYERS:  (Indiscernible).

4        THE COURT:  Okay.  Well, I saw you walking off.  I

5    just want to make sure you're doing that.  Take your time, Mr.

6    Myers.

7        (Pause)

8        MR. VERSTANDIG:  Your Honor, to aid the Court in

9    assessing what's needed for closing, I can share that my

10    closing is not drafted, but sketched.  I have my outline.  I

11    reasonably anticipate, without being hyperbolic, that it'll

12    take approximately five minutes.

13        THE COURT:  Okay.  Mr. Mastro, how much time do you

14    need for your closing?

15        MR. MASTRO:  I think about fifteen minutes.

16        THE COURT:  All right.  Mr. Myers, we can put them in

17    order.  That's fine.

18        MR. MYERS:  Nine total exhibits, right, Your Honor?

19        THE COURT:  Nine exhibits, and we can put them in

20    order.  Thank you.

21        MR. MYERS:  I wanted to make sure I'm not walking off

22    with them.

23        THE COURT:  Mr. Myers, how much time do you need for

24    your closing?

25        MR. MYERS:  Your Honor, I'm going to make a request



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1    that we be allowed to file supplemental briefing on all this

2    so that you have it in front of you.  There's criminal

3    activity here.  There's collusion.  There is --

4         THE COURT:  Your request is denied.  I don't need any

5    further briefing.  Thank you, Mr. Myers.

6         How much time do you need for your closing?

7         MR. MYERS:  At least an hour.

8         THE COURT:  An hour.  Okay.  All right.  I'm going to

9    ask you to come back at 3:30.  I just want to make sure

10   that -- I don't want to bring you back and have you sit in the

11   courtroom while I'm hearing another matter.  You're welcome

12   to.  I will be doing my afternoon hearings by Zoom, so I'll be

13   doing them sitting here on the bench through my computer in

14   front of me.  You're welcome to come back at any time.  But

15   why don't we plan to start at around 3:30?  I'm hoping the

16   other two matters will be wrapped up by then.  I think they

17   will be, but I just want make sure that we have ample time,

18   and then I will give both sides one hour for closing

19   arguments.  It sounds like the trustee and the King parties

20   will not need a full hour.  I will give Mr. Myers one hour.

21        MR. VERSTANDIG:  Your Honor, Court's indulgence for

22   one moment.

23        THE COURT:  Yes.

24        MR. MYERS:  Your Honor, I'd like to make an ore

25   tenus --



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1          THE COURT:  Hold on.

2      (Counsel confer)

3          MR. VERSTANDIG:  Your Honor, we look forward to being

4    back at 3:30.

5          THE COURT:  Okay.  3:30, Mr. Myers?

6          MR. MYERS:  Your Honor, I'd like to make an ore tenus

7    motion for disqualification of Mr. VerStandig.  He's my

8    attorney.  He's been my attorney.  He's been the attorney for

9    6789 Goldsboro LLC and for Serv Trust.  There's documentation

10   of that.  And now, the trustee has jumped in bed with him, so

11   there's a conflict there.  And I request a continuance to file

12   a motion to disqualify him.  I should not be -- I should not

13   be forced to -- as a pro se litigant, to be here litigating

14   against my own attorney who is involved in this very

15   transaction and was for years, its formation.  He represented

16   the King parties.  He represented me.

17         THE COURT:  Mr. Myers, I'm not ruling on any motions

18   to disqualify today.  If you wanted to file those motions, you

19   could have filed them months, even years ago, and you didn't

20   do it.  Today, I have a settlement motion before me, and I

21   have your three objections to the claims of the King parties.

22   That's what's before the Court today.  I've said it numerous

23   times, and that's the last time I'm saying it.

24         MR. MYERS:  Okay.  Well, I just made an ore tenus

25   motion, so please rule on it.



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1          THE COURT:  I'm not ruling on that.

2          MR. MYERS:  You're not ruling on it.  You're going to

3   let -- you're going to let counsel --

4          THE COURT:  I'm not ruling on it.

5          MR. MYERS:  Yeah, okay.

6          THE COURT:  That's the end.

7          MR. MYERS:  All right.  Well --

8          THE COURT:  I'll see you at 3:30.

9          MR. MYERS:  I'll file a motion for judicial

10   misconduct.

11          THE COURT:  You're welcome to do whatever you think

12   is appropriate, Mr. Myers.  And it will be dealt with in due

13   course, just like the motions that you filed late on Friday

14   and minutes before this hearing began.  I will rule on them in

15   due course.  Thank you.

16          MR. MYERS:  Well, I don't think you'll rule on those.

17          THE CLERK:  All rise.  Court is now in recess.

18       (Whereupon a recess was taken)

19          THE CLERK:  All rise.  United States Bankruptcy Court

20   for the District of Maryland now resumes its regular session,

21   the Honorable Maria Ellena Chavez-Ruark presiding.

22          Recalling the case of Gregory B. Myers, Case No. 15-

23   26033, and Adversary Case 24-00007, King, et al. v.

24   Schlossberg.

25          Counsel, please be seated.


www.escribers.net | 800-257-0885

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1          THE COURT:  All right.  Are the parties ready for

2     closing arguments?

3          MR. SCHLOSSBERG:  Yes, Your Honor.

4          MR. VERSTANDIG:  Yes, Your Honor.

5          THE COURT:  Mr. Myers, are you ready?

6          MR. MYERS:  Yes.

7          THE COURT:  Okay.  All right.  Mr. Mastro, Mr.

8     VerStandig, which one of you is going to take the lead?

9          MR. VERSTANDIG:  Your Honor, I will go first.  I will

10    be brief, and Mr. Mastro will follow.

11         THE COURT:  All right.  Give me just one moment,

12    please.

13         MR. VERSTANDIG:  Yes, Your Honor.

14         THE COURT:  I just want to get organized.

15       (Pause)

16         THE COURT:  All right.

17         MR. VERSTANDIG:  Thank you, Your Honor.

18         Your Honor, I'm going to start by addressing the

19    claim objection, which is the majority of my argument.

20         The Fourth Circuit standard, which I think is

21    familiar to the Court, is what was announced in Stancill v.

22    Harford Sands, which establishes the familiar burden-shifting

23    dynamic.  A proof of claim, once entered into evidence -- and

24    all three proofs of claim are in the record before you -- is

25    prima facie evidence of the validity thereof under Rule 3001.



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1   The burden then shifts to the objecting party to establish

2   some core issue with the claim or some grounds of objection

3   thereupon.  And if and only if the objecting party meets that

4   burden does the burden then shift back to the claimant to

5   rebut what the objecting party has put forward.  There's no

6   doubt that we have the three claims in evidence, and thus

7   there's no doubt but that they are prima facie evidence of the

8   validity thereof.

9        Mr. Myers, in writing, although not discussed during

10  the past two days, has raised two technical objections.

11       One is that there are no writings appended to the

12  proof of claim.  The problem with that objection, and this is

13  the L.A. airport case we cited in our papers from the Ninth

14  Circuit, is that there is no writing required unless a proof

15  of claim is premised upon a writing.  And if you look at Rule

16  3001(c), subsection (1), it literally says, "Claim based on a

17  writing".  And what this generally refers to is a promissory

18  note, a settlement agreement, some written instrument

19  evidencing indebtedness.  And what the L.A. airport case

20  teaches us is that where a proof of claim is premised upon

21  something other than a written instrument, there is no legal

22  obligation to affix a copy thereto for the simple reason that

23  there isn't something obvious to affix thereto.  In the L.A.

24  airport case, the question was, did you need to affix the tax

25  code to the proof of claim.  Here, I suppose the suggestion

1    would have been that we affixed the entire adversary

2    proceeding.  That is clearly not what Rule 3001 requires.

3           The second technical issue raised by Mr. Meyers is

4    that the claims were filed beyond the claims bar date.  Now,

5    the Supreme Court made very clear in Pioneer that a court may

6    allow claims to be late filed in a Chapter 7 case.  Here, you

7    entered an order roughly eighteen months ago permitting my

8    clients to file proofs of claim within thirty days of the

9    entry of that order.  That is a final order that, in point of

10   fact, has been appealed.  And I'm not making reference to

11   the --

12          THE COURT:  All right.  Hold on one moment.

13          Did we lose our recording equipment?

14          THE CLERK:  No, the recorder is still going, but

15   everything else stopped.  My computer went out.

16          THE COURT:  Should we take a short recess?

17          THE CLERK:  Sure.

18          THE COURT:  Okay.  We'll take a short recess.  Mr.

19   VerStandig, put a pin in that.  Hold your thought.

20          MR. VERSTANDIG:  Thank you, Your Honor.

21          THE COURT:  We'll come back to it.

22          THE CLERK:  All rise.  Court is now in recess.

23      (Whereupon a recess was taken)

24          THE CLERK:  All rise.  United States Bankruptcy Court

25   for the District of Maryland now resumes its regular session,



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1    the Honorable Maria Ellena Chavez-Ruark presiding.  Please be

2    seated.

3         THE COURT:  All right.  I'm sorry about that, Mr.

4    VerStandig.  There's quite a storm going on out there.

5         MR. VERSTANDIG:  Yes, Your Honor.

6         THE COURT:  So hopefully we do not lose electricity

7    again.

8         All right.  So you were saying that the Court entered

9    an order allowing the King parties to file their proofs of

10   claim?

11        MR. VERSTANDIG:  Yes, Your Honor.  That order was

12   entered approximately eighteen months ago.  And what's

13   significant about that order is it's been appealed.  And I'm

14   not making reference to the appeal that was filed last week.

15   It was actually appealed by Mr. Myers shortly after it was

16   entered.  It went up to the district court.  There was a show

17   cause order in the district court.  And upon receipt of the

18   show cause order, Mr. Myers dismissed his appeal.  It was

19   remanded back to this Court in October of 2024.

20        So we know that there is an order, under Pioneer,

21   allowing claims to be late filed.  And we know that despite an

22   effort to overturn or obstruct that order on appeal, no such

23   success has been had.

24        Moving aside from the technical objections, there is

25   this sort of omnipresent allegation that the claims ought to



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1    be denied because they are counterfactual, without merit,

2    whatever it may be.  And Mr. Mastro will speak more eloquently

3    to the merits of the adversary proceeding, and more

4    extensively than myself.

5         But I do want to briefly note a few things.  The most

6    meaningful defense that's been referenced by Mr. Myers over

7    the past two days is what's been referred to as the MOU

8    defense, the memorandum of understanding, where he asserts

9    that it was countersigned in a timely fashion.  My clients

10   have asserted it was not.  And Mr. Schlossberg has

11   intelligently testified as to why he believes my clients would

12   be more compelling.

13        But one point that I think gets overlooked is it

14   doesn't actually matter.  It doesn't matter whether it was

15   timely signed or not, because Mr. Myers was a debtor in this

16   court at that time.  Serv Trust, his alter ego, is the

17   counterparty to the memorandum of understanding to the extent

18   there is an enforceable MOU.  No leave of court was ever

19   sought, much less obtained, to enter into that agreement.  So

20   even if it had been timely executed, it would be a nullity and

21   cannot give rise to a substantive merits-based defense.

22        The Serv Trust alter ego finding is not at issue

23   before you at the moment, nor was it at issue in the adversary

24   proceeding challenging Mr. Myers' discharge.  My clients were

25   not a party to that proceeding.  The opinion in that



92

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1    proceeding, if you look past the dozens of pages he

2    ellipsised, finds Mr. Myers, time and again, committed fraud

3    in this honorable court.

4         So it is strange to see him relying upon that as some

5    countervailing factual finding that ought to be binding.  But

6    since the issue was not relevant to that proceeding, since my

7    clients were not a party thereto, there are a myriad of legal

8    reasons that neither res judicata nor any variety of estoppel

9    would bind what are in fact dicta comments therein to be the

10   law of this case, especially when you consider that this Court

11   later, as Mr. Myers himself made much ballyhoo of, abstained

12   from hearing the alter ego issue so that it could be

13   adjudicated by a state court.  That would be an inconsistent

14   and irretrievably bizarre action if this Court found that it

15   had already adjudicated that it wasn't an alter ego.

16        The alter ego order out of the state court, whether

17   or not it is final, is not of any legal moment.  I believe Mr.

18   Myers places far too much reliance and faith upon the final

19   order doctrine.  But for what it is worth, it is a final

20   order.  It became a final order when the stipulation of

21   dismissal of the remaining cause of action in that case was

22   entered into, disposing of the last cause of action.

23        There were two counts in the complaint.  One was the

24   alter ego count.  The other was the count that ultimately

25   transmuted into this court.  Now, Mr. Myers has testified that



www.escribers.net | 800-257-0885

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1   that cannot be so because Serv Trust filed a counterclaim and

2   that counterclaim has never been adjudicated.  In fact, he

3   asserts, there was never even an answer filed thereto, and

4   there, accordingly, should be a default thereupon.

5       But in so doing, Mr. Myers looks over at the

6   Trustee's Exhibit Number 10, which is the very order making

7   the alter ego finding wherein the Court expressly dismisses

8   Serv Trust's counterclaim.  With the counterclaim gone, Count

9   I ruled upon, and Count II subsequently dismissed, that became

10  a final order.  There was nothing left for the Montgomery

11  County Circuit Court to adjudicate.

12      Again, I'm not sure that matters.  Whether or not

13  it's a final order is actually not material, but it bears

14  notation.  It also goes to the somewhat suspect, even if

15  inadvertently, potentially, nature of Mr. Myers' testimony

16  over the past two days.  He was so certain that that

17  counterclaim persisted.  Yet one of the items in evidence

18  makes very clear that it was dismissed a great time ago.

19      Your Honor, there's an underlying hypocrisy in that

20  Mr. Myers relies greatly upon the abstention order, but at the

21  same time protests that he ought not be bound, or more

22  precisely, Serv Trust ought not be bound by what was beget by

23  that abstention order.  It is the same way he leans heavily

24  upon the fact that he removed a case two business days before

25  trial but ought not be bound by the fact that that case was

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1    subsequently remanded.

2         I believe such speaks to the credibility of Mr.

3    Myers, which matters only to bolster and support Mr.

4    Schlossberg's testimony that, if this matter were to go to

5    trial, and if there needed to be reliance upon Mr. Myers, it

6    would be a difficult case.

7         I believe my clients are paying a king's ransom for

8    something that, quite candidly, is not worth nearly that much

9    money.  But for reasons I will not get into, they believe that

10   to be a sensible business decision at the end of extensive

11   negotiations on their end.  And they respect and appreciate

12   that their negotiating counterparty, Mr. Schlossberg, is too

13   exercising his sound business discretion.

14        For that reason, we ask that the claim objections be

15   overruled, and we ask that the trustee's motion be granted.  I

16   reserve the balance of my time for rebuttal unless you have

17   any questions.  Thank you.

18        THE COURT:  Thank you.

19        MR. MASTRO:  Good afternoon, Your Honor.

20        THE COURT:  Good afternoon.

21        MR. MASTRO:  The 9019 motion that's before you is

22   probably a little different than a typical 9019 motion that a

23   trustee might bring in that the trustee is not bringing any

24   claims in the adversary proceeding.  The trustee is the

25   defendant.  And the settlement here liquidates an estate



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1   asset, that asset being Serv Trust's interest in 6789

2   Goldsboro LLC, which Serv Trust having been previously

3   determined to be the alter ego of the debtor.

