8:25-cv-2103-TDC (Lead Case)
8:25-cv-2337-TDC
8:25-cv-2635-TDC

**United States District Court
for the District of Maryland
Greenbelt Division**

*Myers v. Schlossberg, et al. (In re Myers)*

On Appeal from the United States Bankruptcy Court
for the District of Maryland

Opening Brief of Appellees Roger Schlossberg, Brian King,
Cristina King and the Cristina and Brian King Children's Trust

Maurice B. VerStandig, Esq.
Bar No. 18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
mac@mbvesq.com

Frank J. Mastro, Esq.
Bar No. 24679
Schlossberg Mastro
P.O. Box 2067
Hagerstown, Maryland 21742
Phone: (301) 739-8610
fmastro@schlosslaw.com

*Counsel for Appellees*

## **Table of Contents**

I.      Table of Contents..................................................................... ii

II.     Table of Authorities................................................................ iii

III.    Statement of Jurisdictional ..................................................... 1

IV.     Statement of Issue Presented .................................................. 4

V.      Statement of the Case ............................................................. 6

VI.     Summary of Argument ............................................................ 9

VII.    Argument ............................................................................... 10

        A. The Bankruptcy Court Exercised Proper Jurisdiction....................... 10

        B. Proposed Settlement Agreements Need Not Be Signed ................... 14

        C. No Due Process Violation Occurred ................................. 19

        D. The Order Approving the Compromise is a Valid, Final Order ....... 26

VIII.   Certificate of Compliance....................................................... 29

# Table of Authorities

**Cases**

*All State Home Mortg., Inc. v. Daniel*,
977 A.2d 438 (Md. App. 2009)...............................................................................18

*Barlow v. Colgate Palmolive Co.*,
772 F.3d 1001 (4th Cir. 2014) ............................................................................4, 5

*Boshea v. Compass Mktg., Inc.*,
2025 U.S. Dist. LEXIS 30877 (D. Md. Feb. 20, 2025) ...........................................18

*Butner v. United States*,
440 U.S. 48 (1979).................................................................................................12

*Catlin v. United States*,
324 U.S. 229 (1945).................................................................................................3

*Chemetron Corp. v. Jones*,
72 F.3d 341 (3d Cir. 1995)......................................................................................22

*Dahlin v. Lyondell Chem. Co.*,
881 F.3d 599 (8th Cir. 2018) .................................................................................22

*FCGI Asssocs., LLC v. McAfee (In re Harman)*,
683 F. App'x 880 (11th Cir. 2017)..........................................................................26

*Gallagher v. Cohen*,
659 B.R. 57 (D. Md. 2024) .....................................................................................15

*Glass v. Office of Chief Med. Exam'r*,
2025 U.S. Dist. LEXIS 128637 (D. Md. June 6, 2025)...........................................21

*Hammersley v. Prospector Offshore Drilling*,
2019 U.S. Dist. LEXIS 39308 (D. Del. Mar. 12, 2019) ..........................................27

*Hernandez v. Hernandez (In re Hernandez)*,
2023 Bankr. LEXIS 2875 (B.A.P. 9th Cir. Dec. 6, 2023) .......................................17

*Hugh M. Caperton v. A.T. Massey Coal Co.*,
251 B.R. 322 (S.D. W. Va. 2000) .............................................................................11

*In re Atoka Agric. Sys., Inc.*,
39 B.R. 474 (Bankr. E.D. Va. 1984) ........................................................................13

*In re Cajun Electric Power Coop., Inc.*,
119 F.3d 349 (5th Cir. 1997) ...................................................................................27

*In re Endicott*,
157 B.R. 255 (W.D. Va.1993) ..................................................................................15

*In re Frye*,
216 B.R. 166 (Bankr. E.D. Va. 1997).................................................................. 16, 18

*In re Gibraltar Res., Inc.*,
210 F.3d 573 (5th Cir. 2000) ............................................................................. 27, 29

*In re Kelly*,
656 B.R. 541 (Bankr. D. Md. 2023) ........................................................................24

*In re Licking River Mining, LLC*,
605 B.R. 153 (Bankr. E.D. Ky. 2019) .....................................................................26

*In re Medomak Canning*,
922 F.2d 895 (1st Cir. 1990).....................................................................................27

*In re Modanlo*,
342 B.R. 238 (D. Md. 2006) .....................................................................................15

*In re Myers*,
2023 Bankr. LEXIS 139 (Bankr. M.D. Fla. Jan. 20, 2023).............................. 23, 24

*In re Myers*,
2025 Bankr. LEXIS 1396 (Bankr. D.D.C. June 11, 2025) .......................................24

*In re Paschall*,
408 B.R. 79, 87 (E.D. Va. 2009)...............................................................................15

iv

*In re Reagor-Dykes Motors, LP*,
613 B.R. 878 (Bankr. N.D. Tex. 2020) ...................................................................26

*In re Reeves*,
521 B.R. 827 (Bankr. E.D. Tenn. 2014) ................................................................27

*In re Richmond*,
615 B.R. 758 (M.D.N.C. 2020) ..............................................................................15

*In re Ruti-Sweetwater, Inc.*,
836 F.2d 1263 (10th Cir. 1988) ...............................................................................5

*In re Ware*,
2014 Bankr. LEXIS 2437 (Bankr. E.D. Va. June 3, 2014) .....................................13

*In re West Texas Marketing Corp.*,
12 F.3d 497 (5th Cir. 1994) ...................................................................................27

*Kiviti v. Bhatt*,
80 F.4th 520 (4th Cir. 2023) ........................................................................... 27, 28

*Lontz v. Tharp*,
413 F.3d 435 (4th Cir. 2005) ...................................................................................5

*Myers v. Golf*,
2025 U.S. App. LEXIS 23025 (D.C. Cir. Sep. 5, 2025).........................................25

*Myers v. Golf*,
2025 U.S. App. LEXIS 24783 (D.C. Cir. Sep. 24, 2025).......................................25

*Myers v. United States Tr.*,
2020 U.S. Dist. LEXIS 25670 (D. Md. Feb. 13, 2020) ................................... 23, 24

*Pawlak v. United States Dep't of Educ. (In re Pawlak)*,
520 B.R. 177 (D. Md. 2014) ....................................................................................5

*Porter v. Gen. Boiler Casing Co.*,
396 A.2d 1090 (Md. 1979) .....................................................................................18

*Rinn v. First Union Nat'l Bank*,
176 B.R. 401 (D. Md. 1995) ...................................................................................5

