IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | |
|---|---|
| GREGORY B. MYERS, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | Case Nos.8:25-cv-2103-TDC (Lead Case) |
| ) | 8:25-cv-2337-TDC |
| ROGER SCHLOSSBERG, ) | 8:25-cv-2635-TDC |
| BRIAN KING, ) | |
| CRISTINA KING, and ) | |
| CRISTINA AND BRING KING ) | |
| CHILDREN'S TRUST ) | |
| ) | |
| Appellees. ) | |
| _____ ) | |

**OPPOSITION TO EMERGENCY
MOTION TO STAY PENDING APPEAL**

Come now Brian King, Cristina King and the Cristina and Brian King Children's Trust (collectively, the "King Parties"), by and through undersigned counsel, in opposition to the Emergency Motion to Stay Pending Appeal (the "Motion"), DE #30, filed by Gregory B. Myers ("Mr. Myers" or the "Appellant" or the "Debtor"), and state as follows:

**I.    Introduction**

Some 238 days after filing this appeal, and following innumerable delays occasioned by his own actions and inactions, Mr. Myers moves for a stay pending appeal and does so on an emergency basis. Such comes after the submission of opening briefs, demonstrating the Appellant's absence of likelihood of success on the merits. Such comes without offering to post any form of a bond. And, most importantly, such comes after the underlying settlement agreement has been fully consummated, with the King Parties having long-ago tendered the full agreed-upon sum to Roger Schlossberg, Mr. Myers' chapter 7 trustee (the "Trustee"), to redeem any interest of

1

the Trustee, Mr. Myers, or Mr. Myers' bankruptcy estate in 6789 Goldsboro LLC ("6789 Goldsboro").

For these reasons, and as extrapolated upon *infra*, the Motion merits denial.

## II.     Argument: The Motion Should be Denied on the Merits

At bottom, this case concerns a man who got caught using a sham trust to shield assets from his chapter 7 bankruptcy estate and who resents—no doubt quite deeply—that the trust was then brought within his bankruptcy estate and administered by the Trustee. As evidenced by the Appellant's own opening brief, DE #21, the bona fides of the settlement between the Trustee and the King Parties are not actually being challenged on appeal; no one is disputing the fairness of the compromise reached or the sufficiency of the consideration thereunder. Mr. Myers is, rather, endeavoring to (i) collaterally attack a state court order; (ii) urge bankruptcy courts do not have jurisdiction over contested portions of debtors' estates; (iii) argue—against the weight of seemingly all topical authority—that a bankruptcy trustee must execute a settlement agreement before garnering approval to enter into such an agreement; and (iv) assert—somewhat strangely—that the final order below is not actually a final order (and, by extension, is not properly challengeable through the very appeal brought by Mr. Myers). These are neither valid nor persuasive arguments. And these arguments assuredly do not cast the extraordinary foundation requisite to issue a stay of any order of the United States Bankruptcy Court for the District of Maryland (the "Bankruptcy Court") pending adjudication of this appeal.[1]

As observed by the Supreme Court, the granting of a stay pending review is fundamentally disruptive and accordingly a remedy to be utilized sparingly:

---

[1] As noted in the Appellees' Opening Brief, DE #29, Mr. Myers is actually appealing from "seven orders, two hearing notices, and one memorandum to parties," *id.* at § I, n.1. One of the orders appealed from is a scheduling order. *Id.* at § I.

> A stay is an "intrusion into the ordinary processes of administration and judicial review," and accordingly "is not a matter of right, even if irreparable injury might otherwise result to the appellant." The parties and the public, while entitled to both careful review and a meaningful decision, are also generally entitled to the prompt execution of orders that the legislature has made final.

*Nken v. Holder*, 556 U.S. 418, 427 (2009) (quoting *Virginia Petroleum Jobbers Assn. v. FPC*, 259 F.2d 921, 925 (D.C. Cir. 1958); *Virginian R. Co. v. United States*, 272 U.S. 658, 672 (1926)). *See also Allen v. Fitzgerald*, 590 B.R. 352, 355 (W.D. Va. 2018) (applying *Nken* in the context of a bankruptcy appeal); *In re Slotkin*, 2022 U.S. Dist. LEXIS 43105 (C.D. Cal. Mar. 9, 2022) (applying *Nken* in the context of a bankruptcy appeal).

