Case No.: **8:25-cv-2103-TDC (Lead Case)**
Case No.: **8:25-cv-2337-TDC**
Case No.: **8:25-cv-2635-TDC**

USDC- GREENBELT
'26 MAR 26 AM10:31

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

## GREGORY B. MYERS,

*Appellant,*

v.

## ROGER SCHLOSSBERG, ET AL.,

*Appellees.*

**Appeal from the United States Bankruptcy Court
for the District of Maryland
Adv. Case No. 24-00007
Bk. Case No.: 15-26033**

## AMENDED APPELLANT'S REPLY BRIEF[1]

Gregory B. Myers, *pro se*
700 Gulf Shore Blvd. N.
Naples, Florida 34102
(301) 325-2312
*gregbmyers@verizon.net*

March 25, 2026

---

[1] This Amended Appellant's Reply Brief is being filed pursuant to this Court's Order entered on March 18, 2026 (Doc. 36).

1

**TABLE OF CONTENTS**

INTRODUCTION

ARGUMENT

I. The bankruptcy court approved a transfer without determining whether the estate owned anything to transfer.

II. The January 12, 2023 order was interlocutory, did not adjudicate estate ownership, and cannot supply the missing predicate.

III. The state court could not override the prior final bankruptcy judgment, and state-law alter-ego characterizations do not themselves determine estate property under § 541.

IV. The bankruptcy court bypassed the required adjudicative process; disputed third-party property could not be treated as estate property through motion practice or agreement.

V. The January 12, 2023 order was entered in violation of the stay and is void, and proceedings derived from it likewise cannot stand.

VI. The King adversary did not assert a valid bankruptcy claim against the estate and belonged, if anywhere, in state court.

VII. The Settlement Procedures Order Exceeded the Court's Authority and Could Not Recreate Jurisdiction Over a Remanded State-Court Controversy

VIII. The Unresolved Disqualification Motion Further Undermines the Fairness and Reliability of the Proceedings

IX. Rule 9019 could not be used to do the work of § 363(b), and the structure of the transaction confirms the error.

X. The Compromise Was Never Properly Fixed, and the Order Itself Became the Transfer Instrument

CONCLUSION

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## INTRODUCTION

This appeal turns on a threshold defect. No final judgment of a court of competent jurisdiction ever determined that Serv Trust property was property of the bankruptcy estate. Without that predicate, the bankruptcy court could not approve a Rule 9019 compromise purporting to transfer, extinguish, or otherwise dispose of rights in Serv Trust property. Nor could it determine rights concerning non-debtor 6789 Goldsboro LLC to the extent those rights depended on first treating Serv Trust's Goldsboro interest as estate property.

Appellees' response assumes the answer to that question. They repeatedly describe Serv Trust as an "adjudicated alter ego" and then treat that premise as dispositive. But that premise is precisely the dispute. The January 12, 2023 state-court order on which the trustee relies was interlocutory. Even on its face, it did not adjudicate that Serv Trust property became property of the estate. The proposed order submitted by the King Parties did contain express estate-property and trustee-ownership language, but Judge Lease removed that language before entering the order. The order actually entered therefore does not say what Appellees now need it to say.

That omission matters because the bankruptcy court never supplied the missing determination. Instead, Judge Ruark expressly stated that she did not need to decide what interest, if any, the estate had. She said the estate's interest could be "a hundred," "a one," or even "zero," and that she could nonetheless approve a

settlement of "whatever interest" the estate may have. She even used her own house as an example and explained that if the trustee could get money for settling the estate's supposed interest in it, "good for him," even if the estate owned nothing. Those statements reveal the core legal error: the bankruptcy court believed Rule 9019 permitted approval of a transfer without first determining whether the estate had any actual interest to transfer.

That is not what Rule 9019 allows. Rule 9019 permits approval of compromises; it does not authorize a bankruptcy court to transfer property while declining to determine whether the estate owns it. Courts require an informed, independent judgment about the subject of the compromise. And where ownership is genuinely disputed, the trustee cannot simply assume estate ownership and monetize that assumption. The Code and Rules require adjudication first, administration second. Here, the order on appeal reversed that sequence.

The problem is even deeper than that. The only final bankruptcy judgment in the record points the other way. The 2018 bankruptcy judgment entered in adversary case 17-00193 (Hon. Wendelin Lipp) recognized Serv Trust as a **valid trust** that was created by Myers' mother for the benefit of Myers' five children, recognized Myers as only a co-trustee[2], and recognized that Serv Trust held the Goldsboro interest. That judgment became final and was never reopened or reversed. The Supreme Court has

---

[2] Mr. Myers resigned as co-trustee of Serv Trust on May 1, 2022.

long held that once a court finally decides an issue by a final judgment, it cannot be relitigated in later proceedings by parties or those in privity with them. *Allen v. McCurry.* The trustee could not use a later Rule 9019 motion to undo that premise indirectly.

