# EXHIBIT 9A

**December 27, 2018 Order on the King Parties' Motion to Dismiss**

Serv Trust's First Amended Counterclaim

## IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

BRIAN KING, et al.,                    )
                                        )
            Plaintiffs,                )
                                        )
                                        )        Case No. 436977V
v.                                      )        Judge Albright
                                        )
SERV TRUST, et al.,                     )
                                        )
                                        )        **ENTERED**
            Defendants.                 )
                                        )        DEC 27 2018
                                        )
                                                 Clerk of the Circuit Court
                                                 Montgomery County, Md.

## ORDER

For the reasons stated in open court on December 18, 2018, it is this 21st day of

December, 2018, the Circuit Court for Montgomery County, Maryland, hereby

**ORDERED**, that Defendants' Motion to Dismiss, or, in the alternative, Motion to Stay

Declaratory Judgment Action (Dkt #71) is **DENIED**; and it is further

**ORDERED**, that Counter-Defendants' Motion to Dismiss First Amended Counter-

Complaint (Dkt #63) shall be **GRANTED in part and DENIED in part**; and it is further

**ORDERED**, that to the extent Counter-Defendants' Motion to Dismiss First Amended

Counter-Complaint (Dkt #63) seeks dismissal of Counts I, II, VI, and VII of the First Amended

Counter-Complaint (Dkt #57), Counter-Defendants' Motion shall be **DENIED**; and it is further

**ORDERED**, to the extent Counter-Defendants' Motion to Dismiss First Amended

Counter-Complaint (Dkt #63) seeks dismissal of Counts III, IV, and V of the First Amended

Counter-Complaint (Dkt #57), Counter-Defendants' Motion shall be **GRANTED**; and it is

further

**ORDERED,** that Count III and IV of the First Amended Counter-Complaint (Dkt #57)

shall be **DISMISSED WITHOUT PREJUDICE,** and Counter-Plaintiff shall have leave to

amend the First Amended Counter-Complaint (Dkt #57) with respect to Counts III and IV by

close of business on Friday, January 11, 2019; and it is further

**ORDERED,** that Count V of the First Amended Counter-Complaint (Dkt #57) shall be

**DISMISSED WITH PREJUDICE.**

The Honorable Anne K. Albright
Judge
Circuit Court for Montgomery County,
Maryland

**ENTERED**

DEC 27 2018

Clerk of the Circuit Court
Montgomery County, Md.

# EXHIBIT 9B

## Serv Trust Second Amended Counterclaim

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

| | | |
|---|---|---|
| **BRIAN KING, et al.** | : | |
| Plaintiffs/Counter-Defendants, | : | |
| v. | : | **Case No.: 436977-V** |
| **SERV TRUST** | : | |
| Defendant/Counter-Plaintiff. | : | |

## SECOND AMENDED COUNTERCLAIM

COMES NOW Defendant Serv Trust (hereinafter "Serv Trust" and/or "Defendant/Counter-Plaintiff"), by and through their attorneys, Dominic J. Souza, Esquire, Stephen Kontson, Esquire and Souza LLC and files this Second Amended Counterclaim against Plaintiffs/Counter-Defendants Brian King, Cristina King, and the Cristina and Brian King Children's Trust (collectively the "Counter-Defendants"), and alleges:

## PARTIES & JURISDICTION

1.      Serv Trust is a trust formed in Maryland and whose address for service is Serv Trust c/o Dominic J. Souza, Esquire 2543 Housley Road Annapolis, MD 21401.

2.      Upon information and belief, Plaintiff/Counter-Defendant Brian King (hereinafter referred to as "Mr. King") is an individual residing in the State of Florida with an address for service of Mr. King c/o The Verstandig Law Firm, LLC 9812 Falls Road, #114-160, Potomac, Maryland 20854.

3.      Upon information and belief, Plaintiff/Counter-Defendant Cristina King (hereinafter referred to as "Ms. King" or "Counter-Defendant") is an individual residing in the State of Florida with an address for service of Ms. King c/o The Verstandig Law Firm, LLC 9812 Falls Road, #114-160, Potomac, Maryland 20854.

Souza LLC

2543 Housley Rd.

Annapolis, MD 21401

(410) 571-8366

1

4.      Upon information and belief, Plaintiff/Counter-Defendant the Brian and Cristina King Children's Trust (hereinafter referred to as the "King Trust" or "Counter-Defendant") is a Maryland Trust formed pursuant to the laws of Maryland, with an address for service of the King Trust c/o The Verstandig Law Firm, LLC 9812 Falls Road, #114-160, Potomac, Maryland 20854. (the King Trust, Mr. King, and Ms. King may collectively be referred to as the "King Parties" or "Counter-Defendants").

5.      Jurisdiction and venue is proper before the Circuit Court for Montgomery County, Maryland.

## STATEMENT OF FACTS

6.      6789 Goldsboro LLC ("6789 Goldsboro" or the "Company") was formed as a Maryland limited liability company on or around January 12, 2012 with the filing of the Company's Articles of Organization.  Serv Trust, as the sole "Member," entered into an Operating Agreement for the Company as of January 11, 2012.

7.      The King Parties and Serv Trust subsequently entered into and executed a First Amended and Restated Operating Agreement effective July 18, 2013. The First Amended and Restated Operating Agreement was thereafter amended twice: *first*, by virtue of that certain First Amendment to First Amended and Restated Operating Agreement dated February 25, 2014; and *second*, by virtue of that certain Second Amendment to First Amended and Restated Operating Agreement dated May 18, 2015 (the operating agreement for the Company, as amended, shall hereinafter be referred to as the "Operating Agreement").

8.      The "Purpose" of the Company as defined in the Operating Agreement is to "purchase, acquire, buy, own, trade in, hold, develop, lease, manage, entitle, subdivide, sell, and otherwise deal in and with the real property and improvements thereon known as 6789 Goldsboro Road, Bethesda, Maryland 20817 (the 'Property') and to do any and all things necessary, convenient, or incidental to that purpose."

Souza LLC

2543 Housley Rd.

Annapolis, MD 21401

(410) 571-8366

2

9. The King Parties are the Class A Members of the Company (the "Class A Members"), holding a combined total of fifty (50) percent of the "Membership Rights" in the Company as defined in the Operating Agreement.

10. Serv Trust is the sole Class B Member of the Company (the "Class B Member"), holding a total of fifty (50) percent of the "Membership Rights" in the Company as defined in the Operating Agreement.

11. The Operating Agreement reflects that the Class A Members collectively made "Initial Capital Contributions" to the Company of One Million Seven Hundred Eighty-Five Thousand Dollars ($1,785,000), and the Class B Member made "Initial Capital Contributions" to the Company of Three Hundred Six Thousand One Hundred Ninety Two Dollars ($306,192).

