# EXHIBIT 10

**King Parties' February 2019 Amended Complaint**

Count II Prayer for Relief

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

| | | |
|---|---|---|
| BRIAN KING, *et al.* | : | |
| Plaintiffs, | : | |
| v. | : | |
| SERV TRUST | : | |
| and | : | **Case No.: 436977-V** |
| GREGORY MYERS<br>4505 Wetherill Road<br>Bethesda, Maryland 20816 | :<br><br>: | |
| Defendants, | : | |
| and | : | |
| ROGER SCHLOSSBERG<br>*In His Official Capacity as Trustee*<br>*of the Bankruptcy Estate of Gregory Myers*<br>18421 Henson Boulevard<br>Suite 201<br>Hagerstown, Maryland 21742 | :<br><br>:<br><br>: | |
| Nominal Defendant. | : | |

## FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

Come now Brian King ("Mr. King"), Cristina King ("Mrs. King"), and Brian King in his capacity as trustee of the Cristina and Brian King Children's Trust (the "Trustee of the Children's Trust," with the trust itself being known as the "Children's Trust")) (Mr. King, Mrs. King, and the Trustee of the Children's Trust being collectively known as the "Plaintiffs" and each sometimes being known as a "Plaintiff"), by and through undersigned counsel, pursuant to Maryland Rule 2-341(a), and as and for their first amended complaint (the "Complaint") against Serv Trust ("Serv Trust") and Gregory Myers ("Mr. Myers") (Serv Trust and Mr. Myers being collectively known as the "Defendants" and each sometimes being known as a "Defendant"), as well as Roger

1

Schlossberg, in his official capacity as Chapter 7 Trustee of Mr. Myers' bankruptcy estate (the "Trustee"), a nominal defendant herein, state as follows:

### Parties

1. Mr. King is a natural person who is a citizen of the State of Florida by virtue of his ongoing domicile therein.

2. Mrs. King is a natural person who is a citizen of the State of Florida by virtue of her ongoing domicile therein.

3. Mr. King also brings this suit in his capacity as the Trustee of the Children's Trust, which is a Maryland trust.

4. Serv Trust is a Maryland statutory trust. Though it is referenced as an entity herein, it is the contention of the Plaintiffs, as set forth *supra*, that Serv Trust is Mr. Myers' alter ego.

5. Mr. Myers is a natural person who, upon information and belief, is a citizen of either the State of Maryland or the State of Florida, by virtue of his ongoing domicile in those two states.

6. The Trustee is the duly-appointed trustee of the Chapter 7 bankruptcy estate of Mr. Myers, and a necessary party to this proceeding as the declaration sought herein materially impact the assets, *vel non*, of that bankruptcy estate.

### Jurisdiction and Venue

7. This Honorable Court enjoys jurisdiction over Serv Trust pursuant to Section 6-102(a) of the Courts and Judicial Proceedings Article, as Serv Trust is a Maryland statutory trust.

8. Venue is properly laid in this Honorable Court pursuant to Section 6-201 of the Courts and Judicial Proceedings Article because the cause of action enumerated herein arose in Montgomery County.

**General Allegations: 6789 Goldsboro LLC – Property and Operating Agreement**

9.     The Plaintiffs collectively comprise the full Class A members of a Maryland limited liability company known as 6789 Goldsboro LLC ("6789 Goldsboro") and have done so at all times relevant.

10.     Serv Trust is the sole Class B member of 6789 Goldsboro and has been so at all times relevant.

11.     Pursuant to the First Amended and Restated Operating Agreement of July 18, 2013 (the "Operating Agreement," inclusive of the subsequent amendment thereto), for 6789 Goldsboro, the entity exists to "purchase, acquire, buy, own, trade in, hold, develop, lease, manage, entitle, subdivide, sell, and otherwise deal in and with" that parcel of real property and those improvements thereupon commonly known as 6789 Goldsboro Road in Bethesda, Maryland, with a Zone Improvement Plan code of 20817 (the "Property"). *See* Operating Agreement at § 2.2.

12.     6789 Goldsboro acquired the Property on July 18, 2013 and has owned the Property continuously and without interruption at all times since.

13.     Pursuant to Section 7.7 of the Operating Agreement, as subsequently amended, if the governmental approvals requisite to subdivide the Property into at least nineteen (19) townhouse dwellings are not obtained by July 18, 2016, and the Class A members of 6789 Goldsboro do not elect to sell the Property, the Class A members have the right to have the Property appraised in accordance with the terms of the Operating Agreement.

