# EXHIBIT 17A

**Goldsboro Motion for Enlargement of Time to File Proof of Claim**

Bankruptcy Docket Entry No. 279

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MARYLAND
### (GREENBELT DIVISION)

| | | |
|---|---|---|
| In Re: | * | |
| | | Case No.  15-26033-WIL |
| GREGORY B. MYERS | * | |
| Debtor. | | Chapter 11 |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### MOTION FOR ENLARGEMENT OF TIME TO FILE PROOF OF CLAIM

6789 Goldsboro LLC ("Goldsboro"), by its undersigned attorneys, files this Motion for Enlargement of Time to File Proof of Claim pursuant to Fed. R. Bankr. P. 9006(b) and for reasons states:

1.      The Debtor, Gregory B. Myers ("Debtor") filed his voluntary petition (the "Petition") under Chapter 11 on November 18, 2015.  The Debtor has remained in possession of the estate's assets and continues to manage his financial affairs.

2.      Goldsboro was a known creditor of the Debtor on the date of the filing of his Petition.

3.      The Debtor is a trustee of Serv Trust, a Maryland statutory trust.  At the request of the Debtor, Goldsboro made loans to Serv Trust.  The total principal amount of the loans to Serv Trust are in the amount of $635,000.

4.      In order to induce Goldsboro to continue lending to Serv Trust, Serv Trust executed a Promissory Note dated May 18, 2015 in the principal amount not to exceed $430,000.  Attached hereto as **Exhibit A** is a copy of the Promissory Note.

5251929.1

5.      Contemporaneously with the execution of the Promissory Note the Debtor executed a Guaranty Agreement. Attached hereto as **Exhibit B** is a copy of the Guaranty Agreement.

6.      After execution of the Promissory Note, and after the principal amount reached $430,000, the Debtor continued to request loans for Serv Trust from Goldsboro. Goldsboro refused to make any more loans to Serv Trust after the principal amount reached $635,000.

7.      At the time the Debtor filed his Petition he was aware that Goldsboro was a creditor. Notwithstanding this fact, and his continuing requests for loans from Goldsboro on behalf of Serv Trust, the Debtor did not schedule Goldsboro as a creditor. Goldsboro is not listed on the mailing matrix (as amended).

8.      Goldsboro has not received any documents in regard to the bankruptcy. Therefore, Goldsboro did not receive the notice of the bar date for filing proofs of claim, the proposed amended disclosure statement and plan, or any of the various motions that are pending before the court.

9.      In the case of *In re Premier Membership Services, LLC*, 276 B.R. 709, 713 (Bankr. S.D. Fla. 2002), the bankruptcy court discussed the standard for allowing the filing of a late proof of claim as follows:

> Rule 9006(b) of the Federal Rules of Bankruptcy Procedure permits a bankruptcy court to enlarge the time for taking action (such as filing a proof of claim) after the time has expired where the failure to act timely was due to "excusable neglect." The Supreme Court has made clear that the determination of whether excusable neglect exists is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer Inv. Services co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 395, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). These circumstances include the 'the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay,

- 2 -

including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.'" *Id.*

Perhaps even more importantly, it is a fundamental principle of due process that known creditors of a debtor are entitled to **actual notice** of a claims bar date before their claims can be extinguished, *City of New York v. New York, N.H. & H.R. Co.,* 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1953). This is true even where the creditor may have actual knowledge of the pendency of the bankruptcy. *Id.* at 297. A creditor in a reorganization has a "right to assume" that he will receive all required notices before his claim will be forever barred. *Id.* Thus, "Courts have consistently ruled that when there is no notice of the claims bar date or of the confirmation hearing, a late claim is not barred." In re: *Tannen Towers Acquisition Corp.* 235 B.R. 748, 753 (D.N.J. 1999).

In the case of *In re Twins, Inc.,* 295 B.R. 568, 572 (Bankr. D.S.C. 2003), the bankruptcy court commented that "A majority of courts have ruled that known creditors are entitled to official or formal notice of a debtor's bankruptcy filing and bar claims date." (citation omitted.) Failure to provide such notice is grounds for allowance of the filing of a late claim. *Id.*

10. Without a doubt, the Debtor had knowledge that Goldsboro is a creditor throughout his bankruptcy case, but failed to schedule or include Goldsboro on the mailing matrix. Goldboro did not have notice of the claims bar date.

11. Although the Debtor has filed an amended proposed disclosure statement and proposed plan (Docket ##213, 216), nothing has been approved by the court and there are objections pending to the amended disclosure statement. (Docket ##255, 256) Further, the Office of the United States Trustee ("UST") has filed a motion to convert or dismiss the case to a case under Chapter 7 (Docket #167), which the Debtor has opposed (Docket #194 ) and Offit Kurman, P.A. ("OK") and SunTrust Bank have supported (Docket # #188, 198). The UST has also filed a motion to extend the time to object to the Debtor's discharge (Docket # 252), which the Debtor has opposed. (Docket # 268) The Debtor's wife's has filed an amended motion to

have $268,997.74 in funds released from an escrow account (Docket # 269), which has been

opposed by the UST. (Docket # 275)  There is also an adversary complaint filed by OK to avoid

the lien of Serv Trust on the proceeds that are in escrow. (Adversary No. 16-00541)

13.    Goldsboro submits that based on the posture of the case among other things, the

prejudice to Goldsboro by not being permitted to file a claim, far outweighs any prejudice the

Debtor may allege.  Goldsboro is proceeding in good faith.