4        And just to review, the proposed settlement really

5   has three components.  The first component, the plaintiffs are

6   paying the trustee $150,000, the plaintiffs being the King

7   parties, in order to redeem the entirety of Serv Trust's

8   interest in Goldsboro.  And in the process, it moots out or

9   settles the claim in the adversary case.  The claim in the

10  adversary case, once the settlement payment is successfully

11  negotiated, that's going to be dismissed with prejudice.

12       And then the trustee testified to the third element,

13  which is important to him -- and we'll get to this -- that the

14  King plaintiffs have agreed to reimburse the trustee for all

15  reasonable legal fees and expenses that the trustee incurs in

16  connection with the litigation of any appeals taken by any

17  party in the event this motion is granted.  And I said we'll

18  get to that, and that is also going to be an important part of

19  this.

20       Now, the Court knows, in any 9019 motion, there's

21  certain standards the Court has to look at.  The factors the

22  Court considers are:  the probability of success in

23  litigation, the likely difficulties in collection -- and that

24  one is really not relevant here because, as I mentioned

25  before, the trustee is not bringing a claim.  He doesn't have

1  to contemplate that, okay, if I get a judgment, what are my

2  odds of collecting that judgment once I get it?  So that

3  number two is not really a factor.  Number three, the

4  complexity of litigation, and the expense, inconvenience and

5  delay involved with litigating the matter.  And four, the

6  paramount interest of the creditors in this case.

7          As the Court knows, the Court doesn't need to

8  necessarily conduct a mini trial, although over the last two

9  days, it sure seemed that way.  All the Court has got to do is

10 find that the proposed settlement doesn't fall below the

11 lowest level of reasonableness.  The Court does not substitute

12 its judgment for the business judgment of the trustee.

13         So with those standards in mind, Mr. Schlossberg

14 testified at length, both on direct, and in roughly four hours

15 of cross-exam, as to his process, his thought process, his

16 judgment in evaluating and ultimately recommending this

17 settlement to the Court in the 9019 motion.

18         The first thing he did is, as he testified, he

19 considered the merits of the claims in the adversary case

20 asserted by the King parties.  He went through, in exhaustive

21 detail, the operating agreement, including the provisions in,

22 I believe it was section 7, regarding the redemption of the

23 Class B interests.

24         The trustee determined that there was a demand for

25 the appraisal process made by the King plaintiffs.  That's the



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1  demand letters, Exhibit 2.  The operating agreement was

2  Trustee's Exhibit 1.

3        After the demand was made, Serv Trust did not name

4  its own appraiser.  And there was an appraisal conducted,

5  actually prior to the demand, by Mr. Lippman (ph.).  And that

6  appraisal came in at one million to $1.3 million, was the

7  value of the property.  And Mr. Schlossberg testified, he

8  said, okay, once you get that appraisal, then you compare it

9  to the amounts that the King parties have invested.  And there

10 were four components to that.  The trustee walked through

11 that.  And it was well north of 3-,  3.5 million.

12       The trustee had examined the records and the evidence

13 that the King plaintiffs intended to use.  And he was

14 satisfied that, if this claim went to trial, the King

15 plaintiffs, at a minimum, would have a prima facie case.

16       So then the trustee said, okay, let me look at what

17 our potential defenses are.  And the trustee examined all of

18 the defenses that were asserted, when this case was in state

19 court, by Serv Trust.  And the defenses asserted by Serv Trust

20 really fall into two categories.  The first category I'll call

21 the procedural defenses, that is, that the King plaintiffs

22 didn't follow the procedures that are outlined in the

23 operating agreement in order to effect the redemption of the

24 Class B stock.  And the other was what we've termed the MOU

25 defense.



1        Let me deal first with the procedural defenses that

2   the King parties didn't follow the operating agreement.  The

3   first thing that was relied on by Serv Trust, and what the

4   trustee testified that he considered, was that, okay, the

5   appraisal that was done by Mr. Lippman, that was done actually

6   six days before Mr. VerStandig sent the letter demanding the

7   appraisal procedures.

8        And Mr. Schlossberg testified that there's nothing in

9   the operating agreement that would require the appraisal to be

10  done after the demand.  And he also testified that it was

11  really good business practice by Serv Trust to actually have

12  an appraisal done to know whether you want to invoke that

13  appraisal procedure in the first place.

14       And I'll point out that, again, the way the appraisal

15  procedure works is that the King parties, they go ahead and

16  name an appraiser.  And then there's a burden on Serv Trust to

17  name an appraiser.  Then those appraisers get together, and if

18  they agree, then they produce a joint appraisal.  If they

19  don't agree, they bring in a third party to do an appraisal,

20  and that appraisal governs.

21       Well, as Mr. Schlosberg testified, what happened?

22  Serv Trust did not appoint an appraiser.  That was one of the

23  points that Serv Trust relied on below to argue, kind of

24  counterintuitively, that well, therefore, the appraisal

25  procedures weren't satisfied.



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1        Well, on one level, they waived their right to an

2    appraisal.  But on the second level, because they didn't put

3    an appraiser there, that meant that there was only one

4    appraiser, Mr. Lippman.  And so it really didn't matter

5    whether he did his appraisal before or afterward.  He came up

6    with his value.  His value was unchallenged.  So the trustee

7    concluded that that defense was not going to succeed.

8        Now, in terms of the MOU defense -- and the MOU is

9    set forth in Exhibit 4 of the trustee's exhibits.  And Exhibit

10   5 was an email that Mr. Myers sent to Mr. King, in January of

11   2017, attaching a copy of the executed MOU.  Again, in Exhibit

12   5, Mr. King responds fairly quickly and says it's not

13   effective.  It needed to be accepted by a date in September;

14   I believe it was the 12th.  And then the closing had to occur

15   by October 7th.  And he said, you're out of luck.  And then

16   Mr. Myers wrote back and said, well, I mailed it by mail back

17   at that time.

18       And then the trustee examined some other documents

19   that the King parties would be introducing at trial, if we go

20   to trial, and those are Trustee's Exhibit 6, 7, and 8.  And

21   they show that, subsequent to the date by which the MOU had

22   had to be accepted, Mr. Myers was not acting as if the MOU had

23   been accepted.  He was moving forward with plans to develop

24   the property.

25       You would think, the trustee testified, knowing Mr.



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1    Myers, where's the objections?  Why haven't you closed?  Why

2    haven't you put that 75,000 in escrow as required by the

3    agreement?  None of that what you would expect to see.  And so

4    the trustee concluded that that factual evidence weighs

5    against a finding that the MOU was timely accepted.

6         And then there's the critical fact.  In order for

7    this defense to succeed at trial -- and the trustee testified

8    at length on this -- is that he would have to put Mr. Myers on

9    the stand, and Mr. Myers' credibility would be at issue.  The

10   trustee testified that he's observed Mr. Myers in many

11   different court proceedings over the years.  And Your Honor,

12   had a chance to observe him in this very court yesterday and

13   today.  Mr. Myers is belligerent.  He is rude.  He is

14   disrespectful.  There is no way that Mr. Schlossberg could put

15   Mr. Myers on the stand and expect to be successful.  And if

16   those distasteful qualities weren't enough, Mr. Myers has a

17   problem telling the truth.

18        Let's look at Debtor's Exhibit 1, his own exhibit,

19   Judge Lipp's memorandum opinion, from 2018, denying him a

20   discharge.  I want to read from page 16.  And Mr. Myers, I

21   believe, read something from this page during his testimony.

22        The first full paragraph on page 16:  "The Court

23   agrees with the United States Trustee that Myers knowingly and

24   fraudulently made false oaths in his bankruptcy case

25   sufficient to deny him a discharge under Section



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1    727(a)(4)(A)."

2        Judge Lipp goes on to say his omissions and

3    misrepresentations were material and served to change the

4    course of his bankruptcy case in critical ways.  Two sentences

5    later:  "Myers' assertion that his failure to schedule

6    Goldsboro in the first several versions of his schedule was

7    inadvertent is simply implausible."

8        Page 17, which Myers, again, read from selectively.

9    First full paragraph, second sentence:  "The omission defies

10   credulity in light of the ongoing relationship between Serv

11   Trust, Myers, Kelly, and Goldsboro, and the substantial sums

12   of money transferred between the parties in the months leading

13   up to the bankruptcy filing and after the filing."

14       Judge Lipp goes on to say:  "It is not believable

15   that he simply forgot to include his largest unsecured

16   creditor in the first several versions of his schedules, when

17   he had executed a personal guarantee in favor of that creditor

18   six months prior to filing for bankruptcy and was requesting

19   advances from the creditor up to and after the filing of his

20   petition."

21       Next paragraph begins, "The Court further finds that

22   the various versions of Myers' Schedules I and J were

23   misleading and wholly unreliable, particularly with respect to

24   the funds received into the household from Serv Trust."

25       And then Myers -- this is the part he reads:  "It is

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1    undisputed that Serv Trust was established to pay educational

2    and other expenses related to Myers' children.  It is also

3    undisputed that Myers is a co-trustee of Serv Trust, with the

4    authority to direct Serv Trust to make payments on behalf of

5    its beneficiaries, the Myers children.  Myers was adamant at

6    trial that every payment that he and Kelly ever received from

7    Serv Trust was for the benefit of his children."

8           But here's what he leaves out:  "He then argued that

9    he always considered the Serv Trust payments to be loans,

10   regardless of how they were classified in his schedules, or

11   what was said at the 341 meeting, because neither he nor Kelly

12   is a beneficiary of Serv Trust.  Myers' classification of

13   payments he or Kelly received from Serv Trust as loans is

14   suspect."

15          And then the Court says:  "It is irrefutably

16   testified to by Myers every payment from Serv Trust to Myers

17   and/or Kelly was for the benefit of their children, then it

18   appears that Serv Trust was serving its intended purpose,

19   i.e., providing for Myers' children.  Such payments would not

20   be 'loans' to Myers and/or Kelly."  Mr. Myers leaves that part

21   out.  "They would be distributions to the trust

22   beneficiaries", which he also leaves out.

23          And then, Judge Lipp concludes:  "Regardless of their

24   classification, however, the payments needed to be included on

25   Myers' Schedule I, and the corresponding expenses included on

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1   Schedule J, because the funds were coming into the household.

2   However, as detailed below, his schedules never provided an

3   accurate financial picture."

4           Mr. Myers cannot be believed, Your Honor.  I'd submit

5   that a first year law student could very successfully impeach

6   Mr. Myers were he to take the stand and testify in the

7   adversary case.  And if the adversary case were to be tried,

8   we're not going against a first=year law student; we've got

9   Mr. VerStandig there, one of the most talented lawyers I know.

10  And I'm damn sure Mr. VerStandig would take apart Mr. Myers on

11  the stand.  And there is no way he would be able to prevail on

12  that defense.

13          And as Mr. VerStandig pointed out, and as what I just

14  read from Judge Lipp's opinion points out, Mr. Myers is very

15  selective.  He testified that the Serv Trust counterclaim is

16  still active.  Mr. Myers and Mr. VerStandig read you the

17  portion from Exhibit 10.  It's, like, the first full decretal

18  paragraph of the judge's order stating that that counterclaim

19  has been resolved in favor of Mr. VerStandig's clients.  You

20  can't believe what Myers says.

21          So taking this all together, as the trustee

22  eloquently testified, it was his opinion that he didn't stand

23  a very good chance of prevailing in the adversary case.  And

24  if he doesn't prevail in the adversary case, Your Honor, the

25  asset is worth zero to the estate because it gets redeemed for

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1    past consideration.  Nothing new is coming into the estate.

2            So he negotiated a deal, and now we're getting, if

3    the deal is approved, $150,000.  But the trustee also

4    considered, okay, maybe I hit a home run, pull a rabbit out of

5    the hat.  Let's say we prevail at trial, after spending who

6    knows how much money that we don't have.  What happens then?

7    We still have this asset.  The trustee is statutorily charged

8    with liquidating the assets of the estate.  But as he

9    testified, there's no ready market for this.

10           And also, given the way the operating agreement is

11   laid out, it's not likely that whoever buys it may see any

12   income from this.  Plus we've also got to deal with the fact

13   that, if he's successful at trial on the grounds that perhaps

14   the King plaintiffs didn't follow the operating agreement,

15   then what's to stop them from doing the appraisal process once

16   again?  Their expenses have only increased in the last eight

17   years.

18           And he looked up the value of the property online

19   just to get a ballpark of it -- that's Exhibit 9, Trustee's

20   Exhibit 9 -- 1.8, 2.2 million, somewhere around there.  So

21   there's that risk, again, that we get nothing for it.

22           So the trustee ultimately concluded that this

23   settlement is in the best interest of the estate.  Mr. Myers,

24   it appears he wants to re-argue matters that were already

25   decided by this Court.  Mr. VerStandig mentioned this Court's

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1    opinion back from December of 2023.  And in there, the Court

2    considered several of the same arguments that Mr. Myers is

3    making now, and rejected them.

4         And I'm referring to the Court's -- this is docket --

5    document 1029.  This is "Order granting motion for approval of

6    proposed compromise and settlement with Brian King, Cristina

7    King, and the Cristina and Brian King Children's Trust", and

8    entered December 11th, 2023.

9         And on page 11, the Court lists a bullet point of

10   certain arguments that were made by Mr. Myers.  One of them:

11   "The alter ego order is not a final judgment and therefore has

12   no force or effect, pursuant to Maryland Rule 2-602."

13        The Court dealt with this on page 18 of that opinion.

14   "The debtor is incorrect in his argument that the alter ego

15   has no force or effect because it's not a final judgment."

16   And I'm not going to read the rest, but the Court knows what

17   it wrote.

18        The next bullet point, Mr. Myers argued that the

19   Serv Trust proof of claim prevents -- the proof of claim in

20   that Florida bankruptcy case, which Mr. VerStandig addressed,

21   creates an issue.  And that was already decided by the Court.

22        So to the extent Mr. Myers' arguments here, they're

23   just a regurgitation of what he argued before, the Court has

24   already ruled on that.  There's nothing new.  Mr. Myers, in

25   his cross-examination of the trustee, did not elicit any

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1    information that should cause the Court to reconsider the

2    trustee's evaluation that this settlement is in the best

3    interest of the estate.  It's reasonable, it's a prudent

4    exercise of his business judgment, and we respectfully request

5    that the Court approve the settlement.  Thank you, Your Honor.

6          THE COURT:  Thank you, Mr. Mastro.

7          MR. MASTRO:  If I have any time left, I'll reserve

8    that for after Mr. VerStandig.

9          THE COURT:  All right.  Thank you.

10         Mr. Myers?  Mr. Myers, again, I will give you one

11   hour.

12         MR. MYERS:  I'll start with the three proofs of

13   claim.  They were filed six years after the claims bar date.

14   And Mr. VerStandig says they're prima facie evidence, claims

15   for zero dollars, no documents attached.  It says "See

16   adversary proceeding".  That's not a claim you can file in a

17   Chapter 7 bankruptcy case.  You need a monetary claim.

18         But let's go to why this Court can even allow those

19   claims.  First of all, this Court's order that was entered

20   instructing or allowing -- I'm not sure which; I can't

21   recall -- them to file a proof of claim -- let me say this

22   differently.  The King parties didn't file a motion for

23   allowance to file a late-filed proof of claim.  It filed no

24   motion.  And this Court cannot, sua sponte, extend the bar

25   date for them, out of the blue, to file proofs of claim.  So

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1   if they wanted to file a late proof of claim, they needed to

2   file a motion before the bar date expired.