*Robinson v. Garraghty*,
914 F.2d 249 (4th Cir. 1990) ................................................................................3

*Rusnack v. Cardinal Bank, N.A.*,
695 Fed. App'x 704 (4th Cir. 2017) ....................................................................15

*Siddiqui v. Gardner (In re Williamson)*,
327 B.R. 578 (Bankr. E.D. Va. 2005) ..................................................................17

*Simpson v. Levitsky (In re Levitsky)*,
401 B.R. 695 (Bankr. D. Md. 2008) .....................................................................12

*Sisk v. Abbott Labs.*,
2014 U.S. Dist. LEXIS 149378 (W.D.N.C. Oct. 20, 2014)...................................15

*Stern v. Bd. of Regents*,
846 A.2d 996 (Md. 2004) .....................................................................................18

*Trans Energy, Inc. v. EQT Prod. Co.*,
743 F.3d 895 (4th Cir. 2014) ................................................................................5

*United Rentals, Inc. v. Angell*,
592 F.3d 525 (4th Cir. 2010) ..............................................................................15

*United States v. Al-Hamdi*,
356 F.3d 564 (4th Cir. 2004) ................................................................................2

*United States v. Beyle*,
782 F.3d 159 (4th Cir. 2015) ..............................................................................21

*Waterproofing Specialties, Inc. v. Weaver Cooke Constr., LLC*,
564 B.R. 276 (E.D.N.C. 2017)............................................................................15

*Weems v. Millard*,
2 H. & G. 143 (Md. 1828) ...................................................................................18

*Wheatley v. Wicomico Cnty., Md.*,
390 F.3d 328 (4th Cir. 2004) ....................................................................................15

**Statutes**

11 U.S.C. § 323 ..........................................................................................................13

11 U.S.C. § 362 ..........................................................................................................12

11 U.S.C. § 363 ..........................................................................................................17

11 U.S.C. § 541 ..........................................................................................................11

11 U.S.C. § 704 ..........................................................................................................13

28 U.S.C. § 151 ..........................................................................................................11

28 U.S.C. § 157 ................................................................................................. 1, 2, 11

28 U.S.C. § 158 .............................................................................................. 2, 3, 5, 6

28 U.S.C. § 1334 ........................................................................................................11

Md. Code Ann., Cts. & Jud. Proc. § 5-901 ...............................................................18

**Rules**

Bankruptcy Court Local Rule 9006-1 ........................................................................14

Federal Rule of Bankruptcy Procedure 8002 ..............................................................3

Federal Rule of Bankruptcy Procedure 8004 ..........................................................5, 6

Federal Rule of Bankruptcy Procedure 8014 ..............................................................3

Federal Rule of Bankruptcy Procedure 9019 ..................................................... 16, 17

Local Rule 402 ...........................................................................................................11

**Constitutional Provisions**

U.S. Const. amend. V ................................................................................................ 21

U.S. Const. amend. XIV ............................................................................................ 21

## I.    Statement of Jurisdiction

The United States Bankruptcy Court for the District of Maryland (the "Bankruptcy Court") enjoyed subject matter jurisdiction over the instant case pursuant to the allowances of Section 157 of Title 28 of the United States Code.

In these consolidated cases, Gregory B. Myers ("Mr. Myers" or the "Debtor" or the "Appellant") has noticed appeals from ten separate orders of the Bankruptcy Court.[1] *See* Notice of Appeal, DE #1, in Case No. 8:25-cv-02103-TDC; Notice of Appeal, DE #1, in Case No. 8:25-cv-02337-TDC; Notice of Appeal, DE #1, in Case No. 8:25-cv-02635-TDC. However, in his opening brief (the "Appellant's Brief"), DE #21,[2] Mr. Myers does not raise arguments concerning nine of the subject orders and solely focusses on the Bankruptcy Court's order approving a compromise between Roger Schlossberg—the chapter 7 trustee ("Mr. Schlossberg" or the "Trustee") of the estate of  Mr. Myers—and Brian King, Cristina King, and the Cristina and Brian King Children's Trust (collectively, the "King Parties"), which is the subject of Appeal No. 8:25-cv-02337-TDC. Mr. Myers' qualms—whatever they may have been—with the other nine orders may accordingly be understood to have

---

[1] More specifically, Mr. Myers has appealed seven orders, two hearing notices, and one memorandum to parties.

[2] Citations to the docket, when not accompanied by a reference to a case number, are to the docket in Case No. 8:25-cv-02103-TDC, the lead case on appeal.

1

been abandoned on appeal. *See, e.g.*, *United States v. Al-Hamdi*, 356 F.3d 564, 571 n.8 (4th Cir. 2004) ("It is a well settled rule that contentions not raised in the argument section of the opening brief are abandoned.") (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 241 n.6 (4th Cir. 1999)).

While the Bankruptcy Court enjoyed jurisdiction to enter all ten appealed-from orders (one of which is, quite literally, a scheduling order, *see* DE #1 at ¶ 3), the authority of the tribunal to enter the sole order complained-of in the Appellant's Brief is clear. Specifically, the subject order approves the payment of monies, to Mr. Schlossberg on behalf of the Debtor's estate (the "Estate"), to redeem the Estate's putative interest in a limited liability company known as 6789 Goldsboro LLC ("6789 Goldsboro"). Insofar as the compromise concerns a redemption of the Estate's putative interest in Goldsboro, the order on appeal is one "approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate," 28 U.S.C. § 157(b)(2)(N), and the proceedings below were ones "affecting the liquidation of the assets of the estate. . .," 28 U.S.C. § 157(b)(2)(O). The proceedings below also concern ". . . the administration of the [E]state," 28 U.S.C. § 157(b)(2)(A), and were thusly further within the jurisdictional grasp of the Bankruptcy Court.

This Honorable Court enjoys jurisdiction over this appeal pursuant to the allowances of Section 158 of Title 28 of the United States Code. Specifically, the

Bankruptcy Court's order approving the compromise is a final order. 28 U.S.C. § 158(a)(1); *see, e.g.*, *Robinson v. Garraghty,* 914 F.2d 249 (4th Cir. 1990) ("A final order is one which disposes of all issues in dispute as to all parties. It 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'") (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945)).

The order from which this appeal is taken was entered on July 3, 2025. *See* Appellee Appendix ("Appendix") at 204.[3] A notice of appeal was filed on July 27, 2025, *id.* at 207, and this appeal is accordingly timely in nature. Fed. R. Bankr. P. 8002(a)(1).