In considering a motion for a stay pending appeal, this Honorable Court is guided by the procedural rigors of Federal Rule of Bankruptcy Procedure 8007 (discussed in greater detail in Section III, *infra*) and the familiar four-prong standard established by the Supreme Court:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Hilton v. Braunskill*, 481 U.S. 770, 776-77 (1987) (citing *Virginia Petroleum Jobbers Assn.*, 259 F.2d at 925; *Washington Metropolitan Area Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 842-844 (D.C. Cir. 1977); *Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir. 1986); *Accident Fund v. Baerwaldt*, 579 F.Supp. 724, 725 (WD Mich. 1984); 11 C. Wright & A. Miller, Federal Practice and Procedure § 2904 (1973)). *See also Nken*, 556 U.S. at 425 (same).

Here, Mr. Myers has not made a showing—much less a "strong showing"—that he is likely to succeed on the merits of this appeal. To the contrary, and as intimated *supra*, Mr. Myers appears to be pegging his appellate arguments to outlandish *ipso facto* contentions wholly unmoored to precedent or governing law. The Appellant's opening brief is founded upon contentions that the assets of his adjudicated alter ego are not assets of his bankruptcy estate, that trustees in bankruptcy

3

must sign—and, seemingly, bind themselves to—agreements before seeking judicial approval to do so, that Mr. Myers' due process rights were violated through a yearslong process that culminated in a multiday trial at which he was heard as both a witness and an advocate, and that the order from which he is appealing is not a final order. *See* Appellant's Opening Brief, DE #21, *passim*. Each of these contentions is without merit and some of these contentions border on *reductio ad absurdum*. *See* Appellees' Opening Brief, DE #29, *passim*.

More pointedly, though, the Motion does nothing to show or explain *why* Mr. Myers believes he has any likelihood of success in this appeal. The portion of the Motion addressing likelihood of success on the merits is 75 words long, does not cite to a single case or statute, does not cite to the record, and does not actually even go so far as to assert a likelihood of success. *See* Motion, DE #30, at § IV(A). To the contrary, Mr. Myers appears to be simply posturing that his appeal "presents substantial issues," *id.*, and that those issues "present serious legal questions going to the merits," *id.* It would necessarily seem that any good faith appeal ought to present "substantial issues" alongside "serious legal questions." Yet, as the Supreme Court has made clear in *Nken*, a stay pending appeal is an extraordinary exception to the prevailing norm. And lest the substantiality of the issues in this case—or seriousness of questions on appeal—lack context: *Nken* was a case concerning an immigrant seeking a stay of deportation to an African country, with the immigrant urging such removal would contravene the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment. *Nken*, 556 U.S. at 441.

Nor has Mr. Myers done anything to demonstrate how he would be irreparably harmed absent a stay. This section of the Motion is also scant, being a mere 88 words and again being devoid of any citations to law or the record. *See* Motion, DE #30, at § IV(B). Yet the gravamen of the argument appears to be that without a stay, the settlement approved by the Bankruptcy Court

might actually be consummated. This is necessarily a strawman argument: absent a stay pending appeal, *every* final order on appeal chances implementation and enactment—such is, rather precisely, the very purpose of trial courts entering final orders.

The irreparable harm question, however, invites observation of a more pernicious reality: Mr. Myers does not actually have *any* personal interest in the issues on appeal and accordingly cannot personally suffer any irreparable harm. To the contrary, Mr. Myers is attacking a settlement between the Trustee (on behalf of Mr. Myers' bankruptcy estate) and the King Parties. The settlement concerns assets of a sham trust adjudicated to be Mr. Myers' alter ego by a state court. For myriad reasons, Mr. Myers cannot challenge that state court ruling in this Honorable Court. *See Rooker v. Fidelity Trust Co.*, 263 U. S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U. S. 462 (1983). And since Mr. Myers is not a party to the settlement below, he may well ". . . lack[] standing to prosecute this appeal," *Willemain v. Kivitz*, 764 F.2d 1019, 1022 (4th Cir. 1985), insofar as ". . . an insolvent debtor is not a party in interest and thus lacks standing because he has no pecuniary interest in the distribution of his assets among his creditors," *id.* (citing 3 J. Moore & L. King, Collier on Bankruptcy para. 57.17[2.1], pp. 275-277 (14th ed. 1977); 3 L. King, Collier on Bankruptcy para. 502.01[2] (15th ed. 1985); *Willemain v. Kivitz*, 764 F.2d 1019, 1022 (4th Cir. 1985)). *But see Kessler v. Travelers Prop. Cas. Co. of Am.,* 2025 U.S. Dist. LEXIS 54322, at *17 (C.D. Cal. Mar. 11, 2025) (discussing how a debtor whose discharge has been denied may have standing to contest certain matters since unpaid debts will remain following closure of the bankruptcy case).