There is also an independent defect. The January 12, 2023 state-court order was entered against Myers in violation of the automatic stay. The Florida bankruptcy court permitted claims against non-debtor parties to proceed, but preserved the stay as to Myers individually. An alter-ego ruling of the kind entered here was necessarily a ruling against Myers and was entered in violation of the stay and was void ab initio.

Finally, Appellees cannot salvage the order by relabeling it. If the July 3, 2025 order is treated as a sale or redemption of estate property, the trustee never invoked § 363(b). If it is treated as a settlement, the bankruptcy court still had to determine what estate interest existed to be compromised. It did neither. Rule 9019 could not be used as a procedural shortcut to do the work of § 363, and it could not be used to transform an unadjudicated, disputed third-party asset into transferable estate property by agreement.

The order on appeal should be vacated.

## ARGUMENT

### I. The bankruptcy court approved a transfer without determining whether the estate owned anything to transfer.

The fundamental defect in the order on appeal is simple. The bankruptcy court approved a Rule 9019 settlement transferring "whatever interest" the estate may have

5

in Serv Trust's Goldsboro property while expressly declining to determine whether the estate had any interest at all. Judge Ruark stated that the estate's interest could be "a hundred," "a one," or even "zero," and that she nonetheless did not need to determine what that interest was before approving the compromise. That is not a permissible use of Rule 9019.

Rule 9019 allows a court to approve a compromise or settlement; but it is not an adjudication on the merits. Rule 9019 certainly does not authorize the court to transfer property while refusing to determine whether the estate owns the property being transferred. The Rule presupposes that the court can make an informed, independent judgment about the thing being compromised. That is why *Smart World Techs., LLC v. Juno Online Servs., Inc.*, 423 F.3d 166 (2d Cir. 2005) requires a sufficient factual and legal basis for the court to evaluate the compromise, rather than blind deference to the trustee's business judgment. And where ownership is disputed, courts do not allow the trustee to assume estate ownership. In *Jasper Pellets*, the trustee correctly recognized that the disputed deposit would become property of the estate *only if* the adversary proceeding were litigated to conclusion. Here, however, Judge Ruark did the opposite: she expressly disclaimed any obligation to determine whether the estate possessed a transferable interest at all. That is not informed review. It is abdication.

The defect is especially clear because the order did not merely approve an abstract settlement of litigation risk. It authorized transfer of "all of the right, title and

interest of the Trustee, the Debtor and the bankruptcy estate" in the Goldsboro membership interest or related property. Once the order is understood that way, the problem becomes unavoidable: a court cannot authorize transfer of property while simultaneously refusing to determine whether the estate has anything to transfer.

Appellees' response does not solve that problem. It assumes it away. Appellees repeatedly refer to Serv Trust as an "adjudicated alter ego" and then treat that premise as dispositive. But the premise is the issue. The question on appeal is not whether the bankruptcy court generally has authority to approve Rule 9019 settlements. The question is whether it had authority to approve this Rule 9019 settlement, which purported to transfer an ostensible estate asset without first determining that the asset was in fact property of the estate.

That is also why the court's repeated insistence that it would not "substitute its judgment" for the trustee's was misplaced. Deference to the trustee may apply to the prudence of settling an estate claim. It does not apply to the threshold legal question whether the asserted property is property of the estate at all. On that point, the trustee does not hold the gavel. The court does. By refusing to decide whether the estate's interest was one hundred, one, or zero, while still deferring to the trustee's desire to monetize and transfer that interest, the court effectively allowed the trustee to define the scope of the estate. That was legal error.

Nor could the trustee and the King Parties cure the problem by agreement. Whether property is property of the estate is a legal determination governed by § 541.

7

Estate status cannot be created by stipulation. The parties could compromise a claim; they could not stipulate ostensible non-estate property into the estate and then ask the court to transfer it.

## II. The January 12, 2023 order was interlocutory, did not adjudicate estate ownership, and cannot supply the missing predicate.

Because the trustee's authority theory depends entirely on the January 12, 2023 Montgomery County order, that order has to do enormous work in Appellees' telling. But it cannot do that work.

First, it was interlocutory. Judge Lease's January 3 oral ruling made that unmistakable. He invoked the *Frow* doctrine, stated there could be "no final judgment today under any circumstance," and made clear that Myers himself was not then before the court for final adjudication. That alone is enough to defeat Appellees' attempt to use the January 12 order as a final, preclusive predicate for estate ownership. A ruling the state court itself recognized could not be final cannot be transformed, by repetition, into the final adjudication Appellees need.