12. On July 18, 2013, the Company purchased the Property and thereafter began the process of developing the Property.

13. Pursuant to the terms of the Operating Agreement, Gregory B. Myers ("Mr. Myers"), a trustee of Serv Trust, was appointed to serve as the "Manager" of the Company. During his tenure as the Manager of the Company, among other efforts, Mr. Myers exercised commercially reasonable and good faith efforts to obtain permits and approvals for the Property including, without limitation, permits and approvals from the Maryland Department of the Environment and the U.S. Army Corps of Engineers to permit the development of a 19 townhouse cluster project known as "Goldsboro Place," and which permits and approvals were acquired prior to his removal as Manager of the Company by the Class A Members on January 24, 2017.

14. On August 31, 2016, Mr. Myers, along with Counter-Defendant Mr. King and other members of the professional development team for the Goldsboro Place project, met with planning staff for the Maryland National Capital Park & Planning Commission (the "Planning Staff"), and based on that meeting, Mr. Myers, Mr. King, and the other members of

3

the professional development team for the Goldsboro Place project formed the belief that the Planning Staff would support the approval of a 19 townhouse cluster project known as Goldsboro Place.

15.    Following the August 31, 2016 meeting with Planning Staff, and with the benefit of the belief that the Planning Staff would support the approval of a 19 townhouse cluster project known as Goldsboro Place, the Class A Members offered to purchase the Class B Member's Membership Rights in the Company.

16.    On September 7, 2016, Mr. King sent an email to Mr. Myers in his capacity as trustee of Serv Trust, attaching an offer in the form of a "Memorandum of Understanding" (the "Agreement") executed by all of the Class A Members of the Company, by which the Class A Members would purchase the Class B Member's "Membership Rights and Interest" in the Company for a "Purchase Price" of Two Million Dollars ($2,000,000.00). The September 7, 2016 email states:

> I wanted to extend an offer to Serv Trust to purchase the Class B member interest in 6789 Goldsboro LLC. We have previously discussed the Class A members making an offer to purchase the interest of the Class B member and I feel this is an appropriate time. The attached offer accounts for the current and future carrying cost of the property plus a small discount for risk associated with the property which is still not entitled. This purchase can happen quickly so Serv Trust can have liquidity within 30 days. If you would like to further discuss the purchase of Class A interest please don't hesitate to contact me.

17.    The Agreement states, "[t]he parties hereto agree that the Property has not been fully entitled as of the date of this Agreement."

18.    The Agreement states, "[t]his Agreement must be executed by September 12, 2016 or this Agreement shall be null and void." The Agreement was executed by Mr. Myers and Daniel J. Ring ("Mr. Ring") as trustees of Serv Trust, in the presence of each other, on September 12, 2016. The Agreement was also executed by Mr. Myers as "Manager" of the Company, in the presence of Mr. Ring, on September 12, 2016.

Souza LLC

2543 Housley Rd.

Annapolis, MD 21401

(410) 571-8366

4

19.    The Agreement states, "[t]his Agreement is intended to be a legally binding document."

20.    On September 12, 2016, Mr. Myers mailed a copy of the fully executed Agreement to Brian King by first class U.S. Mail, postage prepaid, to his address at 3925 Beech Avenue, Baltimore, Maryland 21211.

21.    At all times from and after Serv Trust's execution of the Agreement including the present day, Serv Trust has been and remains ready, willing, and able to consummate the purchase/sale of the Class B Member's Membership Rights and Interest in the Company for a Purchase Price of Two Million Dollars ($2,000,000.00) in accordance with the legally binding Agreement.    Despite the foregoing, the Class A Members have failed to close on the purchase/sale of the Class B Member's Membership Rights and Interest in the Company for a Purchase Price of Two Million Dollars ($2,000,000.00) in accordance with the legally binding Agreement.

22.    On or about December 20, 2016 - after the execution of the Agreement by the Class A Members and the Class B Member - the King Parties and Serv Trust learned that the Planning Staff would not support the approval of 19 townhouse units at the Goldsboro Place project, but would support a lesser, undetermined number of townhouse units at the Goldsboro Place project.

23.    Upon information and belief, there have been no development activities conducted for the benefit of the Property or the Company since the Class A Members removed Mr. Myers as the Manager of the Company on January 24, 2017, and appointed Brian King, a Class A Member and a Counter-Defendant, as the "new Manager" of the Company on January 24, 2017.

24.    Upon information and belief, through his deliberate actions, inactions, and/or omissions, Mr. King has attempted and continues to attempt to keep the value of the Property

Souza LLC

2543 Housley Rd.

Annapolis, MD 21401

(410) 571-8366

5

artificially low since the Class A Members appointed Mr. King as the new Manager of the Company on January 24, 2017.

25.     Upon information and belief, the total of the ostensible capital contributions claimed to have been made by the Class A Members for the benefit of the Company were not, in fact, capital contributions as claimed by the Class A Members.

26.     Upon information and belief, at least some of the funds made available to the Company by the Class A Members, which funds the Class A Members claim are capital contributions, are, in fact, actually loans to the Company.

27.     The Operating Agreement provides that any "Member" may make loans to the Company, but that the amount of any such loans "shall not be an increase in the Member's Capital Contribution."

28.     Upon information and belief, one or more of the Class A Members have caused the Company to receive loans from one or more of the Class A Members, the total of which loans from the Class A Members, in the aggregate, violates the terms of the Operating Agreement, as amended.

## COUNT I
(Breach of Contract as to Counter-Defendants)

29.     The Counter-Plaintiff, Serv Trust, realleges, reavers and incorporates herein the allegations contained in Paragraphs 1 through 28 set forth above.

30.     Serv Trust and the Class A Members entered into the Agreement, which by its terms is intended to be a legally binding document, and is a legally enforceable contract.

31.     The Class A Members have materially breached the Agreement by failing to close on the purchase of the Class B Member's Membership Rights and Interest in the Company for a Purchase Price of Two Million Dollars ($2,000,000.00) in accordance with the Agreement.

Souza LLC

2543 Housley Rd.

Annapolis, MD 21401

(410) 571-8366

6

32.     As a direct result of the aforementioned breach, Serv Trust has incurred, and will continue to incur, substantial and material damages.

**WHEREFORE**, the Counter-Plaintiff, Serv Trust, requests that this Honorable Court enter a judgment in its favor and against Counter-Defendants in an amount to be determined at trial but in any event in excess of $75,000.00, plus post-judgment interest, costs, and reasonable attorneys' fees and for such other and further relief as this honorable Court deems appropriate.

## COUNT II
(Specific Performance as to Counter-Defendants-Pled in the Alternative to Count I)

33.     The Counter-Plaintiff, Serv Trust, realleges, reavers and incorporates herein the allegations contained in Paragraphs 1 through 32 set forth above.

34.     Serv Trust and the Class A Members entered into the Agreement, which by its terms is intended to be a legally binding document, and is a legally enforceable contract.

35.     The Agreement clearly and definitely required the Class A Members to purchase the Class B Member's Membership Rights and Interest in the Company for a Purchase Price of Two Million Dollars ($2,000,000.00) in accordance with the Agreement.

36.     At all times relevant hereto, Serv Trust has been and remains ready, willing, and able to consummate the purchase/sale of the Class B Member's Membership Rights and Interest in the Company for a Purchase Price of Two Million Dollars ($2,000,000.00) in accordance with the Agreement.