14.     Pursuant to Section 7.5 of the Operating Agreement, an appraisal of the Property occurs, *inter alia*, when the Class A members notify the Class B member of a demand for appraisal of the Property, and each class of members then has fifteen (15) days to appoint an

MAI appraiser.

15.    Under the regime of Section 7.5 of the Operating Agreement, an appraisal is then made by examining the appraisals of the individuals appointed by each class of membership and, if need be, having a third appraiser – mutually selected – undertake an additional appraisal.

16.    Following an appraisal triggered by Section 7.7 of the Operating Agreement, if the appraised value of the Property is found to be less than the monies thus far invested by the Class A members, the Class A members may cause 6789 Goldsboro to redeem the Class B member's interests in exchange for previous consideration.

**General Allegations: Appraisal**

17.    The governmental approvals requisite to subdivide the Property into at least nineteen (19) townhouse dwellings were not obtained by July 18, 2016 and, further, have not been obtained as of the date of filing of this Complaint.

18.    On August 23, 2017, the Class A members notified Serv Trust of their election to have the Property appraised for purposes of determining if the entity may redeem the interest of Serv Trust.

19.    Specifically, notice was sent by undersigned counsel, on behalf of the Class A members (the Plaintiffs herein) to Serv Trust, via certified mail, return receipt requested, at the address indicated in the Operating Agreement (the "Appraisal Election").

20.    While a return receipt of the Appraisal Election's delivery to Serv Trust is yet to be received, United States Postal Service records show the correspondence was delivered on August 24, 2017. *See* Certified Mail Records, attached hereto as Exhibit C.

21.    By electronic mailing dated September 13, 2017, Serv Trust acknowledged its receipt of the Appraisal Election but did not appoint an appraiser pursuant to the Operating

4

Agreement.

22.    Pursuant to the Operating Agreement, the last day for Serv Trust to appoint an appraiser was Monday, September 11, 2017.

23.    The Plaintiffs have not received the appointment of an appraiser from Serv Trust through any of the means specified in the Operating Agreement (nor through any other medium) as of the filing of this suit.

24.    The Plaintiffs have had the Property appraised by their designated appraiser, and are in receipt of a report indicating its market value to be between One Million Dollars and No Cents ($1,000,000.00) and One Million Three Hundred Twenty Five Thousand Dollars and No Cents ($1,325,000.00) (the "Class A Appraisal").

25.    The Class A members' investment in 6789 Goldsboro, to date, exceeds Three Million Five Hundred Thousand Dollars and No Cents ($3,500,000.00) (the "Class A Investment").

<strong>General Allegations: Alter Ego</strong>

26.    Serv Trust was originally created by Mr. Myers' mother, for the supposed benefit of Mr. Myers' children.

27.    Mr. Myers has been a trustee of Serv Trust at all times relevant and, upon information and belief, has exercised all decision making authority for Serv Trust - notwithstanding the nominal presence of a co-trustee - at all times relevant.

28.    In or before 2009, Mr. Myers experienced financial difficulties and stopped paying the mortgages on numerous pieces of real property owned by himself, his wife, and/or him and his wife jointly.

29.    Following Mr. Myers' financial difficulties, he came to defend multiple

5

foreclosure suits and other legal proceedings, coming to understand that his remaining assets, however great or meager, would eventually be subject to the attack and/or attachment of his creditors.

30.    In or about 2013, Mr. Myers personally discovered the Property, which was listed as being for sale, and which was being marketed as a single family home.

31.    Mr. Myers, having a background in the real estate industry, recognized the Property to be on a parcel of land that could support additional dwelling units, and believed that parcel of land to be in a desirable location.

32.    Mr. Myers, owing millions of dollars to his creditors, facing the likely prospect of declaring bankruptcy in the coming years, and not having access to the funds requisite to acquire the Property, sought out an investment partner and was introduced to Mr. King.

33.    In negotiating a partnership with Mr. King, Mr. Myers did not want to take a subordinate interest in the resulting entity in his own name, knowing that his creditors might be able to attach that interest, obtain a charging order against that interest, or otherwise take it from him.

34.    So instead of personally taking the interest in the resulting entity - an interest "funded" by the goodwill of Mr. Myers in finding the Property, and the efforts Mr. Myers would expend managing 6789 Goldsboro – Mr. Myers indicated the interest would be held by Serv Trust.

35.    In accord with this arrangement, Serv Trust became the junior member of the resulting entity.

36.    Even though Mr. Myers was supposedly involved with the resulting entity in his role as a trustee of Serv Trust, he personally became the manager of the entity and oversaw

6

efforts to assess development opportunities for the Property, putting his own "sweat equity" into the project.