13.    Based on the foregoing, Goldsboro requests that this court enlarge the time for

Goldsboro to file a proof of claim.

14.    Attached hereto as **Exhibit C** is the proposed proof of claim.

15.    Pursuant to Local Rule 9013-2, no memorandum will be filed and movant relies

solely upon this motion.

WHEREFORE,  6789 Goldsboro LLC requests that this Court enter an order: (a)

permitting it to file the attached proof of claim; and (b) granting such other and further relief as

this Court deems just and appropriate.

Respectfully submitted,


/s/ Susan J. Klein
Susan J. Klein  #09242
Gordon Feinblatt LLC
The Garrett Building
233 East Redwood Street
Baltimore, Maryland  21202
(410) 576-4137
(410) 579-4196 – Fax
sklein@gfrlaw.com

Attorney for Movant, 6789 Goldsboro LLC

5251929.1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 27, 2017, a copy of the Motion for Enlargement of Time to File Proof of Claim and proposed order were sent via CM/ECF electronic mail, to the following:

Randa S. Azzam - razzam@siwpc.com; klane@siwpc.com; ecfmd1@siwpc.com; ecfmd2@siwpc.com; ecfmd3@siwpc.com; mfreeman@siwpc.com; SIWPC@ecf.courtdrive.com

Justin Philip Fasano - jfasano@mhlawyers.com; jfasano@ecf.courtdrive.com; ssmentkowski@mhlawyers.com; cjourdonais@mhlawyers.com; dmoorehead@mhlawyers.com

Christopher C. Fogleman - cfogleman@gleason-law.com; sgreen@gleason-law.com;pmorse@gleason-law.com

Daniel A. Glass -  dglass@eckertseamans.com

James Greenan -  jgreenan@mhlawyers.com; dmoorehead@mhlawyers.com; sgoldberg@mhlawyers.com; kjarboe@mhlawyers.com; cjourdonais@mhlawyers.com; jgreenan@ecf.inforuptcy.com

Gregory P. Johnson – gjohnson@offitkurman.com; dwest@offitkurman.com

Gene Jung - gene.jung@brockandscott.com; mdecf@brockandscott.com; wbecf@brockandscott.com; rachael.boone@brockandscott.com

Lynn A. Kohen - lynn.a.kohen@usdoj.gov

Kimberly Brooke Lane -  klane@siwpc.com; ecfmd1@siwpc.com; ecfmd2@siwpc.com; ecfmd3@siwpc.com; razzam@siwpc.com; drubin@siwpc.com; mfreeman@siwpc.com; SIWPC@ecf.courtdrive.com

Richard Edwin Lear - richard.lear@hklaw.com; kimi.odonnell@hklaw.com

Valerie P. Morrison - val.morrison@nelsonmullins.com; robert.ours@nelsonmullins.com; Dylan.trache@nelsonmullins.com; Jason.gold@nelsonmullins.com

Kyle J. Moulding - bankruptcymd@mwc-law.com

Jeffrey M. Orenstein - jorenstein@gwolaw.com

Craig Palik - cpalik@mhlawyers.com; kjarboe@mhlawyers.com; dmoorehead@mhlawyers.com; cjourdonais@mhlawyers.com; cpalik@ecf.inforuptcy.com

5251929.1

Douglas B. Riley - dbriley@tph-law.com

John Allen Roberts - jaroberts@semmes.com; cdavis@semmes.com

Douglas S. Rubin - drubin@siwpc.com; Ecfmd1@siwpc.com; ecfmd2@siwpc.com; ecfmd3@siwpc.com; razzam@siwpc.com; klane@siwpc.com; mfreeman@siwpc.com; SIWPC@ecf.courtdrive.com

US Trustee - Greenbelt USTPRegion04.GB.ECF@USDOJ.GOV

and by first class mail, postage prepaid, to:

> Gregory B. Myers
> 700 Gulf Shore Boulevard North
> Naples, FL  34102
>
> H. Jason Gold
> Nelson Mullins Riley & Scarborough LLP
> 101 Constitution Ave NW
> Suite 900
> Washington, DC 20001
>
> Hunter Harman
> Berkshire Hathaway Home Services
> Beach Properties of FL
> 2063 Highway 395 South
> Santa Rosa Beach, FL 32459
>
> IPFS Corporation
> 30 Montgomery Street
> Suite 1000
> Jersey City, NJ 07302
>
> Serv Trust
> 3158 Braverton Street, Suite 206
> Edgewater, MD  21073
>
> Walton County Florida Tax Collector
> PO Box 510
> Defuniak Spring, FL  32435

and to the parties on the attached service list

/s/ Susan J. Klein
Susan J. Klein

- 6 -

5251929.1

# EXHIBIT 17B

## 6789 Goldsboro LLC Proof of Claim No. 17-1

Pages 1-2

Fill in this information to identify the case:

Debtor 1    Gregory B. Myers

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:    District of Maryland

Case number    15-26033-WIL

## Official Form 410

# Proof of Claim

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

### Part 1:    Identify the Claim

| | |
|---|---|
| 1. Who is the current creditor? | 6789 Goldsboro LLC |
| | Name of the current creditor (the person or entity to be paid for this claim) |
| | Other names the creditor used with the debtor |
| 2. Has this claim been acquired from someone else? | ☑ No<br>☐ Yes. From whom? |

3. Where should notices and payments to the creditor be sent?

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

Susan J. Klein, Esquire
Name

Gordon Feinblatt LLC 233 East Redwood Street
Number          Street

Baltimore          MD          21202
City          State          ZIP Code

Contact phone  410-576-4137

Contact email  sklein@gfrlaw.com

**Where should payments to the creditor be sent? (if different)**

6789 Goldsboro LLC
Name

3925 Beech Avenue
Number          Street

Baltimore          MD          21211
City          State          ZIP Code

Contact phone  410-235-8000

Contact email  brian@realestatedimensions.com

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

| | |
|---|---|
| 4. Does this claim amend one already filed? | ☑ No<br>☐ Yes.  Claim number on court claims registry (if known) _____   Filed on ___ MM / DD / YYYY |
| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☑ No<br>☐ Yes.  Who made the earlier filing? |

Official Form 410                Proof of Claim                page 1

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ___ ___ ___ ___

**7. How much is the claim?**

$_____476,395.83. **Does this amount include interest or other charges?**

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Guaranty

**9. Is all or part of the claim secured?**

☑ No

☐ Yes.  The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:          $_____

Amount of the claim that is secured:    $_____

Amount of the claim that is unsecured: $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:    $_____

Annual Interest Rate (when case was filed)_____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. Amount necessary to cure any default as of the date of the petition.    $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

# EXHIBIT 17C

## March 15, 2018 Affidavit of Brian King

Filed as Exhibit C to the King Parties'
Motion for Summary Judgment

*King, et al. v. Serv Trust*
Case No. 436977-V

Complete Affidavit - PDF Pages 1-4

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

BRIAN KING, *et al.*                                                      :

    Plaintiffs,                                                       :

                                   Case No. 436977-V

v.                                                                       :

SERV TRUST, *a Maryland Statutory Trust*          :

    Defendant.                                                    :

## AFFIDAVIT OF BRIAN KING

1.  My name is Brian King, I am over the age of eighteen, and I am competent to testify to the matters set forth herein.

2.  I am the managing member of 6789 Goldsboro LLC ("6789 Goldsboro").

3.  I have reviewed the Articles of Organization attached to the motion for summary judgment (the "Motion") to which this affidavit is, too, attached, and know them to be a true and genuine copy of the subject document.

4.  I have reviewed the First Amended and Restated Operating Agreement of 6789 Goldsboro (the "Operating Agreement") attached to the Motion and know it to be a true and genuine copy of that document.

5.  I have reviewed the 6789 Goldsboro LLC Second Amendment to First Amended and Restated Operating Agreement attached to the Motion and know it to be a true and genuine copy of that document.

6.  Following the initial capitalization of 6789 Goldsboro, there has been a need for additional capitalization to finance the entity's business – both in the way of day-to-day operations and so as to provide funds for the company to loan to Serv Trust.

1

7.    Specifically, an additional One Million Seven Thousand Nine Hundred Seventy Seven Dollars and Thirty Six Cents ($1,007,977.36) was contributed to 6789 Goldsboro, by its Class A members, after the initial capitalization, for purposes of funding the entity's ordinary operations.

8.    Additionally, Gregory Myers, on behalf of Serv Trust, approached 6789 Goldsboro and asked that it lend monies to Serv Trust; such loans were extended in the following sums on the correlative dates:

| February 27, 2014 | $100,000.00 |
|---|---|
| April 24, 2014 | $100,000.00 |
| October 16, 2014 | $10,000.00 |
| November 12, 2014 | $10,000.00 |
| November 20, 2014 | $5,000.00 |
| December 16, 2014 | $25,000.00 |
| January 21, 2015 | $15,000.00 |
| February 26, 2015 | $15,000.00 |
| April 13, 2015 | $15,000.00 |
| May 11, 2015 | $30,000.00 |
| June 11, 2015 | $15,000.00 |
| July 14, 2015 | $15,000.00 |
| July 30, 2015 | $30,000.00 |
| August 17, 2015 | $45,000.00 |
| August 17, 2015 | $15,000.00 |
| October 14, 2015 | $15,000.00 |
| November 2, 2015 | $15,000.00 |
| December 4, 2015 | $15,000.00 |
| January 5, 2016 | $15,000.00 |
| January 27, 2016 | $15,000.00 |
| February 22, 2016 | $15,000.00 |
| March 15, 2016 | $30,000.00 |
| May 3, 2016 | $15,000.00 |
| May 20, 2016 | $15,000.00 |

2

| June 16, 2016 | $20,000.00 |
| July 14, 2016 | $10,000.00 |
| August 5, 2016 | $10,000.00 |

9.    Additional capital contributions of Six Hundred Thirty Five Thousand Dollars and No Cents ($635,000.00) were made to 6789 Goldsboro, by the Class A members, to facilitate the foregoing loans to Serv Trust.