3            And then the next thing that Mr. VerStandig said that

4   your order allowing them to file a late-filed proof of claim

5   is a final order.  No, it's not.  An order allowing a creditor

6   to file a late-filed proof of claim is a nonfinal order and it

7   gets appealed at the end once whatever happens with the

8   claims.  It's not a final order.  So he's --

9            THE COURT:  Do you have case law to support that?

10           MR. MYERS:  There's plenty of case law.  I don't have

11   any with me to support it, but it's not a final order.  I

12   looked it up on AI, and it's crystal clear.

13           So it doesn't matter anyway because they never filed

14   a motion to file a late-filed proof of claim.  So this Court

15   can't allow them to file a late-filed proof of claim.

16           Now, let's go to the proofs of claim, notwithstanding

17   they're time barred.  And there is the order entered in the

18   Florida bankruptcy court, where they filed a proof of claim,

19   and I filed an objection, and the court sustained my objection

20   and overruled their proof of claim.

21           I do know the case law on this.  I don't have any

22   cites, but I know the case law is it doesn't matter that my

23   case was dismissed.  That claim objection is final in all

24   other proceedings going forward, and it's res judicata to

25   whatever they had in their claim, whatever they could have put

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1    in their claim, et cetera.  And it's binding not only in that

2    court, it's binding in this bankruptcy court, and it's binding

3    in every other court in this land, going forward, in every

4    other proceeding.

5         THE COURT:  And what authority do you have for your

6    statement that the order sustaining the objection to claim in

7    Florida precludes the King parties from asserting any claims

8    whatsoever, not just the claims that were disallowed in that

9    proceeding, but any other claims as well?

10        MR. MYERS:  It's res judicata.

11        THE COURT:  And what authority do you have?

12        MR. MYERS:  So I don't have a case cite for it, but

13   there's plenty of cases that discuss, when you file a proof of

14   claim, and there's a claim objection, you bring all of your

15   claims.  And if you don't, whatever you didn't bring, you

16   don't get to relitigate later.  You don't get to add to it

17   later.

18        THE COURT:  Even if the claims -- I mean, the alter

19   ego decision was -- I forget what the date was.  But was the

20   decision by the Montgomery County Court before or after the

21   King parties filed their claims in Florida?

22        MR. MYERS:  They referenced that case in their claim.

23   So they can't bring any more claims.

24        THE COURT:  In the claim that they filed in Florida?

25        MR. MYERS:  Yes, ma'am.



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1        THE COURT:  Do you have -- well, okay.  None of

2    that's in evidence, but okay.

3        MR. MYERS:  Okay.  Well, they filed a one -- they

4    filed a zero dollar, no-backup, time-barred claim, no motion

5    to file late-filed proof of claim, and --

6        THE COURT:  In Florida?

7        MR. MYERS:  No, here.  Here.  Their claims here were

8    for zero dollars.  The basis is a hypothetical whatever

9    happens in an adversary proceeding, which is not a basis for a

10   proof of claim in a Chapter 7 case.  In a Chapter 7 case,

11   there has to be money.  So they don't want any money.  That's

12   the whole nature of this whole charade.  And so putting aside

13   that it's one page, zero dollars, no support, okay?

14       And Mr. VerStandig even said I guess we could have

15   fixed the entire adversary proceeding.  Well, that's not going

16   to get him anywhere anyway.  So it's a bogus proof of claim.

17   It was filed too late.  They never filed a motion to file a

18   late-filed proof of claim.

19       And Mr. VerStandig even testified, in the Montgomery

20   County Circuit Court case that the King parties don't have a

21   claim against the estate.  So he's judicially estopped there,

22   the King parties are.  It's in the transcript which I did file

23   in the Court record.  So for all those --

24       MR. VERSTANDIG:  Mr. Myers is referencing a

25   transcript that he docketed after evidence closed in this



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1    case.  During the lunch break or the recess --

2         MR. MYERS:  You know, I'm speaking right now.  I'm in

3    my closing arguments.

4         THE COURT:  Hold on.  Hold on.  Mr. Myers, I've told

5    you, speak to the Court.  Don't speak to the lawyers.

6         MR. MYERS:  All right.  I'm in my closing argument.

7         THE COURT:  Okay.  Hold on.

8         MR. MYERS:  I didn't interrupt theirs.

9         THE COURT:  Okay.  Hold on.

10        Mr. VerStandig, you'll have an opportunity to address

11   that after Mr. Myers is finished.

12        MR. VERSTANDIG:  Thank you, Your Honor.

13        THE COURT:  Thank you.

14        MR. MYERS:  Okay.  And I did address that in my

15   testimony.  I read that sentence where Mr. VerStandig said

16   that the King parties have no claim against me, and they have

17   no claim against the estate.  They've got nothing.  The only

18   reason they filed that stupid adversary was because they were

19   trying to -- because they were caught by Judge Albright, and

20   they added me in so they could -- because they were trying to

21   prosecute an affirmative defense for Serv Trust's

22   counterclaim.

23        Now I'm going to move on.  Ninety-nine percent, 100

24   percent of what they said has nothing to do with the issues

25   you need to decide here.  I don't care about whether Roger



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1    Schlossberg thinks this is a good settlement, a bad

2    settlement, or a middle settlement.

3            THE COURT:  Well, isn't that the sole issue for the

4    Court?

5            MR. MYERS:  No, it is not, Your Honor.  So Serv Trust

6    has never filed a proof of claim in this Court ever.  Roger

7    Schlossberg has never filed an adversary against Serv Trust

8    ever.  He has one year, from when he was appointed on February

9    22, 2017, so February 22, 2018, to file a claim, a 547 claim,

10   fraudulent conveyance, whatever he wants to do.  He didn't do

11   it.

12           He has exclusive jurisdiction for alter ego claims.

13   The King parties have no standing whatsoever to bring an alter

14   ego claim that, to the extent Mr. Schlossberg wanted to file

15   it, he could have, he didn't, he passed on it.

16           And as I mentioned during my testimony, in one of the

17   hearings with Judge Lipp, she asked him, well, what other

18   claims do you have, Mr. Schlossberg, because Mr. Myers is

19   here; they want their money.  He goes, well, you know, people

20   bring me claims and, you know, fool's gold.  Well, I know

21   exactly what claim that was.  That was the King parties.  He

22   called it fool's gold.  Well, you know what?  He's the fool

23   because there's no gold.

24           So let's go to what is important.  It is crystal

25   clear in the case law that -- well, let me back up.  This case

1    was adversary -- the Montgomery County Circuit Court -- well,

2    this court, Judge Simpson, remanded that case to Montgomery

3    County Circuit Court.  No reservation of jurisdiction for

4    anything.  The Montgomery County Circuit Court has

5    jurisdiction.  You lost -- this Court lost jurisdiction over

6    all matters and issues in that case.

7           The case law will show that, once that case was

8    removed to Montgomery County Circuit Court, they have

9    jurisdiction to decide everything.  So whatever issues Mr.

10   Schlossberg has with the King parties, he has to do it in that

11   Court.  None of those issues can be decided in this Court,

12   unless they want to remove that case and bring it back to this

13   Court.  It's --

14          THE COURT:  I thought you said in your testimony, Mr.

15   Myers, that the case was not properly sent to the Montgomery

16   County Court, and therefore --

17          MR. MYERS:  You're missing my point.  That's a

18   different thing.  I'm talking about Judge Simpson.  Judge

19   Simpson entered the order in 2019, I think.  Judge Simpson --

20   I'm talking about this court, Judge Simpson being in this

21   Court.  Once this court remanded that case to Montgomery

22   County Circuit Court, your jurisdiction ended.

23          THE COURT:  Over the --

24          MR. MYERS:  And it's still ended today.

25          THE COURT:  Over the issues that were remanded.



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1          MR. MYERS:  Over the entire case, all matters, all

2     issues in that case.  That case is still open.  There's no

3     adjudication in that case.  You can -- you can look it up if

4     you want, Maryland law.  You can't execute on a nonfinal

5     order.  You can't enforce a nonfinal order.  There's nothing

6     you can do with a nonfinal order.

7          THE COURT:  Well, a nonfinal order -- if an order is

8     not final, what it means is that it's still subject to being

9     revised.  It doesn't mean that it's not a valid order.

10         MR. MYERS:  Okay.  Well, you can label it a valid

11    order because it's written, but it's not executable, and it's

12    not enforceable, and it doesn't provide -- and you can look it

13    up.  You will, I'm sure.  But you can look up that he cannot

14    base a 9019 settlement on a nonfinal order entered by a state

15    court.  That gives him no rights.

16         THE COURT:  And what authority do you have for that?

17         MR. MYERS:  I don't --

18         THE COURT:  Because I approve settlements all the

19    time that are not based on --

20         MR. MYERS:  I don't want to argue.

21         THE COURT:  Let me finish.  I'm asking you a

22    question.

23         MR. MYERS:  Okay.

24         THE COURT:  I approve settlements all the time that

25    are not based on a final nonappealable order.  I approve


www.escribers.net | 800-257-0885

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1  settlements based on nonfinal orders.  I approve settlements

2  based on agreements of parties that haven't even gone through

3  litigation, where just parties have said that they have claims

4  against each other, or one party has a claim against the

5  other, and they've reached a settlement.  I approve that all

6  the time.

7          So what do you have that says that the Court cannot

8  approve a settlement unless there is a final nonappealable

9  order in place?  Because at that point, what is there left to

10 settle?

11         MR. MYERS:  You're --

12         THE COURT:  The whole purpose of the --

13         MR. MYERS:  You're missing --

14         THE COURT:  Let me finish.

15         MR. MYERS:  Well, I'm limited to an hour.

16         THE COURT:  Stop talking.  I'm talking.

17         MR. MYERS:  Yeah, but --

18         THE COURT:  I'm asking you a question about what you

19 just said.

20         MR. MYERS:  And I --

21         THE COURT:  Let me finish.  So if litigation has

22 concluded, and there is a final nonappealable order, then what

23 is there to settle?

24         MR. MYERS:  There is no --

25         THE COURT:  The rights have already been determined.



1    But I approve settlements all the time, and Rule 9019 is

2    applied all the time, even when there's not a final

3    nonappealable order.  So tell me what your authority is for

4    saying that I need a final nonappealable order before I can

5    apply Rule 9019.

6            MR. MYERS:  This is a bankruptcy court.  Your

7    jurisdiction is restricted to res, period.  If there's no

8    property -- if Serv Trust's property is not property of the

9    estate, that's the first question you ask.

10            THE COURT:  I'm not approving a settlement regarding

11    Serv Trust's property.  I'm approving a settlement regarding

12    claims that have been asserted against each other.

13            MR. MYERS:  No, you are.  You're approving a

14    settlement that would transfer nonestate property to the King

15    parties, which --

16            THE COURT:  No, I've been asked to approve a

17    settlement of whatever the estate's interest may be.  Maybe it

18    has all rights, maybe it has very little rights.

19            MR. MYERS:  I'd prefer to continue.

20            THE COURT:  Maybe even it has no rights at all.  But

21    I've been asked to approve a settlement of the estate's

22    interest.  And so I don't have to define what that is.  I only

23    have to say whether or not the trustee exercised good business

24    judgment in reaching that settlement.  So what do you have --

25            MR. MYERS:  May I continue?



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1          THE COURT:  -- that says that I have to determine

2     that the estate has an interest in property to be able to

3     approve a settlement?

4          MR. MYERS:  That's a fundamental aspect of this

5     Court.  You can't approve any agreement for nonestate

6     property.  Judge Schneider (ph.) will tell you that.  And I

7     know you know that.  If it's not estate property, you have no

8     authority or jurisdiction to determine rights in it.

9          THE COURT:  I've been asked to approve a settlement

10    of whatever the estate's rights may be.  I have not been asked

11    to determine whether the bankruptcy estate has rights.  If the

12    bankruptcy estate has no rights at all, and Mr. Schlossberg

13    has negotiated a settlement that brings $150,000 into the

14    estate for no rights at all, then that is a huge win for the

15    bankruptcy estate.

16         MR. MYERS:  You're kidding me.  He cannot -- he

17    cannot, as a trustee, with a fiduciary duty, enter into an

18    agreement, on behalf of this bankruptcy estate, to transfer

19    nonestate property to the King parties in exchange for money.

20    That's the Anderson case.  That's fraud, period.  He

21    doesn't -- it's not estate property.  He doesn't have any

22    right in it.  He doesn't have any jurisdiction over it.  He

23    doesn't have any authority over it.

24         And your first obligation, before you can even

25    consider this bogus fraudulent 9019 crap, is to determine is

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1    Serv Trust's property property of this estate.  And he

2    testified yesterday -- he testified yesterday he has never

3    filed an adversary against Serv Trust.  Serv Trust's property

4    has never come into this estate.  The only way that Serv

5    Trust's property can come into my bankruptcy estate is by some

6    action, because they're a third party, they have their own

7    property.  He would need to go and file an adversary to pull

8    that property back into the estate.  He didn't do that.  He

9    had one year after he was appointed to do it.  He elected not

10   to do it.  A nonfinal state court order does not make Serv

11   Trust's property of this estate.  Okay?

12        THE COURT:  Because you're saying the order is not

13   valid?

14        MR. MYERS:  Your Honor, a bankruptcy court has to

15   make a determination.

16        THE COURT:  Why?  I've never --

17        MR. MYERS:  The --

18        THE COURT:  I've never had to make a determination of

19   what the estate's interest is.  Instead, the settlement is

20   always a settlement of whatever rights and interests the

21   estate may have.  I don't have to define them.  We can argue

22   all day long about whether the Montgomery County order is a

23   valid order or not.  I'm not aware of anything that says it

24   only becomes valid when it's final and nonappealable.  You

25   haven't cited any case law to that.



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1        But even if what you're saying is true, why do I have

2   to define what interest is being settled?  All I have to say

3   is that, whatever interest the estate may have, on a scale

4   from one to a hundred, it could be a hundred, it could be a

5   one --

6        MR. MYERS:  What if it's a zero?

7        THE COURT:  Whatever -- it could be a zero.

8        MR. MYERS:  It could be a zero?

9        THE COURT:  Whatever interest the estate may have,

10  that is what is being asked that I approve a settlement of.  I

11  do not have to define what the estate's interest is.  Why do I

12  have to define that?

13       MR. MYERS:  Because you have to -- you have to first.

14  At the beginning, you have to determine your jurisdiction over

15  the matter.

16       THE COURT:  I have jurisdiction over property of the

17  estate, whatever it may be.

18       MR. MYERS:  And there is no property of the estate.

19  You need to determine that.  So you need to determine your --

20  you can't close your eyes and say if -- what if Schlossberg

21  wanted to settle your home?  What if he wanted to do a

22  settlement with VerStandig?

23       THE COURT:  If he wants to do a settlement for the

24  estate's interest in my home?

25       MR. MYERS:  Yeah.



1          THE COURT:  And he gets money for that?  Then good

2     for him.  Because guess what?  Whoever he's settling with is

3     getting zero.