The instant appeal is from a final order, *see Robinson*, 914 F.2d at 249, and accordingly emanates from "a final judgment, order, or decree." Fed. R. Bankr. P. 8014(a)(4)(D).[4]

---

[3] Insofar as the Appellant's appendix is not paginated, appears to be missing a volume (there is no "E-1," though such a volume is cited in pages 8 and 13 of the Appellant's Brief), and appears to contain a healthy quotient of superfluous matter, the Appellees have prepared a separate appendix for ease of citation and reference. Each component entry is extracted from the record designation in one or more of these three consolidated appeals. For the avoidance of doubt, the Appellees are *not* suggesting Mr. Myers has failed to prepare an appendix or failed to include necessary fodder therein; the Appellees simply believe it more prudent and efficient to cite to a singularly-paginated appendix in which all pages are present.

[4] By contrast, all of the "orders" at issue in Case No. 8:25-cv-02103-TDC are interlocutory in nature and not final orders. Thus, not only has the Appellant abandoned his appeal of these "orders," but these orders never were properly before this Honorable Court in the first instance.

3

## II.    Statement of Issues Presented

The Appellant suggests the order approving the compromise below (the "Compromise") should be vacated, and this cause should be remanded, because (i) the Bankruptcy Court lacked subject-matter jurisdiction, (ii) approval of the Compromise was in legal error, (iii) the proceedings below constituted a violation of the Appellant's due process rights, (iv) the order below is not a final order, and (v) the Bankruptcy Court committed an abuse of discretion. *See* Appellant's Brief, DE #21, at pp. 4-5. For purposes of the instant brief, the Appellees suggest these issues be reframed as follows:

A.    "Whether the bankruptcy court enjoyed subject-matter jurisdiction over assets of the Debtor's adjudicated alter ego" (issues 1 and 5 in the Appellant's Brief);

B.    "Whether a bankruptcy court must have a signed agreement to rule on a motion to compromise or sell" (issue 2 in the Appellant's Brief); and

C.    "Whether the King Parties' dismissal of their claims against the Estate constitutes a due process violation" (issue 3 in the Appellant's Brief).

The first inquiry—touching upon subject matter jurisdiction—is a question of law and thereby subject to a *de novo* standard of review. *See, e.g.*, *Barlow v. Colgate Palmolive Co.*, 772 F.3d 1001, 1007 (4th Cir. 2014) ("We review questions of law, including a lower court's determination of its subject-matter jurisdiction, de novo.")

(citing *Trans Energy, Inc. v. EQT Prod. Co.*, 743 F.3d 895, 900 (4th Cir. 2014); *Lontz v. Tharp*, 413 F.3d 435, 439 (4th Cir. 2005)).

The second inquiry—concerning whether a compromise may be approved without a signed agreement in evidence—is also a question of law and, accordingly, subject to a *de novo* standard on review. *See Barlow*, 772 F.3d at 1007.

The third inquiry—concerning whether Mr. Myers' due process rights were violated through the withdrawal of three creditors' claims against his bankruptcy estate—is a mixed question of fact and law that is chiefly focused on legal principles, and is thusly subject to a *de novo* standard of review. *See, e.g.*, *Rinn v. First Union Nat'l Bank*, 176 B.R. 401, 407 (D. Md. 1995) ("Mixed questions of fact and law which contain 'primarily a consideration of legal principles' are considered de novo.") (quoting *In re Ruti-Sweetwater, Inc.*, 836 F.2d 1263, 1266 (10th Cir. 1988)).

Finally, it bears notation that Mr. Myers makes one other contention on appeal, urging the order below is not a final order. *See* Appellant's Brief, DE #21, at p. 5 (raising, as an issue on appeal, "Whether the order lacks finality. . ."). This issue is circuitous, insofar as Mr. Myers has not sought leave of court to appeal from an interlocutory order, *see* 28 U.S.C. § 158(a)(3); Fed. R. Bankr. P. 8004(b), and, accordingly, there is no present basis to entertain an appeal from a non-final order. *See Pawlak v. United States Dep't of Educ. (In re Pawlak)*, 520 B.R. 177, 182 (D. Md. 2014) (discussing the standard to be applied—"exceptional circumstances"—

when a district court is confronted with a motion for leave to appeal from an interlocutory order of a bankruptcy court). As noted *supra* and, subsequently, in Section V(D) *infra*, the Appellees believe the order on appeal is a final order because it disposes of all issues in dispute; to the extent, however, this Honorable Court finds the order in question to not be final, such would necessarily result in a dismissal of this appeal for want of jurisdiction and for want of compliance with the rigors of Section 158(a)(3) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 8004—not a reversal of the order from which this appeal is taken.[5]

## III.    Statement of the Case

This case concerns the affairs of 6789 Goldsboro, an entity formerly owned in part by the King Parties and in part—through a subordinate membership interest— by Serv Trust ("Serv Trust"), a Maryland statutory trust. Appendix at 73. A dispute arose between the King Parties and Serv Trust. *Id.* at 108. Pursuant to the operating agreement of 6789 Goldsboro, the King Parties exercised their remedy to redeem the membership interest of Serv Trust and then proceeded to file suit seeking a declaratory judgment as the propriety of the redemption. *Id.* at 16-17.

---

[5] Should this Honorable Court be inclined to regard the Appellant's Brief as a motion for leave to appeal, the Appellees would request an opportunity to address the same on the merits. Since there is no appeal unless and until such leave is granted, it is generally understood this brief would be a nullity in such an instance.

During the course of litigation, it became apparent to the King Parties that Serv Trust was, in reality, the alter ego of Mr. Myers, a debtor in bankruptcy who was using Serv Trust to shield his assets from creditors and to access funds beyond the purview of the Bankruptcy Court. The King Parties proceeded to seek declaratory relief establishing the alter ego relationship, first in the Bankruptcy Court (which abstained from hearing the matter), *id.* at 18-19, and then in the Circuit Court for Montgomery County, Maryland (the "State Court"), *id.* at 19.