To be sure, the issue on appeal is revealing of the absence of any legally cognizable interest on Mr. Myers' part: either the sham trust was *not* Mr. Myers' alter ego (something not properly on appeal in any event), in which case Mr. Myers is necessarily pecuniarily unconcerned with the

affairs of a trust that is not his alter ego, or the trust *was* Mr. Myers' alter ego, in which case the Bankruptcy Court properly administered the assets thereof.[2] Or, stated otherwise, there is a "doth protest too much," William Shakespeare, Hamlet Act III, Scene 2, aura about this appeal: Mr. Myers is expending an assuredly-suspect quotient of time, energy and resources fighting the redemption of an LLC interest that Mr. Myers insists to have never been his in the first place.

The King Parties have not previously urged this appeal ought to be dismissed for want of standing and such is not amongst the arguments in their opening brief. *See* Appellees' Opening Brief, DE #29, *passim*. They thusly do not outright advocate for such a disposition at this juncture and recognize Mr. Myers' denial of a discharge below may give rise to minimalistic standing. *See Kessler,* 2025 U.S. Dist. LEXIS 54322, at *17. The argument, rather, is made not in furtherance of a speedy conclusion to an appeal already prolonged by Mr. Myers' perennial delays but, rather, as a mere exemplification of why it is that Mr. Myers does not stand to suffer any cognizable harm whatsoever—much less "irreparable harm"—if a stay is not entered.

A stay would, however, cause injury to the King Parties. As noted above, the King Parties have already consummated their settlement with the Trustee and redeemed the interests of the former Class B membership interest in 6789 Goldsboro (to the extent not already redeemed), as evidenced by their dismissal of their lawsuit against the Trustee. *See* Notice of Dismissal with Prejudice, DE #30-3. As noted in the court order on appeal, that stipulation of dismissal was to be docketed only *after* negotiation of a $150,000.00 payment from the King Parties to the Trustee,

---

[2] If Mr. Myers were urging on appeal that the settlement ought not have been approved because the sum bargained for was too low, such might invite a greater claim of personal interest insofar as a greater settlement sum would fetch a larger distribution to creditors which, in turn, would do more to lessen the debts of Mr. Myers once his case concludes (since he has been denied a discharge). Yet that is not the argument he is making on appeal and that is not the argument set forth in his opening brief. *See* Appellant's Opening Brief, DE #21, *passim*. So the standing of Mr. Myers remains at-best suspect.

with said payment acting as a settlement of the redemption of any interests in 6789 Goldsboro held by Mr. Myers, the Trustee, or Mr. Myers' bankruptcy estate. *See* Appellees' Appendix, DE #29-1, at p. 0205.[3] While no further evidence of the settlement's consummation has been docketed (or, under applicable rules and orders, is to be docketed), the stipulation of dismissal—when read in the context of the order authorizing such stipulation—is *prima facie* evidence of such consummation.

So what Mr. Myers proposes, by way of a stay pending appeal, is to freeze a status quo that no longer exists, working substantial prejudice to the King Parties. The King Parties have parted with $150,000.00—an assuredly valuable sum by any estimation—in exchange for the assuredness that they alone control 6789 Goldsboro and that they alone may make decisions concerning the affairs of 6789 Goldsboro and a potential disposition of the entity's eponymous real estate asset. Mr. Myers is proposing a stay that would prohibit them from having this operative freedom in an ever-evolving and complex market. Such is innately prejudicial in nature.

Finally, the public interest assuredly does not favor a stay pending appeal. On this front, Mr. Myers is his pithiest, offering a single sentence of a scant 29 words. *See* Motion, DE #30, at § IV(D). In support, he posits the public interest favors appellate review and that such is needed because the issues are otherwise "unadjudicated." *Id.* Suffice it to posit, a two-day trial—preceded by yearslong litigation in multiple courts—is assuredly not the paradigm of an issue being "unadjudicated." More pertinently, though, Mr. Myers misses the broader point: a stay pending appeal is an extraordinary remedy; if the public interest in appellate review were sufficient to merit

---

[3] This is a reference to the Bates-stamped page number at the foot of the appendix. The relevant reference is found at page 207 of the correlative PDF, as noted in the CM/ECF header. The gap is attributable to the presence of a cover page and a table of contents.

such relief, stays pending appeal would become the epitome of "ordinary," and not "extraordinary."