Second, even on its face, the written order did not adjudicate that Serv Trust property became property of the estate. It said Serv Trust was Myers's alter ego and a disregarded entity. It did not adjudicate that the Goldsboro interest itself was property of the estate. It did not identify any specific Serv Trust asset as estate property. It did not authorize the trustee to administer or transfer all Serv Trust property as estate property.

8

The proposed-order history confirms the point. On January 4, 2023, counsel for the King Parties submitted a proposed order to Judge Lease. That proposed order expressly stated that Serv Trust "constitutes an asset of the bankruptcy estate" and that the trustee "is the owner of all the assets of Serv Trust." Judge Lease did not sign that language. The order actually entered omitted those provisions. That omission matters. If the state court intended to adjudicate estate ownership and trustee control, it would have said so. It did not.

The temporal problem reinforces the same point. The crucial petition-date language—"and as of November 18, 2015 was"—was **not** part of the oral ruling from the bench. It gratuitously appeared in the later written order prepared by the King Parties' counsel (Maurice VerStandig, Esq.). That phrase was essential to the trustee's later theory that Serv Trust's assets had always been estate property, but it was not part of any final oral adjudication by Judge Lease. It was advocacy embedded in a proposed order, then repurposed later as if it had adjudicative force. It is well settled that courts may not use retroactive rulings to create legal facts that did not exist at the relevant time. *Roman Catholic Archdiocese of San Juan v. Acevedo Feliciano*, 140 S. Ct. 696, 700 (2020) ("Nunc pro tunc orders are not some Orwellian vehicle for revisionist history—creating facts that never occurred.").

Appellees are therefore left with an interlocutory order that omitted explicit estate-property language, inserted petition-date relation-back language in a later draft,

and never finally adjudicated Myers's own status. That order cannot supply the missing predicate for the Rule 9019 transfer.

Finally, Appellees' suggestion that Appellant appealed from a final state-court order is incorrect. The January 12, 2023 ruling was interlocutory, and the consolidated Montgomery County action **remains pending and unresolved**. Because the case was consolidated for all purposes, unresolved Goldsboro-related claims remain in that action as well. The later stipulation dismissing the redemption count did not create finality and cannot be used retroactively to convert an interlocutory alter-ego ruling into a final adjudication of estate ownership. *Kiviti v. Bhatt*, 80 F.4th 520, 530 (4th Cir. 2023).

**III. The state court could not override the prior final bankruptcy judgment, and state-law alter-ego characterizations do not themselves determine estate property under § 541.**

The 2018 bankruptcy judgment entered in adversary case 17-00193 (Hon. Wendelin Lipp) recognized (i.e., the "following facts are relevant to the issues at hand and are either uncontroverted or are supported by the evidence in this case"): Serv Trust as a valid trust ("Serv Trust is a trust that was created by Myers' mother for the benefit of Myers' five children" ... "It is undisputed that Serv Trust was established to pay educational and other expenses related to Myers' children"), recognized Myers only as a co-trustee, and recognized that Serv Trust held the Goldsboro interest ("Serv Trust has a 50% interest in a Maryland limited liability company named 6789 Goldsboro LLC"). Judge Lipp also determined that Mr. Myers did **not** transfer any

estate assets or conceal any estate property with the intent to hinder, delay or defraud creditors of his estate. That judgment became final and was never reopened or reversed. It is the only final bankruptcy adjudication in the record that directly bears on the status of Serv Trust and the Goldsboro interest. And it cuts against Appellees.

Appellees' current theory also contradicts the position the trustee and his counsel previously took in this bankruptcy case. In the 2016 Offit Kurman adversary against Serv Trust, Mastro argued that Myers and Kelly lacked standing because they were not parties to that adversary, their rights were not affected by it, and the judgment was against Serv Trust, not Myers. Mastro further emphasized that Myers occupied two distinct legal roles: "on the one hand, he's a debtor in possession with a fiduciary duty to maximize the estate," while "on the other hand, he's the trustee of Serv Trust," where he had "an independent fiduciary duty to act in the best interest of the trust." That position treated Serv Trust as legally distinct from Myers and treated its rights and property interests as distinct from estate property unless and until a specific Bankruptcy Code mechanism altered them. Having obtained final relief on that premise, the trustee cannot now reverse course and treat Serv Trust as effectively indistinguishable from Myers whenever doing so helps pull Serv Trust's Goldsboro interest into the estate.