37.     The Class A Members have refused to consummate the purchase/sale of the Class B Member's Membership Rights and Interest in the Company for a Purchase Price of Two Million Dollars ($2,000,000.00) in accordance with the Agreement, and the Class A Members have materially breached the Agreement by failing to close on the purchase/sale of the Class B Member's Membership Rights and Interest in the Company for a Purchase Price of Two Million Dollars ($2,000,000.00) in accordance with the Agreement.

Souza LLC

2543 Housley Rd.

Annapolis, MD 21401

(410) 571-8366

7

38.     Serv Trust has no adequate remedy at law.

**WHEREFORE**, the Counter-Plaintiff, Serv Trust, requests that this Honorable Court enter an Order mandating that the Agreement be specifically enforced, and that the Counter-Defendants be ordered to close on the purchase of the Class B Member's Membership Rights and Interest in the Company for a Purchase Price of Two Million Dollars ($2,000,000.00) in accordance with the Agreement, and for such further relief as this Court deems appropriate.

## COUNT III
### (Intentional Misrepresentation as to Counter-Defendants and Demand for Punitive Damages)

39.     The Counter-Plaintiff, Serv Trust, realleges, reavers and incorporates herein the allegations contained in Paragraphs 1 through 38 set forth above.

40.     The Class A Members falsely represented to Serv Trust that they would purchase the Class B Member's Membership Rights and Interest in the Company for a Purchase Price of Two Million Dollars ($2,000,000.00) in accordance with the Agreement within 30 days, and intentionally misrepresented the potential value of the Agreement to Serv Trust as a 50% owner of the Company, which constituted an intentional misrepresentationof a material fact.

41.     Such misrepresentations included, without limitation, Counter-Defendant Brian King's statement in his September 7, 2016 email cited above that "The attached offer accounts for the current and future carrying cost of the property plus a small discount for risk associated with the property which is still not entitled. This purchase can happen quickly so Serv Trust can have liquidity within 30 days."

42.     The aforementioned statement was intended by Counter-Defendant Brian King to deceive Serv Trust into believing that the value of the Agreement accurately reflected the value of the underlying Property (which was then and is now worth well in excess of the value claimed by Counter-Defendant Brian King), and constituted an affirmative misrepresentation concerning the Property and Serv Trust's interest in the Company.

Souza LLC

2543 Housley Rd.

Annapolis, MD 21401

(410) 571-8366

8

43.     Additionally, Counter-Defendant Brian King's statement that "This purchase can happen quickly so Serv Trust can have liquidity within 30 days" was materially false and intended to deceive Serv Trust into entering into the Agreement on the basis that it would receive the purchase proceeds within 30 days. As noted above, no such proceeds were ever paid to Serv Trust despite Serv Trust entering into the Agreement.

44.     The Class A Members knew their representations were false, or they were made with such reckless disregard for the truth that knowledge of their falsity can be imputed to the Class A Members when they were made.

45.     The Class A Members' intentional misrepresentations were made for the purpose of defrauding Serv Trust and with the intention that Serv Trust rely upon them and enter into the Agreement based on the Class A Members' intentional misrepresentations, which Serv Trust justifiably did.

46.     Serv Trust has suffered material damages as a direct result of its justifiable reliance upon the aforementioned misrepresentations by the Class A Members which include, without limitation, Serv Trust forgoing its ability to realize the full value of its interest in the Company by entering into the Agreement based on the Class A Members' above-described intentional misrepresentations. **WHEREFORE**, the Counter-Plaintiff, Serv Trust, requests that this Honorable Court enter a judgment in its favor and against Counter-Defendants in an amount to be determined at trial but in any event in excess of $75,000.00 in compensatory and punitive damages, plus post-judgment interest, costs, and reasonable attorney's fees and for such other relief as this honorable Court deems appropriate.

Souza LLC

2543 Housley Rd.

Annapolis, MD 21401

(410) 571-8366

## COUNT IV
(Negligent Misrepresentation as to Counter-Defendants-Pled in the Alternative to Count III)

47.     The Counter-Plaintiff, Serv Trust, realleges, reavers and incorporates herein the allegations contained in Paragraphs 1 through 46 set forth above.

9

48. The Class A Members negligently represented to Serv Trust that they would purchase the Class B Member's Membership Rights and Interest in the Company for a Purchase Price of Two Million Dollars ($2,000,000.00) in accordance with the Agreement within 30 days, and falsely represented the potential value of the Agreement to Serv Trust as a 50% owner of the Company.

49. Such misrepresentations included, without limitation, Counter-Defendant Brian King's statement in his September 7, 2016 email cited above that "The attached offer accounts for the current and future carrying cost of the property plus a small discount for risk associated with the property which is still not entitled. This purchase can happen quickly so Serv Trust can have liquidity within 30 days."

50. The aforementioned statement was intended by Counter-Defendant Brian King to deceive Serv Trust into believing that the value of the Agreement accurately reflected the value of the underlying Property (which was then and is now worth well in excess of the value claimed by Counter-Defendant Brian King), and constituted an affirmative misrepresentation concerning the Property and Serv Trust's interest in the Company.

51. Additionally, Counter-Defendant Brian King's statement that "This purchase can happen quickly so Serv Trust can have liquidity within 30 days" was materially false and intended to deceive Serv Trust into entering into the Agreement on the basis that it would receive the purchase proceeds within 30 days. As noted above, no such proceeds were ever paid to Serv Trust despite Serv Trust entering into the Agreement.

52. The Class A Members owed a duty of care to Serv Trust to transmit accurate and truthful representations concerning the Company, Serv Trust's interests therein and the Agreement.

53. The above-described misrepresentations made by the Class A Members concerning the Company and the Agreement were false and the falsity of those representations was readily available to the Class A Members.

Souza LLC

2543 Housley Rd.

Annapolis, MD 21401

(410) 571-8366

10

54.    The Class A Members were negligent in their assertion of these false representations and in so doing breached their duty of care to Serv Trust.

55.    The false representations were made with the intention of having Serv Trust rely upon them and enter into the Agreement based on the Class A Members' misrepresentations, which Serv Trust justifiably did.

56.    The Class A Members knew that Serv Trust would rely on those misrepresentations and that, if erroneous, Serv Trust's reliance on those misrepresentations would cause material damage to Serv Trust.

57.    As a proximate cause of the Class A Members' negligent misrepresentations, Serv Trust has incurred material damages which include, without limitation, Serv Trust forgoing its ability to realize the full value of its interest in the Company by entering into the Agreement based on the Class A Members' above-described misrepresentations.

**WHEREFORE**, the Counter-Plaintiff, Serv Trust, requests that this Honorable Court enter a judgment in its favor and against Counter-Defendants in an amount to be determined at trial but in any event in excess of $75,000.00, plus post-judgment interest, costs, and reasonable attorney's fees and for such other relief as this honorable Court deems appropriate.

## COUNT V
### (Constructive Fraud as to Counter-Defendant Brian King and Demand for Punitive Damages)

58.    The Counter-Plaintiff, Serv Trust, realleges, reavers and incorporates herein the allegations contained in Paragraphs 1 through 57 set forth above.