37.    Early in the existence of 6789 Goldsboro, Mr. Myers approached Mr. King, indicated Mr. Myers needed money, and asked for a loan.

38.    Mr. King agreed to capitalize 6789 Goldsboro with monies to be loaned to Mr. Myers.

39.    Mr. Myers asked that the loan be made to Serv Trust, instead of to him personally, but that the loan be given to him personally.

40.    From 2014 through 2016, Mr. Myers asked Mr. King to capitalize 6789 Goldsboro with money for loans to be made on at least twenty eight (28) separate occasions, with the total of such loans equaling Six Hundred Thirty Thousand Dollars ($630,000.00) (the "Loans") and interest accruing on such loans.

41.    Many of the Loans were paid directly to either Mr. Myers or his wife, not to Serv Trust.

42.    In asking for the Loans, Mr. Myers would often indicate the need in a personal regard - not in one aimed at any fiduciary obligation.

43.    By way of example, on April 22, 2016, Mr. Myers wrote to Mr. King, "Hey Brian - following up on our conversation the other day - I greatly appreciate you advancing June and July now ($30k) as the insurance company totally f'd me, and I'm on fumes here."

44.    Mr. Myers followed up on April 25, 2016, "Brian - I'm dead in the water without the wire on/before May 2. Please reconsider and advance $15k on Monday May 2 (June advance), with the other $15k on May 8 (July advance). I wouldn't ask you to do this unless it was an emergency."

45. On June 9, 2016, Mr. Myers sent Mr. King another request for money, indicating that some of the money was needed for one of his children but that most of it was for other, completely unrelated things: "I only want to ask you for what I need to survive right now, which is $40k (which includes $15k to pay past tuition for Teddy so he can get his official transcript from Furman to transfer to Trinitiy; **$5k to keep my Chapter 11 alive**, $2,270 for monthly health insurance premiums; $3,500 in past due utilities**; $10k in legal fees for appeals**; food, gas, etc.)" (emphasis added)

46. Upon information and belief, Serv Trust was not, at the time, party to any litigation pending in any appellate court, and Serv Trust has never been a Chapter 11 debtor.

47. On July 14, 2016, Mr. Myers wrote to Mr. King, "I am sitting here bleeding waiting for Danielle - I have two checks that will be presented today totaling just **under $7k to an attorney - who, if my checks bounce, will withdraw from my appeal** - as well as my family's health insurance expired on July 1 and I am now past the grace period... I am respectfully requesting that you have Chris wire $10k this morning so I can cover these extremely critical payments while Danielle finishes her edits and we can get papers circulated. Holding up a $10k wire given where we are only hurts me." (emphasis added)

48. On May 16, 2016, Mr. Myers wrote to Mr. King, "Brian - I appreciate the June draw you sent on May 3, but I still need to get the $15k July draw early just to keep my head above water."

49. All of the foregoing e-mails were sent after Mr. Myers filed a voluntary Chapter 11 bankruptcy petition on November 18, 2015 and, as such, was unable to borrow money in his own name without approval of the United States Bankruptcy Court for the District of Maryland.

50. At no time has Mr. Myers sought, or received, approval of the United States

Bankruptcy Court for the District of Maryland to borrow monies, from Mr. King, from 6789 Goldsboro, or from any other person or entity.

51.     Even though Mr. Myers had personally guaranteed all of the Loans, he did not schedule 6789 Goldsboro as a creditor in his bankruptcy and never mentioned his guarantee in his schedules or any amendments thereto until such a time as 6789 Goldsboro entered an appearance in his bankruptcy proceedings.

52.     Both prior to, and during, his bankruptcy, Mr. Myers has used Serv Trust as a tool to access money from 6789 Goldsboro without that money becoming part of his bankruptcy estate or being otherwise subject to the attack or collection of his creditors or those of his wife (who has twice been a debtor in bankruptcy since Mr. Myers first became a debtor in bankruptcy).

53.     This behavior is consistent with Mr. Myers' original goal of having the subordinate interest in 6789 Goldsboro be acquired by Serv Trust, and not in his own name or that of his spouse, so it would not be attackable by his creditors.

54.     This behavior is also consistent with Mr. Myers' placing a large lien on one of his properties, in favor of Serv Trust (the "Lien"), with the goal of Serv Trust then being able to obtain funds from the sale of that property - for the personal use of Mr. Myers - before junior creditors of Mr. Myers could do so.