10.    None of the foregoing loans to Serv Trust have been repaid, in part or full, and Serv Trust has made no additional capital contributions to 6789 Goldsboro.

11.    The additional capital contributions made by the Class A members of 6789 Goldsboro, to fund day-to-day operations and to fund the foregoing loans to Serv Trust, exceed One Million Six Hundred Thousand Dollars and No Cents ($1,600,000.00), bringing their cumulative capital contribution to a sum in excess of Three Million Four Hundred Thousand Dollars and No Cents ($3,400,000.00).

12.    On August 23, 2017, I caused the "Appraisal Demand," attached to the Motion, to be sent to Serv Trust, through my counsel, and know the copy of the Appraisal Demand attached to the Motion to be a true and genuine copy of that correspondence.

13.    On behalf of the Class A members of 6789 Goldsboro, and working through counsel, I obtained an appraisal of the entity's eponymous property, and know the copy attached to the Motion to be a true and genuine copy of that appraisal.

[CONTINUED ON FOLLOWING PAGE]

3

14.    Further affiant sayeth naught.

I solemnly affirm under the penalties of perjury and upon personal knowledge that the contents of the foregoing paper are true.

Brian King

4

# EXHIBIT 17D

## April 24, 2019 Deposition of Brian King

*King, et al. v. Serv Trust*

Case No. 436977-V

### Limited Excerpts:

Transcript / PDF Pages 1-3, 12, 22, 33,

39-40, 47-55, and 176

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY
IN AND FOR THE STATE OF MARYLAND

BRIAN KING, ET AL,

        Plaintiffs/Counter-Defendants,

vs.                         Case Number:  436977-V

SERV TRUST,

        Defendant/Counter-Plaintiff.
_____/


Deposition of **BRIAN KING**, held on Wednesday, April 24, 2019, taken at the Law Office of Souza, LLC, 2543 Housley Road, Annapolis, Maryland 21401, commencing at 10:00 a.m., before Laurie Baker, Notary Public in and for the State of Maryland.



Nationwide Depositions, Hearings and Trials • Conference Facilities
Videoconferencing • Legal Video Services • Exhibit Scanning
Transcript / Video Synchronization • 24-7 Online Repository

**1.888.ACR.3335 • 1.800.862.4206 (FAX)**

info@acrdepos.com • www.acrdepos.com • scheduling@acrdepos.com

2
B. KING

**APPEARANCES:**

MAURICE  B.  VerSTANDIG,  ESQUIRE

9812  Falls  Road,  #114-160

Potomac,  Maryland   20854

Phone:   301.444.4600

Email:   mac@mbvesq.com

ON  BEHALF  OF  BRIAN  KING

FRANCES  C.  WILBURN,  ESQUIRE

Offit  Kurman

4800  Montgomery  Lane,  9th  Floor

Bethesda,  Maryland   20814

Phone:   240.507.1700

Email:   fwilburn@offitkurman.com

ON  BEHALF  OF  6789  Goldsboro  LLC



Nationwide Depositions, Hearings and Trials • Conference Facilities
Videoconferencing • Legal Video Services • Exhibit Scanning
Transcript / Video Synchronization • 24-7 Online Repository

**1.888.ACR.3335 • 1.800.862.4206 (FAX)**

info@acrdepos.com • www.acrdepos.com • scheduling@acrdepos.com

3
B. KING

**APPEARANCES:**    **(CONT'D.)**


DOMINIC  J.  SOUZA,  ESQUIRE

STEPHEN  KONTSON,  ESQUIRE

Souza  LLC

2543  Housley  Road

Annapolis,  Maryland    21401

Phone:    410.571.8366

Email:    dsouza@souzalaw.com

ON  BEHALF  OF  DEFENDANT/COUNTER  PLAINTIFF

SERV  TRUST


**ALSO  PRESENT:**

Greg  Myers



Nationwide Depositions, Hearings and Trials • Conference Facilities
Videoconferencing • Legal Video Services • Exhibit Scanning
Transcript / Video Synchronization • 24-7 Online Repository

**ACR ACCURATE** COURT REPORTING, INC.

**1.888.ACR.3335 • 1.800.862.4206 (FAX)**

info@acrdepos.com • www.acrdepos.com • scheduling@acrdepos.com

12

B. KING

## DEPOSITION OF BRIAN KING

### APRIL 24, 2019

Thereupon,

**BRIAN KING,**

called as a witness and having been duly sworn, testified as follows:

**EXAMINATION**

**BY-MR.SOUZA:**

Q.  Mr. King, can you state your name for the record?

A.  Brian King.

Q.  And where do you live?

A.  I'm a resident of Florida.

Q.  What's your address?

A.  I use my business address as my mailing address, which is 925 Beach Avenue in Baltimore.

Q.  But what's your -- if you live in Florida, what's your address in Florida?

A.  I have a P.O. Box down there right now.

Q.  You don't have a residence in Florida?

A.  I have a house there.  It's being



Nationwide Depositions, Hearings and Trials • Conference Facilities
Videoconferencing • Legal Video Services • Exhibit Scanning
Transcript / Video Synchronization • 24-7 Online Repository

**1.888.ACR.3335 • 1.800.862.4206 (FAX)**

info@acrdepos.com • www.acrdepos.com • scheduling@acrdepos.com

22

B. KING

it's something we've looked at and are familiar with and are comfortable with.

MR. SOUZA:    I can stipulate to that.

MR. VerSTANDIG:    Thank you.

BY-MR.SOUZA:

Q.    So with that said, that is the operating agreement that you signed?

A.    Yes.

Q.    And it reflects the relationship between the members of 6789 Goldsboro LLC?

A.    Yes.

Q.    And the members of that entity are who or what?

A.    We had capital -- we had class A members and class B members.

Q.    Can you recite who those are?

A.    The class A members would have been myself, my wife, and Cristina and Brian King Children's Trust, and class B member was I believe Serv Trust.

Q.    And Greg Myers is the trustee of Serv Trust, correct?

A.    I believe so.

Q.    Can we speak a little bit about the


ACR ACCURATE
COURT REPORTING, INC.

Nationwide Depositions, Hearings and Trials • Conference Facilities
Videoconferencing • Legal Video Services • Exhibit Scanning
Transcript / Video Synchronization • 24-7 Online Repository

1.888.ACR.3335 • 1.800.862.4206 (FAX)
info@acrdepos.com • www.acrdepos.com • scheduling@acrdepos.com

33

B. KING

A.   Yes.

Q.   And when did that occur, to your knowledge?

A.   July of 2013, I believe.

Q.   And after the purchase of the property, the efforts then went to entitling the property, is that correct?

A.   That was the purpose of purchasing it, then the process of entitling started after that, yes.

Q.   And the primary driver of those efforts was the manager of the entity at the time, who is Greg Myers, is that correct?

A.   That's correct.  That's what was spelled out in the operating agreement.  He had duties.  I was -- the class A members were investors at the time, and the class B member, Serv Trust, who Greg was I guess trustee, named him as -- I guess the documents name him as the manager.

Q.   As you mentioned as the manager, he has the responsibility to entitle the property?

A.   I think that was our agreement, yes.



Nationwide Depositions, Hearings and Trials • Conference Facilities
Videoconferencing • Legal Video Services • Exhibit Scanning
Transcript / Video Synchronization • 24-7 Online Repository

1.888.ACR.3335 • 1.800.862.4206 (FAX)

info@acrdepos.com • www.acrdepos.com • scheduling@acrdepos.com

39
B. KING

BY-MR.SOUZA:

Q. Back to the conversation of engaging Offit Kurman, I'm going to hand you Deposition Exhibit Number-5. This is an engagement letter with Offit Kurman. If you flip to the second page, you'll see that it appears as though you've signed it. Is that your signature?

A. It is.

Q. So going back to my question. Did there come a time when you, on behalf of 6789 Goldsboro LLC, engaged Offit Kurman as counsel to that entity?

A. Yes.

Q. Thank you. And going back to that representation. Was the scope of that representation concerning the development of the property?

A. I don't recall.

Q. What was the date of that document?

A. 2013.

Q. Did there come a time where 6789 Goldsboro LLC issued loans to Serv Trust as member?



Nationwide Depositions, Hearings and Trials • Conference Facilities
Videoconferencing • Legal Video Services • Exhibit Scanning
Transcript / Video Synchronization • 24-7 Online Repository
1.888.ACR.3335 • 1.800.862.4206 (FAX)
info@acrdepos.com • www.acrdepos.com • scheduling@acrdepos.com

40
B. KING

A.    I believe they are categorized as loans, so yes.

Q.    You are the tax matters partner of 6789 Goldsboro LLC, is that correct?

A.    I am.

Q.    In that capacity, have you filed tax returns for 6789 Goldsboro LLC?

A.    Up until this point -- I mean in 2018, I filed an extension.    It'll be filed shortly, but yes, every year there's been a tax filing.

Q.    So there's been a tax filing then for 2013, '14, '15, '16, '17, but not yet '18?

A.    It hasn't been finished yet, but there's been an extension.

Q.    For the other years I just mentioned, there's been actual filings?

A.    Yes.

Q.    And has there been K1s issued to all the members?

A.    Yes.

Q.    Are you aware of any errors that may exist in those tax filings?



Nationwide Depositions, Hearings and Trials • Conference Facilities
Videoconferencing • Legal Video Services • Exhibit Scanning
Transcript / Video Synchronization • 24-7 Online Repository

**1.888.ACR.3335 • 1.800.862.4206 (FAX)**

info@acrdepos.com • www.acrdepos.com • scheduling@acrdepos.com

47

B. KING

A.   In September of '16, this was an offer for unentitled land -- I mean, for entitled land with nineteen units on it. Mr. Myers was in a very bad way with his finances, and he needed an out, and part of that, I made an offer to him using a Memorandum of Understanding I think sometime in September of 2016.