4          MR. MYERS:  Why?

5          THE COURT:  Because the estate has no interest in my

6     home.  So maybe if -- and I'm not saying whether Serv Trust's

7     assets are or are not property of the estate; I don't have to

8     do that.  All I have to say is whether he exercised good

9     business judgment in reaching this settlement.

10          And what he is asking me to approve is a settlement

11     of the estate's interest, whatever it may be.  Maybe the

12     estate's interest is that it has exclusive rights to all of

13     Serv Trust's assets.  Maybe it's that it has a right under a

14     final nonappealable order.  Maybe it's that the estate has a

15     right under an order that is not final and nonappealable.  I

16     don't have to define that.

17          MR. MYERS:  Yes, you do.

18          THE COURT:  Okay.  Well, all right.

19          MR. MYERS:  And if you -- and if you -- I hope you --

20          THE COURT:  If you have any --

21          MR. MYERS:  -- review the case law before you enter a

22     decision.

23          THE COURT:  What case law would you like me to

24     review, Mr. Myers?  Cite me --

25          MR. MYERS:  I'll send it to you.



1          THE COURT:  You're not sending me anything.  This is

2    your chance.

3          MR. MYERS:  Well, you know what, Judge?

4          THE COURT:  This has been pending for years.

5          MR. MYERS:  Judge --

6          THE COURT:  Years.  This is your opportunity.

7          MR. MYERS:  Okay.  Well, then let me speak.

8          THE COURT:  And you have not --

9          MR. MYERS:  Let me speak.

10         THE COURT:  You have not cited a single case, and

11   I've asked you to cite to authority.  I asked you yesterday.

12   I asked you earlier today.

13         MR. MYERS:  Okay.  You're --

14         THE COURT:  And I'm asking you now.

15         MR. MYERS:  Now, you've taken fifteen minutes of my

16   time.

17         THE COURT:  I --

18         MR. MYERS:  Okay.  So I'm going to disagree with you.

19   You just said that, if he were to do a settlement with your

20   house, he'd get nothing.  You can't approve a settlement, a

21   9019 settlement, by a bankruptcy trustee, for this bankruptcy

22   estate, if you have not first determined that what he's trying

23   to transfer to the King parties, in exchange for money, is

24   property of the estate.  The first thing you need to do is

25   determine property of the estate.



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1          So we can disagree on that.  But I will say to you --

2    and I'll say to you you're wrong, and you will find plenty of

3    case law on that.  And that's so fundamental, it's like the

4    sky is above and the ground is below.  You can't authorize an

5    order for nonestate property.

6          THE COURT:  I'm not authorized -- he hasn't asked me

7    to --

8          MR. MYERS:  It is.  It's right -- it's right in the

9    agreement.

10          THE COURT:  He's asked me -- this Court is only going

11    to approve a settlement with respect to the estate's

12    interests.  I'm not approving anything beyond that.

13          MR. MYERS:  But he does -- the state doesn't have an

14    interest in that property.

15          THE COURT:  Well, you can make that argument later

16    on.

17          MR. MYERS:  But you haven't even determined it.  At

18    least you've admitted that.

19          THE COURT:  I don't --

20          MR. MYERS:  So on appeal, it's easy.

21          THE COURT:  I don't have to.

22          MR. MYERS:  You don't have to determine if it's

23    estate property that he wants to transfer?

24          THE COURT:  I don't have to.  I may make that

25    determination.



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1        MR. MYERS:  I hope you do.

2        THE COURT:  I don't have to.

3        MR. MYERS:  Okay.  Well --

4        THE COURT:  And you have not cited any case law that

5    tells me I have to make that determination.

6        MR. MYERS:  Wow.  I didn't think that, on a

7    fundamental issue like that, that I had to cite that to you.

8        THE COURT:  Well --

9        MR. MYERS:  Okay.  So maybe --

10       THE COURT:  Mr. Myers, if you want to come in here

11   and play lawyer, then come in here and cite case law to me.

12   Okay?  If you're going to make a legal argument, be prepared

13   to back it up.

14       MR. MYERS:  So it's my position that you can't sign

15   your name to a 9019 settlement agreement authorizing the

16   transfer, which is what a settlement agreement is -- you've

17   got to look at it.  He's saying I want you, Court, to

18   authorize me to transfer nonestate property to the King

19   parties in exchange for $150,000.

20       The case law, by the way, is in my brief.  It's the

21   Anderson case.  Right on point.  A trustee cannot enter into a

22   9019 settlement for nonestate property and obtain money by

23   transferring nonestate property.  It's fraudulent.  Anderson,

24   In re Anderson.

25       THE COURT:  You continue to go down this path.  And



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1   I've told you you're going down the wrong path.  I've told you

2   that this Court will only approve a transfer of the estate's

3   interest, whatever it may be.  And you continue to argue that

4   the Court cannot approve a settlement that involves a transfer

5   of nonestate property.  If you want to waste your time with

6   that argument --

7            MR. MYERS:  Are you saying you agree with that?

8            THE COURT:  I'm not saying either way.  I'm saying

9   that what I am going -- what I am asked to do is approve a

10  settlement with regard to -- with regard to the estate's

11  interest.

12           MR. MYERS:  And it's your contention that you don't

13  have to determine what the estate's interest is.  So he could

14  make up anything.

15           THE COURT:  I --

16           MR. MYERS:  He could come in here --

17           THE COURT:  I think I've said that half a dozen

18  times, Mr. Myers.  If you want to continue to talk about it,

19  we can continue to talk about it.

20           MR. MYERS:  Okay.  So in your example --

21           THE COURT:  You're eating up your time.

22           MR. MYERS:  In your example, when you said -- I said,

23  if he were to do a settlement with your house, you said he'd

24  get zero because it's not estate property.  Well, when is that

25  determined?



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1          THE COURT:  At some point --

2          MR. MYERS:  When is it --

3          THE COURT:  At some point, when somebody tries to

4    take my home from me, when somebody tries to say that they own

5    my home, or they try to kick me out of my home, at that point

6    I'll say, wait a minute, you got the estate's interest in my

7    home, and the estate had no interest in my home.

8          So again, we could be talking about an interest on a

9    scale from one to a hundred.  Maybe the estate's interest is a

10   hundred.  Maybe the estate's interest is a fifty.  Maybe it's

11   a one.  Maybe even it's a zero.  But I don't have to determine

12   whether it's a zero, 150 or 100.  All I have to determine is

13   whether the trustee exercised good business judgment in

14   deciding to enter into this settlement.

15         MR. MYERS:  So I want to move on from this.  I want

16   to -- I want to put a final comment on -- you said that only

17   when somebody comes to you to take your house would they find

18   out that they don't own it.  So you wouldn't be upset if a

19   judge entered that order where he was allowed to take your

20   house, obtain money for himself, and then a year later -- and

21   you know what he would argue?

22         THE COURT:  He's not taking my house.

23         MR. MYERS:  You know what he would argue?

24         THE COURT:  He's not taking my house.

25         MR. MYERS:  I'm using it as an example.  You know



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1    that.

2              THE COURT:  Well --

3              MR. MYERS:  Any other property, nonestate.

4              THE COURT:  You're talking about a transfer of the

5    estate's interest.

6              MR. MYERS:  It has no interest.

7              THE COURT:  It's talking about -- I'm looking at what

8    the --

9              MR. MYERS:  All right.  I'm going to move on.

10             THE COURT:  -- elements are.  "Number one, the King

11   plaintiffs and the trustee would jointly file a stipulation in

12   the state court cases pursuant to which the King plaintiffs

13   would dismiss" --

14             MR. MYERS:  I'd like to finish my argument.

15             THE COURT:  -- "without prejudice the redemption

16   claim".  So number one, they're talking about dismissing

17   litigation.  "Number two, in consideration, the trustee would

18   agree to toll the statute of limitations."

19             MR. MYERS:  Your Honor, I'd like to finish my

20   argument.

21             THE COURT:  "And number three" -- stop interrupting

22   me.

23             MR. MYERS:  Well, I'd like to finish my argument.

24             THE COURT:  "And number three" -- stop interrupting

25   me.  Mr. Myers, we've been going at this for two days.



1          MR. MYERS:  Well, I don't want to hear your view.

2          THE COURT:  You've been interrupting me.  I'm not --

3     I'm asking you a question --

4          MR. MYERS:  No, you're not.

5          THE COURT:  -- to give you an opportunity to address

6     it.

7          MR. MYERS:  I have my closing argument.

8          THE COURT:  "Number three, the King plaintiffs and

9     the trustee would endeavor in good faith to negotiate a

10    resolution to the redemption claim."  So that's what has

11    been -- that's the proposed settlement.  And I assume the

12    trustee is going to ask me to approve a transfer of the

13    estate's interest in whatever assets we're talking about.

14         MR. MYERS:  And they have no interest.  So what do

15    you do then?

16         THE COURT:  Then -- they get nothing then.  I will

17    approve, in a settlement, a transfer of the bankruptcy

18    estate's interest in property.  I am not being asked to

19    approve -- I do not understand, from the presentation of the

20    case, that I'm being asked to approve the transfer of

21    nonestate assets.

22         MR. MYERS:  You're being asked to approve a

23    settlement agreement.  And in the settlement agreement, it

24    says the King parties are going to pay him 150 grand.  I mean,

25    honest to God, I'm -- this is pretty incredible.  They're



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1   going to pay him 150 grand, and he's going to -- you're going

2   to put your signature on a document.  And then he's going to

3   go in, and the King parties are going to say, oh, we already

4   did the deal.  Serv Trust's property is ours.  He's going to

5   say he got the money, and he's going to say equitable

6   mootness.  Okay?

7          But he doesn't -- this estate doesn't own any

8   property to transfer to the King parties.  And it is my

9   contention that, as a first step, fundamental, before you can

10  approve an agreement to transfer somebody else's property,

11  whether it's Serv Trust, or yours, or anybody else that's

12  nonestate property, you need to make a determination, because

13  there's no way that agreement doesn't fall below the lowest

14  level if it's not estate property.

15         And if -- and there is no possible way that you have

16  jurisdiction and authority to sign anything or approve

17  anything involving nonstate property.  So you have to make a

18  determination.  And my God, that's what bankruptcy courts do.

19  That's your only provision.  So I'm going to move on.

20         THE COURT:  Please do.

21         MR. SCHLOSSBERG:  Pardon me, Your Honor.  There was

22  confusion, I believe, a moment ago, when you were reading from

23  the motion.  I believe you were looking at the terms of the

24  procedural motion as opposed to the 9019 on the substance.

25  Those terms appear on page 6 of 18 of document docket number



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1    17-1.

2              THE COURT:  All right.  Thank you.

3              MR. MYERS:  Okay.  So we've established that I filed

4    my bankruptcy petition on November 18th, 2015.  That's when my

5    estate is --

6              THE COURT:  And Mr. Schlossberg, that was what I was

7    reading from, 17-1.

8              MR. SCHLOSSBERG:  Your Honor?

9              THE COURT:  The notice, top of page 5.

10             MR. SCHLOSSBERG:  And these are on the procedural

11   motion.

12             THE COURT:  I understand.  Thank you.

13             MR. SCHLOSSBERG:  On the following page, it's

14   captioned at the top, "Proposed compromise and settlement".

15   Those are the terms that are before you here today.

16             THE COURT:  Understood.

17             MR. SCHLOSSBERG:  Thank you.

18             THE COURT:  Thank you.

19             MR. SCHLOSSBERG:  Sorry to interrupt.

20             THE COURT:  No problem.

21             Go ahead, Mr. Myers.

22             MR. MYERS:  It's a breach of a trustee's fiduciary

23   duty to touch nonestate property, period, whether it's a 9019

24   or anything else.  That's fundamental.

25             I filed my claim on November 18th, 2015.  Mr.



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1  Schlossberg came in on February 22, 2017.  He filed no -- he

2  elected not to file an adversary.  He was aware of Serv Trust.

3  He knew about it.  It was discussed a lot in this case.  And

4  Judge Lipp then entered her order, which is res judicata in

5  this case and anywhere else, as to the matters that she made

6  findings of fact and conclusions of law on.  They are not

7  dicta, as Mr. Mastro -- Mr. VerStandig alluded to.  They are

8  findings of fact and conclusions of law which you're bound by.

9        THE COURT:  And Mr. Myers, even though the state

10  court later made a determination that, as of the date of your

11  bankruptcy filing, that you were an alter ego of Serv Trust,

12  and Serv Trust's assets and liabilities are assets and

13  liabilities of this estate?

14        MR. MYERS:  The state court did not make an

15  adjudication.  The trial judge said I'm making no

16  adjudication.

17        THE COURT:  Well, I'm --

18        MR. MYERS:  There's nothing --

19        THE COURT:  What about the order -- what about the

20  order entering judgment?

21        MR. MYERS:  It's not entering judgment.  It's

22  entering nonfinal.

23        THE COURT:  Judgment.

24        MR. MYERS:  No.

25        THE COURT:  Order -- it's called order entering



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1  partial judgment and stay.  And it says that judgment is

2  entered in favor of the King parties and against Serv Trust on

3  all claims set forth in the counterclaim.  And then it says --

4           MR. MYERS:  I know what it says, Your Honor.

5           THE COURT:  -- judgment is entered in favor of the

6  King parties on Count 2 which he defined as the alter ego

7  declaratory claim.  So how can you say that judgment was not

8  entered?

9           MR. MYERS:  Because it wasn't.  It's a nonfinal

10 order.

11          THE COURT:  This says --

12          MR. MYERS:  There is no --

13          THE COURT:  -- judgment is entered.

14          MR. MYERS:  Excuse me?

15          THE COURT:  It says judgment is entered.  How can you

16 say that judgment was not entered?

17          MR. MYERS:  There is no final order against all

18 claims against all parties.  Maryland case law is clear.  The

19 Maryland Court of Appeals even said there's no final order in

20 this case.  And I read from you Mr. VerStandig's filing in the

21 Maryland Court of Appeals, where he said there is no final

22 order for any claim.

23          THE COURT:  Well, that's different than judgment not

24 being entered.  What you're saying is that the judgment is not

25 final.



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1          MR. MYERS:  There's --

2          THE COURT:  You can't say a judgment wasn't entered.

3    Judgment was entered.  We have the order.

4          MR. MYERS:  A judgment is when the case is over.

5    It's a nonfinal order.

6          THE COURT:  So you're saying that -- so two different

7    questions here.  First of all, judgment was entered.  What

8    you're saying is that the judgment is not final.  But what is

9    your authority that says that a judgment that is not final is

10   not a valid judgment?  It means that the judgment can still be

11   revised.  It means it can be reversed on appeal.  It can be

12   revised under the court's revisory powers.  But what authority

13   do you have to say that an order that is not final and

14   nonappealable is not an order or is not a judgment?

15         MR. MYERS:  Your Honor, I don't know.  Maybe trust

16   AI:  "In Maryland, a nonfinal state court order cannot be

17   executed upon or enforced immediately.  Enforcement of

18   judgments and court orders occurs after final judgment is

19   entered."

20         THE COURT:  It says it can't be enforced immediately.

21   It doesn't say -- it does not say that the order is not a

22   valid determination by the court or is not a valid order.  It

23   just says it can't be enforced yet.