The State Court, following a trial on the merits, adjudicated Serv Trust to be the alter ego of Mr. Myers and, thusly, a disregarded entity. *Id.* at 183-84. Recognizing that this finding meant that the assets of Serv Trust became assets of Mr. Myers' bankruptcy estate, the State Court proceeded to stay all further proceedings pending the granting of appropriate relief from the Bankruptcy Court. *Id.*

The Trustee and the King Parties thereafter reached a procedural agreement, whereby (i) the remaining causes of action in the State Court case (including the claim for declaratory relief concerning redemption of Serv Trust's interest in 6789 Goldsboro) would be dismissed without prejudice; (ii) the applicable statute of limitations on the dismissed claims would be tolled; and (iii) the parties would try to negotiate a resolution but, should such fail, the now-dismissed State Court claims would be refiled as an adversary proceeding in the Bankruptcy Court. *Id.* at 9. The

Bankruptcy Court approved the procedural agreement, *id.* at 13-33,[6] with the King Parties then dismissing the remaining State Court causes of action and filing an adversary proceeding—in the Bankruptcy Court—seeking a declaration that Serv Trust's interests, *vel non*, in 6789 Goldsboro have been redeemed by operation of law, *id.* at 34-41.

Subsequently, the Trustee and the King Parties reached a final settlement on the merits of the King Parties' claims, whereby (i) the King Parties would pay the Trustee $150,000.00 in exchange for the redemption of any interest of Serv Trust in 6789 Goldsboro held by the Estate; (ii) the suit seeking a declaration as to the redemption of Serv Trust's interests in 6789 Goldsboro would be dismissed in the Bankruptcy Court; and (iii) the King Parties would reimburse the Trustee's necessary and reasonable legal fees incurred on appeal. *Id.* at 45-62. This is the Compromise referenced *supra*.

Mr. Myers objected to the Compromise, *id.* at 63-72, with an evidentiary hearing thereupon following, *id.* at 198-99. During the evidentiary hearing, the King Parties further agreed that, if leave to enter into the Compromise were to be granted, they would withdraw their proofs of claim against the Estate. *Id.* at 224:24-225:2. The claims in question simply asserted the King Parties' entitlement to relief in the

---

[6] The order approving this procedural agreement is being appealed—for the second time—by Mr. Myers in Case No. 8:25-cv-02042.

litigation being compromised. *Id.* at 210-218. After the close of evidence, and moments before an oral ruling on the Trustee's motion to approve the Compromise, Mr. Myers filed a supplemental objection, raising new issues (including, for the first time, a contention that a settlement cannot be approved by a bankruptcy court without a signed agreement in evidence). *Id.* at 200-203.

The Bankruptcy Court approved the Compromise over Mr. Myers' objection, *id.* at 204-206, and this appeal followed, *id.* at 207-208.

## IV.    Summary of Argument

The Bankruptcy Court properly approved the Compromise in this case as a reasonable settlement of litigation claims against the Estate. The Appellant is errant in suggesting an absence of jurisdiction insofar as (i) Serv Trust was properly adjudicated by the State Court to be Mr. Myers' alter ego, with the assets of Serv Trust thereby becoming assets of Mr. Myers' bankruptcy estate; and (ii) the Bankruptcy Court only vested in the King Parties "all of the right, title and interest of the Trustee, the Debtor and the [Estate] in and to any and all membership interests in or property of [6789 Goldsboro]," Appendix at 205, so no conveyance of any interests outside the court's jurisdictional purview occurred in any event.

Second, the Appellant is similarly errant in insisting evidence of a signed settlement agreement is a condition precedent to the Compromise being approved. The terms of the Compromise are plainly spelled out in the notice thereof, which

was sent to all parties in interest long before the same was approved. The Appellant was sufficiently on notice of the terms to vociferously object thereto and participate in a multiday trial on approval of the Compromise. There does not exist a ministerial formality whereby such terms must be signed in advance. To the contrary, a bankruptcy trustee cannot legally sign an agreement—and be bound to the terms thereof—unless and until such is approved by a bankruptcy court.

Third, the King Parties' offer to withdraw their proofs of claim—during a hearing on the motion seeking approval of the Compromise that would moot their proofs of claim—did not offend the Debtor's due process rights. Not only was such a further consistent term already well embraced by the proposed Compromise but, of equal legal import, the King Parties were the only parties with cognizable legal interests in the claims being withdrawn.

## V.    Argument

### A. The Bankruptcy Court Exercised Proper Jurisdiction

The Appellant urges the Compromise ought not have been approved because the Bankruptcy Court allegedly lacked subject matter jurisdiction to effectuate a transfer of Serv Trust's interests in 6789 Goldsboro. This argument is misplaced for three reasons: (i) the State Court order adjudicating Serv Trust to be Mr. Myers' alter ego is not on appeal before this Honorable Court and is not subject to collateral attack through this appeal; (ii) the Bankruptcy Court properly relied on the State

Court's judgment finding Serv Trust to be Mr. Myers' alter ego (a judgment that was not stayed pending Mr. Myers' since-failed appeal thereof through the state appellate system); and (iii) the order from which this appeal is taken only transfers the assets of Mr. Myers, the Trustee, and the Estate—whatever they may be—to the King Parties.

As a starting point, the Estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).[7] The district court, in turn, enjoys exclusive jurisdiction over all assets of a bankruptcy estate, 28 U.S.C. § 1334(e), with bankruptcy courts being "unit[s]" of the district courts, 28 U.S.C. § 151, bankruptcy cases being referrable by district courts to bankruptcy courts, 28 U.S.C. § 157(a), and a standing order of referral existing in this judicial district, Local Rule 402.

Moreover, bankruptcy courts have jurisdiction to determine whether or not property interests are an asset of any given debtor's bankruptcy estate. *See, e.g., Hugh M. Caperton v. A.T. Massey Coal Co.*, 251 B.R. 322, 326 (S.D. W. Va. 2000) ("Clearly the Bankruptcy Court has jurisdiction to determine what assets are property of the bankruptcy estate."). And, in making such a determination,

---

[7] There are statutory exceptions to this definition, such as certain transferred gaseous hydrocarbon interests, 11 U.S.C. § 541(b)(4), none of which any party maintains to be relevant *sub judice*.

bankruptcy courts are directed to look to applicable state law. *See, e.g.*, *Simpson v. Levitsky (In re Levitsky)*, 401 B.R. 695, 710 (Bankr. D. Md. 2008) ("For purposes of determining whether any given property is an asset of the bankruptcy estate, a debtor's interest in property is determined by state law.") (citing *Butner v. United States*, 440 U.S. 48, 55 (1979)).

Here, the State Court—applying state law—found Serv Trust to be Mr. Myers' alter ego and, ergo, a disregarded entity. Appendix at 183-84. The State Court went on to observe such finding meant proceedings against Serv Trust were protected by the automatic stay enshrined in Section 362 of the Bankruptcy Code. *Id*. This ruling came in the form of a judgment that was never stayed pending appeal and that has not been overturned on appeal. *See* Record, *passim*.