As observed by the United States District Court for the Southern District of New York, there is a pronounced interest in *not* affording stays pending appeal in bankruptcy cases: ". . . the 'public's interest in the expeditious administration of bankruptcy cases is impaired by obstructing a [bankruptcy] trustee's efforts to collect, liquidate and distribute assets to creditors of the estate.'" *Carrington v. Lamonica (In re Carrington)*, 698 F. Supp. 3d 659, 662 (S.D.N.Y. 2023) (quoting *In re Kwok*, 653 B.R. 480, 508 (Bankr. D. Conn. 2023)). *See also Jeffries v. Herr*, 2024 U.S. Dist. LEXIS 105643, at *8 (D. Md. June 13, 2024) (noting, in a bankruptcy appeal, that "[a] stay would result in further delays of this already prolonged case.").

Mr. Myers has been a debtor in bankruptcy for more than a decade. As well documented in the pantheon of reported and unreported opinions, he has developed—since first petitioning for bankruptcy relief—a penchant for bad faith gamesmanship that has given rise to innumerable delays. *See Myers v. United States Tr.*, 2020 U.S. Dist. LEXIS 25670, at *9 (D. Md. Feb. 13, 2020) (discussing Mr. Myers' desires to ". . . gum up the judicial process for his own personal benefit . . ."); *In re Myers*, 2025 Bankr. LEXIS 1396 (Bankr. D.D.C. June 11, 2025) (barring Mr. Myers from petitioning for bankruptcy relief for 10 years); *In re Kelly*, 656 B.R. 541, 549 (Bankr. D. Md. 2023) (". . . [f]or eight years, Ms. Kelly and Mr. Myers have exploited, manipulated, and abused the bankruptcy process to hinder and delay creditors from enforcing their security interests or otherwise pursuing their claims all while forcing those same creditors to incur substantial legal fees to protect their interests in various state and federal courts."); *In re Myers*, 2023 Bankr. LEXIS 139, at *14 ("Debtor's actions evidence that his motivation in this case is to delay and frustrate

8

the many parties with whom he is engaged in contentious litigation, some of whom over the course of the last decade.").

Here, the Trustee has obtained a considerable sum of money from the King Parties to be administered through Mr. Myers' estate. There is a recognized public interest in allowing such to be accomplished expeditiously. *Carrington*, 698 F. Supp. 3d at 662. There is assuredly not any such public interest in permitting Mr. Myers to further ". . . gum up the judicial process for his own personal benefit . . ." *Myers*, 2020 U.S. Dist. LEXIS 25670, at *9.

At bottom, the Appellant does not satisfy any of the four considerations that inform entry of a stay pending appeal. To the contrary, the Motion—through both the document's irrationality and conclusory brevity—only reinforces the frailty of the contentions on appeal, Mr. Myers' wholesale lack of a cognizable interest in the outcome of this appeal, and the strong public interest in allowing bankruptcy cases to be administered as expeditiously as possible. The record, meanwhile, shows the harm that would inure to the King Parties if there were a stay pending appeal. And the Motion is accordingly meritorious of denial.

### III.     Argument: The Motion is Untimely and Non-Compliant

One of the few citations in the Motion is to Federal Rule of Bankruptcy Procedure 8007. *See* Motion, DE #30, at § I. Yet the Motion fails to abide by the rigors of that rule and, equally—if not more—concerningly, does nothing to explain why Mr. Myers is now seeking this "emergency" relief some *seven months* after his motion for a stay pending appeal was denied by the Bankruptcy Court.

While the Federal Rules of Bankruptcy Procedure set forth a number of conditions attendant to a motion for a stay pending appeal, two portions of the pertinent rule are particularly detailed in nature:

  (2) *Required Showing*. The motion must:

  (A) show that moving first in the bankruptcy court would be impracticable; or

  (B) if a motion has already been made in the bankruptcy court, state whether the court has ruled on it, and if so, state any reasons given for the ruling.