Judge Lease was expressly presented with that judgment. His response on January 3 confirms the problem. When Myers pointed him to Judge Lipp's findings that Serv Trust was established by Myers's mother for the benefit of Myers's five

11

children, Judge Lease acknowledged those findings and then rejected their implications, stating that, whatever the trust's original purpose, it had instead been used to defraud creditors, the bankruptcy court, and the trustee. That was not a narrow state-law procedural ruling. It was a merits determination directly contrary to the factual and legal framework established by the prior final bankruptcy judgment.

That matters for two separate reasons.

First, a state court cannot simply disregard a prior final federal bankruptcy judgment and replace it with a contrary factual theory. The January 12 order therefore cannot be treated as if it silently displaced the 2018 judgment.

Second, even if the state court could characterize a relationship under state law, that still would not answer the distinct federal question whether any resulting interest became property of the estate under § 541. That is where *Ogden* and *Bath Iron Works* matter. State law defines the underlying rights. Bankruptcy law determines whether those rights become property of the estate. Section 541 does not create or enlarge ownership; it captures only the debtor's actual interests. So even if Judge Lease's alter-ego ruling answered some state-law relationship question, the bankruptcy court still had an independent obligation to determine whether the Goldsboro interest became property of Myers's bankruptcy estate. It never did.

That independent duty also explains why Appellees' reliance on Maryland alter-ego rhetoric is ultimately beside the point. It does not matter what relationship the state court announced if the bankruptcy court never made the required estate-

12

property determination under federal law. Judge Ruark expressly refused to do so. That is why the state-court label cannot save the order on appeal.

**IV. The bankruptcy court bypassed the required adjudicative process; disputed third-party property could not be treated as estate property through motion practice or agreement.**

The Bankruptcy Rules already provide the process for resolving disputes over property. Where ownership is genuinely disputed, Rule 7001 requires an adversary proceeding. Courts do not allow motion practice to substitute for adjudication in that circumstance. That is the lesson of *Quinteros* and of the turnover line more generally: relief premised on estate ownership is improper where ownership itself is genuinely disputed.

The same principle appears in *Jasper Pellets*. There, the trustee did not assume that the disputed deposit was already estate property. To the contrary, the trustee recognized that the deposit would become property of the estate *only if* the adversary proceeding were litigated to conclusion. That is the proper sequence: adjudication first, administration second.

This case followed the opposite sequence. The trustee never filed an adversary establishing that the estate owned the Goldsboro interest, testifying at the June 30, 2025 hearing, "I cannot enter into an agreement binding non-estate property." Yet that is exactly what he did. He and the King Parties used a Rule 9019 motion to replace the adjudication that should have come first. The 2024 adversary did not cure that defect. It assumed the missing predicate. Indeed, Judge Ruark's own oral ruling

13

acknowledged that the settling parties were not asking her to determine that Serv Trust assets were property of the estate or that the trustee had authority to administer them. That statement is devastating to Appellees' theory. If the settling parties were not asking the court to determine those predicates, then the adversary did not cure the missing estate-property determination. It proceeded on the assumption that the trustee could settle "the bankruptcy estate's interest" in Goldsboro without first establishing what that interest was.

Mastro said the same thing in state court. He told Judge Dwyer that the proper bankruptcy path was "an adversary case to determine whether or not this is an asset of the bankruptcy estate or not." That admission is fatal to Appellees' current theory. It confirms that estate ownership was a threshold issue requiring adjudication, not assumption. It also confirms that trustee "knowledge" or "consent" did not eliminate the need for a proper adversary determination. If the Goldsboro interest had to be adjudicated as estate property in an adversary proceeding, then the trustee could not bypass that step and use Rule 9019 to transfer "whatever interest" the estate may have without first obtaining that determination.

The Goldsboro problem makes the same point from another angle. The relief sought required determining rights belonging to 6789 Goldsboro LLC, including whether Serv Trust's interest had been redeemed and who had authority to direct the company to act. But Goldsboro itself was not properly before the court for that relief. Neither the trustee, nor the King Parties, nor the bankruptcy court had authority to

14

direct Goldsboro to redeem Serv Trust's interest or treat that interest as redeemed without Goldsboro being joined and heard. The Rule 9019 order nonetheless purported to effectuate precisely that result. That is another reason the order exceeds anything Rule 9019 can properly do.

The King Parties' own prior filings highlight the procedural defect. VerStandig previously characterized the alter-ego issue as an affirmative defense to Serv Trust's claims while simultaneously pursuing a separate declaratory-judgment ruling on the same issue. Maryland law does not ordinarily allow a litigant to use declaratory judgment that way when the same issue is already pending in the same action between the same parties. That history reinforces the larger point: the January 12 order was not the product of a final adjudication of ownership through proper procedure. It was part of a procedural effort to obtain a ruling on one issue and then leverage that ruling elsewhere.