59.    On or around January 24, 2017, the Class A Members appointed Counter-Defendant Brian King as the new Manager of the Company whose duties pursuant to the Operating Agreement and applicable law included, without limitation, using commercially reasonable and good faith efforts to develop the Property, ensure that the Property is properly maintained, acting with the care that an ordinarily prudent person in a like position would use

Souza LLC

2543 Housley Rd.

Annapolis, MD 21401

(410) 571-8366

11

under similar circumstances, and otherwise acting in good faith and in the best interests of the Company and its Members.

60.     Mr. King, in his capacity as the Manager of the Company, owes fiduciary duties to Serv Trust as the Class B Member with a 50% ownership interest in the Company whose interests are directly impacted by the actions, inactions, and/or omissions of Mr. King as the Manager of the Company.

61.     Upon information and belief, there have been no development activities conducted for the benefit of the Property or the Company since the Class A Members appointed Mr. King as the new Manager of the Company on January 24, 2017.

62.     Upon information and belief, through his deliberate actions, inactions, and/or omissions, Mr. King has attempted and continues to attempt to keep the value of the Property artificially low since the Class A Members appointed Mr. King as the new Manager of the Company on January 24, 2017.

63.     Upon information and belief, the aforementioned actions, inactions, and/or omissions of Mr. King were intended to benefit Mr. King and the other Class A Members to the detriment of Serv Trust as the sole Class B Member by, including without limitation, keeping the value of the Property artificially low in an attempt to trigger the membership redemption procedure in the Operating Agreement.

64.     In failing to pursue any development of the Property, deliberately engaging in actions, inactions, and/or omissions intended to keep the value of the Property artificially low, and otherwise failing to act in the best interests of the Company and its Members, Mr. King has failed to act with the care an ordinarily prudent person in a like position would use under the same or similar circumstances, and has breached his legal and equitable duties owed to Serv Trust including, without limitation, the duties of care, loyalty and independence.

65.     Mr. King breached his legal and equitable duties intentionally, with actual malice, and/or with reckless disregard for Serv Trust's ownership interest in the Company and

Souza LLC

2543 Housley Rd.

Annapolis, MD 21401

(410) 571-8366

12

derivative interest in the Property. In doing so, Mr. King acted willfully and contrary to the best interests of Serv Trust and the Company.

66.    As a direct and proximate cause of Mr. King's breach of his legal and equitable duties, Serv Trust has incurred harm and material damages, and will continue to incur harm and material damages.

**WHEREFORE**, the Counter-Plaintiff, Serv Trust, hereby demands compensatory damages and punitive damages and requests that this Honorable Court enter a judgment in its favor and against Counter-Defendant Brian King in an amount to be determined at trial but in any event in excess of $75,000.00 in compensatory damages and punitive damages, plus post-judgment interest, costs, and reasonable attorney's fees and for such other relief as this honorable Court deems appropriate.

## COUNT VI
### (Negligence as to Counter-Defendant Brian King)

67.    The Counter-Plaintiff, Serv Trust, realleges, reavers and incorporates herein the allegations contained in Paragraphs 1 through 66 set forth above.

68.    On or around January 24, 2017, the Class A Members appointed Counter-Defendant Brian King as the new Manager of the Company whose duties pursuant to the Operating Agreement and applicable law included, without limitation, using commercially reasonable and good faith efforts to develop the Property, ensure that the Property is properly maintained, acting with the care that an ordinarily prudent person in a like position would use under similar circumstances, and otherwise acting in good faith and in the best interests of the Company and its Members.

69.    Mr. King, in his capacity as the Manager of the Company, owes fiduciary duties to Serv Trust as the Class B Member with a 50% ownership interest in the Company whose interests are directly impacted by the actions, inactions, and/or omissions of Mr. King

Souza LLC

2543 Housley Rd.

Annapolis, MD 21401

(410) 571-8366

13

as Manager of the Company including, without limitation, the duty to act with the care that an ordinarily prudent person in a like position would use under same or similar circumstances.

70.     Upon information and belief, there have been no development activities conducted for the benefit of the Property or the Company since the Class A Members appointed Mr. King as the new Manager of the Company on January 24, 2017.

71.     Upon information and belief, through his deliberate actions, inactions, and/or omissions, Mr. King has attempted and continues to attempt to keep the value of the Property artificially low since the Class A Members appointed Mr. King as the new Manager of the Company on January 24, 2017.

72.     Upon information and belief, the aforementioned actions, inactions, and/or omissions of Mr. King were intended to benefit Mr. King and the other Class A Members to the detriment of Serv Trust as the sole Class B Member by, including without limitation, keeping the value of the Property artificially low in an attempt to trigger the membership redemption procedure in the Operating Agreement.

73.     In failing to pursue any development of the Property, deliberately engaging in actions, inactions, and/or omissions intended to keep the value of the Property artificially low, and otherwise failing to act in the best interests of the Company and its Members, Mr. King has failed to act with the care an ordinarily prudent person in a like position would use under the same or similar circumstances and has otherwise breached his duties owed to Serv Trust.

74.     Mr. King breached his duties intentionally, with actual malice, and/or with reckless disregard for Serv Trust's ownership interest in the Company and derivative interest in the Property. In doing so, Mr. King acted willfully and contrary to the best interests of Serv Trust and the Company.

Souza LLC

2543 Housley Rd.

Annapolis, MD 21401

(410) 571-8366

14

75.    As a direct and proximate cause of Mr. King's breach of his duties, Serv Trust has incurred harm and material damages, and will continue to incur harm and material damages.

**WHEREFORE**, the Counter-Plaintiff, Serv Trust, requests that this Honorable Court enter a judgment in its favor and against Counter-Defendant Brian King in an amount to be determined at trial but in any event in excess of $75,000.00, plus post-judgment interest, costs, and reasonable attorney's fees and for such other relief as this honorable Court deems appropriate.

Respectfully submitted,

**SOUZA, LLC**
2543 Housley Road
Annapolis, Maryland 21401
(410) 571-8366

By: _____
Dominic J. Souza, Esquire
*Counsel for Defendant/Counter-Plaintiff*
*Serv Trust*

Souza LLC

2543 Housley Rd.

Annapolis, MD 21401

(410) 571-8366

15

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

BRIAN KING, et al.                              :

    Plaintiffs/Counter-Defendants,          :

    v.                                      :    **Case No.:  436977-V**

**SERV TRUST**                                  :

    Defendant/Counter-Plaintiff.            :

---

## CERTIFICATE OF SERVICE

---

**I HEREBY CERTIFY** that on this _9th_ day of January, 2019, I did forward a copy of the foregoing First Amended Counterclaim via United States, First-Class Mail, postage pre-paid, to:

    Frances Wilburn, Esq.
    Offit Kurman, P.A.
    4800 Montgomery Ln Ste 900
    Bethesda MD 20814
    *Counsel for 6789 Goldsboro LLC*