55.     The Lien became a source of early contention in Mr. Myers' bankruptcy case, as Mr. Myers sold the subject property, disputed nearly every lien on the property - except for Serv Trust's Lien - and made contradictory assertions about the size of the Lien, in an effort to deprive his creditors of money.

56.     On February 15, 2017, following the filing of a motion to convert his bankruptcy

9

case from Chapter 11 to Chapter 7 (the "Motion to Convert"), filed by the United States of America through a trustee working in the Department of Justice, the United States Bankruptcy Court for the District of Maryland conducted a full evidentiary hearing on the Motion to Convert, at the conclusion of which the Court rendered an oral ruling converting the case to Chapter 7.

57.     As the United States Bankruptcy Court for the District of Maryland would later note, Mr. Myers' "failure to list Goldsboro in his initial schedules and his failure to disclose his personal guaranty of Goldsboro's advances to Serv Trust at the 341 Meeting was a significant factor in the Court's decision to convert Myers' case."

58.     On May 18, 2017, United States of America, by and through a trustee serving in the Department of Justice, brought an adversary proceeding in Mr. Myers' bankruptcy to have Mr. Myers' discharge denied (the "Motion to Deny Discharge").

59.     On September 28, 2018, the United States Bankruptcy Court for the District of Maryland granted the Motion to Deny Discharge, issuing a lengthy written memorandum opinion (the "Denial Order").

60.     In the Denial Order, the United States Bankruptcy Court for the District of Maryland observed "The timing of the loans from Goldsboro and the execution of the Goldsboro Guaranty, combined with Myers' obfuscation on his liability to Goldsboro at the 341 Meeting, are sufficient to find the requisite fraudulent intent for purposes of § 727(a)(4)… It is not believable that he simply forgot to include his largest unsecured creditor in the first several versions of his schedules when he had executed a personal guaranty in favor of that creditor six months prior to filing for bankruptcy and was requesting advances from the creditor up to and after filing his petition."

61.     In the Denial Order, the United States Bankruptcy Court for the District of

Maryland also observed "Myers was adamant at trial that every payment that he and/or Kelly ever received from Serv Trust was for the benefit of his children."

62.    Such testimony of Mr. Myers would have been untruthful in nature, as significant portions of such money were openly sought to pay Mr. Myers' legal fees in connection with various litigation matters (including his bankruptcy), as anecdotally established by the e-mails discussed above.

63.    The Denial Order also observes, "the Court finds that the amount of Serv Trust's secured claim set forth on the Amended Schedule D was inflated and therefore, was a false claim and a false oath under § 727(a)(4)," going on to note that Mr. Myers seemed inclined to use the Serv Trust Lien as a means of receiving money from the proceeds from a sale of property until such a time as 6789 Goldsboro - an unscheduled creditor - entered an appearance in this case and foreclosed that possibility.

64.    The Denial Order also finds that Mr. Myers did not keep records of the money he received from 6789 Goldsboro (which was supposedly being loaned to Serv Trust) or of how that money was spent, even though he insisted (untruthfully) that it was spent on his children.

65.    6789 Goldsboro filed a declaratory judgment action in the United States Bankruptcy Court for the District of Maryland, seeking a declaration that Serv Trust is Mr. Myers' alter ego (the "Bankruptcy Declaration Case").

66.    On January 30, 2019, the United States Bankruptcy Court for the District of Maryland issued an order abstaining from the Bankruptcy Declaration Case and indicating it is more properly determined as part of the above-captioned action in this Honorable Court.

## Count One
### Declaratory Judgment: Redemption of Interests

67.    The Plaintiffs repeat and re-allege each and every foregoing paragraph of this

11

Complaint, as though fully set forth herein.

68.     The Operating Agreement constitutes a contract as that term is used in Section 3-406 of the Courts and Judicial Proceedings Article.

69.     The Plaintiffs, as the Class A members of 6789 Goldsboro, have an interest in the Operating Agreement and its construction.

70.     The Plaintiffs maintain they may now direct, ministerially and without the issuance of further process or the creation of additional documentation, through this Complaint or otherwise, 6789 Goldsboro to redeem the interest of Serv Trust.

71.     Specifically, Serv Trust has failed to timely designate an alternative appraiser for purposes of appraising the Property, let alone procure an appraisal that values the Property at a sum in excess of the Class A Investment.

72.     Specifically, the Class A Appraisal reveals the Property to have a current value well below that of the Class A Investment.