Q.   September 7th, does that sound correct to you?

A.   It's sometime in the beginning of September.  I haven't looked at that document in a long time.

Q.   I'm going to give you Deposition Exhibit Number-7.

**(Whereupon, the King Deposition Exhibit-7 was marked by the reporter.)**

**BY-MR.SOUZA:**

Q.   This is an email from you to Greg Myers.

MR. VerSTANDIG:   Let the record reflect, there's no Bates stamp, so the same objection as before.

**BY-MR.SOUZA:**



ACR ACCURATE
COURT REPORTING, INC.

Nationwide Depositions, Hearings and Trials • Conference Facilities
Videoconferencing • Legal Video Services • Exhibit Scanning
Transcript / Video Synchronization • 24-7 Online Repository

**1.888.ACR.3335 • 1.800.862.4206 (FAX)**

info@acrdepos.com • www.acrdepos.com • scheduling@acrdepos.com

48

B. KING

Q.  Do you recognize this email?

A.  I do.

Q.  Was this the offer you were referring to?

MS. WILBURN:  Objection.  It says the attached offer, and the offer is not attached.

BY-MR.SOUZA:

Q.  I'm getting to that.  Is this the email that presented the offer to Serv Trust?

A.  I believe so, yes.

Q.  And when you said Mr. Myers was in a bad way earlier, what did you mean by that?

A.  Part of the relationship between us was very strained from the beginning because he was going through personal financial issues, and he would continually come to me, ask me for help as he was going through the entitlement process so that he could pay his bills.  So, you know, all along, you know -- look, I was never looking to hurt Greg in any way, and I knew that he seemed to be working towards entitling the property.  And,



Nationwide Depositions, Hearings and Trials • Conference Facilities
Videoconferencing • Legal Video Services • Exhibit Scanning
Transcript / Video Synchronization • 24-7 Online Repository
**1.888.ACR.3335 • 1.800.862.4206 (FAX)**
info@acrdepos.com • www.acrdepos.com • scheduling@acrdepos.com

49

B. KING

you know, over the course of our partnership, I helped him out.

Q. And when you refer to that Memorandum of Understanding, I'm going to hand you Deposition Exhibit Number-8.

(Whereupon, King Deposition Exhibit-8 was marked by the reporter.)

BY-MR.SOUZA:

Q. Which is styled Memorandum of Understanding. Do you recognize this document?

A. Yes.

MR. VerSTANDIG: Same objection. There's no Bates stamp.

MR. SOUZA: Mac, I'm going to offer you --

MR. VerSTANDIG: Standing objection on that?

MR. SOUZA: -- any documents that aren't Bates stamped.

MR. VerSTANDIG: I'm fine with that, take the standing objection.

BY-MR.SOUZA:

Q. Do you recognize that document?



Nationwide Depositions, Hearings and Trials • Conference Facilities
Videoconferencing • Legal Video Services • Exhibit Scanning
Transcript / Video Synchronization • 24-7 Online Repository

1.888.ACR.3335 • 1.800.862.4206 (FAX)

info@acrdepos.com • www.acrdepos.com • scheduling@acrdepos.com

50
B. KING

A.    I do.

Q.    Is this the document that was the attachment to the email which is reflected in Deposition Exhibit Number-7?

A.    I believe so.

Q.    And this was the offer for the class A members to purchase the interests of the class B members, which is Serv Trust in Goldsboro, correct?

A.    That's correct.

Q.    What was the purchase price of the offer?

A.    Two million dollars.

Q.    And if you flip to page two, is that your signature?

A.    Yes.

Q.    And to your knowledge, is that the signature of Cristina King?

A.    Yep.

Q.    And to your knowledge --

A.    Yes.

Q.    And to your knowledge, is that the signatures of the three trustees of the Cristina and Brian King Children's Trust?



Nationwide Depositions, Hearings and Trials • Conference Facilities
Videoconferencing • Legal Video Services • Exhibit Scanning
Transcript / Video Synchronization • 24-7 Online Repository

1.888.ACR.3335 • 1.800.862.4206 (FAX)
info@acrdepos.com • www.acrdepos.com • scheduling@acrdepos.com

51
B. KING

A.    Yes.

Q.    Did you have the financial wherewithal to consummate this transaction?

A.    I believe I wouldn't have made the offer if I didn't.

Q.    You're not sure whether you had the money to follow through with this transaction?

MR. VerSTANDIG:    Object to the form of the question.

A.    I made the offer because I could.

BY-MR.SOUZA:

Q.    Going back to Deposition Exhibit Number-7, the email, transmitting the offer to the class B members, you mentioned that the purchase can happen quickly so that Serv Trust can have liquidity within 30 days.    Is that because -- did you say that because you thought that was important to him?