24         MR. MYERS:  Okay, Your Honor.

25         THE COURT:  Because it's still subject to the court's

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1    revisory powers.

2          MR. MYERS:  Correct.  And you have no jurisdiction

3    over anything in the Montgomery County --

4          THE COURT:  I --

5          MR. MYERS:  You can't do anything with it.

6          THE COURT:  I'm not revising --

7          MR. MYERS:  You're reviewing it.

8          THE COURT:  -- Montgomery County's decision.

9          MR. MYERS:  And that's a violation of Rooker-Feldman.

10         THE COURT:  I'm not reviewing it.

11         MR. MYERS:  Yes, you are.

12         THE COURT:  I --

13         MR. MYERS:  You just did.

14         THE COURT:  I am not reviewing it to apply it or --

15   I'm not reviewing it for the purpose of revising it.  If

16   anything, I'm reviewing it to apply the decision of the court.

17         MR. MYERS:  There is no decision, Judge.

18         THE COURT:  Okay.  All right.  We can -- I don't want

19   to spend any more time.

20         MR. MYERS:  I suggest you look that up because --

21         THE COURT:  Why don't you --

22         MR. MYERS:  -- this will get destroyed in an appeal.

23   And I --

24         THE COURT:  I don't need your suggestions.  Thank

25   you.



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1          MR. MYERS:  Well --

2          THE COURT:  What I want -- what I'm trying to do is

3    ask you questions and give you a chance to answer my

4    questions.  So we--

5          MR. MYERS:  Well, what if Judge Lease --

6          THE COURT:  We are going to agree to disagree.

7    You're saying that the Court cannot approve a settlement

8    unless there's a final nonappealable order.  And you're saying

9    that the order of the Montgomery County Court is not a

10   judgment, even though it's called a judgment, and says

11   judgment is entered, because it's not a final and

12   nonappealable order.  I hear you.  I disagree with you, but I

13   hear you.

14          So why don't you use your time on another argument?

15   I hear what you're saying, Mr. Myers.

16   (Pause)

17          THE COURT:  Just to let you know you have

18   approximately twenty-two minutes.

19          MR. MYERS:  You should grant me a few extra minutes

20   for all the interruptions.

21          THE COURT:  Well, part of closing argument is

22   answering questions by the Court, Mr. Myers.  You've been in

23   court enough to know how this works.

24          MR. MYERS:  Well, it sure sounds like you're arguing

25   with me.



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1       THE COURT:  I'm asking you questions because I'm

2   trying to understand your position and get authority for your

3   position.

4       MR. MYERS:  Okay.  So my position is this.

5       THE COURT:  I --

6       MR. MYERS:  I don't want to get lost in semantics.

7   Until -- once you remand a case to state court, until that

8   court resolves all claims against all parties, there is no

9   decision in that Court.  Even though they preliminarily can

10  enter something like a nonfinal order, it can be revised.  And

11  I'm not even a party to the trial, so they couldn't even

12  determine alter ego, which is what Judge Lease said.  It's in

13  all my filings.  You have the transcripts.  You have the

14  December 16th transcript, and you also have the trial

15  transcript now.

16      THE COURT:  Well, he entered judgment in favor of the

17  King parties on the alter ego claim.  The counterclaim was

18  dismissed, and the other count to the complaint was dismissed.

19  So why is the order not final?  What is there left for the

20  Montgomery County Court to decide?  Both of the counts of the

21  complaint have been fully resolved --

22      MR. MYERS:  No, they haven't.

23      THE COURT:  And the counterclaim has been -- judgment

24  has been entered in favor of the King parties on the

25  counterclaim.  So what is there left for the Montgomery County



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1    Court to determine?  Why is this not a final order?

2        MR. MYERS:  Judge, there were four claims, two from

3    Goldsboro, two from King parties.  He resolved -- without me

4    being there, in violation of the automatic stay, he

5    resolved -- he took evidence on this alter ego claim.  He's

6    never resolved Count 2.  He's never resolved either --

7        THE COURT:  Count 2 says, "Judgment entered in favor

8    of the King parties on Count 2".  So he did.

9        MR. MYERS:  I'm sorry.  He never resolved Count 1.

10   Count 2 was the alter ego.

11       THE COURT:  Well, the testimony was that Count 1 was

12   dismissed.

13       MR. MYERS:  Count 1 wasn't dismissed.

14       THE COURT:  That another count -- the other count was

15   dismissed.  I mean, all right.  Well, I'll ask Mr. Mastro to

16   clear it up.

17       MR. MYERS:  Here, I'll clear it up for you right now.

18   And the Fourth Circuit's already cleared it up with Mr.

19   VerStandig.  He can't go in and Mr. -- Mr. Schlossberg, when

20   there's no -- Serv Trust is not his property.  He can't agree

21   to dismiss Count 1 before the Montgomery County Circuit Court

22   even makes a decision, final decision, that Serv Trust is

23   property of whoever.

24       And guess what?  The case law also says that, even if

25   Montgomery County says the moon is made of green cheese, you,



1    as a bankruptcy court, still have to make a determination,

2    independently, as to whether Serv Trust is property of the

3    estate.  You can no longer do that because he's never filed a

4    547 or any action against Serv Trust.

5         You know, I know this law backwards and forwards.

6    And so there are still three claims left in that case.  And

7    Mr. VerStandig is trying to pull the same stunt he pulled in

8    Kiviti that the Fourth Circuit told him to go pound sand.  You

9    cannot create a final judgment by dismissing a claim, okay?

10   And that's what they were trying to do.

11        And he's all over the record in the transcript

12   saying, well, if you resolve the -- if you resolve the alter

13   ego, I'm sure Goldsboro's counsel and I could get together,

14   and we'd dismiss all of the other counts, and then you'd have

15   yourself a final judgment.

16        Read the Kiviti decision.  The Fourth Circuit told

17   him forget it; that's not how it works.  Every circuit court

18   has now taken up this issue because people were trying to

19   create finality.  They can't create it.

20        THE COURT:  And what is the citation for Kiviti?

21        MR. MYERS:  Kiviti v. -- well, he's -- he was in the

22   case.  It was Fourth Circuit.

23        THE COURT:  You're citing the case.  I'm asking you.

24        MR. MYERS:  K-I-V-I-T-I  v. something with a "B".

25   Okay?



1          THE COURT:  Do you have a citation?

2          MR. MYERS:  For God's sakes.

3          THE COURT:  Mr. Myers, I caution you, you are walking

4     a fine line between showing extreme disrespect for the Court.

5     And I caution you to dial it back.

6          MR. MYERS:  I'm dealing with thieves here.  Kiviti v.

7     Bhatt, B-H-A-T-T.

8          THE COURT:  What's the citation?

9          MR. MYERS:  80 F.4th 520 (4th Cir. 2023).  He tried

10    to do the same thing here before.  Kiviti came out and told

11    him he couldn't do it.  So they're trying to create finality.

12    They can't do it.  There is no final order in the Maryland

13    case.

14          So this is Judge Lease at the trial, at the

15    beginning, explaining.  Under the doctrine, you can do either

16    one of two things.  You either abstain, because Myers isn't a

17    party, okay, it's a waste of time, because you've just got to

18    come back here again; I got no final judgment.  And then he

19    says, or two, I can do something, but then it's a nonfinal

20    judgment, because anything that I do today, in essence,

21    necessarily would be nonfinal, because we're not putting all

22    of the claims against all the parties for not getting to an

23    adjudication.  So we don't have a final judgment today under

24    any circumstances.  Maryland Court of Appeals came to the same

25    decision.



1          Okay.  Let me go back.  I've covered the fact that

2     the only adjudication in this Court, relative to my

3     relationship with Serv Trust, was Judge Lipp's order in 2018.

4     And she determined -- she, either implicitly or explicitly,

5     determined that it is not my alter ego, because she made all

6     the findings of fact and conclusions of law.  So it's not my

7     alter ego.  So that's res judicata.  He's never filed the

8     action.  He's now time barred.

9          Do you mind?  While I'm trying to give my

10    presentation --

11         THE COURT:  Excuse me, Mr. Myers.

12         MR. MYERS:  I can't concentrate while they're

13    talking.

14         THE COURT:  Then you tell me that.

15         MR. MYERS:  Would you ask them to please be quiet

16    while I'm trying to give this presentation?

17         THE COURT:  Try and keep your talking low enough that

18    it does not disturb Mr. Myers, please.  Thank you.

19         MR. SCHLOSSBERG:  Will do, Your Honor.

20         MR. MYERS:  Okay.  So we discussed earlier where

21    Judge Dwyer said -- and I'll give you the case cites for

22    this -- Alter ego claims are the exclusive property of the

23    bankruptcy estate.  The King parties have no jurisdiction to

24    bring an alter ego claim in Montgomery County Circuit Court.

25    And the cases are Wilson v. Dollar General Corp., 717 F.3d



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1    337, and In re Charles Edward Enterprises 344 B.R. 788.

2            THE COURT:  So Mr. Myers, you just told me a moment

3    ago that this Court has no ability to review the decisions of

4    the state court, but now you're telling me that the state

5    court decision is not valid because the alter ego claim

6    couldn't be brought there.  And you're asking me to determine

7    that the state court decision is not enforceable.  So you're

8    asking me to do exactly what you just said five minutes ago I

9    couldn't do --

10           MR. MYERS:  No, ma'am.

11           THE COURT:  -- which is review the state court

12   decision.

13           MR. MYERS:  No, ma'am.  I'll explain.

14           THE COURT:  Please do.

15           MR. MYERS:  Okay.  A case goes over to Montgomery

16   County Circuit court.  The King parties bring an alter ego

17   claim that is exclusively -- the standing is exclusively in a

18   Chapter 7 trustee.  The reason the King parties are bringing

19   the claim, and the reason the Chapter 7 trustee asked them to,

20   is because the Chapter 7 trustee knows he's time barred.

21           Now, that's too bad.  Time bars are time bars.  Okay.

22   You lose.  He didn't bring the claim, so he's out.  And so now

23   the King parties don't have standing to bring an alter ego

24   claim on behalf of the estate.  Only a Chapter 7 trustee does.

25   But he's time barred.  So they have no standing to bring that



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1  claim, and it should be dismissed, and it will be eventually.

2  So --

3      THE COURT:  So you're saying that this Court should

4  not -- that -- this Court can't dismiss that case.  It's in

5  the state court.

6      MR. MYERS:  No, that's -- I didn't ask -- this Court

7  can't dismiss that case.  This Court can't interfere at all

8  with that case.  This Court can't consider a 9019 settlement

9  while that case is going on, because that Court hasn't made

10  its decision yet.  And this Court remanded everything to them,

11  and it's a violation of Rooker-Feldman to review state court

12  orders after you remand them.

13      THE COURT:  And as I said earlier, I am not reviewing

14  the state court's decision to say whether it's right, or

15  whether it's wrong, or to revise it, or to supersede it, or to

16  make a decision that conflicts with it.  I don't understand --

17      MR. MYERS:  That's not how -- Rooker-Feldman is when

18  a party --

19      THE COURT:  I --

20      MR. MYERS:  -- brings something from a state court --

21      THE COURT:  Thank you.  I understand what Rooker-

22  Feldman --

23      MR. MYERS:  Okay.  Well, let's just move on.

24      THE COURT:  Okay.

25      MR. MYERS:  So the authority to allege that alter ego



1    claim in state court -- and I don't really -- there's kind of

2    two things going on.  The state court has jurisdiction over

3    all of these issues.  Whatever they're trying to do here in

4    the back door, they need to be over in the state court.  The

5    state court is not done with them.

6         THE COURT:  You just said that an alter ego claim

7    lies exclusively with the Chapter 7 trustee and has to be

8    brought in this court.  And now you're saying the state

9    court --

10         MR. MYERS:  No, no, not in this court.  I'm saying

11    that the Chapter 7 trustee is the only party with standing to

12    bring an alter ego claim.  But once his time runs out, that's

13    the end of it.  The King parties don't have derivative

14    jurisdiction to therefore go in, after Schlossberg's time runs

15    out, and file an alter ego claim.  They have -- King parties

16    have no standing.  So once we get back into state court, that

17    will all be resolved, and the entire case will get dismissed.

18    Okay.  So --

19         THE COURT:  Did you appeal the decision of the

20    Montgomery County Court?  Did anybody appeal it?

21         MR. MYERS:  Yes, I appealed to the Maryland Court of

22    Appeals as a nonfinal order.  They said there's nothing to

23    appeal.  There is no decision yet.  And that's where I quoted

24    you from.  Mr. VerStandig filed a motion in the Maryland Court

25    of Appeals, and he said -- I asked for a stay, and they said

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1    there's no final order.  There's no order determining any

2    claim against any party in the circuit court case.  That was

3    after Judge Lease entered the nonfinal order.

4         Mr. VerStandig knows the law.  He knows it's a

5    nonfinal order, and he knows that no claim against any party

6    is resolved until all claims against all parties in a final

7    judgment is entered by that court.  And Judge Lease knows

8    that.

9         THE COURT:  And did you take any action in the

10   Montgomery County decision after the stipulation of dismissal

11   was filed?

12        MR. MYERS:  The stipulation of dismissal was -- is

13   void.  The case is over.  They can file whatever they want,

14   but it's void because Schlossberg can't file something on

15   behalf of Serv Trust.  There's no final decision that does

16   anything.  I know he wants to jam it on through, but that's

17   not the way it works.

18        THE COURT:  So no, you did not?

19        MR. MYERS:  Well, I filed a -- well, I filed a motion

20   to dismiss for lack of prosecution because they haven't done

21   anything.  Their whole goal was to get over here in front of

22   you and pull this stunt.  And so I filed a motion to dismiss

23   for lack of jurisdiction.  And the judge entered an order

24   denying my motion.  I don't know why, because there hasn't

25   been any pleadings filed for a year -- over a year.



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1          In any event, I appealed that order to the Maryland

2    Court of Appeals.  So this entire matter is now on appeal --

3    not -- it's on appeal in the U.S. District Court.  It's on

4    appeal in the Maryland Court of Appeals.  And I will go into

5    the Maryland Court of Appeals, treating that as a collateral

6    order, and this case will be dismissed for lack of subject

7    matter jurisdiction, because everything Judge Lease did, he

8    had never had jurisdiction returned.

9          But that's -- I'm not trying to argue that with you.

10   That's the Fourth Circuit case that -- I'm going to put this

11   in the record.  This is a published decision, United States

12   Court of Appeals for the Fourth Circuit, City of Martinsville,

13   Virginia v. Express Scripts, Inc.  This is decided February

14   10, 2025.

15         It says exactly what I told you that, when a case is

16   removed, and then a court enters a remand order, if a party

17   appeals, that court is stayed, under Coinbase and -- under

18   Coinbase, which refers to Coinbase, Inc. v. Bielski, 599 U.S.

19   736 (2023), Griggs v. Provident Consumer Discount Co., 459

20   U.S. 56 (1982).

21         It's the Griggs principle, and it basically says, in

22   that situation, the Florida court could do nothing.  It could

23   never have sent that remand order back to Montgomery County

24   because they were automatically -- nobody had to do anything.

25   They're automatically stayed under those circumstances.  And

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1    that's what the Fourth Circuit found on a case that was

2    removed -- remanded, or attempted to be remanded.  And they

3    said the state court can't do anything because the district

4    court can't send the required order remanding the case.