It necessarily follows that the Bankruptcy Court was exercising appropriate subject matter jurisdiction in administering the assets of Serv Trust—a disregarded entity found to be the Debtor's alter ego—as part of the Debtor's bankruptcy estate.

To be sure, Mr. Myers *did* appeal the State Court order. While not a part of the record below, the Appellees can share that appeal was dismissed. As of the filing of this brief, it appears Mr. Myers is seeking reconsideration, of the order dismissing his appeal, in the Appellate Court of Maryland. *See Myers v. Serv Trust*, Case No. 910 (Md. App. 2025). Yet, absent a stay pending appeal, such is wholly immaterial: the judgment of the State Court is that Serv Trust is Mr. Myers' alter ego, thusly

placing any assets of Serv Trust squarely within Mr. Myers' bankruptcy estate. The Bankruptcy Court properly acted on this judgment by allowing the Trustee, through his exercise of statutory duty as representative of the Estate, 11 U.S.C. § 323, to liquidate the subject asset through approval of the Compromise. *See* 11 U.S.C. § 704(a)(1) (directing chapter 7 trustees to "collect and reduce to money the property of the estate for which such trustee serves. . ."); *In re Ware*, 2014 Bankr. LEXIS 2437, at *10-12 (Bankr. E.D. Va. June 3, 2014) ("In an asset case, the trustee is required to fulfill the fundamental duty of liquidating property for the benefit of unsecured creditors."); *In re Atoka Agric. Sys., Inc*., 39 B.R. 474, 477 (Bankr. E.D. Va. 1984) ("The trustee has a duty to liquidate an estate to provide for the widest distribution of assets to creditors.") (citing 11 U.S.C. § 704).

Yet even if, *arguendo*, Mr. Myers were to prevail on his appeal of the State Court judgment, such would be immaterial. The order approving the Compromise, rather carefully, only conveys to the King Parties "all of the right, title and interest of the Trustee, the Debtor and the bankruptcy estate in and to any and all membership interest in or property of 6789 Goldsboro LLC." Appendix at 205. If Mr. Myers succeeds on his appeal of the State Court order, ultimately prevails in showing on remand that Serv Trust was not his alter ego, and accordingly manages to establish a prism whereby the assets of Serv Trust never entered his bankruptcy estate, then the Trustee will have conveyed nothing whatsoever. Indeed, should this series of

events come to pass, the Trustee will have succeeded in securing the King Parties'
monies in exchange for the proverbial equivalent of a quitclaim deed to the Brooklyn
Bridge. But even if such a result occurs, it would not mean that the Bankruptcy Court
lacked jurisdiction to approve the Compromise.

### B. Proposed Settlement Agreements Need Not Be Signed

The Appellant next urges the order below should be vacated because a
bankruptcy court may not approve a settlement or compromise absent a signed
agreement. This contention ultimately fails for two separate reasons: (i) the argument
itself is fundamentally errant, being unmoored—and contrary—to governing law;
and (ii) Mr. Myers did not raise this issue below prior to the close of evidence at a
hearing on approval of the Compromise (raising the issue, for the first time, in a brief
filed moments before an oral ruling was rendered by the Bankruptcy Court).

On the latter point, the notice of the proposed compromise made clear that any
objection thereto was due 21 days after service. Appendix at 62. The Local Rules of
the Bankruptcy Court provide for this deadline. *See* Bankruptcy Court Local Rule
9006-1(a) ("The movant may establish any response deadline that is no earlier than
fourteen (14) days after the date of service and no later than seven (7) days before
the hearing date."). The notice of the proposed compromise was served on December
30, 2024. Appendix at 62. Yet Mr. Myers, after filing an objection on January 21,
2025, Appendix at 63, a date that was actually already beyond the provided-for

deadline, then waited an additional six months—until after the close of evidence and presentation of closing arguments—to first raise this issue, Appendix at 200. In so doing, Mr. Myers waived the argument. *See, e.g.*, *Gallagher v. Cohen*, 659 B.R. 57, 64 (D. Md. 2024) ("[T]he Fourth Circuit and district courts within its jurisdiction have all but uniformly refused to consider arguments in bankruptcy appeals that were not raised before the bankruptcy court.") (citing *United Rentals, Inc. v. Angell*, 592 F.3d 525, 531 n.2 (4th Cir. 2010); *Rusnack v. Cardinal Bank, N.A.*, 695 Fed. App'x 704, 711 (4th Cir. 2017); *In re Modanlo*, 342 B.R. 238, 244 (D. Md. 2006) (citing *Wheatley v. Wicomico Cnty., Md.*, 390 F.3d 328, 335 (4th Cir. 2004)); *In re Richmond*, 615 B.R. 758, 765 (M.D.N.C. 2020); *Waterproofing Specialties, Inc. v. Weaver Cooke Constr., LLC*, 564 B.R. 276, 284-85 & 284 n.6 (E.D.N.C. 2017); *In re Paschall*, 408 B.R. 79, 87 (E.D. Va. 2009) (citing *In re Endicott*, 157 B.R. 255, 258 (W.D. Va.1993))). *Cf. Sisk v. Abbott Labs.*, 2014 U.S. Dist. LEXIS 149378, at *8 (W.D.N.C. Oct. 20, 2014) (". . . the Plaintiff's counsel made no such arguments at trial. This is simply a new theory offered after the fact. Thus, such an argument is not cognizable on a Rule 59 motion.").

To be sure, it is not merely that Mr. Myers missed his initial objection deadline by a few days; it is, rather, that Mr. Myers then waited until *after* the close of trial on the motion seeking approval of the Compromise to raise this issue. Even if the issue had merit (which, as discussed *infra,* the issue does not), such would amount

to gamesmanship of the worst variety, essentially waiting until after a signature could have been procured and put into evidence to first note that he objects to the absence of a signature being procured and placed into evidence.

Yet even if, *arguendo*, this issue was raised—and thusly properly preserved—below, such would be immaterial for the simple reason that Mr. Myers' argument is in legal error. This case concerns approval of an agreement, under Federal Rule of Bankruptcy Procedure 9019, between the Trustee and the King Parties. Nothing in that rule requires such an agreement be in writing, much less that such an agreement be signed.

Indeed, the subject rule simply provides, in relevant part, "[o]n the trustee's motion and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). The rule then goes on to address the parties to whom notice of a settlement or compromise must be given, *id.*, before proceeding to address the settlement of cases involving classes (of which this is not one), Fed. R. Bankr. P. 9009(b), and the right of parties to stipulate to arbitration (something that did not happen here), Fed. R. Bankr. P. 9009(c).