  (3) *Additional Requirements*. The motion must also include:

  (A) the reasons for granting the relief requested and the facts relied on;

  (B) affidavits or other sworn statements supporting facts subject to dispute; and

  (C) relevant parts of the record.

Fed. R. Bankr. P. 8007(b).

  Here, the Motion does not state how the Bankruptcy Court ruled on the motion below (though, in fairness to Mr. Myers, the Motion does attach the order denying a stay below). Of greater import, though, the Motion is wholly devoid of "affidavits or other sworn statements supporting facts subject to dispute." Fed. R. Bankr. P. 8007(b)(2)(3)(B).

  This failure is not raised as an exercise in form over substance, either. As noted *passim*, Mr. Myers' Motion is prohibitively short, resting—almost entirely—on threadbare, conclusory verbiage. And such speaks, in no small part, to one of the issues underlying this appeal: there are not actually any facts properly subject to dispute. Yes, Mr. Myers has a seemingly yearning desire to have overturned a state court order declaring Serv Trust to be a sham trust, a disregarded entity, and his alter ego. But Mr. Myers has failed—multiple times—to secure such a reversal from the state appellate court. And, as discussed *supra*, it is the province of neither the Bankruptcy Court nor this Honorable Court to now lend appellate review to that state court order. *See Rooker*, 263 U. S. 413; *Feldman*, 460 U. S. 462.

  So, too, is attention paid to the provision of Rule 8007 requiring a recitation of how a lower court adjudicated a motion for a stay pending appeal. Yes, Mr. Myers ought to be credited with

appending a copy of the relevant Bankruptcy Court order. But Mr. Myers has altogether neglected to take note of the date on that order—July 18, 2025, *see* Order, DE #30-2—and explain why such a lengthy delay then ensued before the Motion was filed in this Honorable Court.

This is an appeal where Mr. Myers failed to timely file a designation and statement. DE #4. He then designated no less than 168 docket entries, DE #6, despite ultimately making reference to but a handful of them in his opening brief, DE #21. Before that opening brief was filed, though, he sought multiple extensions of the applicable deadline. DE #9; DE #14. He then moved to hold this appeal in abeyance. DE #16. He took months to procure transcripts, with them being notably absent from the record at the time of the aforementioned record designation, DE #6, and ultimately posited such delay to be due to issues with completing payment, DE #20 at ¶ 3. When he finally did file an opening brief, he once again moved to supplement the record. DE #23. He is now seeking yet another extension of briefing deadlines. DE #31.

All of which is to observe the following: if this were an "emergency," Mr. Myers could well have sought this relief at the time he noted the appeal or shortly after denial of a comparable motion by the Bankruptcy Court. But he did not. Instead, he sought extension after extension to proceed with the merits of the appeal, seemingly neglected to timely secure a trial transcript and then—only after *finally* docketing an opening brief and having occasion to review the Appellees' responsive opening brief—finally got around to seeking a stay pending appeal.

It is thusly difficult to credit the Motion as being correlative to a genuine "emergency." And while such is procedurally noteworthy for myriad reasons, the delay also ultimately speaks to one of the considerations outlined above: assuredly Mr. Myers, who has shown a penchant and ability to make numerous filings, would not have waited more than half a year to seek a stay in this Honorable Court if there were actually any irreparable harm afoot.

## IV. Conclusion

WHEREFORE, the King Parties respectfully pray this Honorable Court deny the Motion and afford such other and further relief as may be just and proper.

                                          Respectfully submitted,

Dated: February 21, 2026              By: /s/ Maurice B. VerStandig
                                                Maurice B. VerStandig, Esq.
                                                Bar No. 18071
                                                The VerStandig Law Firm, LLC
                                                9812 Falls Road, #114-160
                                                Potomac, Maryland 20854
                                                Phone: (301) 444-4600
                                                Facsimile: (301) 576-6885
                                                mac@mbvesq.com
                                                *Counsel for the King Parties*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 21st day of February, 2026, a copy of the foregoing was served electronically upon filing via the ECF system, with copies to all counsel in this matter.

I DO FURTHER CERTIFY that on the 23rd day of February, 2026, a copy of the foregoing is being served via First Class Mail, postage prepaid, upon:

    Gregory Myers
    700 Gulf Shore Blvd. N
    Naples, Florida 34102
    *Appellant*

                                                      /s/ Maurice B. VerStandig
                                                      Maurice B. VerStandig