## V. The January 12, 2023 order was entered in violation of the stay and is void, and proceedings derived from it likewise cannot stand.

Even if the Court were to disagree with Appellant's principal arguments, the order on appeal still cannot stand because its predicate is void.

The Florida bankruptcy court's stay-relief order permitted claims against non-debtor parties to proceed but expressly preserved the stay as to Myers individually. A ruling that "Serv Trust is Myers's alter ego" was necessarily a ruling against Myers. It adjudicated Myers's legal relationship to Serv Trust, collapsed the distinction between

15

them, and imposed legal consequences on Myers by treating Serv Trust's separate existence as nonexistent. The January 3, 2023 trial confirms the point. The proceeding was not limited to the conduct or status of a non-debtor entity in isolation; it focused on alleged misconduct by Myers and culminated in a ruling that Serv Trust was really just Myers. That is a merits determination against the debtor, not merely against a non-debtor party.

The King Parties themselves previously acknowledged exactly that. In 2019, VerStandig argued that an alter-ego determination against Serv Trust would necessarily be a determination against Myers and would violate the automatic stay. They relied on *Queenie, Ltd. v. Nygard Int'l* for that proposition. They were right then. And if they were right then, the January 12, 2023 order was entered in violation of the stay.

Appellees cannot avoid that conclusion by saying no money judgment was entered against Myers personally or that Myers was "not present" or "not a live party" at trial. That only makes the problem worse. The state court made a merits determination about Myers while claims against him remained stayed and while Myers himself was supposedly outside the case. Substance controls, and the substance of the January 12 ruling was a determination against Myers.

Because the January 12 order was entered in violation of the stay, it was void ab initio. And the defect does not stop there. Proceedings, motions, and orders that depend on that void order as their legal predicate likewise cannot stand. The trustee's

later position—that the January 12 ruling converted Serv Trust's property into property of the estate—rested entirely on that order. The later adversary posture, the compromise motion, and the July 3, 2025 approval order were all derivative of the same void predicate. A void order cannot be used as the foundation for later relief. It is well-established that acts dependent upon a prior stay violation are themselves void: "Any subsequent actions dependent upon an act that violates the automatic stay themselves also violate the automatic stay and are void." *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 527 (2d Cir. 1994); *In re Vela*, 2009 Bankr. LEXIS 2179, *6-7 (Bankr. E.D.N.Y. 2009); *Rothenberg v. Ralph D. Kaiser Co. (In re Rothenberg)*, 173 B.R. 4, 13 (Bankr. D.D.C. 1994). Any subsequent actions that rely on, depend upon, or flow from the January 12, 2023 state court order—without bankruptcy stay relief—are derivative acts in violation of § 362(a)(3) and are likewise void ab initio.

## VI. The King adversary did not assert a valid bankruptcy claim against the estate and belonged, if anywhere, in state court.

Even if the King Parties had enough stake to file something, the 2024 adversary still did not assert a valid bankruptcy claim against Myers's Chapter 7 estate. Their proofs of claim state only an "[e]quitable and statutory claim, as set forth in Case No. 24-00007," yet the adversary complaint itself identifies no statutory cause of action at all. It is simply a complaint for declaratory relief filed "pursuant to" Rule 7003 and Rule 3. Rules of procedure do not create substantive claims.

The complaint's own allegations show the real dispute is a state-law dispute concerning the affairs of 6789 Goldsboro LLC and the operation of its Operating Agreement. The complaint says exactly that: "This action concerns the affairs of 6789 Goldsboro LLC," and it asks the court to declare that Serv Trust's Goldsboro interest was redeemed and that the Plaintiffs are entitled to have **6789 Goldsboro** redeem that interest. If that theory is correct, then the claim runs against Goldsboro and turns on rights under Goldsboro's operating agreement. It is not a bankruptcy claim against Myers's estate.