    Maurice B. VerStandig, Esq.
    9812 Falls Road, #114-160
    Potomac, Maryland 20854
    Phone:  301-444-4600
    Facsimile:  301-576-6885
    E-mail:  mac@mbvesq.com
    *Counsel for Plaintiffs / Counter-Defendants Brian King, Cristina King, and the*
    *Cristina and Brian King Children's Trust*

                                 Dominic J. Souza, Esquire

**Souza LLC**

**2543 Housley Rd.**

**Annapolis, MD 21401**

**(410) 571-8366**

16

# EXHIBIT 9C

**King Parties' Motion to Dismiss Serv Trust's Second Amended Counterclaim**

## IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

BRIAN KING, *et al.*                           :

    Plaintiffs,                          :

                            Case No. 436977-V

    v.                                  :

SERV TRUST, *a Maryland Statutory Trust*       :

    Defendant.                          :

### MOTION TO DISMISS SECOND AMENDED
### COUNTERCLAIM AND REQUEST FOR HEARING

Come now Brian King ("Mr. King"), Cristina King ("Mrs. King"), and Brian King in his

capacity as trustee of the Cristina and Brian King Children's Trust (the "Trustee of the

Children's Trust," with the trust itself being known as the "Children's Trust") (Mr. King, Mrs.

King, and the Trustee of the Children's Trust collectively known as the "Plaintiffs" and each

sometimes being known as a "Plaintiff"), by and through undersigned counsel, pursuant to

Maryland Rule 2-322 and Maryland Rule 2-341, and move this Honorable Court to dismiss the

second amended counterclaim (the "Counterclaim," as found at DE #91) filed by Serv Trust

("Serv Trust" or the "Defendant") (the Plaintiffs and the Defendant being collectively known as

the "Parties" and each sometimes being known as a "Party"), and in support thereof state as

follows:

### I.    Introduction

In this – the third incarnation of the Counterclaim – the Defendant has added claims for

fraud and negligent misrepresentation based on a putative agreement to agree to the terms of an

agreement concerning a sale of interests in a real estate company. These new claims – found at

Counts III (fraud) and IV (negligent misrepresentation) – merit dismissal because (i) they are

facially nonsensical, being claims the Plaintiffs committed fraud by suggesting the sales price of

1

99

a contract that was never drafted, much less executed; (ii) there is no colorable claim of damages since the at-issue agreements were never drafted, much less executed; (iii) the theories advanced by the Defendant violate the doctrine of *caveat emptor*; and (iv) the theories advanced by the Defendant violate the economic loss doctrine.

## II.    Standard

In assessing the sufficiency of a pleading such as the Counterclaim, on a motion to dismiss, the applicable standard is well settled:

> Considering a motion to dismiss a complaint for failure to state a claim upon which relief may be granted, a court must assume the truth of, and view in a light most favorable to the non-moving party, all well-pleaded facts and allegations contained in the complaint, as well as all inferences that may reasonably be drawn from them, and order dismissal only if the allegations and permissible inferences, if true, would not afford relief to the plaintiff, i.e., the allegations do not state a cause of action for which relief may be granted.

*RRC Northeast, LLC v. BAA Md., Inc.*, 413 Md. 638, 643 (2010) (citing *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 121-22 (2007); *Sprenger v. Pub. Serv. Comm'n*, 400 Md. 1, 21 (2007); *Pendleton v. State*, 398 Md. 447, 458-60 (2007); *Converge Servs. Group, LLC v. Curran*, 383 Md. 462, 475 (2004); *Fioretti v. Maryland State Bd. of Dental Exam'rs*, 351 Md. 66, 71-72 (1998)).

Critically, however, "The well-pleaded facts setting forth the cause of action must be pleaded with sufficient specificity; bald assertions and conclusory statements by the pleader will not suffice." *RRC Ne., LLC*, 413 Md. at 644 (citing *Adamson v. Corr. Med. Servs., Inc.*, 359 Md. 238, 246 (2000); *Bobo v. State*, 346 Md. 706, 708–09 (1997)).

## III.    Factual Background

Accepting the allegations of the Counterclaim as true for the limited purpose of this motion to dismiss (the "Motion"), this case concerns 6789 Goldsboro LLC ("Goldsboro LLC"), an entity created to develop the eponymous parcel of real estate. Counterclaim at ¶¶ 6, 8. The

2

Plaintiffs are the senior members of Goldsboro LLC (the "Class A Members"); the Defendant was previously[1] the junior member (the "Class B Member"). One of the Defendant's trustees, Gregory Myers ("Mr. Myers"), was the initial manager of Goldsboro LLC. Counterclaim at ¶ 13.

In September 2016, the Parties contemplated having the Plaintiffs acquire the Defendant's subordinate interest in Goldsboro LLC. Counterclaim at ¶ 15. A broad memorandum of understanding (the "MOU") was then drawn up, in the style of a letter of intent. Counterclaim at ¶ 16.

The MOU expressly requires execution by all Parties by September 12, 2016. Counterclaim at ¶ 18. The Defendant (counterfactually) claims to have timely executed the MOU. Counterclaim at ¶ 18. The Counterclaim is devoid of any allegations that a Membership Interest Purchase and Sale Agreement was ever thereafter negotiated, much less drawn up; that customary representations and warranties were ever thereafter negotiated, much less drawn up; or that forms of releases were ever thereafter negotiated, much less drawn up. *See* Counterclaim, by negative inference.

Mr. Myers was terminated as manager of Goldsboro LLC on January 24, 2017 – more than four months after the Defendant (counterfactually) claims to have timely executed the MOU. Counterclaim at ¶ 23.

This suit was filed on September 14, 2017, with the Plaintiffs seeking a declaratory judgment as to the redemption of the Defendant's interest in Goldsboro LLC. DE #1. The Defendant initially evaded service of process. DE #6. After service was finally had, Mr. Myers

---

[1] As noted in the Plaintiffs' Complaint, the Defendant's interest in the entity has since been redeemed. *See* Complaint, DE #1, *passim.*

3

tried to file a *pro se* motion seeking dismissal of the Complaint.[2] When the Clerk of this Honorable Court refused to accept Mr. Myers' *pro se* motion on behalf of a legal entity, he filed a motion seeking to intervene in these proceedings. DE #11. The Defendant, facing a pending motion for default, then engaged counsel and sought dismissal on the spurious ground that Goldsboro LLC must be joined as a party in these proceedings. DE #17. This Honorable Court denied that motion on March 15, 2018, and the Defendant answered the Complaint on April 2, 2018. DE #30. More than three weeks later, the original counterclaim was docketed. DE #36. Then, after the Plaintiffs fully briefed a motion seeking dismissal of the original counterclaim, and the Defendant permitted months to elapse, an amended counterclaim was filed on the eve of a hearing at which the original counterclaim would have likely been dismissed. DE #57.

Following a hearing on the first amended counterclaim, in which certain counts were dismissed without prejudice and one count was dismissed with prejudice, this Counterclaim was docketed on January 10, 2019. DE #91.