73.     Specifically, under the Operating Agreement, the Plaintiffs are entitled to have 6789 Goldsboro redeem the interest of Serv Trust, without any further consideration, where the value of the Property in its present state is less than the sum of the Class A Investment.

WHEREFORE, the Plaintiffs respectfully pray this Honorable Court (i) declare Serv Trust to have waived its right to appoint an alternative appraiser under the Operating Agreement by not doing so on or before September 11, 2017; (ii) declare the Plaintiffs to have the right to direct, ministerially and without the issuance of further process or the creation of additional documentation, 6789 Goldsboro to redeem the interest of Serv Trust; (iii) declare the interest of Serv Trust in 6789 Goldsboro to have been redeemed by operation of this proceeding; and (iv) afford such other and further relief as may be just and proper.

12

## Count II
### Declaratory Judgment – Alter Ego

74.    The Plaintiffs repeat and re-allege each and every foregoing paragraph of this Complaint, as though fully set forth herein.

75.    Mr. Myers repeatedly borrowed money, in the name of Serv Trust, to pay his personal legal fees in connection with legal proceedings to which Serv Trust is not a party.

76.    Mr. Myers repeatedly used funds belonging to Serv Trust to pay his own obligations, and repeatedly sought to have Serv Trust receive such funds - by becoming indebted to third parties - so it would have money to pay Mr. Myers' personal obligations.

77.    Mr. Myers transferred his own goodwill and the "sweat equity" of his efforts in connection with the Property into the name of Serv Trust to avoid having the proceeds (if any) be susceptible to attack by his personal creditors, at a time when he was insolvent, without receiving any consideration whatsoever.

78.    Mr. Myers created a bogus lien in favor of Serv Trust, on one of his own properties, to frustrate the collection efforts of his own creditors.

79.    Mr. Myers changed the size of that bogus lien in accord with his personal financial desires.

80.    Mr. Myers' expenditures of moneys supposedly belonging to Serv Trust is of a form, pattern and habit that would be a gross breach of his fiduciary duties as trustee thereof - not just in the form of self-dealing, but in self-dealing with absolutely no cognizable benefit to the trust's supposed beneficiaries, and in taking Serv Trust further and further into debt so that he may self-deal in its acquired cash - and yet has never scheduled the trust's supposed beneficiaries as creditors in his bankruptcy having claims against him for such openly actionable conduct.

81.    Mr. Myers has utilized Serv Trust as vehicle to advance his own fraudulent and

13

illegal purposes, with the aim of avoiding obligations to his creditors, hiding behind the façade of a trust, having a legal apparatus through which to continue his fraudulent efforts while a debtor in bankruptcy, and maintaining an alter ego devoid of the numerous and substantial liabilities Mr. Myers has personally incurred.

82. Mr. Myers' use of Serv Trust as his alter ego continues through the above-captioned case, where Mr. Myers has caused Serv Trust to bring a counterclaim against the Plaintiffs, based on a wholly fraudulent premise, as a means of endeavoring to obtain monies for his own personal use despite his being a debtor in bankruptcy.

WHEREFORE, the Plaintiffs respectfully prays this Honorable Court (i) enter a judgment declaring (a) Serv Trust is the alter ego of Mr. Myers; (b) the assets and liabilities of Serv Trust, including those incident to this litigation, are the assets and liabilities of Mr. Myers' bankruptcy estate, as administered by the Trustee; (c) the counterclaim asserted herein is an asset of Mr. Myers' bankruptcy estate, as administered by the Trustee; and (d) the liabilities of Serv Trust herein, on the consolidated promissory note collection case brought by 6789 Goldsboro, are liabilities of Mr. Myers' bankruptcy estate, as administered by the Trustee; and affording such other and further relief as may be just and proper.

**[SIGNATURE BLOCK ON FOLLOWING PAGE]**

Respectfully submitted,

THE VERSTANDIG LAW FIRM, LLC,

Maurice B. VerStandig, Esq.
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: 301-444-4600
Facsimile: 301-576-6885
E-mail: mac@mbvesq.com
*Counsel for the Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of February, 2019, I caused a true and correct copy of the foregoing paper to be served upon the following persons via First Class Mail, postage prepaid:

Dominic J. Souza, Esq.
Souza LLC
2543 Housley Road
Annapolis, Maryland 21401
*Counsel for Serv Trust*

Frances Wilburn, Esq.
Offit Kurman, P.A.
4800 Montgomery Lane
Suite 900
Bethesda, Maryland 20814
*Counsel for 6789 Goldsboro LLC*

Maurice B. VerStandig, Esq.

15