A.    I think in the Memorandum of Understanding, we had three weeks to close, and then during those three weeks we would have had to negotiate the actual sales contract and more details that needed to go into this sale that was going to happen.



Nationwide Depositions, Hearings and Trials • Conference Facilities
Videoconferencing • Legal Video Services • Exhibit Scanning
Transcript / Video Synchronization • 24-7 Online Repository
1.888.ACR.3335 • 1.800.862.4206 (FAX)
info@acrdepos.com • www.acrdepos.com • scheduling@acrdepos.com

52

B. KING

Q. To be clear, this was an offer to the class B members, correct? Member I should say.

A. Member.

Q. That class B member is Serv Trust, correct?

A. Correct.

Q. That was 8. Who drafted the Memorandum of Understanding?

A. Would have been Danielle.

Q. What law firm does she work for?

A. Gordon Feinblatt.

Q. And she was representing who while drafting this?

A. I'm not sure if it was -- probably the class A members. And/or she -- I mean, she was responsible for other documents that were produced during that time, so --

Q. On the same day you transmitted this offer, you also sent Greg Myers as trustee of Serv Trust financials of 6789 Goldsboro, is that correct?

A. I'm not sure if it was the same day or when it was. I recall sending him some



Nationwide Depositions, Hearings and Trials • Conference Facilities
Videoconferencing • Legal Video Services • Exhibit Scanning
Transcript / Video Synchronization • 24-7 Online Repository

1.888.ACR.3335 • 1.800.862.4206 (FAX)

info@acrdepos.com • www.acrdepos.com • scheduling@acrdepos.com

53

B. KING

numbers to help him evaluate.

MR. SOUZA:    I wrote nine on here, if that's okay with you.

MS. WILBURN:    Yes.    Thank you.

**(Whereupon, King Deposition Exhibit-9 was marked by the reporter.)**

**BY-MR.SOUZA:**

Q.    I'm going to hand you Deposition Exhibit Number-9 to Greg Myers.    Deposition Exhibit Number-9, which is an email from you to Greg Myers dated September 7th.    Did you recognize this email?

A.    I do.

Q.    If you'd flip to the attachments, you're going to see a bunch of numbers.    If we could isolate on these numbers, that would be helpful.    So I'm going to refer to the upper portion of the second page of this exhibit as the King Contributions, and the lower half as the King Trust Contributions. Can you see the distinction there?

A.    Yes.

Q.    Does this reflect on the second page of Deposition Exhibit Number-9 your investment



Nationwide Depositions, Hearings and Trials • Conference Facilities
Videoconferencing • Legal Video Services • Exhibit Scanning
Transcript / Video Synchronization • 24-7 Online Repository

**1.888.ACR.3335 • 1.800.862.4206 (FAX)**

info@acrdepos.com • www.acrdepos.com • scheduling@acrdepos.com

54

B. KING

or the class A -- class A members investments into 6789 Goldsboro?

MR. VerSTANDIG: Object to the form of the question as of that date.

MR. SOUZA: Okay. I'll stipulate to that.

**BY-MR.SOUZA:**

Q. As of September 7th, 2016, does the second page represent your -- the class A members investment into Goldsboro LLC?

A. I believe this is what was contributed from both the King portion and the King Trust portion.

Q. These are contributions, correct?

A. I believe that's how they were categorized from a tax standpoint. I'd have to ask my accountant, but I think so, yes.

Q. If you flip to the third page of that exhibit, you'll see a block referred to as Loans to Serv Trust.

A. Yep.

Q. And at the bottom, there's a sum total of $635,000. Do you see that number?

A. Yes.


ACCURATE COURT REPORTING, INC.

Nationwide Depositions, Hearings and Trials • Conference Facilities
Videoconferencing • Legal Video Services • Exhibit Scanning
Transcript / Video Synchronization • 24-7 Online Repository
**1.888.ACR.3335 • 1.800.862.4206 (FAX)**
info@acrdepos.com • www.acrdepos.com • scheduling@acrdepos.com

55

B. KING

Q. That $635,000 is included in the numbers on the second page, correct?

A. I'm sorry?

Q. The total on the third page, if you can flip to that page --

A. Yes.

Q. -- you'll see a total down at the bottom, it says $635,000?

A. Yes.

Q. Now, if you flip back to the second page, is that $635,000 included in the numbers that I see on the second page?

A. I don't think so. I think those -- these numbers aren't included in this number.

Q. Why did you make the offer -- let me rephrase. The offers that you received in August --

A. Uh-huh.

Q. -- gave you some comfort that if you bought out Serv Trust, that it would still be a sound investment for you, is that correct?

A. The offers that we received in October -- I mean in August gave me some


ACR ACCURATE
COURT REPORTING, INC.