5         And it's 1447, "State court may not proceed after

6    remand until the remand order is physically mailed to it".  It

7    has to be a certified copy.  That's 28 U.S.C. 1447(c).  That

8    never happened here.

9         So what happened here, and where this is all going to

10   end up, is that the case was removed to Florida.  I appealed

11   the remand order.  I filed a motion for rehearing of that

12   order.  The Court reserved jurisdiction.  So the Court was

13   never intending to send that case back immediately.  The order

14   that the court entered says it's reserving jurisdiction.  I

15   filed a motion for rehearing, and then Mr. VerStandig filed an

16   opposition.  So clearly the bankruptcy court in Florida had

17   jurisdiction.  It didn't enter its order until January 31.

18   Then it went up on appeal, and then my case was dismissed and

19   the adversary was closed.

20        So in effect, the case that was in Maryland went down

21   to Florida, and it's gone.  And you're welcome to read the

22   case law.  What has to happen is, if Mr. VerStandig and his

23   clients want to do anything, because that case has now been

24   dismissed, they would have to go down to Florida and have that

25   case reopened, because that Court has never, ever mailed,



1    physically mailed, a copy of that order back to Montgomery

2    County Circuit Court.  Until they do, Montgomery County

3    Circuit Court had no jurisdiction to do anything.

4           And I would like to -- would you like this case or

5    no?

6           THE COURT:  Which one?

7           MR. MYERS:  A copy of it?  No?

8           THE COURT:  You're welcome to hand it up.  I'll take

9    a look at it.  Save me the printing.  You can hand it to Ms.

10   Whitfield.

11          MR. MYERS:  It's an important case.

12          THE COURT:  Well, I'd like to think all cases are

13   important, but --

14          MR. MYERS:  Well, it's --

15          THE COURT:  -- I'm happy to read this.

16          MR. MYERS:  Yeah.  So it resolves -- so where that

17   takes us is everything that happened in the Montgomery County

18   Circuit Court is going to be -- they never got jurisdiction

19   back.  So there are no orders, period.  There's no trial.

20   There's no nothing.

21          Schlossberg also argued in this Court, in the Offit

22   Kurman v. Serv Trust action -- and you can see it in the

23   record -- that I have no interest in Serv Trust.  So this is

24   in, what, 2000 whatever, I don't know, '19?  This is after

25   Judge Lipp said I have no interest, everything's fine.  Serv



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1  Trust is -- you know, Myers is the trustee for the benefit of

2  his five children, et cetera.

3          Let's talk about another thing.  Serv Trust property

4  is not property of the estate.  The only way that this Court

5  or any court could ever determine rights in Serv Trust

6  property is to bring in the beneficiaries' indispensable

7  parties.  They're the owners of the property.  There's never

8  been an adjudication yet whether they own or don't own, okay?

9  It's just this bogus January 3 trumped up trial that was void

10  because of lack of jurisdiction.  So they can't do anything

11  anyway.  That's why they need to bring the adversary against

12  third parties that claim an interest.

13          THE COURT:  Mr. Myers, you have about a minute left.

14  How much time do you need to wrap up?

15          MR. MYERS:  Maybe five to ten minutes.  Thank you.

16  Okay.

17          THE COURT:  Well, I will give you ten minutes.

18          MR. MYERS:  Okay.  Thank you.  So matters that are

19  outside this Court's jurisdiction.  So this case left this

20  Court's jurisdiction.  It's never been removed and brought

21  back here.  The case law is clear that you have no

22  jurisdiction once it's removed for any matters, any issues,

23  any adversary proceedings dealing with anything to do with the

24  case that was remanded back to the Court.  Okay?  I can read

25  you the AI legal if you'd like.



www.escribers.net | 800-257-0885

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1          But so that being the case, you have a situation

2     where you have Serv Trust, a nondebtor, nonparty,

3     nonparticipant in this case, never filed a proof of claim in

4     this case.  You have no jurisdiction over Serv Trust.  So

5     under Stern v. Marshall, and under Wellness International

6     Network v. Sharif, Seventh Circuit 2015, you have no

7     jurisdiction to determine any of these claims.  The best you

8     could do -- and you shouldn't even do that, in my opinion,

9     but -- would be make recommendations -- findings of fact and

10    recommendations which would have to go to an Article III

11    judge.

12         THE COURT:  What claims do you think I'm being asked

13    to determine?  I'm not being asked to determine any claims.

14    I'm being asked to approve a settlement.  It's an entirely

15    different --

16         MR. MYERS:  Okay.  I don't want to argue with you.

17    If you read Wellness International, it deals with an alter ego

18    claim of a trust.

19         THE COURT:  I'm not being asked to determine an alter

20    ego claim.  I'm being asked to approve a settlement.

21         MR. MYERS:  And you can't when it involves nonestate

22    property.  That's what Wellness says best.  You have no

23    jurisdiction.  You're in Article I judge.  If somebody wants

24    to determine rights, or to transfer rights in property that he

25    doesn't have, but if they want to do anything with a



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1    nondebtor, nonestate property, then that's an Article III

2    judge.  That's not this Court.  This Court has no jurisdiction

3    over nonestate property.  That was Judge Schneider.  Point

4    blank.  If it's nonestate property, or it's exempt property,

5    but if it's nonestate property, he says I have no jurisdiction

6    to determine rights in it.

7         THE COURT:  Well, doesn't he have -- doesn't, at the

8    very least, even assuming what you're saying is true, that the

9    Chapter 7 trustee doesn't have the rights of Sun Trust,

10   doesn't he have.

11        MR. MYERS:  Serv Trust, you mean?

12        THE COURT:  I'm sorry, Serv Trust.

13        MR. MYERS:  Yeah.

14        THE COURT:  Doesn't he have your rights?  He's the

15   Chapter 7 trustee of your estate.  So whatever rights and

16   interests you had, as of the bankruptcy filing, he can settle

17   those rights and transfer those rights.  And he has --

18        MR. MYERS:  The --

19        THE COURT:  And why would the Court not have

20   jurisdiction over that?

21        MR. MYERS:  There's been no determination that Serv

22   Trust is my alter ego.

23        THE COURT:  Well, there has been a determination.

24   You disagree with it.  You don't want to abide by it.  But

25   that aside, why do I need a determination that there's been --



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1    I approve settlements all the time.

2         MR. MYERS:  Okay.  Well, then you're doing it wrong.

3         THE COURT:  Well, thank you for telling me that.

4         MR. MYERS:  Okay?  If you're approving settlements of

5    nonestate property, then that's a big problem.

6         THE COURT:  I told you, I'm approving settlements of

7    the estate's rights and interests.  I am entitled to do that.

8         MR. MYERS:  Okay.

9         THE COURT:  I don't have to define what those rights

10    and interests are.

11         MR. MYERS:  You --

12         THE COURT:  I only have to say whatever rights and

13    interests the estate may have you are authorized to settle

14    them.  That's all.

15         MR. MYERS:  No, ma'am.

16         THE COURT:  Okay.

17         MR. MYERS:  No, ma'am.

18         THE COURT:  All right.

19         MR. MYERS:  You cannot -- you cannot, as a Article I

20    judge, in a bankruptcy court, approve a settlement agreement

21    before you've even been convinced that there's property of the

22    estate.  If you --

23         THE COURT:  Who said I haven't been convinced that

24    there's property of the estate?

25         MR. MYERS:  Well, you --



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1        THE COURT:  Now you're saying something entirely new.

2        MR. MYERS:  Well, you have to make that

3    determination.

4        THE COURT:  I --

5        MR. MYERS:  That's part of what you have to do.

6        THE COURT:  I don't disagree with that, but I don't

7    have to define what the estate's rights and interests are.

8    All I have to say is, to the extent the estate has any rights

9    and interests, I am authorizing you to settle.  That's all I

10   have to do.

11       MR. MYERS:  But you do have to determine if --

12   whatever rights and interest that Serv Trust property,

13   whatever he wants to define it as, you have to say, how did

14   Serv Trust property get into this bankruptcy estate?

15       THE COURT:  Well, why do I even have to say Serv

16   Trust property came into the estate?

17       MR. MYERS:  Well, how can he transfer Serv Trust

18   property if it never came into the estate?

19       THE COURT:  My understanding is he's asking for

20   authority to transfer the estate's interest, whatever it may

21   be.

22       MR. MYERS:  Well, it never came into the estate.  So

23   the estate has no interest because the Montgomery County

24   Circuit Court said I'm not making an adjudication.  This is

25   not final.



www.escribers.net | 800-257-0885

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1          THE COURT:  You mean the Court entered the judgment

2     that says I'm entering a judgment in favor of the King

3     parties, that court?

4          MR. MYERS:  The same court that says I'm not entering

5     an adjudication.  And you know, if you don't want to believe

6     him, maybe the Maryland Court of Appeals, and Mr. VerStandig,

7     who filed his motion there, and who the trustee joins.  And

8     they all say there's no adjudication.

9          Serv Trust property is not property to the estate,

10    period.  Zero.  Zero.  So whatever, if he wants to even look

11    at it, he can't do it because, as a Chapter 7 trustee, he

12    can't touch nonestate property.  It's a breach of his

13    fiduciary duty.  And it constitutes fraud for him to try and

14    transfer nonestate property to anybody, whoever the other

15    party is in his bogus 9019, and then take 150 grand.  He can't

16    go out and transfer other people's property in exchange for

17    money.

18          THE COURT:  Okay.  You have about four minutes.

19          MR. MYERS:  So this is a noncore matter.  This is not

20    a core matter.  Serv Trust's property is not part of the

21    estate.  So you have Stern v. Marshall, 131 S. Ct. 2594.  You

22    have Wellness International Network v. Sharif, Seventh Circuit

23    2015.  You have Executive Benefits v. Arkison, 134 S. Ct.

24    2165.

25          This is a noncore matter.  And the Supreme Court has


www.escribers.net | 800-257-0885

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1    said you can't determine rights in Serv Trust's property.  And

2    there is a pending counterclaim.  The judge that -- again,

3    there's been no final determination on anything against

4    anybody until he finally enters a final order.  What he's

5    going to find out is, when everybody comes back, he's going to

6    find out that the King parties didn't tell him, oh, judge, we

7    didn't file because Serv Trust wasn't even there.  Serv Trust

8    got sandbagged.  They weren't at the trial either.  There was

9    nobody at the trial other than Mastro and VerStandig.  You

10   think there was any truth there?  No.  So he didn't tell the

11   judge, oh, hey, judge, they filed a counterclaim and we didn't

12   file an answer, therefore, all of their allegations and their

13   counterclaim are admitted for purposes of this trial.  So

14   that's going to come out.

15          THE COURT:  For purposes of what trial?

16          MR. MYERS:  Purposes of when he brought up the

17   counterclaim.  He said, oh, I want to get rid of the

18   counterclaim.  And he didn't bother to tell the court, well,

19   we didn't file an answer.  It's not even an issue.  That's a

20   jury trial.

21          THE COURT:  You have about two minutes.

22          MR. MYERS:  Okay.  On the issue of case being

23   remanded, citation, Petrarca v. Things Remembered (sic),

24   Supreme Court case.  Stern claimed unlawful attempt to augment

25   the bankruptcy estate through a suit, asserting a claim under



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1    nonbankruptcy law.  That's exactly what's happening here.

2            He asked the King parties.  Mr. VerStandig

3    testified -- or is in the court record here saying that

4    Schlossberg asked him.  I did file a motion to disqualify the

5    trustee, Mr. VerStandig, and Mr. Mastro.  I attached and

6    incorporated all the relevant time sheets and everything where

7    he was fully involved in this project.  There is no way he can

8    be on the other side of the table with me.  And because

9    Schlossberg asked him to do it for him, he's now part of the

10   pack and fruit of the poisonous tree.  So they're all gone.

11   It's all conflict of interest.

12           THE COURT:  And when did you file that motion?

13           MR. MYERS:  I filed it in the break.

14           THE COURT:  Okay.  So you filed that --

15           MR. SCHLOSSBERG:  I --

16           THE COURT:  -- this afternoon?

17           MR. SCHLOSSBERG:  I wasn't aware that I had a

18   motion --

19           MR. MYERS:  It's not for now.  I'm telling you, you

20   wouldn't let me do it, so I filed a motion.

21           MR. SCHLOSSBERG:  But you're arguing it now to the

22   judge.

23           THE COURT:  I wouldn't let you do what?

24           MR. MYERS:  You wouldn't let me talk about the time

25   sheets and whatever.  So now I'm just advising you that I



1    filed a motion to disqualify the trustee, VerStandig, and

2    Mastro.  And in there is eighty-three pages of time sheets,

3    with Mr. VerStandig's name all over it, with 6789 Goldsboro,

4    with Serv Trust, et cetera.  It's not for today.

5         THE COURT:  Not for today.  And you have about thirty

6    seconds left.

7         MR. MYERS:  This Court's jurisdiction is in rem.

8    Serv Trust's property is not property of the estate.

9    Therefore, this Court cannot determine rights in it.  The

10   Court has an obligation to determine its jurisdiction first --

11   no court can enter an order retroactive eight years.  Case,

12   Supreme Court Asavito (ph.), nunc pro tunc order.  It never

13   happened.  Okay?  As the Supreme Court said, we're not dealing

14   with Orwellian things.  It never happened.  So there's no

15   determination --

16        THE COURT:  What nunc pro tunc order are you

17   referring to?

18        MR. MYERS:  A state court can't enter an order that

19   says that Serv Trust property was property of my estate eight

20   years ago.

21        THE COURT:  It can't make a determination --

22        MR. MYERS:  Retroactive?  No.

23        THE COURT:  -- of rights as of a particular date?

24        MR. MYERS:  Not eight years ago, no, ma'am.

25   Prospective, or as of that date.



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1          THE COURT:  And what case law do you have for that?

2          MR. MYERS:  Maryland case law.

3          THE COURT:  Give it to me.

4          MR. MYERS:  I don't have it.  I mean, I have an AI

5     cite.

6          THE COURT:  Okay.

7          MR. MYERS:  It can't be retroactive.

8          THE COURT:  Okay.

9          MR. MYERS:  It can't be nunc pro tunc.  And I gave

10    you the cite for nunc pro tunc as --

11         THE COURT:  But it didn't --

12         MR. MYERS:  -- I'm sure you're aware.

13         THE COURT:  Nunc pro tunc is when you make an order

14    effective retroactively.  That's not what Montgomery County

15    Circuit Court did.

16         MR. MYERS:  I --

17         THE COURT:  What they said was they determined, as of

18    a particular date, what your rights were.  That's what the

19    court determined.

20         MR. MYERS:  Okay.  Well, let me just add this

21    comment.  The court didn't determine anything yet.  And Mr.

22    VerStandig is the one who drafted the order.  And it says "as

23    of", okay?  That's never going to work.  You can't do a

24    retroactive eight years for property rights.  And in any

25    event, that Court is also bound by Judge Lipp's ruling.  So --



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1          THE COURT:  All right.  Let's wrap it up.

2          MR. MYERS:  -- you can't enter a 9019 order on the

3   rights of nonparties, beneficiaries of the trust.  They're not

4   here indispensable parties.