Nowhere does Rule 9019 indicate the agreement to be approved must be in writing, much less signed by the parties thereto. *See* Fed. R. Bankr. P. 9019; *In re Frye*, 216 B.R. 166, 174 (Bankr. E.D. Va. 1997) (approving, under Rule 9019, a compromise memorialized in an oral agreement, where a party objected based upon

the lack of a writing). And, by logical extension, insofar as compliance with the relevant rule is a condition precedent to entering into an agreement, it necessarily follows that many a trustee are reticent to affix their signatures to such a pact unless and until such a time as court approval has first been secured.

To the contrary, case law from within the Fourth Circuit actually goes so far as to hold that a trustee *cannot* be bound by a proposed sale of estate assets insofar as a trustee has a fiduciary duty to ensure the market have a full opportunity to speak, including *after* a notice of proposed sale or settlement is disseminated. *See, e.g.*, *Siddiqui v. Gardner (In re Williamson)*, 327 B.R. 578, 581 (Bankr. E.D. Va. 2005) ("Until the court approves a sale, the property remains 'on the market.' The trustee, or in this case, the debtor, retains the ability to continue to market the property. In fact, he may have an obligation to do so. The objective is to obtain the best price so as to assure the maximum distribution to creditors.").[8] So it is altogether sensible for

---

[8] In connection with a separate motion raising this issue, DE #19, Mr. Myers insists the standard for a sale and the standard for approval of a compromise ought not be conflated, DE #27 at p. 4. Yet in his brief, Mr. Myers acknowledges the order approving the Compromise constituted a transfer of property. *See* Appellant's Brief, DE #21, at p. 12. Plainly, a bankruptcy court may effectuate a sale under Section 363 of the Bankruptcy Code through a compromise pursuant to Federal Rule of Bankruptcy Procedure 9019. *See, e.g., Hernandez v. Hernandez (In re Hernandez)*, 2023 Bankr. LEXIS 2875, at *11-12 (B.A.P. 9th Cir. Dec. 6, 2023) ("Because Agreement A contained the elements of both a sale and a compromise, the bankruptcy court evaluated it under § 363 and Rule 9019.").

a formal document to *not* be executed prior to a motion for approval of the terms thereof being granted.

More pointedly, it is unclear from where Mr. Myers has garnered the idea that an agreement must *ever* be signed. This portion of the Appellant's Brief is bereft of any citations to statutes, case law, or other legal authorities. As noted in *Frye*, bankruptcy courts look to state law to establish whether or not a binding contract has been formed. *In re Frye*, 216 B.R. at 170. Maryland law, in turn, has long been clear that an agreement need not be signed to be effective. *See, e.g.*, *Weems v. Millard*, 2 H. & G. 143 (Md. 1828) (holding an unsigned contract to be enforceable in court); *All State Home Mortg., Inc. v. Daniel*, 977 A.2d 438, 447 (Md. App. 2009) ("Ordinarily, 'a signature is not required in order to bring a contract into existence, *nor is a signature always necessary to the execution of a written contract*.'") (quoting *Stern v. Bd. of Regents*, 846 A.2d 996 (Md. 2004) (quoting *Porter v. Gen. Boiler Casing Co*., 396 A.2d 1090 (Md. 1979))) (emphasis in original). *See also* Md. Code Ann., Cts. & Jud. Proc. § 5-901 (delineating, exhaustively, the limited varieties of contracts that must be reduced to writing and signed under Maryland law); *Boshea v. Compass Mktg., Inc.*, 2025 U.S. Dist. LEXIS 30877, at *27 (D. Md. Feb. 20, 2025) (noting the statute of frauds does not apply to contracts that *can* be performed within one year, even if they are not ultimately performed within one year).

In short, Mr. Myers is arguing—first more than half a year after the applicable objection deadline passed, following the close of evidence and argument at a trial below, and, now, on appeal—that a rule with no requirement of a written agreement, much less a requirement of an actual signature, should be construed to demand a written agreement with a wet ink signature, in a state where case law makes clear that contracts need not be in writing, let alone signed. This is simply not a cogent or sensible contention.

### C. No Due Process Violation Occurred

During the hearing on the Compromise below, the King Parties indicated they would withdraw their claims against the Estate if the Compromise was approved. This was altogether unsurprising, insofar as the subject claims would have neither purpose nor relevance once the Compromise was approved. This was also wholly consistent with the at-issue agreement, insofar as the agreement provides for the adversary litigation to be dismissed and the King Parties' claims serve solely to preserve their rights in the adversary litigation. Yet Mr. Myers, for reasons that are at-best unclear, now insists this somehow amounts to a violation of his due process rights.

Initially, the claims of the King Parties merit brief review. All three claims are substantively identical, saving and excepting the name of the respective claimant. Appendix at 210-218. Each claim is for an "Equitable and statutory claim, as set

19

forth in Case No. 24-00007." *Id.* at 211, 214, 217. None of the claims seek any money from the Estate. *Id.* The claims—facially—are solely to preserve the King Parties' rights in "Case No. 24-0007." *Id.*

Under the terms of the Compromise—as advertised to all parties in interest through the notice sent on December 30, 2024 (roughly seven months before the hearing thereupon)—"Upon successful negotiation of the Settlement Payment by the Trustee, the parties will file a Stipulation of Dismissal in the Adversary Case dismissing all claims therein with prejudice. . ." Appendix at 50.

At the hearing on the then-proposed Compromise, the King Parties—through counsel—confirmed they would withdraw their claims upon consummation of the agreement. *Id.* at 224:24-225:2. Insofar as the claims solely served to preserve the King Parties' rights to pursue Case No. 24-0007, and insofar as Case No. 24-0007 was the "Adversary Case" to be dismissed with prejudice under the terms of the Compromise, this was utterly unremarkable.

Mr. Myers now insists the withdrawal of the King Parties' claims constituted a violation of *his* due process rights. However, as with much of his opening brief, the section addressing this contention is devoid of any legal citations whatsoever. *See* Appellant's Brief, DE #21, at pp. 13-14. And there is accordingly some palpable disconnect between the contention he appears to be making and any understanding thereof.