That is consistent with the settled rule that alter-ego claims seeking to bring third-party assets into the estate belong to the trustee, absent derivative standing or abandonment. See *Wilson v. Dollar General Corp.,* 717 F.3d 337 (4th Cir. 2013); *In re Charles Edwards Enterprises, Inc.,* 344 B .R. 788 (Bankr. N.D.W. Va. 2006). The King Parties' own statements in state court confirm that they did not own the alter-ego claim they later attempted to leverage in bankruptcy court. VerStandig told Judge Dwyer that, if alter ego were established, any marshaling of Serv Trust's assets "certainly falls on Mr. Schlossberg in the bankruptcy court," who would have to "take the discovery requisite to determine what those assets are, to levy upon them, to seize upon them, to liquidate them, and to proceed accordingly." He then made the point explicit: "My client would have no standing to do that," because "my client is not a creditor of the bankruptcy estate." He further admitted, "we're not trying to pierce a veil for purposes of recovering a monetary judgment," and acknowledged that "we've

18

got a bankruptcy court and a bankruptcy trustee cognizable of making these claims." Those admissions are fatal to Appellees' current position. They confirm that the King Parties did not own an alter-ego claim, were not creditors of the bankruptcy estate, and understood that any effort to marshal Serv Trust assets would require action by the trustee through proper bankruptcy process—not by private agreement, not by declaratory relabeling, and not by a Rule 9019 shortcut.

Nor could the bankruptcy court acquire authority over Goldsboro or its operating agreement by agreement of the trustee and the King Parties. The complaint itself admits that the case was brought in bankruptcy court only "[b]y agreement of the Plaintiffs and the Trustee, and consistent with" the Settlement Procedures Order. But agreement cannot create subject matter where the underlying controversy remains a non-core state-law dispute over Goldsboro's affairs and the alleged redemption of a membership interest.

The complaint is also contrary to the existing bankruptcy record. It alleges that Myers "was granted a subordinate, junior equity interest" in Goldsboro and placed that interest in Serv Trust's name. But Goldsboro's own filings in the bankruptcy case state that Serv Trust is a fifty percent owner of Goldsboro and that Myers was merely a co-trustee of Serv Trust. Goldsboro's proof of claim, filed under penalty of perjury, likewise treated Goldsboro as a creditor of Myers based on a guaranty obligation, not as an entity whose operating-agreement dispute had somehow become an "equitable and statutory claim" against the bankruptcy estate.

19

Myers's resignation as co-trustee of Serv Trustee on May 1, 2022 reinforces the same point. Whatever historical allegations Appellees wished to make, by the time of the January 3, 2023 trial Myers no longer held trustee office or any present authority to act for Serv Trust. Appellees therefore could not rely on any supposed current trustee authority or present control by Myers to justify immediate treatment of Serv Trust assets as estate property. Arguendo, even if Serv Trust assets were to be identified, marshaled, seized, or liquidated, that still required the trustee to proceed through proper adjudication and recovery process.

## VII. The Settlement Procedures Order Exceeded the Court's Authority and Could Not Recreate Jurisdiction Over a Remanded State-Court Controversy

The December 11, 2023 Settlement Procedures Order is independently defective. The trustee did not move to create a new procedural framework for recapturing a remanded state-court dispute; he filed a Rule 9019 motion in the main case. Yet that motion acknowledged that the remaining claim "became a claim against the Estate only as of January 12, 2023," that the state-court case had already been remanded, and that the trustee likely could not remove it back because removal would be untimely under Bankruptcy Rule 9027(a)(3). The trustee then admitted that, "[d]espite the apparent bar prohibiting removal of the existing King Case to this Court," he and the King Parties had attempted to "craft a creative solution to the above-described procedural conundrum." The court could not recapture by "creative

20

solution" a state-court controversy that had already been remanded and that the trustee admitted could not be timely removed back to bankruptcy court.

That "creative solution" was an attempt to accomplish indirectly what the trustee admitted could not be accomplished directly. It required dismissal without prejudice of the remaining redemption claim in state court, nunc pro tunc tolling back to September 14, 2017, and refiling of the same redemption claim as a new adversary proceeding in bankruptcy court within thirty days after approval. The trustee openly praised that result because, even absent settlement, "the Redemption Claim will be litigated in the Estate's preferred forum." The bankruptcy court embraced that strategy, expressly recasting the February 7 filing as a "Settlement Procedure Motion" that "seeks to establish a procedural mechanism for resolving litigation pending in state court." Rule 9019 authorizes approval of a compromise; it does not authorize a bankruptcy court to invent a bespoke procedural mechanism to reroute a remanded state-court property dispute into federal court.

That exceeded the court's authority.

First, the remand order had already sent the removed case back to the Circuit Court for Montgomery County pursuant to 28 U.S.C. § 1452(b), expressly based on the earlier abstention ruling and the dismissal of the bankruptcy-specific third-party complaint. The state-court case remained pending, consolidated, and unresolved. The trustee himself acknowledged it could not simply be removed back. The bankruptcy court therefore could not regain control over that same controversy by approving a

21

"creative solution" that required dismissal, tolling, and refiling in the estate's "preferred forum." That was not removal authorized by rule or statute; it was a workaround for untimely removal.