The "new" counts of the Counterclaim, of which dismissal is herein sought, are Count III (fraud) and Count IV (negligent misrepresentation). Both counts are based on the same theory: the value of the MOU was misrepresented to the Defendant in an effort to lure the Defendant into executing the MOU and selling its interest in Goldsboro.

As discussed *infra*, this new theory has two immediate factual problems in addition to certain legal problems: (i) The MOU was never turned into a contract and the Defendant never closed on a voluntary sale of its interest in Goldsboro, so it is difficult to fathom how the terms of a sale that never happened could be fraudulent; (ii) It is the Defendant who is asserting a claim

---

[2] Inasmuch as Mr. Myers is not a lawyer, the filing was rejected by the Clerk of the Court and, thus, does not appear on the docket. A copy, however, is appended to his Motion to Intervene, found at DE #11.

for specific performance on the MOU which it now claims to be fraudulent; and (iii) As the Defendant itself acknowledges, Mr. Myers – its designee – was the manager of Goldsboro at all times relevant; it is thus difficult to understand how the person running an entity and overseeing its day-to-day operations could be swindled into selling his trust's interest in that entity based on a misrepresentation of value.

IV.    **Argument: Both of the Added Counts Merit Dismissal for Want of Colorable Damages**

The single most glaring issue with suing for fraud – or negligent misrepresentation – based on the terms of an agreement to agree to the terms of an agreement which, in turn, never led to an agreement that closed, is a wholesale absence of damages. The Counterclaim does not explain how the Defendant has been supposedly damaged by a contract was never drafted, much less closed upon. And pure logic dictates no such contention can be made without violating core principles of good faith.

As the Court of Appeals has observed, a claim of fraud (or intentional misrepresentation, as it is stated in the Counterclaim) has five conjunctive elements, of which "that the plaintiff suffered compensable injury resulting from the misrepresentation" is the last. *Nails v. S & R, Inc.*, 334 Md. 398, 415–16 (1994) (citing *Everett v. Baltimore Gas & Elec.*, 307 Md. 286, 300 (1986); *Martens Chevrolet v. Seney*, 292 Md. 328, 333-334 (1982); *James v. Weisheit*, 279 Md. 41, 44-45 (1977); *Suburban Mgmt. v. Johnson*, 236 Md. 455, 460 (1964); *Schmidt v. Millhauser*, 212 Md. 585, 592-593 (1957); *Appel v. Hupfield*, 198 Md. 374, 378-379 (1951); *Gittings v. Von Dorn*, 136 Md. 10, 15-16 (1920); *Donnelly v. Baltimore Trust Co.*, 102 Md. 1, 13 (1905); *Boulden v. Stilwell*, 100 Md. 543, 552 (1905); *Cahill v. Applegarth*, 98 Md. 493, 499-504 (1904); *Robertson v. Parks*, 76 Md. 118, 131-133 (1892); *McAleer v. Horsey*, 35 Md. 439, 452-454 (1872)).

Similarly, a claim for negligent misrepresentation also consists of five conjunctive elements, including a mandate that "[t]he plaintiff suffers damage proximately caused by the defendant's negligence." *Flaherty v. Weinberg*, 303 Md. 116, 135, 492 A.2d 618, 628 (1985) (citing *Martens Chevrolet*, 292 Md. at 337)).

Here, the Defendant has not alleged a cogent theory of damages or sufficiently explained in its Counterclaim how or why it has been damaged. Rather, the Defendant has simply indicated that the representations upon which it claims to have relied have caused the Defendant to "incur[] material damages, which include, without limitation, [the Defendant] foregoing its ability to realize the full value of its interest in [Goldsboro]."

Since the Defendant acknowledges there was never a closing on its sale of its interest in Goldsboro (in fact, its claims for specific performance and breach of contract are based on there never being a closing), it is difficult to understand how it has been damaged by a sale that never happened. It is not merely that this fails the most basic of logical tests but, too, that the Defendant's efforts to sue for fraud and negligent misrepresentation by only parroting – in the most generic and nonsensical of terms – the existence of damages is a violation of Maryland's pleading standard as set forth in *RRC Ne., LLC* and its progeny.

Damages are elemental, and without stating a plausible claim for damages one cannot, by definition, assert a claim for fraud or negligent misrepresentation. These two counts accordingly merit dismissal.

## V.    Argument: The Two Counts Also Violate the Doctrine of *Caveat Emptor*

Even assuming, *arguendo*, the Defendant has alleged damages in connection with its claims for fraud and negligent misrepresentation, the same counts will still be barred by the familiar rule of *caveat emptor*. What is alleged in the Counterclaim is not merely the sort of commercial sale of interests long deemed within the ambit of this doctrine but, too, one where it

6

was the Defendant whose principal was running the at-issue business; the Defendant cannot much claim to have been duped on price terms under such a construct.

As the Court of Appeals has noted, "the common law rule of caveat emptor, although legislatively abrogated in the context of residential property, is still applicable in Maryland with regard to the sale of commercial property." *Rosenblatt v. Exxon Co., U.S.A.*, 335 Md. 58, 75 (1994) (citing *Council of Co–Owners v. Whiting–Turner*, 308 Md. 18 (1986).

This doctrine is hardly new, with the Court of Appeals having explained, as far back as 1869, "The vendees cannot escape from the obligation of their contract because they have been mistaken or disappointed in the quality of the article purchased. In the absence of a warranty the principle of caveat emptor applies, and the buyer takes the risk of quality upon himself." *Wheat v. Cross*, 31 Md. 99, 104–05 (1869).

Of course, there was no actual sale of the Defendant's interest in Goldsboro, so whether or not the consideration paid was above market or below market is a question based on an errant assumption, with no consideration having been paid and no conveyance having occurred. But even if the Defendant had gone ahead and sold its interest in Goldsboro, it would be barred from later protesting the fairness of a negotiated price. Dismissal of these counts is accordingly warranted.

## VI.    Argument: The Economic Loss Doctrine Also Acts as a Bar to These Two Counts

Finally, even if the two new counts were found to sufficiently allege damages, and even if the hornbook doctrine of *caveat emptor* were found to not apply *sub judice*, the Defendant's claims would still merit dismissal under the economic loss doctrine. It is a bedrock principle that one cannot seek tort liability for contractual actions absent physical injury or death, and this is most certainly a case where neither life nor limb has been compromised.

7

As summarized by the Court of Special Appeals, "The economic loss rule ordinarily prevents a plaintiff from pursuing a tort action to recover 'purely economic losses-losses that involve neither a clear danger of physical injury or death, nor damage to property other than the product itself.'" *Pulte Home Corp. v. Parex, Inc.*, 174 Md. App. 681, 723 (2007) (citing *Morris v. Osmose Wood Preserving*, 340 Md. 519, 529 (1995). *See, also, Balfour Beatty Infrastructure, Inc. v. Rummel Klepper & Kahl, LLP*, 451 Md. 600, 611–12 (2017) (citing *Seely v. White Motor Co.*, 63 Cal.2d 9 ( Cal. 1965); *E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 870–71 (1986); *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 128–29 (2007); 3 Dan B. Dobbs, Paul T. Hayden & Ellen M. Bublick, The Law of Torts § 607, at 462 (2d ed. 2011)).