Nationwide Depositions, Hearings and Trials • Conference Facilities
Videoconferencing • Legal Video Services • Exhibit Scanning
Transcript / Video Synchronization • 24-7 Online Repository

1.888.ACR.3335 • 1.800.862.4206 (FAX)
info@acrdepos.com • www.acrdepos.com • scheduling@acrdepos.com

176

B. KING

**CERTIFICATE**

STATE OF MARYLAND

COUNTY OF CARROLL

I, Laurie Baker, a Notary Public of the State of Maryland, County of Carroll, do hereby certify that the within-named witness personally appeared before me at the time and place herein set out, and after having been first duly sworn by me, according to law, was examined by counsel.

I further certify that the examination was recorded stenographically by me and this transcript is a true record of the proceedings.

I further certify that I am not of counsel to any of the parties, nor an employee of counsel, nor related to any of the parties, nor in any way interested in the outcome of the action.

As witness my hand and seal this 7th day of May 2019.



LAURIE BAKER

Commission Expires 09-01-22

ACR ACCURATE
COURT REPORTING, INC.

Nationwide Depositions, Hearings and Trials • Conference Facilities
Videoconferencing • Legal Video Services • Exhibit Scanning
Transcript / Video Synchronization • 24-7 Online Repository

1.888.ACR.3335 • 1.800.862.4206 (FAX)

info@acrdepos.com • www.acrdepos.com • scheduling@acrdepos.com

# EXHIBIT 17E

## May 10, 2019 Affidavit of Brian King

Filed in the Consolidated State-Court Proceeding

*King, et al. v. Serv Trust, et al.*

Lead Case No. 436977-V

Complete Affidavit - PDF Pages 1-3

## IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

| | | |
|---|---|---|
| BRIAN KING, *et al.* | : | |
| Plaintiffs, | : | |
| v. | : | **Consolidated Proceeding**<br>**Lead Case No.: 436977-V** |
| SERV TRUST, *et al.* | : | |
| Defendants, | : | |
| and | : | |
| ROGER SCHLOSSBERG<br>*In His Official Capacity as Trustee*<br>*of the Bankruptcy Estate of Gregory Myers* | :<br><br>: | |
| Nominal Defendant. | : | |

## AFFIDAVIT OF BRIAN KING

1. My name is Brian King, I am over the age of eighteen (18), and I am competent to testify to the matters set forth herein.

2. I am a plaintiff in the above-captioned lawsuit.

3. While Serv Trust was a Class B member of 6789 Goldsboro LLC ("Goldsboro"), Gregory Myers ("Mr. Myers") asked Goldsboro to make dozens of loans for Mr. Myers' personal benefit, and Goldsboro did so on the following dates, in the correlative increments:

| February 27, 2014 | $100,000.00 |
|---|---|
| April 24, 2014 | $100,000.00 |
| October 16, 2014 | $10,000.00 |
| November 12, 2014 | $10,000.00 |
| November 20, 2014 | $5,000.00 |
| December 16, 2014 | $25,000.00 |
| January 21, 2015 | $15,000.00 |
| February 26, 2015 | $15,000.00 |
| April 13, 2015 | $15,000.00 |
| May 11, 2015 | $30,000.00 |

| | |
|---|---|
| June 11, 2015 | $15,000.00 |
| July 14, 2015 | $15,000.00 |
| July 30, 2015 | $30,000.00 |
| August 17, 2015 | $45,000.00 |
| August 17, 2015 | $15,000.00 |
| October 14, 2015 | $15,000.00 |
| November 2, 2015 | $15,000.00 |
| December 4, 2015 | $15,000.00 |
| January 5, 2016 | $15,000.00 |
| January 27, 2016 | $15,000.00 |
| February 22, 2016 | $15,000.00 |
| March 15, 2016 | $30,000.00 |
| May 3, 2016 | $15,000.00 |
| May 20, 2016 | $15,000.00 |
| June 16, 2016 | $20,000.00 |
| July 14, 2016 | $10,000.00 |
| August 5, 2016 | $10,000.00 |

4.      When Mr. Myers first approached me about the Goldsboro project, which he had personally discovered, he asked that his interest be put in the name of Serv Trust and not himself.

5.      Despite Mr. Myers' former interest in Goldsboro project being in the name of Serv Trust, and not himself, he personally managed the project for several years and regularly referred to the ownership interest of Serv Trust in the first person (ie, being his own).

6.      The former interest in Goldsboro held putatively by Serv Trust was created in recognition of the work Mr. Myers would personally attempt to put into the property, and was far greater than a simple finder's fee.

7.      As the Goldsboro project continued and Mr. Myers' personal finances continued to degrade, he would repeatedly ask me to infuse the entity with monies to be loaned to him.

8.      Mr. Myers' requests for loans amplified once he became a debtor in bankruptcy.

9. Mr. Myers' wife was never a part of the Goldsboro project and never interacted with me personally in connection with the project.

10. On at least one occasion, Mr. Myers asked monies loaned from Goldsboro go directly to him and not even pass through Serv Trust, and Goldsboro acquiesced to this request.

11. This request did not seem odd, as it was always understood that the loans putatively to Serv Trust were really for Mr. Myers' personal use.

12. Further affiant sayeth not.

I solemnly affirm under the penalties of perjury and upon personal knowledge that the contents of the foregoing paper are true.

Brian King