5          And on top of everything, I will mention that Judge

6   Delano said no claims can go forward against me.  They ignored

7   that.  They went forward.  So now VerStandig is in violation

8   of the stay, the King parties, the trustee, Mastro, they all

9   just blew apart that order that says you can't go forward.  So

10  everything that was done after that is void.

11         And this is from Judge Gunn.  You can't use a prior

12  stay violation to support future actions, as those future

13  actions would likewise be void, which is to say, when they

14  violated the stay in the Montgomery County Circuit Court,

15  everything they've done since then, according to the case law

16  cited in one of Judge Gunn's opinions, is absolutely void.

17  They cannot violate the stay and then build on it and come in

18  here.  Thank you, Your Honor.

19         MR. SCHLOSSBERG:  Your Honor, I'd like to know what

20  which decision of Judge Gunn he just cited.  Is it the one

21  where you --

22         THE COURT:  Mr. Myers?

23         MR. SCHLOSSBERG:  -- were barred from refiling --

24         THE COURT:  Mr. Myers, do you have a cite for Judge

25  Gunn's decision?



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1          MR. MYERS:  It wasn't in my case, and I can get her

2    order where she says that.

3          THE COURT:  All right.  So I --

4          MR. MYERS:  But I assume that you are aware of that.

5          THE COURT:  I --

6          MR. MYERS:  But I'll give you the cite and the cases.

7          THE COURT:  If you're going to cite a case, you

8    should give the citation for it.

9          MR. MYERS:  Okay.

10          THE COURT:  Because unfortunately, what happens too

11    often is people come into this court and they cite cases for

12    things that they don't say.

13          MR. MYERS:  Okay.  Let me give it to you.

14          THE COURT:  I don't need a case cite to tell me that

15    an action taken in violation of the automatic stay is void ab

16    initio.  I don't need that.

17          MR. MYERS:  That's not the point I'm making.

18          THE COURT:  But if you want to cite to a case, I'm

19    happy to take the citation and read the case.

20          MR. MYERS:  Yeah.

21          THE COURT:  So I'm going to hear from the other side

22    now.

23          MR. MYERS:  Okay.  But just to clarify what you said,

24    that wasn't my point.  My point was, of course, if you violate

25    the stay, the action is void ab initio.  Her point is, if you

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1   violate the stay, everything you do after --

2           THE COURT:  Is void ab initio.

3           MR. MYERS:  Yes.  Build upon that.  Well --

4           THE COURT:  Okay.  Okay.

5           MR. MYERS:  It's a different concept.

6           THE COURT:  All right.

7           MR. MYERS:  Thank you.

8           THE COURT:  So the Court gave you significantly more

9   time than what I had said.

10          Mr. VerStandig, I expect you to keep this brief.

11          MR. VERSTANDIG:  Yes, Your Honor.  Let me start with

12  a couple of factual points that came up.  The Court does have

13  in evidence that the alter ego ruling in Florida -- sorry --

14  the alter ego order in Maryland came after the Florida case

15  was filed.  And the very easy way that's in evidence is

16  there's been extensive discussion -- and I'm not talking about

17  closing; I'm talking about Mr. Myers' testimony -- of the fact

18  that there was a remand from the Florida bankruptcy Court.

19          THE COURT:  And what Mr. Myers has said is that the

20  remand is not effective because it was not certified.

21          MR. VERSTANDIG:  Your Honor, I can't speak to that

22  theory, which is one that has not been previously introduced.

23  I am going to have a response to that, in a more macroscopic

24  fashion, in a moment, with a citation.  But certainly the

25  alter ego order came after the Florida petition.  So if the

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1    question is whether my clients could have filed proofs of

2    claim, premised upon an alter ego order that did not yet

3    exist, as part of Mr. Myers' 13, they most certainly could not

4    have.

5              MR. MYERS:  I don't understand what you just said.

6    Am I allowed to ask?

7              THE COURT:  No, you're not.

8              Go ahead, Mr. VerStandig.

9              MR. MYERS:  Do you understand what he just said?

10             THE COURT:  I understand exactly what he said.

11             MR. VERSTANDIG:  Your Honor, the second point -- and

12    I think the Court got it, based upon the questions -- the

13    Montgomery County order is a final order.  There is Count 1,

14    which was disposed of by the stipulation of dismissal that's

15    in evidence.  There's Count 2, which was disposed of by Judge

16    Lease's order, which is in evidence.  And then there's the

17    counterclaim, which is disposed of by Judge Lease's order.

18             THE COURT:  Well, Mr. Myers is saying there are two

19    other counts.  I thought there was Count 1, Count 2 and a

20    counterclaim.  Count 1 was dismissed.  Count 2 is the subject

21    of Judge Lease's order.  And the counterclaim was disposed of

22    in Judge Lease's order.  So what else is there?

23             MR. VERSTANDIG:  Yes, Your Honor.  And this goes to

24    two points that Mr. Myers made that I believe are slightly

25    misleading.  Mr. Myers testified -- and I want to lean on the

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1   record and what's in the record -- that the Montgomery County

2   case that we keep talking about was -- and I'm quoting his

3   testimony here -- administratively consolidated --

4            MR. MYERS:  I didn't testify to that today.  I

5   object.  I never said that.

6            THE COURT:  That is exactly what his testimony was.

7   Thank you.

8            MR. MYERS:  I said it was consolidated for all

9   purposes.  And Mr. VerStandig is all over the record --

10            THE COURT:  All right.  Please stop.  You had your

11   chance.

12            MR. MYERS:  Well, he's misstating --

13            THE COURT:  Just stop.  Stop.

14            Mr. VerStandig, please continue.

15            MR. VERSTANDIG:  Your Honor, if you look at some of

16   the Montgomery County items in the docket, you'll see a split

17   caption.  That is a reference to the administratively

18   consolidated case which is the action brought by 6789

19   Goldsboro against Mr. Myers.  There is no dispute that that

20   case, meaning the Goldsboro case against Mr. Myers, is not

21   concluded.  But under Maryland law an administrative

22   consolidation does not preclude entry of a final order, in one

23   of the two or more cases that are consolidated, once all

24   matters therein are finally adjudicated.

25            Now, Mr. Myers has also pointed to the fact that



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1   there was this appeal, and he has accurately pointed out that

2   the King parties, through my counsel, represented to the

3   Maryland Appellate Court that it was not a final order.  And

4   the time space continuum is significant here.

5        At the time that representation was made, the

6   stipulation of dismissal disposing of Count 1 had not yet been

7   docketed in Montgomery County.  So at the time, the alter ego

8   order was not a final order.  It later became a final order.

9   It became a final order on May 7th, 2024.  That date is

10  significant because any appeals running therefrom would be

11  measured from that date.  Certain reconsideration deadlines

12  would be measured from that date.  I want to be careful to not

13  go beyond what's in the record before you.

14       But suffice it to posit, we are standing here more

15  than a year later, and if Mr. Myers is making references to an

16  appeal he recently filed, just as an untimely appeal does not

17  vest jurisdiction in the federal court system, an untimely

18  appeal does not create an appellate question in the Maryland

19  state court system.

20       In terms of what to do about the Montgomery County

21  ruling -- and this goes to what I said a moment ago about

22  having a more global answer and whether or not there is some

23  hair technical violation of a provision of Title 28 that,

24  honestly, I'm not familiar with.  The answer is, and I say

25  this quite respectfully, I don't believe you can make that



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1    decision.  And here is why.

2            Under Article IV, Section 1 of the U.S. Constitution,

3    this Court is to afford full faith and credit to the orders

4    and judgments of the state courts of the United States.  Now,

5    there is case law that speaks to those as being final orders.

6    As I just laid out, the alter ego order is a final order, and

7    it has been a final order for more than a year.  Mr. Myers

8    cannot collaterally attack, in this court, whether there was

9    some jurisdictional defect in the Maryland state court

10    litigation.

11            And even though there's this familiar credence in the

12    legal profession that you can raise subject matter

13    jurisdiction at any time, including the famous apocryphal

14    story involving after a Supreme Court has taken a case under

15    advisement, there is no support for the proposition that you

16    can raise subject matter jurisdiction or any other jurisnal --

17    jurisdictional -- I apologize; it's been a long day -- defect

18    once a case has a final order that is beyond any appellate

19    deadline.

20            This Court cannot review the veracity or integrity of

21    any circuit court's order.  Among other reasons, this Court

22    also doesn't sit as an appellate court over the Montgomery

23    County Circuit Court.  And under Article IV, Section 1, this

24    Court must give full faith and credit to the alter ego order

25    out of the Montgomery County Circuit Court.



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1          MR. MYERS:  Your Honor, I'm going to object.

2          THE COURT:  No, no, no, no.  This is closing

3    arguments.  You don't get to object.

4          MR. MYERS:  Well, he's --

5          THE COURT:  Sit down.

6          MR. MYERS:  He's lying.

7          THE COURT:  Sit down.

8          MR. MYERS:  There is no final judgement.  He can't --

9          THE COURT:  Sit down.  I heard your argument for an

10   hour and fifteen minutes.

11         MR. MYERS:  Well --

12         THE COURT:  I heard you say it numerous times.

13         MR. MYERS:  -- the Fourth Circuit --

14         THE COURT:  Go ahead, Mr. VerStandig.

15         MR. VERSTANDIG:  Thank you.  Your Honor, and this is

16   the thing that I started to mention in Mr. Myers' argument.  I

17   should have reserved and waited till now.  I do just want to

18   point out, from a formalistic point of view, what Mr. Myers

19   puts on the docket, after the close of evidence in this case,

20   does not make it a part of the record.

21         Since there is going to be contemporaneous date marks

22   on the record, meaning something docketed today, and the fact

23   that a trial was had today, I want the record to be very clear

24   that the transcript he docketed during the break was docketed

25   after the close of evidence and is not a part of what is

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1    before you for consideration at the moment.

2           THE COURT:  That's correct.  It was docketed after

3    the close of evidence, and the Court's not going to look at

4    it.

5           MR. VERSTANDIG:  Your Honor, I will talk about Kiviti

6    v. Bhatt.  Mr. Myers is correct.  That is a case I argued in

7    the Fourth Circuit.  Kiviti v. Bhatt does not, however, stand

8    for the proposition Mr. Myers asserted.  In fact, it stands

9    for the exact opposite proposition.  Kiviti is a strange case.

10   It's a bankruptcy that came out of the Eastern District of

11   Virginia, where there was a two-count adversary proceeding in

12   front of Judge Kindred.

13          Count 1 of the adversary proceeding was to fix and

14   determine a debt that the debtor owed on account of violating

15   Washington, D.C.'s contracting laws.  Count 2 was to establish

16   that that debt was nondischargeable under 523 -- Your Honor,

17   it's either (a)(2) or (a)(6); and I'll be honest, my

18   recollection is not as sharp as it could be.

19          Judge Kindred granted a motion to dismiss the

20   nondischargeability count, but maintained the cause of action

21   to fix and determine the debt.  And what happened in that case

22   is, since the debtor had been granted a discharge, the

23   debtor's counsel and myself saw no utility in litigating over

24   the size of a debt that had been deemed dischargeable.  So we

25   stipulated to dismiss the remaining cause of action, we took

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1  an appeal to the district court, and the district court

2  affirmed Judge Kindred.

3          We then took an appeal to the Fourth Circuit.  The

4  Fourth Circuit has a doctrine that says you're not allowed to

5  manufacture finality for purposes of creating appellate

6  jurisdiction unless your case is -- and this is a quote --

7  "dead as a doornail", meaning there must be nothing you can

8  recover.

9          The Fourth Circuit has said that, if you lose your

10 motion for class certification, but the lead plaintiff still

11 has a claim for five dollars, that's something you can still

12 litigate.  But if there is a trial court order that decimates

13 any potential cognizable recovery of the remaining causes of

14 action, then you may stipulate to dismiss and take your

15 appeal.

16         In Kiviti, what the Fourth Circuit ruled -- and this

17 is interesting and a little bit harrowing -- is that even

18 though Judge Kindred's order rendered the case moot, it

19 doesn't matter because -- wait for it -- mootness is an

20 Article III doctrine arising under the case or controversy

21 provision of the Constitution, and bankruptcy courts are

22 Article I courts, and thus bankruptcy courts may hear moot

23 matters or offer advisory opinions.

24         It is a weird ruling.  But here's the interesting

25 part about the ruling that matters more for today.  Nothing in

1    Kiviti said we couldn't stipulate to dismiss and make it a

2    final order.  Nothing in Kiviti questioned that it became a

3    final order when we stipulated to dismiss.  The holding in

4    Kiviti, and the whole controversy in Kiviti was whether or

5    not, by doing that, we waived the ability to appeal the final

6    order.

7              Everyone agreed that it was a final order once we

8    entered into the stip of dismissal, the Fourth Circuit, my

9    opposing counsel, and myself.  What Kiviti says is, because we

10   manufactured the finality, we are not to be rewarded with the

11   ability to take an appeal therefrom, since bankruptcy courts

12   can hear moot issues and thus we didn't need to manufacture

13   finality.

14             Applying that to what we have in Montgomery County,

15   there are two possibilities.  One, if you were to strictly

16   apply Kiviti, is that since Mr. Schlossberg, as the agent of

17   Serv Trust, and I stipulated to dismiss the remaining cause of

18   action, finality was manufactured, and it's not properly

19   reviewable on appeal.

20             I will tell you, that's not a position I would take.

21   I don't think the Maryland appellate system is bound by

22   Kiviti.  I think Kiviti is a bad decision.  I lost Kiviti.

23   I'll be very honest about that.  But that's also not a

24   position anyone ever had to take because no timely appeal was

25   filed.  Kiviti doesn't go to whether or not it's a final



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1   order.  Kiviti goes to how the appeal flows if the final order

2   is arrived at by stipulating to dismissal.  And that is a

3   critical, critical distinction from what Mr. Myers represented

4   to the Court.

5           MR. MYERS:  He's misstating the case.

6           THE COURT:  Mr. Myers, stop.

7           MR. VERSTANDIG:  Your Honor, I trust the Court's

8   going to review Kiviti, if for no other reason than so you now

9   know that you have the right to issue advisory opinions, which

10  is a pretty cool trick in this circuit.

11          THE COURT:  Which no judge, I would imagine, would

12  embrace.  But --

13          MR. VERSTANDIG:  I appreciate that.  But yes, Your

14  Honor, I --

15          THE COURT:  All right.  So --

16          MR. VERSTANDIG:  I'm sorry.  I have three more

17  points, but I don't mean to interrupt you.

18          THE COURT:  Okay.  No, go ahead.

19          MR. VERSTANDIG:  Whatever question you have, I'm

20  happy to answer.

21          THE COURT:  Go ahead.

22          MR. VERSTANDIG:  Okay.  Your Honor, Mr. Myers

23  indicated that it's not a core proceeding.  I think a 9019 is

24  core under 157(b)(2), because it necessarily goes to the

25  administration of the debtor's estate.  There was --


www.escribers.net | 800-257-0885

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1        MR. MYERS:  Not true, Your Honor.

2        MR. VERSTANDIG:  There was a good bit of back and

3   forth about whether or not a trustee can sell an estate's

4   interest, if the estate's interest is in question or

5   potentially even nonexistent.