Due process does, of course, come in different forms. *See United States v. Beyle*, 782 F.3d 159, 170 (4th Cir. 2015) ("The Fifth Amendment guarantees that '[n]o person shall . . . be deprived of life, liberty, or property, without due process of law.'") (quoting U.S. Const. amend. V); *Glass v. Office of Chief Med. Exam'r*, 2025 U.S. Dist. LEXIS 128637, at *5 (D. Md. June 6, 2025) ("The Due Process Clause of the Fourteenth Amendment provides that no state 'shall . . . deprive any person of life, liberty, or property, without due process of law.'") (quoting U.S. Const. amend. XIV, § 1).

The Appellant does not specify which due process rights he believes to have been invaded below. While it is seemingly apparent Mr. Myers is asserting some issue related to due process rights vis a vis property (assuredly there is no contention he has been deprived of his life or his liberty), it is altogether unclear what property Mr. Myers asserts to have been taken sans due process, or what due process was lacking in a judicial process that extended the better part of a year and that was punctuated by a two-day in-person trial at which Mr. Myers was heard both as a witness and as his own counsel.

Normally, when due process issues arise in the context of bankruptcy proceedings, such are raised by creditors whose claims have been discharged by a bankruptcy court even though—in a uniformly fact-specific context—there is some contention the creditor(s) in question were not given notice of the bankruptcy case

or an opportunity to object to the entry of a discharge. *Cf. Dahlin v. Lyondell Chem. Co.*, 881 F.3d 599, 603 (8th Cir. 2018). As such, case law has generally evolved to recognize that "[i]nadequate notice is a defect which precludes discharge of a claim in bankruptcy." *Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3d Cir. 1995).

Again, though, these intersections of due process and bankruptcy concern the discharge of *creditors'* claims against estates where the creditor(s) in question do not receive proper notice of the proceeding. Here, Mr. Myers is the debtor below and the King Parties are the at-issue creditors.

The claims that were withdrawn were those of the King Parties, not of Mr. Myers. It is difficult to understand what property rights Mr. Myers believes he could have held in the claims of others against his bankruptcy estate.

The only parties suffering any legally cognizable deprivation by the withdrawal of the King Parties' claims are the King Parties. Yet they, of course, are the parties who agreed to withdraw their claims. And even if it were to be their rights that were analyzed, it is difficult to understand how the withdrawal of their claims could be considered a denial of their due process rights, insofar as such was in accord with the Compromise, which already expressly provided for the dismissal—with prejudice—of the litigation their claims exclusively served to preserve.[9]

---

[9] For the avoidance of ambiguity: the King Parties were, of course, on notice of the proposed Compromise. Not only did they agree to the terms thereof with the Trustee, but they were formally served—through counsel—with notice of the proposal

Indeed, the utterly nonsensical nature of this argument is unfortunately suggestive of Mr. Myers not being interested in this appeal as a mechanism to seek the review of any *bona fide* grievances with the Bankruptcy Court but, rather, as a means to continue to ". . . gum up the judicial process for his own personal benefit . . ." *Myers v. United States Tr.*, 2020 U.S. Dist. LEXIS 25670, at *9 (D. Md. Feb. 13, 2020). And such is an aspect of this appeal, and the underlying bankruptcy case, that merits at least passing notation: Mr. Myers has, since the filing of the underlying bankruptcy case in 2015, established a track record of bad faith litigation and abuse of the appellate system.

Mr. Myers has filed at least four petitions for bankruptcy relief after commencing the case below (five if one includes the case below). *See In re Myers*, 2023 Bankr. LEXIS 139, at *2 (Bankr. M.D. Fla. Jan. 20, 2023) (recounting the Debtor's various bankruptcy filings). This led to Mr. Myers being banned, by the United States Bankruptcy Court for the Middle District of Florida, from seeking bankruptcy protection for two years. *Id.* at *15 ("And in light of the Debtor's multiple bankruptcy filings, the Court finds it appropriate to dismiss the case with prejudice and with a two-year bar against refiling.").

---

thereof, they appeared—again, through counsel—at the evidentiary hearing on approval of the Compromise, and their counsel argued below in favor of the Compromise.

When that two-year ban was up, Mr. Myers promptly filed a bankruptcy petition in the District of Columbia (following prior petitions in the District of Maryland, the District of Delaware, and the Middle District of Florida). *See In re Myers*, 2025 Bankr. LEXIS 1396 (Bankr. D.D.C. June 11, 2025). That court proceeded to bar Mr. Myers from seeking bankruptcy protection for ten years. *Id.* at *17.

Mr. Myers' wife has also been barred from seeking bankruptcy protection for four years. *In re Kelly*, 656 B.R. 541, 551 (Bankr. D. Md. 2023). In reaching that ruling, the United States Bankruptcy Court for the District of Maryland found, *inter alia*:

> . . . [f]or eight years, Ms. Kelly and Mr. Myers have exploited, manipulated, and abused the bankruptcy process to hinder and delay creditors from enforcing their security interests or otherwise pursuing their claims all while forcing those same creditors to incur substantial legal fees to protect their interests in various state and federal courts.

*In re Kelly*, 656 B.R. at 549 .

In another appeal from Mr. Myers' bankruptcy case below, this Honorable Court had occasion to observe, *inter alia*, "[t]his is but one of Appellant Gregory Myers' seriatim bankruptcy appeals stemming from his November 2015 bankruptcy petition." *Myers*, 2020 U.S. Dist. LEXIS 25670, at *1. *See also In re Myers*, 2023 Bankr. LEXIS 139, at *14  ("Debtor's actions evidence that his motivation in this

case is to delay and frustrate the many parties with whom he is engaged in contentious litigation, some of whom over the course of the last decade.").

Indeed, Mr. Myers has not merely been barred from seeking bankruptcy protection for the next decade; he has, too, been barred from filing appeals in the United States Court of Appeals for the District of Columbia Circuit until such a time as he satisfies a monetary sanction imposed on him by that court. *Myers v. Golf*, 2025 U.S. App. LEXIS 24783, at *1 (D.C. Cir. Sep. 24, 2025). *See also Myers v. Golf*, 2025 U.S. App. LEXIS 23025, at *3 (D.C. Cir. Sep. 5, 2025) ("As this court has previously concluded, the record supports appellees' assertions that appellant brought this appeal, and the underlying district court action, in bad faith and for an improper purpose — namely, to harass appellees and to delay the resolution of proceedings in the Florida state court litigation.").