Second, a bankruptcy court cannot use an ad hoc procedures order to do what the Rules and statutes do not otherwise permit. The Bankruptcy Rules are promulgated under 28 U.S.C. § 2075, and they may not abridge, enlarge, or modify substantive rights. A court may not rewrite the governing procedural framework because it views the ordinary rules as inconvenient in a particular case. See *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010); *Badaracco v. Commissioner*, 464 U.S. 386, 398 (1984). Whatever flexibility Rule 9019 allows, it does not authorize the court to invent a hybrid procedure for tolling, dismissing, refiling, and creating a new claim-bar date where the trustee did not seek that relief and the Rules do not provide it.

Third, the court's own reasoning reveals the defect. It held that the trustee was "not seeking the approval of specific terms of a compromise," but instead was "seeking authorization to negotiate" and to establish a mechanism for future resolution of the redemption claim. That is not what Rule 9019 is for. Rule 9019 approves compromises; it does not authorize bankruptcy courts to create procedural systems for future litigation because the actual route back to federal court is untimely.

Finally, the Settlement Procedures Order confirms the larger defect in the proceedings below: the court repeatedly treated procedural improvisation as a

substitute for adjudication. Instead of requiring the trustee to establish that Serv Trust's Goldsboro interest was property of the estate, and instead of requiring the King Parties to proceed through the ordinary rules governing claims, adversary proceedings, timeliness, and proof-of-claim practice, the court fashioned a bespoke process to keep the controversy alive and reroute it back into bankruptcy court. That cannot be reconciled with § 2075, the Rules Enabling framework, or the limited role of Rule 9019.

The Settlement Procedures Order therefore did not solve the underlying problem. It compounded it. The bankruptcy court could not use a sua sponte procedural device to recapture a remanded and unresolved state-court controversy that the trustee himself admitted could not be removed back in the ordinary way.

## VIII. The Unresolved Disqualification Motion Further Undermines the Fairness and Reliability of the Proceedings

The proceedings below were further compromised by an unresolved conflict issue that the bankruptcy court never addressed. In the adversary, Myers moved to disqualify VerStandig, the VerStandig Law Firm, the trustee, and trustee's counsel based on VerStandig's prior representation of Myers, Serv Trust-related interests, and 6789 Goldsboro LLC in substantially related matters. Judge Ruark never ruled on that motion.

The disqualification papers were not speculative. They alleged that VerStandig had previously represented Myers, Serv Trust-related interests, and Goldsboro in

substantially related matters, including work on the amended Goldsboro operating agreement, and they included VerStandig's own email identifying Myers as "a longstanding firm client." The same papers also asserted that the King Parties were not creditors of Myers and had previously acknowledged they had no monetary or other claim against him. Judge Ruark's failure to resolve that motion is not the sole basis for reversal, but it further undermines confidence in proceedings already marked by procedural improvisation and an attempt to compromise third-party property rights without the ordinary adjudicative safeguards.

## IX. Rule 9019 could not be used to do the work of § 363(b), and the structure of the transaction confirms the error.

Appellees' attempt—raised for the first time in their response brief—to recast the July 3 order as one "approving the sale of property" only exposes the defect more clearly. The trustee never moved under § 363(b). He moved only under Rule 9019. Yet Appellees now defend the resulting order as if it were a sale order.

That is not a harmless relabeling. Rule 9019 is a procedural rule. It allows a court to approve a compromise or settlement. It does not itself authorize the sale or transfer of property. Section 363(b), by contrast, is the Code provision that authorizes a trustee to use, sell, or lease property of the estate outside the ordinary course. Congress also made clear in 28 U.S.C. § 2075 that the Bankruptcy Rules cannot abridge, enlarge, or modify substantive rights. Thus, Rule 9019 cannot be used to do

24

the work of § 363(b) when the transaction, in substance, is a targeted disposition of ostensible estate property.

Bankruptcy courts may not use procedural mechanisms to circumvent the Code's substantive requirements. *Jevik*. That is what happened here. The trustee did not proceed under § 363(b), did not invoke sale procedures, did not obtain any adjudication that the estate actually owned the Goldsboro interest, and yet still obtained an order that functioned as a selective transfer of that ostensible interest to the King Parties alone.

The order cannot be justified under either framework. If treated as a sale, § 363(b) was never invoked. If treated as a settlement, the court still had to determine what estate interest existed to be compromised. Judge Ruark did neither.