The Defendant's claims for fraud and negligent misrepresentation are a clear violation of this rule, as the Defendant is attempting to recover claimed economic losses based on a putative contractual relationship (one which, it should not overlooked, does not actually exist), where there is certainly no implication of physical injury or death. The Defendant is entitled to pursue its claims for breach of contract;[3] it is not, however, free to menacingly add counts for fraud and negligent misrepresentation.

As such, the Counterclaim is again meritorious of summary dismissal.

## VII.    Conclusion

WHEREFORE, the Plaintiffs respectfully pray this Honorable Court dismiss Counts III and IV of the Counterclaim with prejudice, direct the First Amended Counterclaim – net of the counts therein already dismissed by this Honorable Court – to be the Defendant's operative pleading, and afford such other and further relief as may be just and proper.

---

[3] The Plaintiffs, of course, do not concede the validity of these claims or the plausibility of these claims. The Defendant's decision to backdate documents and make counterfactual assertions of fact, so as to leverage a counterclaim in this case, are the epitome of bad faith.

Respectfully submitted,

THE VERSTANDIG LAW FIRM, LLC,

_____
Maurice B. VerStandig, Esq.
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: 301-444-4600
Facsimile: 301-576-6885
E-mail: mac@mbvesq.com
*Counsel for the Plaintiffs*

## REQUEST FOR HEARING

Pursuant to, and in accord with, Maryland Rule 2-311(f), the Plaintiffs request a hearing

on their Motion to Dismiss.

_____
Maurice B. VerStandig, Esq.

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of January, 2019, I caused a true and correct copy of the foregoing paper to be served upon the following persons via First Class Mail, postage prepaid:

Dominic J. Souza, Esq.
Souza LLC
2543 Housley Road
Annapolis, Maryland 21401
*Counsel for Serv Trust*

Frances Wilburn, Esq.
Offit Kurman, P.A.
4800 Montgomery Lane
Suite 900
Bethesda, Maryland 20814
*Counsel for 6789 Goldsboro LLC*

_____
Maurice B. VerStandig, Esq.

9

# EXHIBIT 9D

## December 18, 2018 Hearing Before
## The Honorable Anne Albright

Ruling on the King Parties' Motion to Dismiss

Serv Trust's First Amended Counterclaim

*King, et al. v. Serv Trust*

Case No. 436977-V

### Limited Excerpts:

Transcript / PDF Pages 1-3, 57-65, and 73

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

```
----------------------------------X
                                  :
BRIAN KING,                       :
                                  :
          Plaintiff,              :
                                  :
               v.                 :          Civil No. 436977
                                  :
SERV TRUST,                       :
                                  :
          Defendant.              :
                                  :
----------------------------------X
```

HEARING

Rockville, Maryland                              December 18, 2018

DEPOSITION SERVICES, INC.
12321 Middlebrook Road, Suite 210
Germantown, Maryland 20874
(301) 881-3344

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

```
----------------------------X
                            :
BRIAN KING,                 :
                            :
        Plaintiff,          :
                            :
            v.              :          Civil No. 436977
                            :
SERV TRUST,                 :
                            :
        Defendant.          :
                            :
----------------------------X
```

                              Rockville, Maryland

                              December 18, 2018

WHEREUPON, the proceedings in the above-entitled matter commenced

BEFORE:    THE HONORABLE ANNE ALBRIGHT, JUDGE

APPEARANCES:

FOR THE PLAINTIFF:

MAURICE B. VERSTANDIG, Esq.
The Verstandig Law Firm, LLC
9812 Falls Road #114-160
Rockville, Maryland 20854

FOR THE DEFENDANT:

DOMINIC J. SOUZA, Esq.
Souza, LLC
2543 Housley Road
Annapolis, Maryland 21401

I N D E X

Page

Judge's Ruling                                        57

I N D E X

57

MR. VERSTANDIG:  Your Honor, may we leave our belongings in the courtroom?

THE COURT:  Yes.

MR. VERSTANDIG:  Thank you.

THE CLERK:  All rise.

THE COURT:  Thank you.

(Recess)

THE COURT:  Thank you very much, everybody.  Please be seated.  Good afternoon.

MR. VERSTANDIG:  Good afternoon, Your Honor.

JUDGE'S RULING

Thank you for your patience.  I see everybody is back.  First, I'd like to say thank you, everybody, for your thoughtful comments in regard to this case and your briefing. It was very helpful.  What is before me now are two motions. The first at Docket Entry 63, which is the plaintiff -- I'm sorry.  It's what I will call the King party's motion to dismiss the first amended counter complaint.  And then Docket Entry 71, which is Serv Trust's motion to dismiss or, in the alternative, to stay declaratory judgment.  I have considered those along with the written oppositions and I've also considered the arguments of counsel today.  And for the reasons that I'm about to explain as to Docket Entry 63 that will be granted in part and denied in part.  And as to docket number 71 that will be denied in full.

58

First let me take up Docket Entry 71. And the reason that I'm doing that first is because it is directed to the complaint, which was really what started this case. Even though it was the second filed motion. So, it seems to me that in, I'll say a word generally about the legal standards that apply here. It seems to me that what Serv Trust is arguing is that it can't get so to speak a fair determination unless the claims that are tied up in a declaratory judgment case are severed, so to speak, or dismissed or stayed. And they argue that because they say that the facts that are tied up in this claim are different, separate from the facts that are in the counterclaim.

And because the fact finders will be different, they'll be a judge determining the equitable claims and a jury determining the legal claims, that simply is unwieldy to handle all this together. Ultimately in considering that, I agree with Mr. Verstandig that courts do that all the time. In fact, there are situations in which courts will often put questions to a jury, facts that need to be found prior to a judge being able to make equitable decisions on the claims that are equitable in nature.

So sometimes there are ingredients, so to speak, of those equitable determinations that jury determine themselves. I don't know whether this is that kind of a case or not. But whether it is or whether it isn't there certainly are

59

mechanisms available so that a court could be deciding the equitable claims at about the same time that a jury determines legal claims. So ultimately I see no basis for staying or dismissing the case because of that. I do think though that there is a dispute between the parties as to the redemption rights. It seems to me that it is the kind of dispute that arises out of a contractual arrangement. And it seems to me that it would be, it is a dispute that would be well-suited to declaratory judgment. And so that to me is also not a reason to dismiss or fail to take up the declaratory judgment at about the same time as the claims in the counterclaim. So for all those reasons I'm going to deny the motion at 71.

Let me turn to the motion at 63, which is directed to the counterclaim. I'm first going to tell you what my decision is and then I'll tell you why. So this motion, as I said, will be granted in part and denied in part as follows. Count number one of the first amended complaint, as to that count the motion will be denied. As to count two, the specific performance claim, as to that count the motion will be denied. Count three, which is the intentional misrepresentation, as to that count the motion will be granted and that count will be dismissed but it will be without prejudice. And the counter plaintiff will have leave to amend. On count four, the negligent misrepresentation, that will be dismissed. The motion will be granted as to Count 4. That will be dismissed

without prejudice and the counter plaintiff will be given leave to amend. Count five will be dismissed. The motion will be granted as to count five. That count will be dismissed and there will be no leave to amend so it will be dismissal with prejudice. As to count six the motion will be denied. And as to count seven the motion will be denied.