6        And what I would anecdotally point to is, I know that

7   at least with Cheryl Rose -- I can't speak to other trustees,

8   including Mr. Schlossberg -- the going rate for a sale of an

9   estate's noninterest is 3,000 dollars.  And this frequently

10  happens where there is a pre-petition foreclosure that the

11  debtor fervently objects to, and where a creditor, who has bid

12  in the asset, or a third party who acquired it at auction,

13  wishes to have an order from a bankruptcy court making clear

14  that any interest, if at all, is being transferred.

15        And 3,000 dollars is the going rate, at least with

16  Ms. Rose -- I don't want to impute that to other trustees --

17  in this Court for those orders, which again, is not in

18  evidence, but it goes to the larger point, which is the Court

19  can bless a sale of the estate's interest, to the extent it

20  exists, if at all, expressly understanding that sometimes "if

21  at all" is critical verbiage.

22        THE COURT:  And so Mr. VerStandig, are the King

23  parties asking the Court to determine that Sun Trust's (sic)

24  assets and liabilities are assets and liabilities of Mr.

25  Myers' bankruptcy estate, or are the trustee and the King



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1    parties asking the Court to approve a settlement of whatever

2    the estate's interests may be?

3            MR. VERSTANDIG:  Your Honor, the latter, because of

4    the abstention order that Mr. Myers keeps coming back to.

5    This Court ruled that we had to go to the Montgomery County

6    Circuit Court to determine whether or not Serv Trust was Mr.

7    Myers' alter ego.

8            THE COURT:  Right, but that's not the issue before

9    the Court today.

10           MR. VERSTANDIG:  Right.

11           THE COURT:  So --

12           MR. VERSTANDIG:  I'm not asking you to pass judgment

13   on that.

14           THE COURT:  So the issue of whether Mr. Myers is the

15   alter ego of Sun Trust, that is --

16           MR. VERSTANDIG:  Serv Trust.

17           THE COURT:  I'm sorry, Serv Trust, that is what was

18   the subject of the Court's abstention order.  But that's not

19   what the Court's being asked to do today.  The Court's being

20   asked to approve a settlement, which is different than the

21   issue that was sent to Montgomery County Circuit Court.

22           MR. VERSTANDIG:  Yes, Your Honor.

23           THE COURT:  So the abstention issue aside, exactly --

24   I want you to confirm whether you're asking the Court to

25   determine the estate's interest in Goldsboro.



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1          MR. VERSTANDIG:  I am not asking the Court to

2     determine the estate's interest in Goldsboro.  And I'll do one

3     further.  With enormous respect, I don't believe you can make

4     that determination for the same full faith and credit reason I

5     spoke about a moment ago, because that determination has been

6     made by a state court and is beyond the point of appeal.  I

7     don't mean to question your powers.  105 can do wonderful

8     things.  And certainly, if you wish to go make that, I'm not

9     going to jump up and down.  But we're not asking you to make a

10    determination for which we've already spent the time and

11    effort of obtaining a final order in a sister court.

12          And then finally -- and I'm happy to answer any other

13    questions -- there is this suggestion that Judge Delano

14    reserved jurisdiction and didn't mean to send the case back to

15    Montgomery County.  There's extensive testimony about the fact

16    that it was removed on December 30th, 2022 and remanded before

17    9:17 a.m. on the first business day thereafter.

18          THE COURT:  Which was the first day of trial, I

19    believe.

20          MR. VERSTANDIG:  It was.  Trial was due to begin, I

21    think, either at 9:30 or 10; I don't remember which.  I think

22    the Court can infer the reason Mr. Myers and Serv Trust

23    weren't at trial is they didn't believe we'd be able to get a

24    remand in time.

25          But if the Court's looking at inferences to be



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1    reasonably drawn from evidence, it would seem that a judge

2    issuing a remand order, one or two business days after the

3    motion was filed, however many minutes before trial, assuredly

4    intended to remand the matter for trial.  I think any other

5    construction would be reductio ad absurdum.

6          Your Honor, if you have any questions, I'd be happy

7    to answer them.

8          THE COURT:  I don't have any questions.  Thank you.

9          MR. VERSTANDIG:  Thank you so much, and I appreciate

10   your consideration over the past two days.

11         THE COURT:  Thank you.

12         Mr. Mastro?  And I'm going to tell you to keep it

13   brief as well.

14         MR. MASTRO:  And I will keep it very brief, Your

15   Honor.  I think Mr. VerStandig covered a number of the points

16   that I would have been prepared to make.

17         I'll just point out that there was some suggestion by

18   Mr. Myers that the Chapter 7 trustee is the only party who

19   could bring the alter ego claim.  And that argument, if you

20   look at Debtor's Exhibit 9, was made in the Montgomery County

21   Court, and Judge Dwyer ruled against him and said that Mr.

22   VerStandig and his clients, they had the ability to bring the

23   alter ego claim, which they did, and they ended up getting a

24   judgment about it.  So --

25         MR. MYERS:  Objection.  That's not accurate.



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1       THE COURT:  Stop.  Mr. Myers, do not interrupt.

2       MR. MASTRO:  The Court can --

3       THE COURT:  Do not interrupt.  Exhibit 9 is the

4   Redven (ph.) valuation.  What are you --

5       MR. MASTRO:  Oh, I'm sorry.  It's the Debtor's

6   Exhibit 9, the big long transcript.

7       THE COURT:  Oh, I see.

8       MR. MASTRO:  If Your Honor just reads the last few

9   pages of the opinion, you'll see that Mr. Myers lost on that

10  issue.  So --

11      THE COURT:  And tell me exactly what was his

12  argument.

13      MR. MASTRO:  I think he was making an argument before

14  that the Chapter 7 trustee was the only party who could bring

15  the alter ego claim in the state court.  And the judge ruled

16  against him.

17      THE COURT:  I see.  Thank you.

18      MR. MYERS:  That is incorrect.

19      MR. MASTRO:  And so --

20      THE COURT:  Mr. Myers, stop interrupting.

21      MR. MYERS:  He's lying.

22      THE COURT:  Stop it.  Stop it.  Stop it.

23      Mr. Mastro, continue.

24      MR. MASTRO:  And the only other thing I would

25  mention, just in terms of the trustee's business judgment, I



1  had alluded to this in my discussion before, and I never

2  really circled back to it, but I think it's appropriate now.

3  When we're talking about not only is the trustee getting the

4  benefit of the 150,000, the trustee is also getting the

5  benefit of the fact that Mr. VerStandig's clients have agreed

6  to cover the cost of any appeals here.

7      THE COURT:  Which would likely be costly.

8      MR. MASTRO:  Likely be very costly.  Mr. Schlossberg

9  testified, I think, Mr. Myers has taken over two dozen appeals

10 in this case alone, not to mention the myriad of other appeals

11 he and his wife have initiated in their I think it's more than

12 a half dozen other bankruptcy cases.  So there's a definite

13 dollar value to that that enures to the benefit of the estate,

14 as Mr. Schlossberg pointed out.  That 150-, that's not going

15 to be reduced by the value of any cost to prosecute the

16 appeal.  So --

17     THE COURT:  Understood.  Let me ask you the same

18 question --

19     MR. MASTRO:  Yeah.

20     THE COURT:  -- I asked Mr. VerStandig.  Are you

21 asking the Court to determine what the estate's interest in

22 Serv Trust and Goldsboro are?  Or are you asking the Court to

23 approve a settlement that includes a transfer of whatever the

24 estate's interest may be?

25     MR. MASTRO:  All of our right, title, and interest in



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1    Serv Trust, whatever that may be, is what we are conveying to

2    Mr. VerStandig, as he accurately represented to the Court.

3    That is the substance of the settlement.

4            THE COURT:  Okay.  Anything else?

5            MR. MASTRO:  No, Your Honor.

6            MR. MYERS:  Your Honor, may I have thirty seconds?

7            THE COURT:  Mr. Myers, I'm going to give you thirty

8    seconds.  And it starts now.

9            MR. MYERS:  Okay.  That's --

10            THE COURT:  Only if you promise to sit down after

11    thirty seconds.

12            MR. MYERS:  Yeah.  Okay.  Thank you.  They're asking

13    this Court to sign an order that redeems the entirety of Serv

14    Trust's interest in Goldsboro.  This Court has no jurisdiction

15    over Serv Trust's property.  And you can't sign an order that

16    transfers Serv Trust's property to the King parties.  That

17    case is still in Montgomery County Circuit Court.  And here's

18    the decision in BAP Fourth Circuit --

19            THE COURT:  And your time is up.  Thank you, Mr.

20    Myers.  Take a seat.

21            MR. MYERS:  That's --

22            All right.  All right.  So this is what the Court is

23    going to do.

24            MR. MYERS:  That's unfortunate.

25            THE COURT:  The Court is going to take a little bit



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1  of time to review the exhibits, review the cases that have

2  been cited.  And the Court will give an oral ruling by video.

3       So let's talk about the scheduling of that.  I don't

4  want to mess up anybody's long weekend, but how about first

5  thing on Thursday morning, 10 a.m.?

6       MR. MASTRO:  I can do that.

7       MR. VERSTANDIG:  Your Honor, for clarity, July 3rd?

8       THE COURT:  July 3rd.

9       MR. VERSTANDIG:  That works.

10      MR. SCHLOSSBERG:  I can make that work, Your Honor.

11      MR. MYERS:  I have a hearing in Florida.

12      THE COURT:  What time is your hearing?

13      MR. MYERS:  It's -- I don't have it with me.  I don't

14  keep it, like, in my calendar.  Anytime the next -- when is

15  July 4th?  Monday?

16      THE COURT:  July 4th is Friday.

17      MR. MYERS:  Friday.

18      THE COURT:  July 3rd is Thursday.

19      MR. MYERS:  Can you do the following week?  I'll be

20  back.

21      MR. SCHLOSSBERG:  You don't have to be back.  We're

22  doing it virtually.

23      THE COURT:  We're doing it virtually, and there's

24  nothing for you to do other than sit and listen.  And I don't

25  anticipate it taking more than, I'd say, twenty to thirty

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1    minutes at the very most.

2         MR. SCHLOSSBERG:  Your Honor, I will tell you that

3    Mr. Mastro and I can both make our calendars available

4    whatever time you choose on Thursday.

5         MR. VERSTANDIG:  Likewise, Your Honor.

6         THE COURT:  All right.  So --

7         MR. MYERS:  I would request after the 4th of July

8    weekend.

9         THE COURT:  Well, what time -- you don't know what

10   time your hearing is on Thursday?

11        MR. MYERS:  I don't.  And I'll be preparing.  And so

12   I would just ask any time after July 4th -- July 5th, 6th,

13   7th.

14        MR. MASTRO:  Your Honor, if he knows what court is

15   hearing is in, he can look it up on the public docket.

16        MR. MYERS:  I'll figure it out, Mr. Mastro.

17        THE COURT:  Yeah, let's do that.  What court is your

18   hearing in?

19        MR. MYERS:  I have a hearing down in Collier County

20   Circuit Court.  I have a hearing that was --

21        THE COURT:  I just need to know the time.

22        MR. MYERS:  I don't know the time, Your Honor.  I

23   don't have it with me.  I don't do it like that.  I don't --

24        THE COURT:  All right.  So Collier County Circuit

25   Court.  Mr. Mastro, are you able to access their docket online



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1    so that you can determine the time of the hearing?

2            MR. SCHLOSSBERG:  Go out in the hall.

3            MR. MASTRO:  If I go out -- can I go out in the hall

4    and get a better reception?

5            THE COURT:  Yeah.  Let's take a five-minute recess.

6            MR. MYERS:  This is ridiculous.  Just do it on

7    Thursday then.  I don't care.

8            MR. SCHLOSSBERG:  Okay.  All right.  Well, then we'll

9    do it on Thursday.  Let's do it on Thursday.

10           MR. MYERS:  I mean, you guys are unagreeable to

11   everything.  You're trying to just --

12           THE COURT:  No, no, no.  Stop talking to them.  Talk

13   to me.

14           MR. MYERS:  Okay.  Well, I think it's -- I think

15   there's so much here.  We're on, what, Wednesday?

16           THE COURT:  No, today's Tuesday.

17           MR. MYERS:  Tuesday.  So there is so much here.

18   There are so many decisions.  There are so many questions that

19   I think that, for example, that they can dismiss a claim

20   without prejudice and create a final order.

21           THE COURT:  Mr. Myers, I'm ready to give my ruling

22   now.  I just want to be able to organize my thoughts in a way

23   that will make it easier for the appellate courts, that will

24   have to tackle whatever appeal gets filed from this.  So I

25   appreciate your concern for me, but I don't need longer than



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1    that.  I will be ready at 10 a.m.  If it's better for you, we

2    can start at 8 a.m. --

3           MR. MYERS:  No, 10 a.m. is fine.

4           THE COURT:  -- so that we can get it out of the way

5    early before your hearing so that you can focus on your

6    hearing.

7           MR. MYERS:  Okay.  10 a.m. on Thursday.

8           THE COURT:  Okay.  10 a.m. on Thursday, July the 3rd.

9           MR. MYERS:  So it sounds like you've already made a

10   ruling.

11          THE COURT:  Well, I have a pretty good idea where I

12   want to go with this.  And that should come as no surprise,

13   based on the fact that I kept trying to get you to refocus

14   your efforts on the issue before the Court, and instead, you

15   chose to spend two days on things that are either completely

16   irrelevant to the Court or nearly completely irrelevant to the

17   Court.

18          I tried to help you, Mr. Myers, refocus your efforts,

19   and you fought me at every turn.  And that's your decision.

20   And you will live with the consequences of those actions.

21          MR. MYERS:  So will everybody.

22          THE COURT:  All right.  The Court will issue a

23   hearing notice, and the Court will also email the parties with

24   information on how to log in for the virtual hearing.  Thank

25   you all for being here.  And thank you for your patience.



www.escribers.net | 800-257-0885

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

1          MR. SCHLOSSBERG:   Thank you, Your Honor.

2          MR. VERSTANDIG:   Thank you, Your Honor.

3          MR. SCHLOSSBERG:   Thank you, Mr. Whitfield.

4          THE CLERK:   Court is now adjourned.

5      (Whereupon these proceedings were concluded)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



1                          I N D E X

2                                                                    VOIR
     WITNESSES:                  DIRECT  CROSS  REDIRECT  RECROSS  DIRE
3    Debtor:
     Gregory Myers                  6

4


5    EXHIBITS:      DESCRIPTION                    I.D.    EVID.
     Debtor:
6    8            Judge Delano order              35
     7            Order                           38
7    8            Order                           38
     9            Transcript                      59
8


9    CLOSING ARGUMENT:                         Pages
     Mr. VerStandig                            87-94
10   Mr. Mastro                                94-106
     Mr. Myers                                 106-158
11   Mr. VerStandig (Rebuttal)                 158-171
     Mr. Mastro (Rebuttal)                     171-174
12

13

14

15

16

17

18

19

20

21

22

23

24

25



www.escribers.net | 800-257-0885

1

2                              CERTIFICATION

3      I certify that the foregoing is a correct transcript from the

4      electronic sound recording of the proceedings in the above-

5      entitled matter.

6

7      *Sharona Shapiro*                    January 5, 2026

8      _____            _____

9      SHARONA SHAPIRO                      DATE

10     AAERT Certified Electronic Transcriber CET-492

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