All of which is to posit the following: Mr. Myers may not like that the Compromise was approved. He may not like that the State Court found he used Serv Trust as his alter ego. He may not like that the King Parties' funds will be used to pay his creditors and not to line his own pockets. And he may not like that by withdrawing their claims below, the King Parties have deprived him of further opportunities to "gum up the judicial process" with spurious objections. But such does not make for a deprivation of due process rights. And by including such an outlandish suggestion in the Appellant's Brief, Mr. Myers has made it difficult to

seriously credit his efforts in this appeal as being any more genuine—or lodged to any modicum of good faith greater—than in his myriad other bankruptcy cases and bankruptcy appeals.

### D. The Order Approving the Compromise is a Valid, Final Order

Finally, Mr. Myers urges that the order appealed from is not a final order because—at the eleventh hour—he attempted to intervene in the adversary proceeding resolved through the Compromise. As noted above, this is an oddly problematic argument insofar as, if the contention is to be credited, this Honorable Court is without appellate jurisdiction. *See, supra*, § II. Indeed, somewhat bizarrely, Mr. Myers appears to be advocating for the legal futility of his own appeal. Yet such is also largely beside the point insofar as the order below is, quite assuredly, a final order.

It is well settled that orders approving settlements, in bankruptcy cases, are final orders. *See, e.g.*, *FCGI Asssocs., LLC v. McAfee (In re Harman)*, 683 F. App'x 880, 881 (11th Cir. 2017) ("Carolyn McAfee appeals from the final order of the district court affirming the bankruptcy court's approval of a settlement in a Chapter 7 bankruptcy proceeding."); *In re Reagor-Dykes Motors, LP*, 613 B.R. 878, 887-88 (Bankr. N.D. Tex. 2020) ("An order approving a settlement under Rule 9019 has res judicata effect as a final order.") (citing *In re Licking River Mining, LLC*, 605 B.R. 153, 159 (Bankr. E.D. Ky. 2019); *In re Reeves*, 521 B.R. 827, 833 (Bankr. E.D.

Tenn. 2014); *In re Gibraltar Res., Inc.*, 210 F.3d 573, 576 (5th Cir. 2000); *Hammersley v. Prospector Offshore Drilling (In re Prospector Offshore Drilling)*, 2019 U.S. Dist. LEXIS 39308, 2019 WL 1150563, at *5 (D. Del. Mar. 12, 2019)).

As observed by the United States Court of Appeals for the Fifth Circuit: "A bankruptcy court's approval of a settlement order that brings to an end litigation between parties is a 'final' order." *In re Gibraltar Res., Inc.*, 210 F.3d at 576 (citing *In re Cajun Electric Power Coop., Inc.*, 119 F.3d 349, 354 (5th Cir. 1997); *In re West Texas Marketing Corp.*, 12 F.3d 497, 501 (5th Cir. 1994); *In re Medomak Canning*, 922 F.2d 895, 900 (1st Cir. 1990)).

The Compromise in this case served to bring an end to the adversary proceeding (case number 24-0007 in the Bankruptcy Court) between the Trustee and the King Parties. The order approving the Compromise is, accordingly, a final order by just about every definition of the term.

The lone case cited by Mr. Myers, in support of his suggestion that the order below is not a final order, is *Kiviti v. Bhatt*, a Fourth Circuit case from 2023. *See* Appellant's Brief, DE #21, at p. 14. Perhaps coincidentally, that happens to be a case in which one undersigned counsel represented the appellants. *See Kiviti v. Bhatt*, 80 F.4th 520, 526 (4th Cir. 2023) (identifying counsel). Not coincidentally, Mr. Myers is—quite dramatically—misstating the holding of that case.

In *Kiviti*, a bankruptcy court's dismissal of some, but not all, counts in an adversary proceeding left the parties in the unusual posture of being left to litigate only a wholly moot cause of action. *Id.* at 531. The parties accordingly stipulated to dismiss the remaining (moot) cause of action, so that an appeal could be taken. *Id.* at 528. The Fourth Circuit noted that while parties may ordinarily agree to dismiss purely moot claims so as to proceed with an appeal, *id.* at 531, such a mechanism is not available in the prism of bankruptcy appeals because bankruptcy courts are not Article III courts and, as such, are not bound by the case-or-controversy rigors of Article III, thereby uniquely enabling bankruptcy courts to hear moot cases, *id.* at 532.

*Kiviti* is a fascinating opinion, with a somewhat startling holding (a bankruptcy court *can* hear a moot case), that stems from a truly inane factual record. And *Kiviti* does reinforce that parties may not gin up appellate jurisdiction through voluntary stipulations to prematurely secure dismissals. Yet nowhere does *Kiviti* hold that a voluntary dismissal does *not* create a final order, or that a case is not terminated when a voluntary stipulation of dismissal is docketed. *Kiviti* simply provides that appellate recourse, in such circumstances, is limited.

Ironically, *Kiviti* would be relevant if Mr. Myers was appealing from the dismissal of the adversary proceeding below. Since that dismissal was by stipulated consent, *Kiviti* would make clear no appellate jurisdiction may ensue from the

dismissal. Yet, tempting as it may be to urge Mr. Myers is not entitled to take his appeal, the reality is the order from which he is appealing is not the voluntary dismissal of the adversary proceeding but, rather, the order approving the Compromise. That is a final order from which an appeal may be taken. *See Gibraltar Res., Inc.*, 210 F.3d at 576.

## VI.    Certificate of Compliance

Pursuant to Federal Rule of Bankruptcy Procedure 8014(a)(10), I hereby certify this brief complies with the page limitation of Federal Rule of Bankruptcy Procedure 8015(b) because it does not exceed 30 pages in length.

*[Signatures on Following Page]*

Respectfully submitted,

Dated: February 10, 2026

By: /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. 18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
Facsimile: (301) 444-4600
mac@mbvesq.com
*Counsel for the King Parties*

/s/ Frank J. Mastro
Frank J. Mastro, Esq.
Bar No. 24679
Schlossberg Mastro
P.O. Box 2067
Hagerstown, Maryland 21742
Phone: (301) 739-8610
fmastro@schlosslaw.com
*Counsel for Mr. Schlossberg*

*[Certificate of Service on Following Page]*

30

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 10th day of February, 2026, a copy of the foregoing was served electronically upon filing via the ECF system, with copies to all counsel in this matter.

I DO FURTHER CERTIFY that on this 10th day of February, 2026, a copy of the foregoing—alongside a copy of the Appellees' Appendix—was served via First Class Mail, postage prepaid, upon:

Gregory Myers
700 Gulf Shore Blvd. N
Naples, Florida 34102
*Appellant*

<u>/s/ Maurice B. VerStandig</u>
Maurice B. VerStandig