The transfer language is also temporally overbroad on its face. Although Myers remains the "debtor" after the petition date, the Bankruptcy Code does not equate all property later held by the debtor with property of the estate. By ordering transfer of "all of the right, title and interest of the Trustee, the Debtor and the bankruptcy estate," the July 3 Order failed to distinguish between any pre-petition estate interest and any post-petition interest Myers may have held personally. Unless the court identified a specific statutory basis for treating any post-petition Myers interest as property of the estate, the order's reference to "the Debtor" improperly sweeps debtor-held post-petition interests into the transfer. In that respect as well, the order purports

25

to transfer more than the estate could possibly have owned absent a specific adjudication.

The July 3 Order is also defective for a separate due-process reason. It purported to transfer "all of the right, title and interest of the Trustee, the Debtor and the bankruptcy estate" in the Goldsboro membership interest or related property. To the extent that language reached interests Myers held personally, as opposed to interests belonging to the estate, those interests could not be adjudicated or transferred without notice and an opportunity to be heard directed to Myers in that capacity. Due process requires notice reasonably calculated to apprise interested parties of the pendency of the action and afford them an opportunity to present objections, *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950). Here, however, the court never identified what non-estate interests of "the Debtor" it was reaching, never identified a statutory basis for transferring any such interests, and nevertheless entered an order purporting to transfer them. That is another reason the July 3 Order cannot stand.

## X. The Compromise Was Never Properly Fixed, and the Order Itself Became the Transfer Instrument

The order should also be vacated for an independent reason. The record does not reflect the introduction of an executed settlement agreement, no witness testified that a written agreement had been executed, and the order itself reflects that an

additional term—the withdrawal of the King Parties' proofs of claim—was added during the hearing.

The same informality appears at the close of the July 1 oral ruling itself. After the court announced, "That is the ruling of the Court," the trustee immediately asked to expand the ruling to provide that the King Parties' obligation to bear appeal-related expense would include proceedings on motions for reconsideration. The court responded, "You may," and trustee's counsel then drafted the order accordingly. That exchange underscores that the operative terms were still being modified from the podium after the court had already announced its ruling. In that posture, the order cannot be treated as the mere ministerial memorialization of a fixed, executed settlement agreement.

The written order also goes beyond the oral ruling in a more basic way. It states that the compromise "is described in the Rule 9019 Motion and ... was clarified and affirmed by the Trustee and the King Parties at the evidentiary hearing on June 30, 2025 and July 1, 2025." But the court did not make that finding from the bench. It did not orally rule that the settlement had been fully "clarified and affirmed" at the hearing, and no executed written agreement fixing the final terms was introduced into evidence. That matters because the written order does not merely memorialize the oral ruling; it supplies an additional predicate for approval that the court itself did not expressly announce. In that respect as well, the order exceeds the oral ruling it purports to implement.

27

Equitable mootness cannot rescue this order. The bankruptcy court never determined that the Serv Trust/Goldsboro interests at issue were property of the estate. Without that antecedent determination, the court had no authority to approve their transfer through Rule 9019. Appellate mootness doctrine cannot create estate property, cannot expand the court's power over non-estate property, and cannot validate an order that purported to affect rights in Serv Trust and 6789 Goldsboro LLC without the required predicate adjudication.

## CONCLUSION

The bankruptcy court approved a transfer of "all right, title, and interest" while refusing to determine whether the estate owned anything at all. No final judgment ever established that Serv Trust property was property of the estate. The January 12, 2023 state-court order was interlocutory, omitted the very estate-ownership language Appellees now wish it had contained, and was entered in violation of the stay in any event. The only final bankruptcy judgment in the record points the other way. The trustee then bypassed the required adjudicative process and used Rule 9019 to obtain what functioned as a selective transfer of an ostensible estate asset without proceeding under § 363(b).

That reverses the structure of the Bankruptcy Code.

The July 3, 2025 order should be vacated.

Dated: March 25, 2026

Respectfully submitted,
/s/ Gregory B. Myers

28

Gregory B. Myers, *pro se*
700 Gulf Shore Blvd. N.
Naples, Florida 34102
(301) 325-2312
*gregbmyers@verizon.net*

## CERTIFICATE OF COMPLIANCE

1.      This document complies with Fed. R. Bankr. P. 8015(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. Bankr. P. 8015(g), this document contains 6,489 words.

2.      This document complies with the typeface requirements of Fed. R. Bankr. P. 8015(a)(5) and the type-style requirements of Fed. R. Bankr. P. 8015(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

/s/ Gregory B. Myers
Gregory B. Myers, *pro se*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 25, 2026, I caused the foregoing to be filed

with the Clerk of Court thereby serving all registered users in this case.


/s/ Gregory B. Myers
Gregory B. Myers, *pro se*