Let me go through and explain my reasons. First of all, the legal stand that applies here is one that the parties are well familiar with. It's well set out in their papers. And that is that in treating a motion to dismiss we have to take as true all of the well pled allegations in the relevant pleading, in this case the first amended counterclaim. And we have to, as I said, assume those are true. We have to look at those allegations along with the reasonable inferences that can be drawn from those pleadings and look at the allegations in a light most favorable to the non-moving party who in this case is Serv Trust.

Of course, at this time there is no place for credibility determinations of any kind. And once we look at the allegations along with the reasonable inferences in that light then we have to ask whether looking at it in that light is there a cause of action. It seems to me that the parties, there's no debate about what that standard is between the parties. So, I think it's also important to focus on the portion of that standard that talks about bald allegations.

The parties seem to be well aware of the fact that Maryland does not treat or tolerate bald allegations or conclusory assertions as a substitute for correct pleading.

So, looking at Count 1 and two, it seems to me that treating those things as, the allegations in those counts as true that Serv Trust has accurately or properly alleged a breach of contract as well as a claim for a specific performance. The argument that the King parties made in their motion was essentially that the agreement that is at issue there, the memorandum of understanding, is really an agreement to agree. And so as such would not be the basis for a breach of contract claim or a specific performance. I have reviewed that memorandum of understanding and I do not agree that it is an agreement to agree. It seems to me that there are enough terms that are specified in that document as well as a 1statement that the parties intend to be bound by it that leaves it at the end of the day the kind of contract that can be enforced. There may be problems down the road. We have identified some of them. Some of those problems may be better addressed down the road in the form of affirmative defenses. But it seems to me that at this point, looking at what Serv Pro has alleged that it has properly alleged a breach of contract as well as for a specific performance.

Looking at count three and count four, I'm going to take those up together. For both of these I have decided that the

62

motion will be granted.  These will be dismissed without prejudice and they'll be leave to amend.  It seems to me that the flaw in both of these counts has to do with the extent to which reliance is alleged.  I see, of course, in count three at paragraph 43 and paragraph 49, count four, that Serv Trust has alleged, at least has said the words that there has been reliance.  But it seems to me that both of these paragraphs, both allegations are conclusory.  What is not laid out in the complaint is any sort of indication as to the facts that went to that justifiable reliance.  There's no facts that lay out what Serv Trust did to justifiably rely on the representations that they allege the King plaintiffs, or in this case counter defendants, were making.  Today in argument Mr. Souza mentioned that well, the reliance is that they signed that agreement. The problem with that claim anyway is that that claim does not appear on the face of the document.  It's not specified that way.  I have no idea, quite frankly, whether that's the kind of reliance that would withstand scrutiny down the road.  But it certainly is not on the fact of the complaint.  And so I am going to give Mr. Souza for his clients a chance to amend if he wishes.  But at this point for that reason, for that flaw these two counts are going to be dismissed.

Going to Count 5WE, this is the breach of fiduciary duty claim.  It seems to me that as a general matter that, while there is some ongoing debate in the case law as to the

extent to which Maryland recognizes an independent tort cause of action for breach of fiduciary duty, a cause of action for damages, so a legal cause of action, it seems to me that at this point, and I think the most recent case is Shankar (phonetic sp.).  There may be one after that.  That the state of the case law is that as to causes of action for damages, so legal claims as opposed to equitable claims, that Maryland does not recognize an independent cause of action for breach of fiduciary duty.  What we do recognize are two other things.  One is a negligence cause of action where the duty, the duty element for the negligence cause of action is the fiduciary duty.  So the way that one would pursue a claim that has features of breach of fiduciary duty is through a negligence cause of action in which the duty element is the fiduciary duty.  The other theory that is out there is an equitable claim, and that's the Khan case, where one could allege that there has been breach of trust on the part of a trustee.  And the remedies that one would seek because it's an equitable cause of action are not damages but other things like return of commissions, other things like that.  Other equitable relief.  In this case the way this is pled is this is pled, not as a equitable cause of action, it's pled as a legal cause of action.  And we know that because on the top of page 12 in the wherefore clause associated with count five Serv Trust says quite specifically that they want a judgment to be determined

at trial in excess of $75,000 plus post-judgment interest cost reasonable attorney's fees. That certainly sounds to me like damages. It certainly does not sound to me like a breach of trust of the kind that's alleged or described in the Khan case. So, what this boils down to is, what it looks like to me is a breach of fiduciary duty that is an independent breach of fiduciary duty which Maryland does not recognize. And that's why this count will be dismissed with prejudice.

As to count six that will be, the motion will be denied as to count six. That will be allowed to stand. I know that we went back and forth about whether this was adequate but it seems to me that once it's clear that the King plaintiffs, that Mr. King is the manager of the company, the managing member of the company. And that he has succeeded to that role because the class A members, of which he is one, appointed him to be that role. There is a fiduciary duty at that point. And his fiduciary duty extends, not just as alleged to himself, his family, but also to the other half of the company which is Serv Trust. And it seems to me that what's alleged here is that, notwithstanding that fiduciary duty, is that Mr. King went ahead and, and again, we have to assume that this is true, that he intentionally kept the value of the property low in order to benefit himself and the other class A members. It seems to me that one could reasonably infer from that set of allegations that there was a confidential relationship. In other words,

that Serv Pro was expecting that Mr. King would act in its interest because, of course, Mr. King was the managing member. And it seems to me that with that expectation if, in fact, Mr. King intentionally or attempted to keep the value of the property low as alleged that that would amount to constructive fraud. So it seems to me that that is properly alleged. And finally with regard to the last count, and this really goes hand in hand with my dismissal of count five. Count seven is the negligence count and this is an ordinary negligence count where the fiduciary duty is the duty. And this is what one would expect to see on this set of facts. So this is properly pled. So those are my reasons for the decision. How much time reasonably speaking does Serv Trust need to determine whether it will file an amended complaint?

MR. SOUZA: Fifteen days, Your Honor.

THE COURT: Okay.

MR. SOUZA: What is today's date?

MR. VERSTANDIG: Today's the 18th. You want longer than that. There's holidays. And you're a family man. I'm not.

THE COURT: So January 3rd, 4th?

MR. SOUZA: 5th?

THE COURT: That's fine.

Is that okay, Mr. Verstandig?

MR. VERSTANDIG: Most certainly, Your Honor. If he

73

√ Digitally signed by Lauren Araya

DIGITALLY SIGNED CERTIFICATE

**DEPOSITION SERVICES, INC.** hereby certifies that the attached pages represent an accurate transcript of the electronic sound recording of the proceedings in the Circuit Court for Montgomery County in the matter of:

Civil No. 436977

BRIAN KING

v.

SERV TRUST

By:

_____

LAUREN ARAYA
Transcriber